**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **CHMURA ECONOMICS & ANALYTICS, LLC,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | Case No. __3:19-cv-813__ |
| **v.** | ) ) | |
| **RICHARD LOMBARDO,** | ) ) ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Chmura Economics & Analytics, LLC, by counsel, files this Complaint against Defendant Richard Lombardo.

### Introduction

1.  Chmura brings this action for injunctive relief to prevent Lombardo from carrying out his threats to intentionally destroy its business. Despite his contractual and fiduciary obligations, Lombardo threatened to steal Chmura's customers and take them to a competitor if Chmura did not offer him compensation commensurate with his perceived self-worth. Chmura declined to succumb to Lombardo's threatened extortion, and therefore sues to enforce Lombardo's restrictive covenants.

### Parties, Jurisdiction, and Venue

2.  Chmura Economics & Analytics, LLC is a Virginia limited liability company with its principal place of business in Richmond, Virginia.

3.  Lombardo is a citizen and resident of the state of Ohio.

4.   The value of the customer contracts with which Lombardo has threatened to interfere is well over $100,000.

5.   Because the parties in this case are citizens of different states, and the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

6.   This Court has personal jurisdiction over Lombardo because he "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction and venue of . . . the United States District Court for the Eastern District of Virginia, Richmond Division in connection with any suit, action or proceeding relating to" his "Confidentiality, Non-Competition & Non-Solicitation Agreement" (the "Agreement") with Chmura, on which this action is based.  (Ex. A § 8.)

7.   Venue is proper in the Eastern District of Virginia and this division based on the Agreement's forum selection provision, which names the federal and state courts in Richmond, Virginia as the exclusive forum for this dispute.  *Id.*

## FACTUAL ALLEGATIONS

### A.  Chmura's Business and Lombardo's Employment

8.   Chmura is a leading software and consulting firm in the field of data analytics.  Chmura's proprietary software provides demographics and labor data, such as highly granular occupation forecasts and real-time data about job postings.  Chmura's team of economists, data scientists, and statisticians also provide consulting services to help clients interpret and use the data available through its software products.

9.   Lombardo began his employment with Chmura in 2015.  At that time, Lombardo was one of only two Chmura sales representatives in the Ohio area.

2

10. Lombardo marketed and sold Chmura's software products to customers in his territory. Although many of Lombardo's customers were located in the Midwest, he sold to customers nationwide.  Thus, Lombardo was responsible for creating interest, developing opportunities, negotiating deals, managing client relationships, and driving revenue by selling Chmura's software products and consulting services.

11. Lombardo's responsibilities also extended beyond merely making sales.  For example, he regularly offered input and assistance on marketing strategy, resolved client questions and complaints, administered invoices and customer payments, and provided feedback on prospective and existing product features.

12. Over the course of his employment, Lombardo had access to, and used, Chmura's confidential customer and target information, business platform, reputation, resources, and goodwill to expand and service Chmura's existing client relationships and to develop new ones.

13. Lombardo brought no client relationships with him to Chmura.  Rather, Lombardo developed new client relationships exclusively through the resources and training he received from Chmura.

**B.  Lombardo's Restrictive Covenant Agreement with Chmura**

14. When Lombardo began his employment with Chmura, he signed a Confidentiality, Non-Competition, and Non-Solicitation Agreement with Chmura, dated February 4, 2015.  A true and correct copy of the Agreement is attached as Exhibit A.

15. In that Agreement, Lombardo agreed that he would not "reveal or disclose to any person outside of the Company, or use for his[] own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's customers, clients or employees."  (Ex. A § 1.)

3

16. In addition, Lombardo's Agreement contained "Covenants Not to Compete or Interfere."

Those covenants stated that Lombardo would not:

> directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or on behalf of any person or entity that engages in the Company's Business in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company.

*Id.* § 3(b).

17. Lombardo also agreed that he would not:

> directly or indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of providing products or services that are the same or substantially similar to the Company's Business any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom Employee pursued on behalf of the Company, or of whom Employee had knowledge based on his/her employment with the Company because the Company provided products or services to or actively pursued the individual or entity during Employee's employment.

*Id.* § 3(c).

18. Lombardo further acknowledged that the Agreement's restrictions are "reasonable, fair and equitable in terms of duration and scope, are necessary to protect the legitimate business interests of the company, and are a material inducement to the Company to enter into this Agreement." *Id.* § 3(e).

19. In addition, Lombardo agreed that:

> a breach of any of the covenants set forth in Sections 1, 2, and 3 [including those quoted above] would result in immediate irreparable injury and damage to the Company for which the Company would have no adequate remedy at law.  In the event of a breach or threatened breach by [Lombardo] of any of the provisions of Sections 1, 2, or 3 of this Agreement, the Company shall be entitled to a temporary restraining order and/or a preliminary or permanent injunction restraining Employee from breaching the same.

4

*Id.* § 10.

20. Finally, the Agreement provides that, in the event of any breach, Chmura "shall be entitled to all costs and expenses incurred as a result, including reasonable attorney's fees, in addition to any other remedies to which Company may be entitled." *Id.*

### C. Lombardo's Threatened Breaches

21. Chmura's sales have grown significantly over the past four years. Therefore, Chmura has hired additional sales representatives to assist with sales in Lombardo's territory. Chmura is also in the process of revising its commissions structure for sales representatives.

22. Lombardo, dissatisfied with these perceived affronts, became very negative and difficult to manage. For example, when Lombardo did not receive a discretionary merit-based salary increase in 2019, he became incensed, and even altered a rescinded offer letter from a prospective business partner of Chmura to try to bully Chmura into increasing his salary.

