IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **CHMURA ECONOMICS & ANALYTICS, LLC,** | )<br>)<br>) |
| Plaintiff, | )<br>)  Case No. 3:19-cv-813-REP |
| v. | )<br>) |
| **RICHARD LOMBARDO,** | )<br>) |
| Defendant. | ) |

### FIRST AMENDED COMPLAINT

Plaintiff Chmura Economics & Analytics, LLC, by counsel, files this First Amended Complaint against Defendant Richard Lombardo.

### Introduction

1. Chmura brings this action for damages and injunctive relief to prevent Lombardo from carrying out his threats to intentionally destroy its business, and to recover the tangible property and trade secrets that Lombardo has unlawfully retained. Despite his contractual and fiduciary obligations, Lombardo threatened to steal Chmura's customers and take them to a competitor if Chmura did not offer him compensation commensurate with his perceived self-worth. Apparently to assist him in carrying out these threats, Lombardo refused to return a laptop computer containing confidential and proprietary information about Chmura's customers and prospective customers. Chmura declined to succumb to Lombardo's threatened extortion, and terminated Lombardo's employment. Chmura now sues to enforce its agreement with Lombardo and to protect its confidential information and trade secrets.

1

**Parties, Jurisdiction, and Venue**

2. Chmura Economics & Analytics, LLC is a Virginia limited liability company with its principal place of business in Richmond, Virginia.

3. Lombardo is a citizen and resident of the state of Ohio.

4. The value of the information Lombardo has retained, and the customer contracts with which Lombardo has threatened to interfere, is well over $100,000.

5. Because the parties in this case are citizens of different states, and the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

6. This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Chmura asserts claims for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*

7. This Court has personal jurisdiction over Lombardo because he "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction and venue of . . . the United States District Court for the Eastern District of Virginia, Richmond Division in connection with any suit, action or proceeding relating to" his "Confidentiality, Non-Competition & Non-Solicitation Agreement" (the "Agreement") with Chmura, on which this action is based. (Ex. A § 8.)

8. Venue is proper in the Eastern District of Virginia and this division based on the Agreement's forum selection provision, which names the federal and state courts in Richmond, Virginia as the exclusive forum for this dispute. *Id.*

**FACTUAL ALLEGATIONS**

A. **Chmura's Business and Lombardo's Employment**

9. Chmura is a leading software and consulting firm in the field of data analytics. Chmura's proprietary software provides demographics and labor data, such as highly granular occupation forecasts and real-time data about job postings. Chmura's team of economists, data scientists, and statisticians also provide consulting services to help clients interpret and use the data available through its software products.

10. Lombardo began his employment with Chmura in 2015. At that time, Lombardo was one of only two Chmura sales representatives in the Ohio area.

11. Lombardo marketed and sold Chmura's software products (which are licensed on a subscription basis) to customers in his territory. Although many of Lombardo's customers were located in the Midwest, he sold to customers nationwide. Thus, Lombardo was responsible for creating interest, developing opportunities, negotiating deals, managing client relationships, and driving revenue by selling Chmura's software products and consulting services.

12. Lombardo's responsibilities also extended beyond merely making sales. For example, he regularly offered input and assistance on marketing strategy, resolved client questions and complaints, administered invoices and customer payments, and provided feedback on prospective and existing product features.

13. Over the course of his employment, Lombardo had access to, and used, Chmura's confidential customer and target information, business platform, reputation, resources, and goodwill to expand and service Chmura's existing client relationships and to develop new ones.

14. Lombardo brought no client relationships with him to Chmura. Rather, Lombardo developed new client relationships exclusively through the resources and training he received from Chmura.

**B. Lombardo's Restrictive Covenant Agreement with Chmura**

15. When Lombardo began his employment with Chmura, he signed a Confidentiality, Non-Competition, and Non-Solicitation Agreement with Chmura, dated February 4, 2015. A true and correct copy of the Agreement is attached as Exhibit A.

16. In that Agreement, Lombardo agreed that he would not "reveal or disclose to any person outside of the Company, or use for his[] own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's customers, clients or employees." (Ex. A § 1.)

17. Lombardo also agreed that "[u]pon the termination of [his] employment, for whatever reason, [he] will promptly deliver to the Company all documents, equipment, property or materials of any type, including any copies thereof, in [his] possession, custody or control that belong to the Company, and/or that contain, in whole or in part, any Confidential or Proprietary Information[.]" *Id.*

18. Moreover, Lombardo promised that "[u]pon termination of [his] employment for any reason whatsoever, [he] shall immediately and without demand return to the Company all tangible property in his[] possession belonging to the Company (including without limitation electronic equipment), in good condition, ordinary wear and tear excepted." *Id.* § 4. He further acknowledged that upon his termination, he "shall have no further right of access to or any right to obtain" any records or documents belonging to Chmura or relating to its business. *Id.*

19. In addition, Lombardo's Agreement contained "Covenants Not to Compete or Interfere." Those covenants stated that Lombardo would not:

> directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or on behalf of any person or entity that engages in the Company's Business in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company.

