IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **CHMURA ECONOMICS & ANALYTICS, LLC,** ) | |
| ) | |
| Plaintiff, ) | Case No. 3:19-cv-813-REP |
| ) | |
| v. ) | |
| ) | |
| **RICHARD LOMBARDO,** ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY**

Plaintiff Chmura Economics & Analytics, LLC, by counsel, and pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, states as follows in support of its Motion for Expedited Discovery.

I. **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

Chmura sells software that analyzes economic data, along with consulting services to help clients analyze that data.[1] Chmura's JobsEQ software is available on a subscription basis, meaning that customers pay to receive and maintain a license to access Chmura's data. Thus, Chmura's success depends not only on obtaining new client subscriptions, but on maintaining close relationships with existing clients to encourage continued renewals.

In addition, Chmura's success depends on the confidential and trade secret information it has developed, including (1) contact information for decision-makers and authorized users of Chmura's software; (2) pricing information and other terms of client subscription agreements; and

---

[1] The facts appearing in this Memorandum are further detailed in Chmura's Amended Complaint.

(3) notes from discussions and negotiations with prospective clients. This information is not generally known in the industry and, as such, derives significant value from its secrecy. Chmura's success in the industry depends on its ability to maintain the secrecy of its confidential information and trade secrets.

Until Chmura terminated Defendant Richard Lombardo, he worked for Chmura as a Senior Account Manager. In that position, Lombardo had access to Chmura's confidential business information and trade secrets, including financial data, current and prospective customer contact information, and subscription agreements. Lombardo executed a Confidentiality, Non-Competition, and Non-Solicitation Agreement (the "Agreement"), in which he agreed to maintain the confidentiality of the business information Chmura provided to him during his employment. *See* Amended Complaint Ex. A. Lombardo also agreed that he would refrain from soliciting his Chmura customers or performing certain competitive services during his employment with Chmura and for two years thereafter. *Id.*

Recently, however, Lombardo began threatening to violate these covenants. In early October 2019, Lombardo met with his manager to discuss potential changes to his commissions and sales territory. During that meeting, Lombardo stated that if Chmura would not pay him $100,000 as part of a separation agreement, he was prepared to take several "steps" to disrupt Chmura's business. First, he threatened to sue Chmura to stop it from taking away "his" customers. Second, he said that he would accept a position with one of Chmura's competitors, despite his Agreement. Lombardo noted that he had already discussed potential employment with at least one competitor. Third, Lombardo threatened to contact all of Chmura's clients and try to persuade them to take their business elsewhere. Lombardo warned his manager, "either Chmura is going to pay me for those relationships, or someone else will."

In response, Chmura placed Lombardo on unpaid leave and sent him a cease and desist letter reminding him of his obligations under the Agreement. In that letter, Chmura made several requests to enable it to secure both its confidential information and its customer relationships. Specifically, Chmura asked Lombardo to (i) identify Chmura's clients with whom he had communicated regarding his possible departure; (ii) identify Chmura's clients with whom Lombardo had communicated after Chmura placed him on leave; (iii) identify the competitors with whom he had discussed employment in the past six months; (iv) confirm that he had returned all Chmura property and information; and (v) agree to refrain from defaming Chmura. In a call a few days later, Lombardo's manager again asked him to return the Chmura property and information he had retained, including a laptop containing highly sensitive details regarding Chmura's customer relationships and negotiations.

Lombardo refused all of Chmura's requests. Therefore, Chmura filed its Complaint on October 31, 2019. Still, Lombardo refused to return any of Chmura's information or property, and refused to say whether he had contacted its customers or received any competitive offers of employment. Chmura then filed its Amended Complaint on December 9, 2019.

