IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CHMURA ECONOMICS & ANALYTICS, LLC, | Case No. 3:19-cv-813 <br> Judge Robert E. Payne |
| Plaintiff, | |
| v. | |
| RICHARD LOMBARDO, | |
| Defendant. | |

**DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

## I. INTRODUCTION

Plaintiff Chmura Economics & Analytics, LLC ("Chmura"), anticipating a lawsuit from Defendant Richard A. Lombardo ("Lombardo") for unpaid overtime under the Fair Labor Standards Act and unpaid commissions, filed a Complaint initiating the above-captioned action seeking "injunctive relief for threatened breach of contract" -- an unenforceable Confidentiality, Non-Competition & Non-Solicitation Agreement (the "Agreement"). Facing a Motion to Dismiss, Chmura amended the Complaint to assert four claims for relief: (1) breach of the Agreement; (2) declaratory judgment that the Agreement is enforceable and Chmura is entitled to specific performance of it; (3) violation of the Defend Trade Secrets Act; and (4) conversion. Chmura is now seeking expedited discovery.

Chmura simply does not meet the requirements set by this Court for expedited discovery. It has not (and cannot) show that it is likely to succeed on the merits of its case. It has not (and

1

cannot) show that it has suffered irreparable harm. Chmura's request is merely an attempt to evade the requirements of Fed.R.Civ.P. 26(d)(1) and put pressure on Lombardo, an individual who was underpaid by and is currently unemployed because of Chmura's actions.

Lombardo respectfully requests that this Court deny the Motion for Expedited Discovery.

## II. FACTS

### *The Parties Agreements*

1. Chmura is a "software and consulting firm in the field of data analytics." Amended Complaint, ¶9. Chmura sells labor data SaaS called JobsEQ, which is a labor market technology platform. Declaration of Richard A. Lombardo, ¶2 (the "Lombardo Dec.") (attached as Exhibit 1).

2. In February 2015, Chmura offered Lombardo a position as an inside sales representative. Lombardo Dec., ¶3. The offer was memorialized in a letter dated February 3, 2015 and was signed by both Leslie Peterson ("Ms. Peterson"), the President and Chief Strategy Officer of Chmura, and Lombardo (the "Offer Letter"). Lombardo Dec., ¶4 (a copy of the Offer Letter is attached to the Lombardo Dec. as Exhibit A).

3. Pursuant to the Offer Letter, Lombardo's annual base salary the first year was $55,000 and each year thereafter it was $50,000. He was initially eligible for annual merit increases. He was also supposed to receive commissions in the amount of 15% on the initial sale of JobsEQ and 3% of annual renewals of JobsEQ. Lombardo Dec., ¶5.

4. According to the Offer Letter, "[n]ew sales commissions will transact as client signatures are secured to the JobsEQ license agreement by Chmura's accounting department" and payment was supposed to be made to me "the month following the transact date." Lombardo

Dec., Ex. A. The Offer Letter refers to an "employment agreement." The only document attached to the Offer Letter was a Confidentiality, Non-Competition & Non-Solicitation Agreement (the "Agreement"). Lombardo Dec., ¶7 (a copy of the Agreement is attached to the Lombardo Dec. as Exhibit B).

5. On or about February 4, 2015, Lombardo and Chmura executed the Agreement. Lombardo Dec., ¶7.

6. The Agreement contains the following confidentiality provision:

> Accordingly, Employee shall not, during the term of his/her employment and thereafter regardless of the reason for his/her termination, reveal or disclose to any person outside of the Company, or use for his/her own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's customers, clients or employees ("Confidential and Proprietary Information").

Lombardo Dec., Ex. B, (Agreement, ¶1). There is no temporal limit on the confidentiality provision.

7. The Agreement contains the following covenants not to compete or interfere:

> For a period beginning on the Effective Date of this Agreement and ending two (2) years after the employment relationship between Employee and the Company terminates for any reason whatsoever ("the Restricted Period"), Employee shall not:
> \*\*\*
> (b) directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or **on behalf of any person or entity that engages in the Company's Business** in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company;
>
> (c) directly indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of **providing products or services that are the same**

3

**or substantially similar to the Company's Business** any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom Employee pursued on behalf of the Company, or of whom Employee had knowledge based on his/her employment with the Company because the Company provided products or services to or actively pursed [sic] the individual or entity during Employee's employment.

