Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| CHMURA ECONOMICS & ANALYTICS, LLC, | ) ) ) ) ) | Case No. 3:19-cv-00813 Judge Robert E. Payne |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| RICHARD LOMBARDO, | ) ) | |
| Defendant. | ) | |

## DECLARATION OF RICHARD A. LOMBARDO

Pursuant to 28 U.S.C. §1746, I hereby declare as follows:

1. I am the Defendant in the above-captioned matter and am competent to give this declaration as I am over eighteen (18) years of age. I am submitting this declaration in opposition to the Motion for Expedited Discovery which has been filed by Plaintiff Chmura Economics & Analytics, LLC ("Chmura"). The statements set forth in this Declaration are based upon my personal knowledge, and are true and correct to the best of my knowledge, information, and belief.

2. Chmura sells a labor data SaaS called JobsEQ, which is a labor market technology platform.

3. In February 2015, I was offered and accepted a position as an inside sales representative with Chmura.

4. The offer was memorialized in a letter dated February 3, 2015 and was signed by both Leslie Peterson ("Ms. Peterson"), the President and Chief Strategy Officer of Chmura, and me (the "Offer Letter"). A copy of the Offer Letter is attached as Exhibit A.

5. Pursuant to the Offer Letter, my annual base salary the first year was $55,000 and each year thereafter it was $50,000. I was initially eligible for annual merit increases. I was also supposed to receive commissions in the amount of 15% on the initial sale of JobsEQ and 3% of annual renewals of JobsEQ.

6. According to the Offer Letter, "[n]ew sales commissions will transact as client signatures are secured to the JobsEQ license agreement by Chmura's accounting department" and payment was supposed to be made to me "the month following the transact date." Exhibit A.

7. The Offer Letter refers to an "employment agreement." The only document attached to the offer letter was a Confidentiality, Non-Competition & Non-Solicitation Agreement (the "Agreement"). A copy of the Agreement is attached as Exhibit B. I signed the Agreement on February 4, 2015.

8. I began my employment on or around February 18, 2015. My sole responsibility was to sell JobsEQ and its add-ons, such as RTI (Real Time Intelligence), Firm List, Extra Seats and LaborEQ across the nation.

9. Through my years of employment with Chmura, Ms. Peterson and Chris Chmura changed the terms of the commissions payments to their advantage and to the disadvantage of the inside sales representatives. For example, shortly after I started working at Chmura, Chmura would only pay me 3-5% for closing sales on leads that Ms. Peterson and Chris Chmura deemed to be "warm leads." These leads, however, were leads that I found in a magazine or that were in

Salesforce (the CRM used by Chmura) but had not been worked in several months or years by anyone at Chmura.

10. Another example occurred when I closed a sale with the Oklahoma Department of Commerce in 2017. After closing the sale, the Oklahoma Department of Commerce required the completion of a perfunctory RFP. Not only was I not permitted to complete the RFP, but I was also not paid any commissions on the sale because Chmura decided that it would not pay commissions when an RFP was required.

11. On March 28, 2019, Chmura amended the Offer Letter (the "Amendment") as follows: "The reference to annual merit increases is hereby deleted. In addition, Chmura would like to clarify that commissions become payable once Chmura receives the payment on the sale." A copy of the Amendment is attached as Exhibit C. The Amendment further provides that the "letter is intended to amend the terms of your employment previously agreed to by you and Chmura Economics & Analytics, LLC in the company's offer letter you dated February 4, 2015" and "[a]ll other terms and conditions of the offer letter remain unchanged."

12. In effect, Chmura changed when I would be paid my commissions and eliminated any possibility of an annual merit increase. Despite being unhappy about these changes, I signed the Amendment.

13. Then, in the fall of this year, I learned that Chmura was going to make more changes to the operations of the inside sales team. Chmura was going to redistribute the customers – i.e. take away customers from me and give them to other sales representatives who did not have as many customers in their book. Because I spent more than four years and many hours, including numerous overtime hours, building my book and closing sales, I would be materially damaged by this change. I was upset about this change.

14. Eli Auerbach ("Auerbach"), the manager of the sales team, held a meeting on or about October 2, 2019 to discuss these changes. The meeting was intentionally scheduled when I was demoing JobsEQ to a potential customer. The purpose of the meeting was to divide my customers amongst the other inside sales representatives.

15. After learning about the meeting, on October 3, 2019, I met with Auerbach to discuss this change. I asked Auerbach what was going on and why they would make a change that only negatively affected me.

