Exhibit G

McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Rodney A. Satterwhite
Direct: 804.775.1098

McGUIREWOODS

rsatterwhite@mcguirewoods.com
Fax: 804.698.2163

October 31, 2019

VIA EMAIL and U.S. MAIL - ama@mccarthylebit.com

Ann-Marie Ahern
McCarthy, Lebit, Crystal & Liffman Co., LPA
101 W. Prospect Avenue
Suite 1800
Cleveland, OH 44115-1088

Re: Chmura Economics & Analytics, LLC and Rick Lombardo

Dear Ms. Ahern:

This responds to your October 24 letter.

First, after further investigation, we disagree with your characterization of the conversation between Mr. Lombardo and Mr. Auerbach. This conversation was not limited to whether Mr. Lombardo intended to file suit, but instead Mr. Lombardo listed multiple steps he would take if he did not receive a sufficient payment. These "steps" included soliciting all of Chmura's clients and diverting them to a competitor, with whom he had already met at a recent conference. Mr. Lombardo concluded his conversation by stating that "either Chmura would pay for 'his' book of business, or someone else would."

Importantly, Mr. Lombardo made similar statements to other Chmura employees. He told one such employee that he would be "collateral damage" when Mr. Lombardo diverted Chmura's customers to a competitor. These employees will corroborate that Mr. Lombardo made clear and explicit threats to violate his restrictive covenants. His threats are especially troubling in light of Mr. Lombardo's failure to return electronic equipment (including a laptop computer), information about prospective customers that Mr. Lombardo prepared on Chmura's behalf at various conferences he attended, and other Chmura sales materials.

These events have left Chmura with no choice but to protect its interests by filing the attached complaint. Please let me know if you are authorized to accept service of process on Mr. Lombardo's behalf.

October 31, 2019
Page 2

Next, we are surprised that Mr. Lombardo has attempted to raise overtime claims. Although your letter did not mention it, I am sure you are aware his total annual compensation exceeded $150,000 for the last three years. Chmura provided him this significant compensation package in exchange for his performance of duties that place him squarely within the highly compensated employee exemption of the Fair Labor Standards Act. *See* 29 CFR §541.601. The Company is not inclined to pay him for the same work twice.

Finally, your letter stated that Chmura terminated Mr. Lombardo's employment on October 17. This is incorrect. The Company placed him on unpaid leave to afford him a reasonable opportunity to consider the terms of the proposed Separation Agreement. Given your response on his behalf, that offer is withdrawn and he should consider his employment terminated effective today.

Best regards,

*Rodney A. Satterwhite*

Rodney A. Satterwhite

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CHMURA ECONOMICS & ANALYTICS, LLC, | ) ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) ) |
| RICHARD LOMBARDO, | ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Chmura Economics & Analytics, LLC, by counsel, files this Complaint against Defendant Richard Lombardo.

### Introduction

1. Chmura brings this action for injunctive relief to prevent Lombardo from carrying out his threats to intentionally destroy its business. Despite his contractual and fiduciary obligations, Lombardo threatened to steal Chmura's customers and take them to a competitor if Chmura did not offer him compensation commensurate with his perceived self-worth. Chmura declined to succumb to Lombardo's threatened extortion, and therefore sues to enforce Lombardo's restrictive covenants.

### Parties, Jurisdiction, and Venue

2. Chmura Economics & Analytics, LLC is a Virginia limited liability company with its principal place of business in Richmond, Virginia.

3. Lombardo is a citizen and resident of the state of Ohio.

1

4. The value of the customer contracts with which Lombardo has threatened to interfere is well over $100,000.

5. Because the parties in this case are citizens of different states, and the amount in controversy exceeds $75,000, this Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

6. This Court has personal jurisdiction over Lombardo because he "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction and venue of . . . the United States District Court for the Eastern District of Virginia, Richmond Division in connection with any suit, action or proceeding relating to" his "Confidentiality, Non-Competition & Non-Solicitation Agreement" (the "Agreement") with Chmura, on which this action is based. (Ex. A § 8.)

