## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| **CHMURA ECONOMICS &** | ) | **Case No. 3:19-cv-813** |
| **ANALYTICS, LLC,** | ) | **Judge Robert E. Payne** |
|  | ) |  |
|  | ) |  |
| **Plaintiff/Counterclaim Defendant,** | ) |  |
|  | ) |  |
| **v.** | ) |  |
|  | ) |  |
| **RICHARD LOMBARDO,** | ) |  |
|  | ) |  |
| **Defendant/Counterclaim Plaintiff.** | ) |  |

### DEFENDANT RICHARD A. LOMBARDO'S COUNTERCLAIM AGAINST PLAINTIFF CHMURA ECONOMICS & ANALYTICS, LLC

Pursuant to Fed.R.Civ.P. 13, Defendant Richard A. Lombardo ("Lombardo") submits the following counterclaim against Plaintiff/Counterclaim Defendant Chmura Economics & Analytics, LLC ("Chmura").

1.     Upon information and belief, Chmura is a Virginia limited liability company with its principal place of business in Richmond, Virginia. Chmura maintains a place of business in Cleveland, Ohio.

2.     Lombardo is an Ohio citizen and resident of Mentor, Ohio.

3.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1337 and Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201, *et seq.*

4.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367(a) because Lombardo's claims under O.R.C. §1335.11 (Ohio Prompt Pay Act), O.R.C. § 4111.01 (Ohio Minimum Fair Wage Standards Act), and Virginia and

1

Ohio law form part of the same case or controversy under Article III of the United States Constitution. Lombardo's state law claims share all common operative facts with his federal law claims, and the parties are identical. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

5.      Pursuant to 28 U.S.C. §1391(b) and Loc.Civ.R. 3, venue is proper in the Eastern District of Virginia because Chmura is a Virginia limited liability company with its principal place of business in Richmond, Virginia and, therefore, is subject to personal jurisdiction in Virginia.

6.      Chmura is a software and consulting firm in the field of data analytics. Chmura sells a labor data SaaS called JobsEQ, which is a labor market technology platform.

7.      In February 2015, Chmura offered Lombardo a position as an inside sales representative. The terms of employment were memorialized in a letter dated February 3, 2015 and was signed by both Leslie Peterson ("Ms. Peterson"), the President and Chief Strategy Officer of Chmura, and Lombardo (the "February 3, 2015 Letter"). A copy of the February 3, 2015 Letter is attached as Exhibit A.

8.      Pursuant to the February 3, 2015 Letter, Lombardo's annual base salary the first year was $55,000 and each year thereafter it was $50,000. He was initially eligible for annual merit increases. According to the February 3, 2015 Letter, he should have received commissions in the amount of 15% on the initial sale of JobsEQ and 3% of annual renewals of JobsEQ.

9.      According to the February 3, 2015 Letter, "[n]ew sales commissions will transact as client signatures are secured to the JobsEQ license agreement by Chmura's accounting department" and payment is to be made to Lombardo "the month following the transact date." The Offer Letter refers to an "employment agreement." Attached to the February 3, 2015 Letter

was a Confidentiality, Non-Competition & Non-Solicitation Agreement. A copy of the Confidentiality, Non-Competition & Non-Solicitation Agreement is attached as Exhibit B. (The February 3, 2015 Letter and Confidentiality, Non-Competition & Non-Solicitation Agreement are hereinafter referred to as the "Agreement").

10.     On or about February 4, 2015, Lombardo accepted the compensation terms in Chmura's written February 3, 2015 Letter and executed a copy of the Agreement.

11.     The Agreement contains the following confidentiality provision:

> Accordingly, Employee shall not, during the term of his/her employment and thereafter regardless of the reason for his/her termination, reveal or disclose to any person outside of the Company, or use for his/her own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's customers, clients or employees ("Confidential and Proprietary Information").

Exhibit B (Confidentiality, ¶1). There is no temporal limit on the confidentiality provision.

12.     The Agreement contains the following covenants not to compete or interfere:

> For a period beginning on the Effective Date of this Agreement and ending two (2) years after the employment relationship between Employee and the Company terminates for any reason whatsoever ("the Restricted Period"), Employee shall not:
>
> ***
>
> (b)     directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or on behalf of any person or entity that engages in the Company's Business in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company;
>
> (c)     directly indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of providing products or services that are the same or substantially similar to the Company's Business any individual or entity to whom Employee provided products or services at any time during the

3

> period of his/her employment with the Company, to whom Employee
> pursued on behalf of the Company, or of whom Employee had knowledge
> based on his/her employment with the Company because the Company
> provided products or services to or actively pursed [sic] the individual or
> entity during Employee's employment.