23. On October 3, 2019, Lombardo met with his manager, Eli Auerbach, to discuss these issues. When Auerbach explained the upcoming changes to Lombardo's sales territory and commissions structure, Lombardo became agitated, stating that it was "obvious" that Chmura's leadership wanted to "get rid of" him. Lombardo therefore raised the possibility of leaving voluntarily in exchange for a separation payment. Lombardo suggested that he viewed a separation payment of $100,000 as an appropriate amount to compensate him for "his" book of business.

24. On October 17th, Lombardo and Auerbach met again to discuss Lombardo's potential separation from Chmura.

25. During that conversation, Lombardo stated that if Chmura would not pay him $100,000 as part of a separation agreement, he was prepared to take several steps to disrupt Chmura's business.

26. First, Lombardo stated that he would immediately file a lawsuit against the company because Chmura was attempting to take away "his" book of business—*i.e.*, Chmura's customers, with whom Lombardo worked only by virtue of his employment with Chmura.

27. Second, Lombardo threatened to accept a position with one of Chmura's competitors, in violation of the Agreement.  Lombardo indicated that this was not an idle threat because he had already discussed employment with at least one competitor.

28. Third, Lombardo threatened to contact all of Chmura's clients (despite the Agreement's non-solicitation provisions) so that he could persuade them to take their business elsewhere. Lombardo warned Auerbach, "either Chmura is going to pay me for those relationships, or someone else will."

29. Chmura refused to succumb to Lombardo's attempted extortion.  Therefore, the following Monday, Chmura offered Lombardo a $10,000 separation contract.  Fearful that Lombardo may have already put his plans in motion, Chmura also placed Lombardo on unpaid leave.  In addition, Chmura sent Lombardo a cease and desist letter reminding him of his obligations under the Agreement and warning him against the violations he had threatened.

30. In that letter, Chmura asked Lombardo to (i) identify Chmura's clients with whom he had communicated regarding his possible departure; (ii) identify Chmura's clients with whom Lombardo had communicated after Chmura placed him on leave; (iii) identify the competitors with whom he had discussed employment in the past six months; (iv) confirm that he had returned all Chmura property and information; and (v) agree to refrain from defaming Chmura.

31. Lombardo, by counsel, responded to Chmura's cease and desist letter on October 25, 2019. In that letter, however, Lombardo failed to provide any of the information Chmura had requested, and offered no assurance that he would comply with Chmura's demands.

32. Lombardo also continued to retain a Chmura computer, which contained customer contacts, pricing data, and other highly confidential Chmura information.

33. Lombardo's actions pose a continuing threat to Chmura and its business.  The violations that Lombardo has threatened would cause Chmura irreparable harm in the form of, among other things, lost revenue and lost goodwill from the long-standing customer relationships in which it has substantially invested.

## COUNT I

### Injunctive Relief for Threatened Breach of Contract

34. Chmura incorporates Paragraphs 1 through 33 of this Complaint by reference.

35. The Agreement is a binding and enforceable contract between Lombardo and Chmura, which prohibits Lombardo from, among other things, soliciting the customers with whom he worked during his last year at Chmura for two years after leaving Chmura.

36. The Agreement also prohibits Lombardo from competing against Chmura by providing the same or similar services he performed for Chmura within the specified geographic area for two years after his employment.

37. The Agreement is supported by adequate consideration, namely, Lombardo's offer of employment with Chmura, and Lombardo's access to Chmura's resources, training, customer goodwill, and confidential information.

38. Chmura has performed all of its obligations under the Agreement.

39. Lombardo has threatened to materially breach his non-solicitation obligations through his stated plans to contact Chmura's customers to divert that business from Chmura.

40. Lombardo has also threatened to materially breach his non-competition obligations through his stated plans to take Chmura's customers to a competitor.

41. As expressly reflected in the Agreement he signed, there is no adequate remedy at law that would make Chmura whole if Lombardo breached the Agreement, and Chmura is therefore entitled to an injunction to prevent Lombardo's threatened breaches.

42. The terms of the Agreement entitle Chmura to specific performance in the form of an order requiring Lombardo to abide by his non-solicitation and non-compete obligations and enjoining him from soliciting Chmura customers or unlawfully competing against Chmura.

43. The balance of equities weighs in Chmura's favor, and the likely injury to Chmura greatly outweighs any potential harm to Lombardo if an injunction is granted, because Chmura is entitled to protect the goodwill it has built with its customers and to protect its business.

44. Further, it would be inequitable for Lombardo to benefit from his threatened breaches by diverting Chmura's customers to a competitor during the restricted period.

45. An injunction would vindicate the strong public interest in holding parties to their contractual obligations.

## PRAYER FOR RELIEF

For the reasons above, Chmura respectfully seeks judgment against Lombardo as follows:

1. For an order of a preliminary and permanent injunction prohibiting Lombardo, directly or indirectly, from: (a) providing any future competing services, for the restricted two-year period, to a competing organization in the geographic area that Lombardo serviced on Chmura's behalf, as set forth in the Agreement; (b) further soliciting or encouraging others to solicit, for the restricted two-year period, any Chmura customer or prospective customer with whom Lombardo worked during his employment with Chmura for the purpose of diverting business from Chmura; and (c) accessing or using any Chmura confidential information, including, without limitation, any client contact lists;

2. For an award of attorneys' fees and costs; and

3. For any other such relief against Lombardo as the Court may deem appropriate.


Dated:  October 31, 2019


_____/s/_____
Rodney A. Satterwhite (VA Bar No. 32907)
Heidi E. Siegmund (VA Bar No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*