*Id.* § 3(b).

20. Lombardo also agreed that he would not:

> directly or indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of providing products or services that are the same or substantially similar to the Company's Business any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom Employee pursued on behalf of the Company, or of whom Employee had knowledge based on his/her employment with the Company because the Company provided products or services to or actively pursued the individual or entity during Employee's employment.

*Id.* § 3(c).

21. Lombardo further acknowledged that the Agreement's restrictions are "reasonable, fair and equitable in terms of duration and scope, are necessary to protect the legitimate business interests of the company, and are a material inducement to the Company to enter into this Agreement." *Id.* § 3(e).

22. In addition, Lombardo agreed that:

> a breach of any of the covenants set forth in Sections 1, 2, and 3 [including those quoted above] would result in immediate irreparable injury and damage to the Company for which the Company would have no adequate remedy at law. In the event of a breach or threatened breach by [Lombardo] of any of the provisions of Sections 1, 2, or 3 of this Agreement, the Company shall be entitled to a temporary restraining order and/or a preliminary or permanent injunction restraining Employee from breaching the same.

5

*Id.* § 10.

23. Finally, the Agreement provides that, in the event of any breach, Chmura "shall be entitled to all costs and expenses incurred as a result, including reasonable attorney's fees, in addition to any other remedies to which Company may be entitled." *Id.*

### C. Lombardo's Breaches And Misconduct

24. Chmura's sales have grown significantly over the past four years. Therefore, Chmura has hired additional sales representatives to assist with sales in Lombardo's territory. Chmura is also in the process of revising its commission structure for sales representatives.

25. Lombardo, dissatisfied with these perceived affronts, became very negative and difficult to manage. For example, when Lombardo did not receive a discretionary merit-based salary increase in 2019, he became incensed, and even falsified changes to a rescinded job offer letter from a third party to try to bully Chmura into increasing his salary.

26. On October 3, 2019, Lombardo met with his manager, Eli Auerbach, to discuss the upcoming changes to Lombardo's sales territory and commissions structure. Lombardo again became agitated, stating that it was "obvious" that Chmura's leadership wanted to "get rid of" him. Lombardo therefore raised the possibility of leaving voluntarily in exchange for a separation payment. Lombardo suggested that he viewed a separation payment of $100,000 as an appropriate amount to compensate him for "his" book of business.

27. On October 17th, Lombardo and Auerbach met again to discuss Lombardo's potential separation from Chmura.

28. During that conversation, Lombardo stated that if Chmura would not pay him $100,000 as part of a separation agreement, he was prepared to take several "steps" to disrupt Chmura's business.

29. First, Lombardo stated that he would immediately file a lawsuit against the company because Chmura was attempting to take away "his" book of business—*i.e.*, Chmura's customers, with whom Lombardo worked only by virtue of his employment with Chmura. Lombardo also repeated this threat to his colleagues.

30. Second, Lombardo threatened to accept a position with one of Chmura's competitors, in violation of the Agreement. Lombardo indicated that this was not an idle threat because he had already discussed employment with at least one competitor.

31. Third, Lombardo threatened to contact all of Chmura's clients (despite the Agreement's non-solicitation provisions) so that he could persuade them to take their business elsewhere. Lombardo warned Auerbach, "either Chmura is going to pay me for those relationships, or someone else will."

32. Since his departure, Chmura has also learned that Lombardo made similar statements to other individuals about his plans to disrupt Chmura's business. Indeed, Lombardo went so far as to tell one of his fellow employees that he would be "collateral damage" when Lombardo left and diverted Chmura's customer base to a competitor.

33. Chmura refused to succumb to Lombardo's attempted extortion. Instead, the following Monday, Chmura offered Lombardo a $10,000 separation contract. Fearful that Lombardo may have already put his plans in motion, Chmura also placed Lombardo on unpaid leave. In addition, Chmura sent Lombardo a cease and desist letter reminding him of his obligations under the Agreement and warning him against the violations he had threatened.

34. In that letter, Chmura made several requests to enable it to secure both its confidential information and its customer relationships. Specifically, Chmura asked Lombardo to (i) identify Chmura's clients with whom he had communicated regarding his possible departure; (ii) identify

Chmura's clients with whom Lombardo had communicated after Chmura placed him on leave; (iii) identify the competitors with whom he had discussed employment in the past six months; (iv) confirm that he had returned all Chmura property and information; and (v) agree to refrain from defaming Chmura.

35. On October 21, Auerbach discussed Chmura's letter with Lombardo, and reiterated Chmura's request to return its property and information.