## II. ARGUMENT

### A. Standard for Permitting Expedited Discovery

The Court has "wide latitude in controlling discovery and . . . its rulings will not be overturned absent a showing of clear abuse of discretion." *See Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003) (internal citation omitted). "Motions for expedited discovery are routinely considered either during a court's consideration of motions for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument." *ForceX, Inc. v. Tech. Fusion, LLC*, 2011 WL 2560110, at *5

(E.D. Va. June 27, 2011). Such motions find their foundation in Rule 26(d), which permits the Court to alter the standard discovery schedule. *E.g.*, *Campbell Alliance Grp., Inc. v. Forrest*, 2015 WL 13718031, at *2 (E.D.N.C. Dec. 28, 2015).

"In the absence of a specific standard delineated in the Federal Rules and in the Fourth Circuit, courts have considered two different standards in evaluating expedited discovery motions, one applying modified preliminary injunction factors and another 'reasonableness,' or 'good cause' test." *ForceX*, 2011 WL 2560110, at *5. Courts within the Fourth Circuit have used both tests. *Compare Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) (applying "a standard based upon reasonableness or good cause, taking into account the totality of the circumstances") *with ForceX*, 2011 WL 2560110, at *5-*7 (citing *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982)) (considering, on a motion for expedited discovery, the plaintiff's chances of succeeding on the merits of the action and whether expedited discovery will alleviate irreparable harm).

As numerous courts and commentators have acknowledged in recent years, however, the reasonableness test is more appropriate, for several reasons. *See* 5 J. Moore et al., Federal Practice & Procedure § 26.121 (3d ed. 2011) (hereafter "Moore § __") (noting that that "the reasonableness approach lies comfortably with today's discovery rules"); *see also Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (collecting cases noting that the good cause standard is "more suited to the application of the Court's broad discretion in handling discovery"). First, because expedited discovery requests are often used (as here) to support or analyze the need for a preliminary injunction motion, requiring a party to satisfy the preliminary injunction factors *before* obtaining the information needed to analyze those factors is simply backwards. *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (noting that "it does

4

not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request" when the purpose of the request is to determine whether a preliminary injunction is appropriate).

Second, a preliminary injunction and expedited discovery are fundamentally different remedies. The standard for a preliminary injunction is high because the moving party is effectively asking the Court to provide relief the party could otherwise obtain only by prevailing at trial or on summary judgment. That is why analysis of harm and likelihood of success is appropriate. By contrast, any federal court litigant can ask for documents, serve interrogatories, and take depositions. Thus, the question on a motion for expedited discovery is merely when a party can receive information to which it is entitled, rather than whether that party can ultimately prove its case. *E.g.*, *OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) (permitting early discovery in part because the requested discovery "will in all likelihood occur eventually").

Finally, the modified preliminary injunction test is simply outdated. The decision from which that standard originates was issued over a decade before the 1993 amendment to Rule 26, which added the prohibition on formal discovery before the Rule 26(f) planning conference. *See Notaro*, 95 F.R.D. at 404; *see also* Fed. R. Civ. P. 26, Advisory Committee Note, 1993 Amendment. Thus, the primary concern of the *Notaro* court—which considered a request to take a deposition less than thirty days after filing of the complaint—was "protect[ing] defendants from unwarily incriminating themselves before they have a chance to review the facts and retain counsel." 95 F.R.D. at 404. Now, the Rule 26(f) conference (and thus the commencement of discovery) typically does not occur until months into litigation, long after defendants have retained counsel and filed responsive pleadings. *Notaro*'s concerns are not relevant here.

Accordingly, under the modern Federal Rules, a Court considering a motion for expedited discovery must consider factors "more relevant to requests for expedited discovery," such as (1) whether a preliminary injunction motion is pending, or another "legally cognizable urgency exists;" (2) the scope of the requests; (3) the purpose of the requests; (4) the burden on the defendant; and (5) the timing of the requests. Moore § 26.121; *see also Knight's Cos., Inc. v. Vantage Benefits Adm'rs, Inc.*, 2018 WL 6271049, at *1 (D.S.C. Apr. 5, 2018). Examination of these factors demonstrates why Chmura is entitled to the limited discovery it seeks.