Lombardo Dec., Ex. B (Agreement, Terms of Agreement, ¶3(b) & (c)) (emphasis added).

8. Pursuant to the Agreement, "Company's Business" is defined as "services in the field(s) of economics, workforce development, economic development, strategic planning, and software design and licensing." Lombardo Dec., Ex. B (Agreement, Reasons for Agreement, ¶1).

9. The Agreement is governed by Virginia law. Lombardo Dec., Ex. B (Agreement, Terms of Agreement, ¶7).

10. The Agreement further provides that "[i]n the event of a breach or a threatened breach by Employee of any of the provisions of Sections 1, 2, or 3 of this Agreement, the Company shall be entitled to a [...] permanent injunction restraining Employee from breaching the same." Lombardo Dec., Ex. B (Agreement, Terms of Agreement, ¶10).

11. Lombardo began his employment on or around February 18, 2015. Lombardo Dec., ¶8. His sole responsibility was to sell JobsEQ and its add-ons, such as RTI (Real Time Intelligence), Firm List, Extra Seats and Labor EQ across the nation. Lombardo Dec., ¶8.

*Chmura's Improper Alteration of Employment Terms*

12. Chmura repeatedly changed the terms of the commissions payments Lombardo was entitled to receive under the Offer Letter to its advantage and to his disadvantage. Lombardo Dec., ¶9. For example, shortly after Lombardo started working at Chmura, Chmura told him that it would only pay him 3-5% for closing sales on leads that Chmura deemed to be "warm leads," instead of the 15% agreed to in the Offer Letter. Lombardo Dec., ¶9. These leads, however, were

leads that Lombardo found in a magazine or that were in Salesforce (the CRM used by Chmura) but had not been worked in several months or years by anyone at Chmura. Lombardo Dec., ¶9.

13. In 2017, Lombardo closed a sale with the Oklahoma Department of Commerce, which required a perfunctory RFP. Lombardo Dec., ¶10. Not only was he not permitted to complete the RFP, but he was not paid any commissions on the sale because Chmura decided that it would not pay commissions on sales that required an RFP. Lombardo Dec., ¶10.

14. On March 28, 2019, Chmura amended the Offer Letter (the "Amendment") as follows: "The reference to annual merit increases is hereby deleted. In addition, Chmura would like to clarify that commissions become payable once Chmura receives the payment on the sale." Lombardo Dec., ¶10 (a copy of the Amendment is attached to the Lombardo Dec. as Exhibit C). The Amendment further provides that the "letter is intended to amend the terms of your employment previously agreed to by you and Chmura Economics & Analytics, LLC in the Company's offer letter you dated February 4, 2015" and "[a]ll other terms and conditions of the offer letter remain unchanged." Lombardo Dec., ¶11.

15. In effect, Chmura changed when Lombardo would be paid commissions and eliminated any possibility of an annual merit increase. Despite being unhappy about these changes, Lombardo signed the Amendment. Lombardo Dec., ¶12.

*The Last Changes*

16. In the fall of 2019, Lombardo learned that Chmura was going to make more changes to the operations of the inside sales team. Lombardo Dec., ¶13. Chmura was going to redistribute the customers – i.e. take away customers from Lombardo and give them to other sales representatives who did not have as many customers in their book. Lombardo Dec., ¶13. Because he spent more than four years and many hours, including numerous overtime hours,

5

building his book and closing sales, Lombardo would be materially damaged by this change. Lombardo Dec., ¶13. Lombardo was upset about this change. Lombardo Dec., ¶13.

17. Eli Auerbach ("Auerbach"), the manager of the sales team, held a meeting on or about October 2, 2019 to discuss these changes. Lombardo Dec., ¶14. The meeting was intentionally scheduled when Lombardo was demoing JobsEQ to a potential customer. Lombardo Dec., ¶14. The purpose of the meeting was to divide Lombardo's customers amongst the other inside sales representatives. Lombardo Dec., ¶14.