16. By this time, I believed that I was owed overtime and unpaid commissions. In fact, I informed Auerbach at least two months before that I was entitled to overtime pay. I was never compensated for the overtime that I worked in the more than four years that I was employed at Chmura.

17. It was at the October 3, 2019 meeting that I stated that I would amicably separate from the Chmura if Chmura paid me $100,000. This demand was to compensate me for some, but not all, of my unpaid overtime and unpaid commissions. I offered to smoothly transition my customers to the other sales representatives at Chmura.

18. Chmura did not accept that offer and, instead, Auerbach instructed me to continue to work. Accordingly, I went to a conference in both Texas and Indianapolis between October 3, 2019 and October 17, 2019. Auerbach was also present at the Indianapolis conference.

19. On October 17, 2019, Auerbach approached me and asked what was going to happen. I told him that I did not understand why Chmura was treating me this way due to the number of customers that I obtained for it and the amount of sales that I achieved. I again told Auerbach that I had a claim for unpaid overtime. Auerbach suggested that I leave the office for the day while Chmura determined what to do with my offer to separate for $100,000.

20. Accordingly, I left the office around 10:00 a.m. on October 17, 2019. Because I had a work issued laptop at home, I decided to work from home and make sure I took care of my customers. Additionally, I had a demo scheduled in the afternoon. By the time I arrived home, I was locked out of Salesforce and had no access to my e-mails. I could no longer do any work. No one told me that Chmura was going to prevent me from doing my job.

21. On October 21, 2019, I spoke with Aisha Ortiz, who works in the Human Resources department at Chmura. She informed me that I had been put on unpaid leave on October 17, 2019 and that I was terminated effective October 21, 2019. This was the first I knew I was put on unpaid leave. She then offered me $10,000 as a severance package. She stated that she would send over the offer in writing.

22. Prior to receiving the offer, on October 21, 2019, I received a letter from Rodney Satterwhite at McGuire Woods. A copy of the October 21, 2019 letter is attached as Exhibit D.

23. In the letter, Mr. Satterwhite demanded that I sign a statement under penalty of perjury that: (1) identifies every Chmura client with whom I talked to about my possible departure from Chmura; (2) identifies every Chmura client I spoke with on or after October 17, 2019; (3) identifies every Chmura competitor with whom I discussed employment in the past six months; (4) confirms that I returned all Chmura property; and (5) states that I agree to refrain from making defamatory or disparaging remarks about Chmura.

24. I sent this letter to my attorney for review and response.

25. On October 21, 2019, my attorney sent an e-mail to assure Chmura and Mr. Satterwhite that I have not taken any action to interfere with the business and that I did not intend to contact Chmura's clients or otherwise disrupt its business. A copy of the October 21, 2019 e-mail is attached as Exhibit E. Mr. Satterwhite confirmed receipt.

26. On October 24, 2019, my attorney sent a full response to the October 21, 2019 letter to Mr. Satterwhite. A copy of the October 24, 2019 letter is attached as Exhibit F. The letter outlines the claims I have against Chmura for unpaid overtime. We demanded a response by October 31, 2019.

27. On October 31, 2019, Chmura filed the above-captioned action and sent a letter denying the overtime claims. A copy of the October 31, 2019 letter is attached as Exhibit G.

28. The only competitor of Chmura that I am aware of is Emsi, an affiliate of Strada Education Network. I have no intention of contacting Emsi or any competitor of Chmura for any purpose, including to seek employment or provide information about Chmura. I have never interviewed for a position with Emsi or any competitor and I have no intention of interviewing with Emsi or any competitor.

29. I do not have any Chmura property or information in my possession, custody, or control.

30. I had a Chmura laptop and a few miscellaneous items (such as the credit card that was issued to me by Chmura, business cards, and pens). On October 21, 2019, I told my attorney that I had the laptop and miscellaneous items and would give it back to Chmura whenever it wished. I do not know if my prior attorney communicated this to Chmura's counsel.

31. Upon retaining Christine Cooper to defend me in this case, she instructed me to provide the laptop and miscellaneous items to her. They are currently in her custody and control.

32. I do not have access to any written or electronic customer lists, Chmura documents, materials or software.

33. I have not made any disparaging comments to any customer or potential customer of Chmura.

34. I am currently unemployed. I am actively seeking employment with companies that are not competitors of Chmura, but have been unable to secure a new position.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of December, 2019.

_____
Richard A. Lombardo

7