7. Venue is proper in the Eastern District of Virginia and this division based on the Agreement's forum selection provision, which names the federal and state courts in Richmond, Virginia as the exclusive forum for this dispute. *Id.*

## FACTUAL ALLEGATIONS

### A. Chmura's Business and Lombardo's Employment

8. Chmura is a leading software and consulting firm in the field of data analytics. Chmura's proprietary software provides demographics and labor data, such as highly granular occupation forecasts and real-time data about job postings. Chmura's team of economists, data scientists, and statisticians also provide consulting services to help clients interpret and use the data available through its software products.

9. Lombardo began his employment with Chmura in 2015. At that time, Lombardo was one of only two Chmura sales representatives in the Ohio area.

10. Lombardo marketed and sold Chmura's software products to customers in his territory. Although many of Lombardo's customers were located in the Midwest, he sold to customers nationwide. Thus, Lombardo was responsible for creating interest, developing opportunities, negotiating deals, managing client relationships, and driving revenue by selling Chmura's software products and consulting services.

11. Lombardo's responsibilities also extended beyond merely making sales. For example, he regularly offered input and assistance on marketing strategy, resolved client questions and complaints, administered invoices and customer payments, and provided feedback on prospective and existing product features.

12. Over the course of his employment, Lombardo had access to, and used, Chmura's confidential customer and target information, business platform, reputation, resources, and goodwill to expand and service Chmura's existing client relationships and to develop new ones.

13. Lombardo brought no client relationships with him to Chmura. Rather, Lombardo developed new client relationships exclusively through the resources and training he received from Chmura.

**B. Lombardo's Restrictive Covenant Agreement with Chmura**

14. When Lombardo began his employment with Chmura, he signed a Confidentiality, Non-Competition, and Non-Solicitation Agreement with Chmura, dated February 4, 2015. A true and correct copy of the Agreement is attached as Exhibit A.

15. In that Agreement, Lombardo agreed that he would not "reveal or disclose to any person outside of the Company, or use for his[] own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's customers, clients or employees." (Ex. A § 1.)

16. In addition, Lombardo's Agreement contained "Covenants Not to Compete or Interfere." Those covenants stated that Lombardo would not:

> directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or on behalf of any person or entity that engages in the Company's Business in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company.

*Id.* § 3(b).

17. Lombardo also agreed that he would not:

> directly or indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of providing products or services that are the same or substantially similar to the Company's Business any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom Employee pursued on behalf of the Company, or of whom Employee had knowledge based on his/her employment with the Company because the Company provided products or services to or actively pursued the individual or entity during Employee's employment.

*Id.* § 3(c).

18. Lombardo further acknowledged that the Agreement's restrictions are "reasonable, fair and equitable in terms of duration and scope, are necessary to protect the legitimate business interests of the company, and are a material inducement to the Company to enter into this Agreement." *Id.* § 3(e).

19. In addition, Lombardo agreed that:

> a breach of any of the covenants set forth in Sections 1, 2, and 3 [including those quoted above] would result in immediate irreparable injury and damage to the Company for which the Company would have no adequate remedy at law. In the event of a breach or threatened breach by [Lombardo] of any of the provisions of Sections 1, 2, or 3 of this Agreement, the Company shall be entitled to a temporary restraining order and/or a preliminary or permanent injunction restraining Employee from breaching the same.

4

*Id.* § 10.

20. Finally, the Agreement provides that, in the event of any breach, Chmura "shall be entitled to all costs and expenses incurred as a result, including reasonable attorney's fees, in addition to any other remedies to which Company may be entitled." *Id.*

**C. Lombardo's Threatened Breaches**

21. Chmura's sales have grown significantly over the past four years. Therefore, Chmura has hired additional sales representatives to assist with sales in Lombardo's territory. Chmura is also in the process of revising its commissions structure for sales representatives.