Exhibit B (Terms of Agreement, ¶3(b) & (c)).

13.     Pursuant to the Agreement, "Company's Business" is defined as "services in the field(s) of economics, workforce development, economic development, strategic planning, and software design and licensing." Exhibit B (Reasons for Agreement, ¶1).

14.     The Agreement is governed by Virginia law. Exhibit B (Terms of Agreement, ¶7).

15.     Lombardo began his employment as an inside sales representative on or around February 18, 2015. His sole responsibility was to sell JobsEQ and its add-ons, such as RTI (Real Time Intelligence), Firm List, Extra Seats and Labor EQ to entities around the country. All of his job duties were conducted in the office or at times from home.  Lombardo did not call on customers.

16.     Lombardo quickly became one of Chmura's most economically valuable employees and was individually responsible for securing 58% of Chmura's existing business accounts.

17.     Lombardo, had no authority to make personnel decisions, operational decisions or any decisions regarding matters of significance to Chmura.

18.     Lombardo did not oversee other employees.

19.     Lombardo's job did not require an advanced or professional degree or knowledge.

20.     Lombardo had no discretion and was prohibited from exercising independent judgment in connection with his job responsibilities. For instance, Lombardo was not permitted

4

to book his own flights for conferences without approval from his supervisor or even to entertain a client during a conference without permission.

21.     Over the more than four years he was employed by Chmura, Lombardo routinely was the first to arrive at the office and the last to leave. Lombardo routinely worked well in excess of 40 hours per week, often ranging well above 50 hours and occasionally more than 60 hours per week. Lombardo was never paid any overtime for any workweek in which he worked more than 40 hours. Chmura was aware that Lombardo was regularly working more than 40 hours in a workweek and never complained or directed him not to do so. Upon information and belief, Chmura has no policy prohibiting inside salespersons from working overtime.

22.     Chmura repeatedly and unilaterally changed the terms of the commissions payments Lombardo was entitled to receive under the Agreement to its advantage and to his disadvantage. For example, shortly after Lombardo started working at Chmura, Chmura told him that it would only pay him 3-5% for closing sales on particular leads that Chmura deemed to be "warm leads," instead of the 15% agreed to in the Agreement. These leads were leads that Lombardo found in a magazine or that were in Salesforce (the CRM used by Chmura) but had not been worked in several months or years by anyone at Chmura.

23.     In 2017, Lombardo closed a sale with the Oklahoma Department of Commerce, which required a perfunctory Request for Proposal ("RFP"). Not only was he not permitted to complete the RFP, but he was not paid any commissions on the sale because Chmura stated after the deal was closed that it would not pay commissions on sales that required an RFP. Lombardo was wrongfully deprived of a significant commission of this sale.

24.     On March 28, 2019, Chmura amended the Agreement (the "Amendment") in a letter to Lombardo as follows: "The reference to annual merit increases is hereby deleted. In

addition, Chmura would like to clarify that commissions become payable once Chmura receives the payment on the sale." A copy of the Amendment is attached as Exhibit C. The Amendment further provides that the "letter is intended to amend the terms of your employment previously agreed to by you and Chmura Economics & Analytics, LLC in the Company's offer letter you dated February 4, 2015" and "[a]ll other terms and conditions of the offer letter remain unchanged." Exhibit C. In so doing, Chmura confirmed that the February 3, 2015 Letter and restrictive covenants constituted an employment contract between the parties.

25.     By virtue of this Amendment Chmura changed when Lombardo would be paid commissions and eliminated any possibility of an annual merit increase. Lombardo had no choice but to sign the Amendment.

26.     In the fall of 2019, Lombardo learned that Chmura planned to make more changes to the operations of the inside sales team. Chmura was going to redistribute the customers – i.e. take away customers from Lombardo and give them to other sales representatives who did not have as many customers in their book. This would deprive Lombardo of renewal commissions.

27.     Upon information and belief, Chmura intended to pay the other sales representatives lower commissions than it was obligated to pay Lombardo.