36. Lombardo, by counsel, responded to Chmura's cease and desist letter on October 25, 2019. In that letter, however, Lombardo failed to provide any of the information Chmura had requested, and expressed no intent to do so.

37. Further, despite specific requests, Lombardo also failed to return a Chmura computer, which contained customer contacts, pricing data, and other highly confidential Chmura information. On information and belief, Lombardo also continued to retain confidential information related to Chmura's business on his personal cell phone.

38. The computer in Lombardo's possession contains highly confidential information belonging to Chmura, including draft and final customer subscription agreements. These subscription agreements reveal Chmura's pricing and other terms that it offers to its current and prospective customers. The agreements also reveal details about Chmura's previous, ongoing, and planned customer negotiations. In addition, the computer contains lists of authorized users of Chmura's software. Further, the computer contains notes from at least two recent conferences that Lombardo attended, which describe discussions with several prospective customers identified at those conferences and summarize terms relating to Chmura's prospective relationship with those entities. All of this information is unique and valuable, and is not generally known to or readily ascertainable by others outside of Chmura.

39. Chmura takes significant steps to protect the value of this information. In addition to requiring its employees to sign confidentiality agreements and return its property upon termination, Chmura uses password protection to limit access to sensitive information, requires all employees to review and acknowledge its information security policy, sends periodic reminders and updates to employees regarding information security, and provides access to customer sales data only on a need-to-know basis.

40. On October 31, Chmura terminated Lombardo's employment.

41. Despite multiple requests from Chmura and its counsel, Lombardo still refuses to return Chmura's computer, refuses to return all Chmura information in his possession (including information contained on his personal cell phone), and refuses to provide any of the information Chmura requested to allow it to secure its customer relationships and confidential information.

42. Lombardo's actions pose a continuing threat to Chmura and its business. The improper refusal to return Chmura's property and proprietary information, and Lombardo's repeated threats to steal the customers to whom that information relates, will cause Chmura irreparable harm in the form of, among other things, lost revenue and lost goodwill from the long-standing customer relationships in which it has substantially invested.

## COUNT I

### Breach of Contract

43. Chmura incorporates Paragraphs 1 through 42 of this Amended Complaint by reference.

44. The Agreement is a binding and enforceable contract between Lombardo and Chmura. Among other things, the Agreement provides that, upon his termination, Lombardo shall return all tangible property and proprietary information to Chmura.

45. The Agreement is supported by adequate consideration, namely, Lombardo's offer of employment with Chmura, and Lombardo's access to Chmura's resources, training, customer goodwill, and confidential information.

46. Chmura has performed all of its obligations under the Agreement.

47. Lombardo breached the Agreement by improperly refusing to return a laptop and confidential and trade secret information belonging to Chmura after the termination of his employment and despite Chmura's repeated requests.

48. As a result of Lombardo's breach, Chmura has suffered damages.

## COUNT II

### Declaratory Judgment

49. Chmura incorporates Paragraphs 1 through 48 of this Amended Complaint by reference.

50. The Agreement is a binding and enforceable contract between Lombardo and Chmura, which prohibits Lombardo from, among other things, soliciting the customers with whom he worked during his last year at Chmura for two years after leaving Chmura.

51. The Agreement also prohibits Lombardo from competing against Chmura by providing the same or similar services he performed for Chmura within the specified geographic area for two years after his employment with Chmura.

52. Lombardo has threatened to materially breach his non-solicitation obligations through his stated plans to contact Chmura's customers to divert that business from Chmura.

53. Lombardo has also threatened to materially breach his non-competition obligations through his stated plans to take Chmura's customers to a competitor.

54. Lombardo has breached his confidentiality obligations by improperly retaining Chmura's property and confidential and trade secret information for weeks after his employment with Chmura ended.

55. Lombardo's confidentiality, non-competition, and non-solicitation covenants are valid and remain in full force and effect.

56. Lombardo expressly agreed that the non-competition and non-solicitation provisions in his Agreement are "reasonable, fair and equitable in terms of duration and scope" and "necessary to protect the legitimate business interests of the Company[.]" Ex. A § 3.

57. Now, Lombardo contends that the restrictive covenants in his Agreement are unenforceable. *See* ECF No. 10.

58. Because (i) Lombardo has breached the confidentiality provisions of his Agreement; (ii) he has made explicit threats to breach the non-competition and non-solicitation provisions of the Agreement; and (iii) he now contends that he is not bound by that Agreement, an actual controversy exists between Chmura and Lombardo regarding the legal validity and enforceability of the restrictive covenants in Lombardo's Agreement.

59. As expressly reflected in the Agreement he signed, there is no adequate remedy at law that would make Chmura whole if Lombardo breached the Agreement.