B. **Chmura Is Entitled to Limited Expedited Discovery**

Good cause exists to allow Chmura's request for limited expedited discovery, for several reasons. First, although Chmura has not yet requested preliminary injunctive relief, the information it seeks will allow it to determine whether such relief is necessary. Moreover, Lombardo's threats have created legally cognizable urgency: as detailed in Chmura's Amended Complaint, Lombardo has specifically and repeatedly threatened to steal Chmura's customers and destroy its business. Lombardo made these threats while actively courting at least one of Chmura's competitors, and while refusing to provide information about his contacts with clients and competitors. The execution of Lombardo's threats would irreparably harm Chmura's business. *E.g.*, *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994), *abrogated on other grounds by Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008) (noting that "permanent loss of customers to a competitor or the loss of goodwill" is irreparable injury); *see also Home Funding Grp., LLC v. Myers*, 2006 WL 6847953, at *2 (E.D. Va. Dec. 14, 2006) (holding that disclosure of confidential information and trade secrets "establishes immediate irreparable harm" because confidential information or a trade secret, "once

lost is, of course, lost forever"). And, because Lombardo refuses to return Chmura's laptop and confidential information, he has the means to do so.

Moreover, Chmura's requests are narrowly tailored to obtain the information it needs to analyze its potential injunction motion. The requests seek only information Lombardo could use to harm Chmura (which, as a former employee, he has no right to retain), and an explanation of whether and how he has followed through on his threats. The limited nature of the discovery sought further supports the reasonableness of Chmura's requests. *E.g.*, *Lab. Corp. of Am. Holdings v. Cardinal Health Sys., Inc.*, 2010 WL 3945111, at *3 (E.D.N.C. Oct. 6, 2010) (granting motion for expedited discovery where the plaintiff "set out in detail the discovery it seeks" and "[t]he requested discovery is not overbroad"). And, because Chmura's few requests cover only the information necessary to analyze its need for preliminary relief, they impose minimal burden on Lombardo.

Finally, the timing of Chmura's requests is reasonable. Chmura asked for this information weeks before it terminated Lombardo, and has given him every opportunity to cooperate with its requests voluntarily. Even after Chmura filed its Complaint, it remained hopeful that Lombardo would cooperate, based on communications with his counsel. Since then, however, it has become clear that Lombardo will return nothing, and provide no information to Chmura, unless he is ordered to do so.

Limited expedited discovery thus is necessary and appropriate under these circumstances to determine to what extent Lombardo already has disclosed and/or used Chmura's confidential and trade secret information, and whether and how Lombardo has already begun to undermine Chmura's customer relationships. Expedited discovery will allow Chmura to better examine its

need for a preliminary injunction and, if necessary, to prepare to make its preliminary injunction argument.

### III. CONCLUSION

For the reasons stated above, Chmura respectfully moves for an Order granting its Motion for Expedited Discovery and requests that Lombardo be ordered to respond to the discovery requests attached as Exhibit A within fifteen (15) calendar days of service and permitting Chmura to depose Mr. Lombardo regarding the topics identified in its written discovery within fifteen (15) days of its receipt of the requested documents and interrogatory answers.

Dated: December 9, 2019

/s/
Rodney A. Satterwhite (VA Bar No. 32907)
Heidi E. Siegmund (VA Bar No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 9th day of December, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send a notification of such filing (NEF) to all counsel of record.

                                      /s/
                                 Heidi E. Siegmund (VSB No. 89569)
                                 McGuireWoods LLP
                                 Gateway Plaza
                                 800 East Canal Street
                                 Richmond, VA 23219
                                 Tel:   (804) 775-1000
                                 Fax:  (804) 775-1061
                                 hsiegmund@mcguirewoods.com

                                 *Counsel for Plaintiff*