18. On October 3, 2019, after learning about the meeting, Lombardo met with Auerbach to discuss this change. Lombardo Dec., ¶15. Lombardo asked Auerbach what was going on and why they would make a change that only negatively affected Lombardo. Lombardo Dec., ¶15.

19. By this time, Lombardo believed that he was owed overtime and unpaid commissions. Lombardo Dec., ¶16. In fact, Lombardo informed Auerbach at least two months before the October 3, 2019 meeting that he was entitled to overtime pay. Lombardo Dec., ¶16. Lombardo was never compensated for the overtime that he worked in the more than four years that he was employed at Chmura. Lombardo Dec., ¶16.

20. It was at the October 3, 2019 meeting that Lombardo stated that he would amicably separate from Chmura if it paid him $100,000. Lombardo Dec., ¶17. This demand was to compensate him for some, but not all, of his unpaid overtime and commissions. Lombardo Dec., ¶17. Lombardo offered to smoothly transition his customers to the other sales representatives at Chmura. Lombardo Dec., ¶17.

21. Chmura did not accept the offer and, instead, Auerbach instructed Lombardo to continue to work. Lombardo Dec., ¶18. Accordingly, Lombardo went to a conference in Texas and Indianapolis between October 3, 2019 and October 17, 2019. Lombardo Dec., ¶18.

22. On October 17, 2019, Auerbach approached Lombardo and asked what was going to happen. Lombardo Dec., ¶19. Lombardo told him that he did not understand why Chmura was treating him this way due to the number of customers that Lombardo obtained for it and the amount of sales that he achieved. Lombardo Dec., ¶19. Lombardo reiterated that he had a claim for unpaid overtime. Lombardo Dec., ¶19. Auerbach suggested that Lombardo leave the office for the day while Chmura determined what to do with his offer to separate for $100,000. Lombardo Dec., ¶19.

23. Lombardo left the office around 10:00 a.m. on October 17, 2019. Lombardo Dec., ¶20. Because he had a work issued laptop at home, Lombardo decided to work from home and make sure he took care of his customers. Lombardo Dec., ¶20. Additionally, he had a demo scheduled in the afternoon. Lombardo Dec., ¶20. By the time he arrived home, he was locked out of Salesforce and had no access to e-mail. Lombardo Dec., ¶20. He could no longer do any work. Lombardo Dec., ¶20.

24. Chmura terminated Lombardo's employment on October 21, 2019. Lombardo Dec., ¶21. Aisha Ortiz, who works in the Human Resources department at Chmura, informed Lombardo that he was placed on unpaid leave on October 17, 2019 and that he was terminated effective October 21, 2019. Lombardo Dec., ¶21. Ortiz offered Lombardo $10,000 as a severance package. Lombardo Dec., ¶21. She stated that she would send over the offer in writing. Lombardo Dec., ¶21.

25. Prior to receiving the severance offer, on October 21, 2019, Lombardo received a letter from counsel for Chmura. Lombardo Dec., ¶22 (a copy of the October 21, 2019 letter is attached as Exhibit D to the Lombardo Dec.).

26. In the letter, counsel demanded that Lombardo sign a statement under penalty of perjury that: (1) identifies every Chmura client with whom Lombardo talked to about his possible departure from Chmura; (2) identifies every Chmura client Lombardo spoke with on or after October 17, 2019; (3) identifies every Chmura competitor with whom Lombardo discussed employment in the past six months; (4) confirms that Lombardo returned all Chmura property; and (5) states that Lombardo agrees to refrain from making defamatory remarks about Chmura. Lombardo Dec., 23, Ex. D. Lombardo sent the letter to his attorneys at McCarthy, Lebit, Crystal & Liffman for review and response. Lombardo Dec., ¶24.

27. On October 21, 2019, counsel for Lombardo sent an e-mail to assure Chmura and Chmura's counsel that Lombardo had not taken any action to interfere with the business and that he did not intend to contact Chmura's clients or otherwise disrupt its business. Lombardo Dec., ¶25 (a copy of the October 21, 2019 e-mail is attached as Exhibit E to the Lombardo Dec.). Chmura's counsel confirmed receipt.