22. Lombardo, dissatisfied with these perceived affronts, became very negative and difficult to manage. For example, when Lombardo did not receive a discretionary merit-based salary increase in 2019, he became incensed, and even altered a rescinded offer letter from a prospective business partner of Chmura to try to bully Chmura into increasing his salary.

23. On October 3, 2019, Lombardo met with his manager, Eli Auerbach, to discuss these issues. When Auerbach explained the upcoming changes to Lombardo's sales territory and commissions structure, Lombardo became agitated, stating that it was "obvious" that Chmura's leadership wanted to "get rid of" him. Lombardo therefore raised the possibility of leaving voluntarily in exchange for a separation payment. Lombardo suggested that he viewed a separation payment of $100,000 as an appropriate amount to compensate him for "his" book of business.

24. On October 17th, Lombardo and Auerbach met again to discuss Lombardo's potential separation from Chmura.

25. During that conversation, Lombardo stated that if Chmura would not pay him $100,000 as part of a separation agreement, he was prepared to take several steps to disrupt Chmura's business.

26. First, Lombardo stated that he would immediately file a lawsuit against the company because Chmura was attempting to take away "his" book of business—*i.e.*, Chmura's customers, with whom Lombardo worked only by virtue of his employment with Chmura.

27. Second, Lombardo threatened to accept a position with one of Chmura's competitors, in violation of the Agreement. Lombardo indicated that this was not an idle threat because he had already discussed employment with at least one competitor.

28. Third, Lombardo threatened to contact all of Chmura's clients (despite the Agreement's non-solicitation provisions) so that he could persuade them to take their business elsewhere. Lombardo warned Auerbach, "either Chmura is going to pay me for those relationships, or someone else will."

29. Chmura refused to succumb to Lombardo's attempted extortion. Therefore, the following Monday, Chmura offered Lombardo a $10,000 separation contract. Fearful that Lombardo may have already put his plans in motion, Chmura also placed Lombardo on unpaid leave. In addition, Chmura sent Lombardo a cease and desist letter reminding him of his obligations under the Agreement and warning him against the violations he had threatened.

30. In that letter, Chmura asked Lombardo to (i) identify Chmura's clients with whom he had communicated regarding his possible departure; (ii) identify Chmura's clients with whom Lombardo had communicated after Chmura placed him on leave; (iii) identify the competitors with whom he had discussed employment in the past six months; (iv) confirm that he had returned all Chmura property and information; and (v) agree to refrain from defaming Chmura.

31. Lombardo, by counsel, responded to Chmura's cease and desist letter on October 25, 2019. In that letter, however, Lombardo failed to provide any of the information Chmura had requested, and offered no assurance that he would comply with Chmura's demands.

32. Lombardo also continued to retain a Chmura computer, which contained customer contacts, pricing data, and other highly confidential Chmura information.

33. Lombardo's actions pose a continuing threat to Chmura and its business. The violations that Lombardo has threatened would cause Chmura irreparable harm in the form of, among other things, lost revenue and lost goodwill from the long-standing customer relationships in which it has substantially invested.

## COUNT I

### Injunctive Relief for Threatened Breach of Contract

34. Chmura incorporates Paragraphs 1 through 33 of this Complaint by reference.

35. The Agreement is a binding and enforceable contract between Lombardo and Chmura, which prohibits Lombardo from, among other things, soliciting the customers with whom he worked during his last year at Chmura for two years after leaving Chmura.

36. The Agreement also prohibits Lombardo from competing against Chmura by providing the same or similar services he performed for Chmura within the specified geographic area for two years after his employment.

37. The Agreement is supported by adequate consideration, namely, Lombardo's offer of employment with Chmura, and Lombardo's access to Chmura's resources, training, customer goodwill, and confidential information.

38. Chmura has performed all of its obligations under the Agreement.

39. Lombardo has threatened to materially breach his non-solicitation obligations through his stated plans to contact Chmura's customers to divert that business from Chmura.

40. Lombardo has also threatened to materially breach his non-competition obligations through his stated plans to take Chmura's customers to a competitor.