28.     Because he spent more than four years and many hours, including numerous overtime hours, building his book and closing sales, Lombardo would be materially damaged by this change. Lombardo complained about this change in his agreement with Chmura.

29.     Eli Auerbach ("Auerbach"), Lombardo's supervisor and Chmura's manager of the sales team at that time, held a meeting on or about October 2, 2019 to discuss these changes. The meeting was intentionally scheduled when Lombardo was demonstrating JobsEQ to a potential

customer. The purpose of the meeting was to divide Lombardo's customers amongst the other inside sales representatives.

30.     On October 3, 2019, after learning about the meeting, Lombardo met with Auerbach to discuss this change. Lombardo asked Auerbach what was going on and why Chmura would make a change that only negatively affected Lombardo.

31.     By this time, Lombardo understood that he was owed overtime and unpaid commissions by virtue of Chmura's improperly misclassifying him as an exempt employee. Lombardo complained to Auerbach at least two months before the October 3, 2019 meeting that he was entitled to overtime pay.

32.      At no time during Lombardo's over four years of employment did Chmura ever pay him any overtime compensation for hours worked in any workweek when he worked over 40 hours.

33.     On October 17, 2019, Auerbach approached Lombardo to discuss Lombardo's future with Chmura. Lombardo again complained that he was being mistreated despite significantly growing Chmura's customer base.

34.     At this meeting, Lombardo reiterated that he had a claim for unpaid overtime. Auerbach suggested that Lombardo leave the office for the day. Lombardo left that morning.

35.     Because he had a work issued laptop at home, Lombardo intended to work from home and make sure he took care of his customers. Additionally, he had a demo scheduled in the afternoon. By the time he arrived home, he was locked out of Salesforce and had no access to e-mail. He could no longer do any work, despite not being advised that Chmura had taken any adverse employment action against him.

36.     Lombardo later learned from Chmura's Human Resources manager Aisha Ortiz that Chmura placed him on unpaid leave on October 17, 2019 and then terminated his employment on October 21, 2019.

37.     Ortiz verbally offered Lombardo $10,000 as a severance package and stated that she would send over the offer in writing.

38.     Prior to receiving the severance offer, on October 21, 2019, Lombardo received a letter from outside counsel for Chmura (the "October 21, 2019 Letter").

39.     In it, counsel demanded that Lombardo sign a statement under penalty of perjury that: (1) identifies every Chmura client with whom Lombardo talked about his possible departure from Chmura; (2) identifies every Chmura client Lombardo spoke with on or after October 17, 2019; (3) identifies every Chmura competitor with whom Lombardo discussed employment in the past six months; (4) confirms that Lombardo returned all Chmura property; and (5) states that Lombardo agrees to refrain from making defamatory remarks about Chmura.

40.     The October 21, 2019 Letter does not state that Chmura had terminated Lombardo.

41.     On October 21, 2019, counsel for Lombardo sent an e-mail to assure Chmura and Chmura's counsel that Lombardo had not taken any action to interfere with the business and that he did not intend to contact Chmura's clients or otherwise disrupt its business. Chmura's counsel confirmed receipt.

42.     On October 24, 2019, counsel for Lombardo sent a full response to the October 21, 2019 letter to Chmura's counsel reiterated Lombardo's complaint for unpaid overtime and wrongful termination and demanded a response by October 31, 2019.

8

43.     In response to the October 24, 2019 demand, on October 31, 2019, Chmura retaliated against Lombardo by filing the above-captioned action.

44.     On October 31, 2019, a courtesy copy of the Complaint was sent along with a letter to counsel for Lombardo (the "October 31, 2019 Letter"). In it, Chmura changed Lombardo's termination date:

> Finally, your letter stated that Chmura terminated Mr. Lombardo's employment on October 17. This is incorrect. The Company placed him on unpaid leave to afford him a reasonable opportunity to consider the terms of the proposed Separation Agreement. Given your response on his behalf, that offer is withdrawn and ***he should consider his employment terminated effective today***.

45.     Chmura terminated Lombardo as a direct and proximate result of his demand for payment of unpaid overtime.

## FIRST CLAIM FOR RELIEF
### (Violation of the FLSA)

46.     Lombardo restates and incorporates ¶¶1 through 45 of the Counterclaim as if fully rewritten herein.

47.     Chmura is an "enterprise" as defined by 29 U.S.C. §203(b), (s)(1).

48.     The FLSA requires covered employers like Chmura to pay non-exempt employees like Lombardo no less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. §207.