60. Accordingly, Chmura seeks a declaration that the Agreement is valid and enforceable.

61. In addition, the terms of the Agreement entitle Chmura to specific performance in the form of an injunction requiring Lombardo to abide by his non-solicitation and non-compete obligations and such specific performance is necessary and proper to effect the declaration of Chmura's right to enforce the Agreement.

62. The balance of equities weighs in Chmura's favor, and the likely injury to Chmura greatly outweighs any potential harm to Lombardo if an injunction is granted, because Chmura is entitled to protect the goodwill it has built with its customers and to protect its business.

63. Further, it would be inequitable for Lombardo to benefit from his threatened breaches by diverting Chmura's customers to a competitor during the restricted period.

64. An injunction would vindicate the strong public interest in holding parties to their contractual obligations.

## COUNT III

### Violation of the Defend Trade Secrets Act

65. Chmura incorporates Paragraphs 1 through 64 of this Amended Complaint by reference.

66. Chmura possesses highly unique and valuable information, including, without limitation, (i) information concerning the pricing and other contractual terms offered to current and prospective customers; (ii) the identities and contact information of the individual authorized users of Chmura's software; and (iii) information concerning Chmura's negotiations of its subscription agreements. This information is confidential, proprietary, not generally known to the public, and constitutes trade secrets within the meaning of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1839.

67. Chmura has taken reasonable measures to keep this information secret and confidential, including, without limitation, requiring its employees with access to such information to sign binding confidentiality agreements and password-protecting its electronically stored information.

68. This information has independent economic value because it is not generally known to, and is not readily ascertainable by proper means by persons outside Chmura, who could use this

information to underbid Chmura and approach its current and/or prospective customers, thereby obtaining economic value from the information's disclosure or use.

69. Chmura has compiled its confidential information over many years and at great expense.

70. Lombardo has misappropriated Chmura's trade secrets by retaining them after he no longer had any right to access them, and after Chmura repeatedly their return on multiple occasions.

71. Lombardo knew, or had reason to know, that he was improperly retaining Chmura's information because the retention of the information is a clear violation of Lombardo's Agreement. Further, Chmura repeatedly reminded Lombardo of his obligation to return the information and Lombardo failed to do so.

72. Lombardo, by engaging in and continuing to engage in the conduct described herein, has violated the Defend Trade Secrets Act.

73. Lombardo's actions were willful, malicious, and intended to injure Chmura and its business.

74. Chmura is likely to suffer irreparable harm as a result of Lombardo's unlawful conduct and misappropriation of its information and trade secrets. Chmura has no adequate remedy at law to prevent Lombardo from impacting its goodwill, reputation, and ability to compete in the marketplace.

## COUNT IV

### Conversion

75. Chmura incorporates Paragraphs 1 through 74 of this Amended Complaint by reference.

76. Chmura is the rightful owner of the computer in Lombardo's possession, as well as the confidential and trade secret information on that computer.

77. Once Lombardo was no longer a Chmura employee, he had no right to retain Chmura's information or property.

78. Chmura is entitled to immediate possession of that computer and its confidential and trade secret information.

79. In fact, Lombardo expressly agreed that he would return Chmura's property upon his termination, and acknowledged that he had no further right of access to that information once his employment with Chmura ended. Ex. A § 4.

80. Despite multiple requests from Chmura, Lombardo has refused to return Chmura's computer or its confidential and trade secret information, and continues to retain Chmura's property without any right to do so.

81. Lombardo's wrongful retention of Chmura's computer and confidential and trade secret information constitutes conversion.

## PRAYER FOR RELIEF

For the reasons above, Chmura respectfully seeks judgment against Lombardo as follows:

1. For a declaration that the Agreement is valid and enforceable;

2. For an order of a preliminary and permanent injunction prohibiting Lombardo, directly or indirectly, from: (a) providing any future competing services, for the restricted two-year period, to a competing organization in the geographic area that Lombardo serviced on Chmura's behalf, as set forth in the Agreement; (b) further soliciting or encouraging others to solicit, for the restricted two-year period, any Chmura customer or prospective customer with whom Lombardo worked during his employment with Chmura for the purpose of diverting business from Chmura; and (c) accessing or using any Chmura confidential information, including, without limitation, any client contact lists;

3. For an Order requiring Lombardo to return Chmura's laptop, and any other Chmura confidential or trade secret information in his possession;

4. For an award of attorneys' fees and costs; and

5. For any other such relief against Lombardo as the Court may deem appropriate.

Dated: December 9, 2019

/s/
Rodney A. Satterwhite (VA Bar No. 32907)
Heidi E. Siegmund (VA Bar No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of December, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send a notification of such filing (NEF) to all counsel of record.

/s/
Heidi E. Siegmund (VSB No. 89569)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel:   (804) 775-1000
Fax:   (804) 775-1061
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*