28. On October 24, 2019, counsel for Lombardo sent a full response to the October 21, 2019 letter to Chmura's counsel and demanded a response by October 31, 2019. Lombardo Dec., ¶26 (a copy of the October 24, 2019 letter is attached as Exhibit F to the Lombardo Dec.).

29. In response to the October 24, 2019 demand, on October 31, 2019, Chmura filed the above-captioned action.

*Chmura's Failure to Show Any Need for Expedited Discovery*

30. Chmura asserts that it needs expedited discovery because Lombardo threatened to violate the Agreement. Chmura does not claim in the Amended Complaint or in the Motion for Expedited Discovery that Lombardo did anything other than threaten to violate the Agreement.

31. In fact, Lombardo has not taken a single step to violate the Agreement:

- Lombardo never interviewed for any position at Emsi, an affiliate of Strada Education Network, and the only competitor of Chmura's of which Lombardo is aware (Lombardo Dec., ¶28);

- Lombardo has no intention of interviewing with Emsi or any other potential competitor of Chmura (Lombardo Dec., ¶28);

- Lombardo has no intention of contacting Emsi or any other potential competitor of Chmura (Lombardo Dec., ¶28);

- Lombardo does not have any Chmura property or information in his possession, custody or control, as all such property has been turned over to and is in the custody of his counsel in this case[1] (Lombardo Dec., ¶30);

- Lombardo does not have any written or electronic client lists, Chmura documents, materials or software (Lombardo Dec., ¶32); and

- Lombardo has not made any disparaging comments to any customer or potential customer of Chmura (Lombardo Dec., ¶33).

---

[1] On October 21, 2019, Lombardo informed his counsel at McCarthy, Lebit, Crystal & Liffman that he was in possession of the laptop and miscellaneous items and would give them back to Chmura whenever it wished. Lombardo Dec., ¶30. Lombardo does not know if counsel communicated this to Chmura's counsel and was never instructed where to send the laptop and miscellaneous items. Lombardo Dec., ¶30.

32. Lombardo is currently unemployed. Lombardo Dec., ¶34. Lombardo is actively seeking employment with companies that are not competitors of Chmura, but has been unable to secure a new position. Lombardo Dec., ¶34.

33. Because Lombardo has taken no action, necessarily, Lombardo has caused **no irreparable harm** to Chmura.

### III. LAW AND ARGUMENT

#### A. This Court should use the *Winter* test when determining whether to grant the Motion for Expedited Discovery.

The Court has "wide latitude in controlling discovery and . . . its rulings will not be overturned absent a showing of clear abuse of discretion." *ForceX, Inc. v. Tech. Fusion, LLC*, 2011 U.S. Dist. LEXIS 69454 (E.D.Va. June 27, 2011) citing *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003). The discovery rules allow a court to adjust the discovery time outlined by Rule 26, and "if warranted, to expedite the time for responding to the discovery sought." *Physicians Interactive v. Lathian Sys., Inc.*, 2003 U.S. Dist. LEXIS 22868, *4 (E.D. Va. Dec. 5, 2003). Although expedited discovery may service justice, the decision to grant expedited discovery is rare because steps must be taken to protect defendants from the potential damages of speeded up remedies. *See generally, Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

Courts have found that immediate discovery "should be granted when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time." *ForceX*, 2011, LEXIS 69454 at *10 citing *Fimab-Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Helio Import/Export, Inc.*, 601 F. Supp. 1, 3 (S.D. Fla. 1983). "Prior to 2008, many courts utilized a test for expedited discovery which relied heavily on the plaintiff showing that it could meet the first and second prongs of the *Blackwelder* test required

10

to obtain a preliminary injunction." *Id.*; *See Blackwelder Furniture Co. of Statesville v. Seilig Mfg.*, 550 F.2d 189 (4th Cir. 1977). These two factors were (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; and (2) the likelihood of harm to the defendant if the preliminary injunction is granted). *See*, *Physicians Interactive*, 2003 U.S. Dist. LEXIS 22868, 2003 WL 23018270, at *4; *Religious Tech. Ctr. V. Lerma*, 897 F. Supp. 260, 267 (E.D. Va. 1995).