41. As expressly reflected in the Agreement he signed, there is no adequate remedy at law that would make Chmura whole if Lombardo breached the Agreement, and Chmura is therefore entitled to an injunction to prevent Lombardo's threatened breaches.

42. The terms of the Agreement entitle Chmura to specific performance in the form of an order requiring Lombardo to abide by his non-solicitation and non-compete obligations and enjoining him from soliciting Chmura customers or unlawfully competing against Chmura.

43. The balance of equities weighs in Chmura's favor, and the likely injury to Chmura greatly outweighs any potential harm to Lombardo if an injunction is granted, because Chmura is entitled to protect the goodwill it has built with its customers and to protect its business.

44. Further, it would be inequitable for Lombardo to benefit from his threatened breaches by diverting Chmura's customers to a competitor during the restricted period.

45. An injunction would vindicate the strong public interest in holding parties to their contractual obligations.

## PRAYER FOR RELIEF

For the reasons above, Chmura respectfully seeks judgment against Lombardo as follows:

1. For an order of a preliminary and permanent injunction prohibiting Lombardo, directly or indirectly, from: (a) providing any future competing services, for the restricted two-year period, to a competing organization in the geographic area that Lombardo serviced on Chmura's behalf, as set forth in the Agreement; (b) further soliciting or encouraging others to solicit, for the restricted two-year period, any Chmura customer or prospective customer with whom Lombardo worked during his employment with Chmura for the purpose of diverting business from Chmura; and (c) accessing or using any Chmura confidential information, including, without limitation, any client contact lists;

8

2. For an award of attorneys' fees and costs; and

3. For any other such relief against Lombardo as the Court may deem appropriate.

Dated: October 31, 2019

/s/
Rodney A. Satterwhite (VA Bar No. 32907)
Heidi E. Siegmund (VA Bar No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*

## CONFIDENTIALITY, NON-COMPETITION & NON-SOLICITATION AGREEMENT

This Confidentiality, Invention & Non-Competition Agreement ("Agreement") is made by and between Chmura Economics & Analytics, LLC ("the Company") and Richard A Lombardo (employee) (27030 Forestview Ave, Euclid, OH 44132) (together "the Parties").

### REASONS FOR AGREEMENT

1. The Company is engaged in the business of providing services in the field(s) of economics, workforce development, economic development, strategic planning, and software design and licensing (hereinafter, the "Company's Business").

2. Employee is about to begin or continue his/her employment with the Company and understands its need to limit to some extent Employee's freedom to disclose and use certain information which may come to his/her attention during Employee's employment and to engage in certain activities during employment and certain post-employment activities.

3. These restrictions are for the purpose of enabling the Company to preserve its competitive status in the industry and to protect the integrity and future of the Company and to protect the employment opportunities of Employee's fellow employees by protecting the Company's confidential and/or proprietary information, its goodwill and its trade secrets.

NOW, THEREFORE, in consideration of the employment of Employee (including any continuation of employment of Employee with the Company) and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, the parties agree as follows:

### TERMS OF AGREEMENT

1. **Confidentiality.** Employee recognizes that, by virtue of his/her employment with the Company, s/he will have access to confidential and/or proprietary information relating to the Company's business. Employee agrees that this information is a valuable and unique asset of the Company and, if divulged to others, could cause irreparable harm to the Company's business. Employee recognizes and acknowledges that such information may include data or material that may not technically qualify as a trade secret, but in which the Company nevertheless has a legitimate business interest in protecting its confidentiality.