49.     Lombardo regularly worked more than forty (40) hours per week for Chmura, but Chmura did not properly compensate him for any his overtime hours as required by the FLSA.

50.     Chmura made no effort to comply with the FLSA as it relates to the compensation of Lombardo and in fact deliberately avoided paying overtime by misclassifying him as an

exempt employee with full knowledge that his actual job duties did not meet the requirements for any statutory exemption under the FLSA regulations.

51.     Chmura knew Lombardo worked overtime without proper compensation, and willfully failed and refused to pay Lombardo wages at the required overtime rates. *See* 29 U.S.C. §255.

52.     Chmura's willful failure and refusal to pay Lombardo overtime wages for actual overtime hours worked violates the FLSA. 29 U.S.C. §207.

53.     As a direct and proximate result of these unlawful practices, Lombardo suffered wage loss and is, therefore, entitled to recover unpaid overtime wages for up to three years prior to the filing of his claims in an amount to be calculated, liquidated damages, prejudgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Retaliation under the FLSA)

54.     Lombardo restates and incorporates ¶¶1 through 53 of the Counterclaim as if fully rewritten herein.

55.     Section 215(a)(3) of the FLSA, 29 U.S.C. §215(a)(3), prohibits retaliation against an employee because he notifies his employer that it is in violation of the FLSA due to failure to pay overtime.

56.     In August 2019, Lombardo complained to Chmura that he was owed overtime for the entire time period that he worked for Chmura as an inside salesperson.

57.     Chmura was aware that Lombardo worked significant overtime hours during his entire employment as an inside salesperson and permitted Lombardo to do so.

58.     Chmura failed to pay Lombardo any overtime, in violation of the FLSA.

59.     On October 17, 2019, Lombardo again complained to Chmura that he was owed overtime for hours worked in excess of forty (40) for numerous workweeks as an inside salesperson.

60.     On October 24, 2019, Lombardo, through counsel, reiterated Lombardo's complaint that Chmura had violated the FLSA by misclassifying Lombardo as exempt when in fact he was non-exempt.

61.     On October 31, 2019, as a direct and proximate result of receiving Lombardo's demand for overtime and complaint of a violation of the FLSA, Chmura terminated Lombardo.

62.     Chmura's termination of Lombardo constituted a retaliatory action, undertaken in direct response to Lombardo's demand for unpaid overtime to which he was entitled under the FLSA.

63.     As a direct, foreseeable, and proximate result of Chmura's actions, Lombardo has suffered a loss of prior earnings and job benefits and continues to suffer damages in the form of front pay; he has suffered and continues to suffer emotional distress; and he has incurred and continues to incur expenses caused by Chmura's violations of law.

64.     Chmura committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intent to injure Lombardo. Chmura acted with an improper motive amounting to malice and a conscious disregard for Lombardo's rights. The acts taken towards Lombardo were carried out by Chmura acting in a deliberate, callous and intentional manner with a desire to injure and damage.

65.     Pursuant 29 U.S.C. §216(b), Lombardo is entitled to legal and equitable relief including compensatory and punitive damages, as well as reasonable attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

66.     Lombardo restates and incorporates ¶¶1 through 65 of the Counterclaim as if fully rewritten herein.

67.     By executing the Agreement, Lombardo and Chmura entered into a contract pursuant to which Chmura agreed to pay Lombardo commissions for the sale of JobsEQ at the rate of 15% of the initial sale and 3% of annual renewals.

68.     Payment was to occur the month after the transaction date until March 28, 2019. On March 28, 2019, Lombardo and Chmura amended the payment terms such that commissions become payable upon receipt of payment by Chmura for the sale.

69.     Lombardo has not been paid all of the commissions he is owed for the initial sales or the annual renewals he procured.

70.     By failing to pay Lombardo for all of the commissions he is owed for the initial sales and the annual renewals, Chmura has materially breached the Agreement.

71.     Lombardo has done all he is required to do under the Agreement.

72.     Lombardo has been damaged in an amount exceeding $25,000.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Ohio Prompt Pay Act - O.R.C. §4113.15)

73.     Lombardo restates and incorporates ¶¶1 through 72 of the Counterclaim as if fully rewritten herein.

74.     During all relevant times, Chmura was an entity covered by O.R.C. §4113.15 and Lombardo was an employee within the meaning of O.R.C. §4113.15. Lombardo is not exempt from the protections of O.R.C. §4113.15.