However, since the Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374-75, 172 L. Ed. 2d 249 (2008) the Fourth Circuit has favored "a stricter standard which requires the plaintiff seeking a preliminary injunction to demonstrate a 'clear showing' of the following factors: (1) Plaintiff is likely to succeed on the merits at trial; (2) Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief ; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in the public interest." *ForceX*, 2011 LEXIS 69454 at *11.

Without a specific standard defined in the Federal Rules on expediting discovery, courts have considered using either the modified preliminary injunction factors found in *Winter* or a "reasonableness," or "good cause" test. *Id.* Notwithstanding these two approaches, the United States District Court for the Eastern District of Virginia has chosen to apply the modified preliminary injunction factors rather than the "reasonableness" standard factors when determining whether to expedite discovery. The Eastern District of Virginia specifically stated that it "disagreed that the reasonableness standard is in line with the reasoning of Supreme Court and the Fourth Circuit..." *ForceX*, 2011 LEXIS 69454 at *13. Furthermore, it reasoned that procedurally, the modified preliminary injunction approach made more sense because, "Motions for expedited discovery are routinely considered either during a court's consideration of motions

11

for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument." *Id.*

Finally, in mirroring the Fourth Circuit and the Supreme Court's strong emphasis on the first two factors of the modified preliminary injunction test, the Eastern District of Virginia has held that the two elements that must be weighted most heavily in determining if expedited discovery is warranted are: (1) A strong showing of success on the merits of the action by the Plaintiff and (2); A showing that irreparable harm is likely and not simply possible. *Id.* at *15 citing *Winter*, 128 S. Ct. at 374-75.

Based on the foregoing, this court should analyze Chmura's motion for expedited discovery under the modified preliminary injunction test first stated in *Winter*. This test corresponds more closely with the idea that granting court relief outside of the federal rules should be limited to unusual circumstances, and only where the plaintiff has made a clear showing that such relief is necessary. *Id.* Additionally, because motions for expedited discovery are considered during or before a motion for a preliminary injunction, it is most logical to treat the motion for expedited discovery under a similar standard as to the preliminary injunction standard.

Therefore, in determining whether the motion for expedited discovery should be granted, this court should consider (1) whether the Chmura is likely to succeed on the merits at trial; and (2) whether the Chmura is likely to suffer irreparable harm in the absence of preliminary relief.

**B. Chmura is not entitled to expedited discovery because it has not shown that it will succeed on the merits set forth in its Complaint.**

Chmura alleges that Lombardo breached the Agreement by "improperly refusing to return a laptop and confidential and trade secret information belonging to Chmura after the termination of his employment and despite Chmura's repeated requests." Amended Complaint,

¶47. Chmura also alleges that Lombardo "has threatened to materially breach his non-solicitation obligations through his stated plans to contact Chmura's customers to divert that business from Chmura" and "to materially breach his non-competition obligations through his stated plans to take Chmura's customers to a competitor." Amended Complaint, ¶¶52-53. As a remedy, Chmura seeks injunctive relief. Chmura, however, has not and cannot show that it is likely to succeed on the merits of these claims.

The United States Supreme Court has indicated that "[i]t is not enough that the chance of success on the merits be "better than negligible."" *In re Abebe*, 466 B.R. 63, 65, 2012 Bankr. LEXIS 166, *4 (4th Cir. 2012) citing *Nken v. Holder*, 556 U.S. 418 (2009). More than a mere possibility of relief is required. *Id.* A plaintiff must make a strong showing of success on the merits in order to succeed. *ForceX*, 2011 LEXIS 69454 at *18 (holding that the Plaintiff did not make a strong showing of success on the merits that the non-compete provision would be held enforceable against Defendant because the non-compete was broadly stated and unduly burdensome, and the Plaintiff failed to establish otherwise).