Accordingly, Employee shall not, during the term of his/her employment and thereafter regardless of the reason for his/her termination, reveal or disclose to any person outside of the Company, or use for his/her own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's customers, clients or employees ("Confidential and Proprietary Information"). For purposes of this Agreement, Confidential and Proprietary Information includes, but is not limited to the Company's financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information of any type; information concerning methods of operation; proprietary systems or software; legal or regulatory information; cost and pricing information or policies; information concerning new or potential products or markets; models, practices, procedures, strategies or related information; research and/or analysis; and information concerning new or potential investors, customers, or

Exhibit A

clients. Confidential and Proprietary Information does not include information already available to the public through no act of Employee, nor does it include salary, bonus or other personnel information specific to Employee. Notwithstanding the above, the use or disclosure of Confidential and Proprietary Information shall not be deemed a violation of this Section of the Agreement if such use or disclosure is made in the ordinary course of business, within the usual scope of Employee's duties and serves the best interests of the Company.

Employee further understands and agrees that all Confidential and Proprietary Information, however or whenever produced, will be the Company's sole property. Upon the termination of Employee's employment, for whatever reason, Employee will promptly deliver to the Company all documents, equipment, property or materials of any type, including any copies thereof, in Employee's possession, custody or control that belong to the Company, and/or that contain, in whole or in part, any Confidential or Proprietary Information in accordance with Section 3 of this Agreement.

2. **Work Related Intellectual Property.** Employee shall disclose fully to the Company any and all intellectual property (including, without limitation, designs, inventions, mask works, ideas, processes, operating and production methods and efficiencies, pricing, customer lists, formulae, data and computer programs (including source and object codes), patents, trademarks, trade secrets, know-how, improvements and enhancements to any of the foregoing, related documentation and all other forms of copyrightable subject matter) which Employee conceives, develops or makes or is exposed to during the term of his/her employment or for six (6) months thereafter and which in whole or in part result from or relate to Employee's work for the Company (collectively, "Work Related Intellectual Property"). Any such disclosure shall be made promptly after each item of Work Related Intellectual Property is conceived, developed or made by Employee, whichever is sooner. Employee covenants and agrees that s/he shall not, at any time during or following the term of his/her employment, directly or indirectly, divulge or disclose any of such Work Related Intellectual Property, or any of the Confidential and Proprietary Information, which has been obtained by or disclosed to him as a result of employment by the Company.

Employee agrees that all Work Related Intellectual Property shall be owned by the Company and that Employee shall execute and deliver any and all documents (including, without limitation, assignments and patent applications), take all actions and render any and all assistance which may be reasonably requested by the Company to establish, evidence or perfect the Company's ownership of, or to enable the Company to obtain patents or register copyrights with respect to Work Related Intellectual Property, provided, however, that the Company shall bear all expenses related thereto.

Employee acknowledges that all Work Related Intellectual Property that is copyrightable subject matter and which qualifies as "work made for hire" shall be automatically owned by the Company. Further, Employee hereby assigns to the Company any and all rights which Employee has or may have in Work Related Intellectual Property which is copyrightable subject matter and which, for any reason, does not qualify as "work made for hire." If any Work Related Intellectual Property embodies or reflects any preexisting rights of Employee, Employee shall promptly disclose such preexisting rights to Company. Employee hereby grants to the Company the irrevocable, perpetual, nonexclusive, worldwide, and royalty-free license to

2

use, reproduce, display, perform, distribute copies of and prepare derivative works based upon the preexisting rights described in the preceding sentence and to authorize others to do any or all of the foregoing.

For the avoidance of doubt, Employee agrees and acknowledges that the trademarks and the brands of the Company and its parent, affiliates and subsidiaries are valuable assets and the promotion, management and use of such trademarks and brands will be an important part of his/her duties and responsibilities. Employee agrees to use his/her best efforts to protect the trademarks and brands of the Company and its parent, affiliates and subsidiaries and will conduct himself and his/her business activities in compliance with the Company's policies and procedures as they relate to such brands and trademarks.