75.     O.R.C. §4113.15 requires that Chmura pay Lombardo all wages, including unpaid overtime, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

76.     Lombardo's unpaid wages have remained unpaid for more than thirty (30) days beyond his regularly scheduled payday.

77.     In violating Ohio law, Chmura acted willfully, without a good faith basis and with reckless disregard to Ohio law.

78.     As a result of Chmura's willful violation, Lombardo is entitled to unpaid wages and liquidated damages, as stated in O.R.C. §4113.15.

### FIFTH CLAIM FOR RELIEF
### (Violation of the Ohio Minimum Fair Wage Standards Act – O.R.C. §4111.01 *et seq.*)

79.     Lombardo restates and incorporates ¶¶1 through 78 of the Counterclaim as if fully rewritten herein.

80.     Lombardo worked more than forty (40) hours in one or more work weeks.

81.     Chmura did not compensate Lombardo for the hours he worked over forty (40) hours per week.

82.     By not paying Lombardo proper overtime wages for time worked in excess of forty (40) hours in a workweek, Chmura has violated the Ohio Minimum Fair Wage Standards Act.

83.     As a result of Chmura's violations, Lombardo is entitled to damages, including, but not limited to, unpaid overtime wages, costs and attorney's fees.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment – Invalidity & Unenforceability of the Agreement)

84.     Lombardo restates and incorporates ¶¶1 through 83 of the Counterclaim as if fully rewritten herein.

85.     Lombardo contends that the terms and conditions of the restrictive covenants in the Agreement are violative of public policy, overbroad, coercive, not reasonably related to any legitimate protectable interest of the employer and for this and other reasons are therefore void and unenforceable. Chmura is unlawfully intending to enforce these provisions. An actual justiciable controversy exists as to whether the non-competition, non-solicitation and confidentiality provisions of the Agreement are valid and/or enforceable.

86.     Declaratory relief from this Court will terminate this actual controversy and is necessary to preserve the rights of the parties.

87.     Pursuant to Fed.R.Civ.P. 57, 28 U.S.C. §2201, *et seq.*, and Va. Code Ann. §8.01-184, this Court has jurisdiction to declare the legal rights and status of the parties, to determine the validity and enforceability of the Agreement and to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties to this action.

WHEREFORE, Defendant/Counterclaim-Plaintiff, Richard A. Lombardo demands judgment against Chmura Economics & Analytics, LLC as follows:

1.     In an amount equal to Richard A. Lombardo's unpaid back wages at the applicable overtime rate for each hour worked over forty (40) hours worked in multiple workweeks during his employment;

14

2.      For liquidated damages in an amount equal to Richard A. Lombardo's unpaid back wages at the applicable overtime rate for each hour worked over forty (40) hours in multiple workweeks;

3.      For a determination that Chmura Economics & Analytics, LLC's violations of the FLSA were willful;

4.      In an amount equal to Richard A. Lombardo's unpaid commissions;

5.      Exemplary and punitive damages;

6.      All costs and attorneys' fees incurred;

7.      All pre-judgment and post-judgment interest;

8.      For a declaration that the non-competition, non-solicitation and confidentiality provisions of the Agreement are invalid and unenforceable;

9.      For a preliminary and permanent injunction prohibiting Chmura Economics & Analytics, LLC from enforcing the void provisions of the Agreement; and

10.     All further relief as the Court deems just and equitable.

Respectfully Submitted,

 /s/ *Thomas J. Powell*
Thomas J. Powell, Esq., VSB #27604
3603-D Chain Bridge Road
Fairfax, VA 22030-3244
Tel: (703) 293-9050 | Fax: (703) 293-9075
Email: tom@tjplaw.com

Christine Marie Cooper, Esq. (Ohio Bar #0079160)
Koehler Fitzgerald LLC
1111 Superior Avenue East, Suite 2500
Cleveland, OH 44114
Tel: (219) 539-9376 | Fax: (216) 916-4369
Email: ccooper@koehler.law

*Attorneys for Defendant Richard Lombardo*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been served on this 23rd day of

December 2019, via the Court's CM/ECF filing system, upon the following:

Rodney A. Satterwhite (VSB #32907)
Heidi E. Siegmund (VSB #89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*

                                                  /s/ *Thomas J. Powell*
                                                 Thomas J. Powell