Under Virginia law, "[a] non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living and is not against public policy." *Omniplex World Servs. Corp. v. US Investigations Servs.*, 270 Va. 246, 249 (2005); *see also Alston Studios, Inc. v. Lloyd V. Gress & Associates*, 492 F.2d 279 (4th Cir. 1974). "Because such restrictive covenants are disfavored restraints on trade, the employer bears the burden of proof **and ambiguities in the contract will be construed in favor of the employee**." *Id.* (emphasis added). Whether a covenant not to compete is enforceable is a question of law. *Id.*

According to the Supreme Court of Virginia:

> These standards have been developed over the years to strike a balance between an employee's right to secure gainful employment and the employer's legitimate interest in protection from competition by a former employee based on the employee's ability to use information or other elements associated with the employee's former employment. By its very name, a covenant not to compete is an agreement to prevent an employee from engaging in activities that actually or potentially compete with the employee's former employer. **Thus, covenants not to compete have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor.**

*Id.* (holding that the covenant not to compete was overbroad and unenforceable because the prohibition in the non-compete was not limited to employment that would be in competition with Omniplex) (emphasis added).

"Covenants that are ambiguous, that prevent an employee from doing work unrelated to the work that they previously did for the employer, or that go beyond the employer's legitimate interest are unenforceable." *Fame v. Allergy & Immunology, PLC*, 91 Va. Cir. 66, 72 (Roanoke 2015). "[A] covenant not to compete is functionally overbroad and unenforceable if it prevents an employee from working for companies not in competition with the former employer or it prevents an employee for pursuing noncompeting employment positions with any employer." *Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 212 (Fairfax Cty. 2009) (holding that the non-compete, non-solicitation and confidentiality clauses over broad and unenforceable).

"Although Virginia courts will look to the intent of the parties to determine severability of clauses or provisions, they will not 'blue pencil' a contract to make it enforceable." *Better Living Components, Inc. v. Willard Coleman & Blue Ridge Truss & Supply*, 67 Va. Cir. 221, 226-227 (Albemarle Cty. 2005). "The Court will not edit, add to, or otherwise revise an agreement to make it enforceable." *Fame*, 91 Va. Cir. At 71.

The same standards that apply to non-competition agreements also apply to non-solicitation agreements and confidentiality agreements. *Lasership, Inc*, 79 Va. Cir. At 214 (non-solicitation); *Darton Envtl., Inc. v. FJUVO Collections LLC*, 332 F.Supp.3d 1022, 1030 (W.D.Va. 2018) (confidentiality). A confidentiality provision with no temporal limitation is unenforceable under Virginia law. *Darton Envtlw., Inc.*, 332 F.Supp.3d at 1030 (citing *Integrated Direct Mktg., LLC v. May*, 129 F. Supp.3d 336, 341 (E.D.Va. 2015) aff'd, 690 F.Appx. 822 (4th Cir. 2017)).

Here, the Agreement is unenforceable because it is overbroad and unduly burdensome. Despite Chmura solely selling a narrow software product and Lombardo solely acting as an inside sales representative, Company's Business is so broadly defined in the Agreement that, if enforced, Lombardo could not work in sales for any company providing any services in:

- Economics, which is defined by the Oxford Dictionary as "the branch of knowledge concerned with the production, consumption, and transfer of wealth" and which would include banks, insurance companies, financial investment firms, accounting firms, stock brokerages, and credit-card companies, among many others.

- Workforce development, which is undefined in the Agreement, but may include companies that provide worker training and human resource consulting firms.

- Economic development, which is undefined in the Agreement, but may include economic consulting companies such as Bain & Company and McKinsey & Company.

- Strategic planning, which Bain & Company defines as "a comprehensive process for determining what a business should become and how it can best achieve that

15

goal"[2] and may include management, operations, information technology, human resource or marketing firms.

- <u>Software design and licensing</u>, which is so vast it may include Microsoft, Alphabet (Google), IBM, Facebook, Oracle and many more large and small companies.

Likewise, Lombardo could not solicit and sell any unrelated services to customers of Chmura in the above industries despite any failure of the products or services to compete. Consequently, there is strong evidence that the non-competition and non-solicitation provisions of the Agreement are unenforceable.

Additionally, many of Chmura's claims are based on the argument that Lombardo is in possession of a laptop issued by Chmura, which contains confidential and sensitive information in breach of the confidentiality provision of the Agreement. First, the confidentiality provision of the Agreement is unenforceable. The confidentiality provision does not contain any temporal limitation.