3. **Covenants Not to Compete or Interfere**. For a period beginning on the Effective Date of this Agreement and ending two (2) years after the employment relationship between Employee and the Company terminates for any reason whatsoever ("the Restricted Period"), Employee shall not:

(a) own or acquire an interest in or participate in the management or control of any entity that competes against the Company by engaging in the Company's Business in geographic areas in which the Company does business;

(b) directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or on behalf of any person or entity that engages in the Company's Business in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company;

(c) directly or indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of providing products or services that are the same or substantially similar to the Company's Business any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom Employee pursued on behalf of the Company, or of whom Employee had knowledge based on his/her employment with the Company because the Company provided products or services to or actively pursed the individual or entity during Employee's employment;

(d) directly or indirectly, on behalf of himself/herself or any other person, partnership, company, corporation or other entity, divert, take away, or interfere with or attempt to divert, take away or interfere with the Company's business relationship with its then existing suppliers, licensors, licensees, franchisees or other business relations; or

(e) directly or indirectly, on behalf of himself or any other person or entity, recruit, solicit, or hire any employee of the Company, or attempt to do the same, or induce or encourage any employee, contractor, or supplier of the Company to terminate their employment or other business relationship with the Company.

3

Notwithstanding the foregoing, Employee may own not more than five percent (5%) of any class of securities registered pursuant to the Securities Exchange Act of 1934, as amended, of any corporation engaged in competition with the Company, so long as Employee does not otherwise (i) participate in the management or operation of any such business, or (ii) violate any other provision of this Agreement.

Employee acknowledges that the restrictions, prohibitions and other provisions herein, including, without limitation, the Restricted Period, are reasonable, fair and equitable in terms of duration and scope, are necessary to protect the legitimate business interests of the Company, and are a material inducement to the Company to enter into this Agreement.

4. **Termination and Return of Property**.

    (a) Return of Confidential and Proprietary Information and Work Related Intellectual Property Upon Termination. Employee understands and agrees that all printed and electronic files, records, documents, reports, audits, projections, forecasts, business plans, correspondence, manuals, computer code, pricing data, sources of supply, customer lists, databases, and similar items relating to the business of the Company, the Confidential and Proprietary Information and/or the Work Related Intellectual Property, whether prepared by Employee or otherwise coming into Employee's possession, shall remain the exclusive property of the Company, whether in original or reproduced form. Upon the termination of Employee's employment for any reason whatsoever, Employee shall immediately and without demand return to the Company all of the aforementioned information in Employee's possession or under Employee's control belonging to the Company, and immediately thereafter Employee shall have no further right of access to or any right to obtain any of such records and materials or copies thereof, or any information contained therein.

    (b) Return of Tangible Property. Upon termination of Employee's employment for any reason whatsoever, Employee shall immediately and without demand return to the Company all tangible property in his/her possession belonging to the Company (including without limitation electronic equipment), in good condition, ordinary wear and tear excepted.

5. **Survival of Obligations**. Employee's obligations under Sections 1, 2 and 3 of this Agreement shall survive the termination of his/her employment, regardless of the reason for or method of termination. Each of the provisions in these Sections shall be enforceable independently of every other provision, and the existence of any claim or cause of action Employee may have against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement of these Sections of the Agreement by the Company.

6. **Representations and Warranties**. Employee represents and warrants to the Company: (a) that s/he has the full power and authority to enter into this Agreement without the consent or approval of any other person, including any present or previous employer; (b) that his/her execution, delivery and performance of this Agreement will not violate or cause a breach of any existing employment or any other agreement, covenant, promise or any other duties by which Employee is bound, including confidentiality obligations or covenants not to compete; and (c) that there are no pending or threatened claims of breach of contract, misappropriation of

4

intellectual property or misappropriation of confidential information against Employee and, to the best of Employee's knowledge, no events or conduct that would give rise to such a claim.

7. **Governing Law**. This Agreement, and all disputes arising under or related to it, shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Virginia, without regard to the conflict of laws rules contained therein.

8. **Jurisdiction and Venue**. The parties irrevocably and unconditionally consent to the exclusive jurisdiction and venue of the Circuit Court for the City of Richmond, Virginia and/or the United States District Court for the Eastern District of Virginia, Richmond Division in connection with any suit, action or proceeding relating to this Agreement and agree not to commence any suit, action or proceeding relating thereto except in such courts.