Second, there is no evidence that Lombardo remains in possession of the laptop or other miscellaneous items or that he used or accessed it for any improper purposes. In fact, Lombardo could not access the key programs containing customer information (Salesforce and his e-mail) as of October 17, 2109. Lombardo intended to use the laptop and the information contained therein to service Chmura's customers and pitch to potential customers. Moreover, Lombardo informed his counsel (who was communicating with Chmura's counsel) at the time that he would return the laptop whenever they wished. He does not know if this was communicated to Chmura's counsel.

---

[2] *See* www.bain.com/insights/management-tools-strategic-planning

Chmura has failed to make any showing of success on the merits of its case and, therefore, its motion for expedited discovery should be denied.

### C. Chmura is not entitled to expedited discovery because it has not shown that it will suffer irreparable harm.

In order to succeed on its Motion for Expedited Discovery, Chmura must also demonstrate that it would likely suffer irreparable harm in its absence. *ForceX*, 2011 LEXIS 69454 at *13. A party must make a showing that irreparable harm is likely and not simply possible. *Id.* Additionally, the harm, to qualify as "irreparable," must be neither remote nor speculative but actual and imminent and must represent an immediate threat of irreparable harm. *Tiffany v. Forbes Custom Boats, Inc.*, 1992 U.S. App. LEXIS 6268, *1 (4th Cir. 1992). Furthermore, to prove irreparable harm, plaintiffs must offer more evidence than a reasonable fear of alleged threats. *Notaro*, 95 F.R.D. at 405.

Here, Chmura fails to plead any irreparable injury because it has not shown that the harm is actual or imminent, nor has it offered more evidence than its fear of alleged threats. In effect, Chmura explicitly pleads that it has not been harmed but could be, if Lombardo carried through his alleged threats:

> Lombardo's actions **pose a continuing threat** to Chmura and its business. The improper refusal to return Chmura's property and proprietary information, and Lombardo's repeated threats to steal customers to whom that information relates, **will cause** Chmura irreparable harm in the form of, among other things, lost revenue and lost goodwill from the long-standing customer relationships in which it has substantially invested.

Amended Complaint, ¶42 (emphasis added). How, exactly, will Chmura be irreparably harmed if Lombardo takes no action? It won't. In fact, Chmura fails to plead that Lombardo took any action (i.e. solicited Chmura's clients or became employed in sales by a competitor).

There is no evidence that Lombardo has or intends to cause Chmura any harm. Lombardo has not made any disparaging comments to any customer or potential customer of Chmura. Lombardo has not sought employment from a competitor or provided any information about Chmura to a competitor. Lombardo is currently unemployed and is not seeking employment by any competitor of Chmura. Lombardo never interviewed for a position at any competitor and has no intention of interviewing with a competitor. Additionally, Lombardo is not in possession of any of Chmura's property.

Therefore, because Chmura has not shown that it will suffer irreparable harm, its motion for expedited discovery should be denied.

## CONCLUSION

Based on the above analysis, Chmura has failed to show that it will succeed on the merits of the case and that it will suffer irreparable injury. Therefore, this Court should deny Chmura's motion for expedited discovery.

Respectfully Submitted,

_/s/ Thomas J. Powell_
Thomas J. Powell, Esq., VSB #27604
3603-D Chain Bridge Road
Fairfax, VA 22030-3244
Tel: (703) 293-9050 | Fax: (703) 293-9075
Email: tom@tjplaw.com

Christine Marie Cooper, Esq. (Ohio Bar #0079160)
Koehler Fitzgerald LLC
1111 Superior Avenue East, Suite 2500
Cleveland, OH 44114
Tel: (219) 539-9376 | Fax: (216) 916-4369
Email: ccooper@koehler.law

*Attorneys for Defendant Richard Lombardo*

18

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing has been served on this 15th day of December 2019, via the Court's CM/ECF filing system, upon the following:

Rodney A. Satterwhite (VSB #32907)
Heidi E. Siegmund (VSB #89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*

/s/ *Thomas J. Powell*
Thomas J. Powell