9. **Assignment**. This Agreement may be assigned by the Company to a successor in interest, including but not limited to a wholly owned subsidiary or parent of the Company, or in connection with the sale to any person, partnership, corporation or other entity of the assets of the Company. Employee's rights hereunder are personal and non-assignable.

10. **Enforcement and Severability**. Employee agrees that a breach of any of the covenants set forth in Sections 1, 2 and 3 would result in immediate irreparable injury and damage to the Company for which the Company would have no adequate remedy at law. In the event of a breach or a threatened breach by Employee of any of the provisions of Sections 1, 2, or 3 of this Agreement, the Company shall be entitled to a temporary restraining order and/or a preliminary or permanent injunction restraining Employee from breaching the same. However, nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach, including the recovery of damages from Employee. Employee further agrees that in the event of any such breach, Company shall be entitled to all costs and expenses incurred as a result, including reasonable attorney's fees, in addition to any other remedies to which Company may be entitled. If Employee breaches Section 3 of this Agreement, the duration of the Restricted Period shall be computed from the date s/he resumes compliance with the covenant or from the date the Company is granted injunctive or other equitable relief by a court of competent jurisdiction enforcing the covenant, whichever shall first occur, reduced by either the number of days Employee was not in breach of the covenant after termination of employment, or any delay in filing suit, whichever is greater.

If any provision of this Agreement is deemed void or unenforceable, such provision shall not be deemed part of this Agreement, which otherwise shall remain in full force and effect. Moreover, if any one or more of the provisions contained in this Agreement is held to be excessively broad as to duration, activity or subject, such provision will be construed by limiting or reducing it so as to be enforceable to the maximum extent compatible with applicable law. A waiver by the Company or Employee of a breach of any provision of this agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by the other party. Employee shall pay the Company all reasonable attorneys' fees incurred in enforcing its rights under this Agreement.

11. **Remedies.** In the event of a breach or a threatened breach of this Agreement by Employee, the Company shall be entitled to an injunction restraining Employee from breaching

5

the same. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or threat of breach. This includes, but is not limited to, the recovery of any monetary damages caused by Employee's breach or threatened breach.

    12. **Consultation with Counsel; No Representations**. Employee acknowledges and agrees that s/he has had a full and complete opportunity to consult with counsel of his/her own choosing concerning the terms of this Agreement, and that the Company has made no representations or warranties to Employee concerning the terms of this Agreement other than as are reflected in this Agreement.

    13. **Entire Agreement**. This instrument contains the entire agreement between the Parties, supersedes any prior or other agreement between the Parties and may be changed only by an agreement in writing signed by the party against whom the enforcement of any waiver, change, modification, extension or discharge is sought. Both Parties agree and acknowledge that they have read these terms, have had the opportunity to consult counsel, and fully understand and freely and voluntarily agree to the provisions set forth herein.

    IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates shown below.

EMPLOYEE          CHMURA ECONOMICS & ANALYTICS, LLC

_[signature]_        By: _[signature]_
Richard A Lombardo       Leslie Peterson
              President and Chief Strategist

Date: 2-4-2015       February 3, 2015
              Date:

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Chmura Economics & Analytics, LLC

**(b)** County of Residence of First Listed Plaintiff — City of Richmond, VA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rodney A. Satterwhite & Heidi E. Siegmund, McGuireWoods LLP, 800 East Canal Street, Richmond, VA 23219; 804-775-1049

## DEFENDANTS
Richard Lombardo

County of Residence of First Listed Defendant — Cuyahoga, OH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Ann-Marie Ahern, McCarthy, Lebit, Crystal & Liffman, 101 W. Prospect Ave., Suite 1800, Cleveland, OH 44115; 216-696-1422

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332

Brief description of cause:
Threatened breach of restrictive covenants

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 10/31/2019
SIGNATURE OF ATTORNEY OF RECORD: /s/ Heidi E. Siegmund

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____