# Exhibit 33



McCarthy, Lebit, Crystal & Liffman

Ann-Marie Ahern
Attorney at Law
Writer's Ext.: 244
ama@mccarthylebit.com



OSBA Board Certified Specialist
in Labor and Employment Law

RECEIVED
OCT 25 2019

October 24, 2019

*Confidential: For Settlement Purposes Only*
*Protected From Disclosure Under Evid. R. 408*

**VIA FEDERAL EXPRESS TRACKING – 7768 0553 9273**

Rodney A. Satterwhite, Esq.
McGuireWoods LLP
800 East Canal Street
Richmond, VA  23219

     RE:    **Termination of Rick Lombardo**

Dear Mr. Satterwhite:

As I noted in previous telephone and email correspondence, this office has been retained by Rick Lombardo ("Rick"), and I write here to offer a formal response to your October 21, 2019 letter. In short, Rick will not be executing the proposed separation agreement that was presented to him.

Instead, we intend to pursue claims against Chmura Economics & Analytics, LLC ("Chmura") for violations of the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and the Ohio Prompt Pay Act. I write in advance of filing suit because it is my hope that this matter can be resolved amicably before further escalation.

**Rick's Employment with Chmura**

As you may know, Rick began his employment with Chmura in February 2015, making him the company's most-senior salesperson at the time of his termination. As such, he was instrumental to the company's growth. By persistently calling and emailing potential customers—including state agencies, real estate companies, and consulting firms—Rick built an impressive network of professional contacts, and he quickly became one of Chmura's most valuable employees. In fact, he is individually responsible for securing 58 percent of Chmura's existing business accounts.

Rodney A. Satterwhite, Esq.
October 24, 2019
Page 2

     Much of Rick's success can be attributed to his impressive work ethic. As I understand, Rick routinely worked more hours than Chmura's other salespeople—he was the first to arrive to work and the last to leave. In fact, his coworkers frequently joked with Rick about his diligence, remarking that they had never seen Rick take a lunch break. The quantity of Rick's work is simply staggering: he routinely worked well in excess of 40 hours per week, often ranging well above 50 hours and occasionally more than 60 hours per week.[1]

     Despite Rick's contributions to the company, Chmura did not regard Rick as a valued employee. It did not, for example, provide Rick additional compensation for his extra hours of work. Moreover, Rick had expected to earn a merit increase this March, but Chmura sent him a letter, indicating that he would not be receiving a raise—in spite of the fact that his actual sales numbers had far exceeded his target numbers.

     By Fall of this year, Rick began to fear that Chmura would terminate his employment. To be specific, Rick deduced that the company did not want to continue paying him commissions on his customers' renewals. Instead, Chmura decided to hire several additional salespeople, who, as I understand, are paid substantially less than Rick (largely because they are not owed commissions for existing customers' renewals). Shortly after adding these new hires, Chmura terminated Rick's employment on October 17, 2019. Days later, on October 21, 2019, Chmura sent him a proposed separation agreement.

     That same day, your office transmitted a letter to Rick, in which you recapped the circumstances surrounding Rick's departure and highlighted a number of provisions in Rick's Confidentiality, Non-Competition & Non-Solicitation Agreement. After extensive conversations with my client, I find it necessary to provide clarification on a few matters. When Chmura terminated Rick's employment on October 17, 2019, he neither threatened to violate his post-employment restrictive covenants nor expressed an intent to disrupt Chmura's business. Instead, Eli Auerbach ("Auerbach"), Chmura's Sales Manager, expressly asked Rick whether he intended to sue the company. Rick merely replied that he would discuss the matter with legal counsel. Auerbach also specifically asked Rick whether he intended to work for a Chmura competitor. Rick explained that he has no immediate plans for his future employment but that he was confident, given his skills as a salesperson, that he would find another opportunity.

### Rick's Claims against Chmura

     Chmura's failure to pay Rick for all hours worked over 40 is a violation of 29 U.S.C. § 207, which states "no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is

---

[1] Rick has maintained his parking receipts, which reflect the amount of time Rick spent at work on a daily basis. These receipts confirm that Rick regularly worked 10 to 11-hour days.

{01375101-1}

Rodney A. Satterwhite, Esq.
October 24, 2019
Page 3

employed."[2] Rick can show that he regularly worked overtime hours nearly every week throughout his tenure with Chmura. Importantly, I understand that Chmura does not have records of Rick's start and end times, allowing Rick to approximate his hours, even if just by reasonable inference. *U.S. DOL v. Cole Enters.*, 62 F.3d 775, 779 (6th Cir. 1995). Despite his compensable work, Chmura failed to pay any premium to Rick for these additional hours. All told, and based on Rick's salary, Chmura's FLSA and state law exposure is considerable.

Chmura's exposure is compounded by 29 U.S.C. § 216(b), which provides that "[a]ny employer who violates the provisions of…section 207 of this title shall be liable to the employee…affected in the amount of…their unpaid overtime compensation…and in an additional equal amount as liquidated damages." Thus, in addition to his unpaid wages, Rick is also entitled to an equal amount in liquidated damages. Rick cannot waive this right and an employer is liable for liquidated damages even after satisfying its liability for the unpaid overtime wages. *Schulte v. Gangi*, 328 U.S. 108 (1946) (an employee cannot waive or release his right to liquidated damages under the FLSA); *McConnell v. Applied Performance Technologies, Inc.*, No. C2-01-1273, 2002 U.S. Dist. LEXIS 27598, at *13 (S.D. Ohio March 18, 2002) (same). Given Chmura's history of mistreating Rick (by denying him a raise this Spring and terminating him in exchange for more affordable salespeople), we are confident that Chmura will not be able to claim any "good faith" safe harbor that might otherwise be attributable to such liquidated damages.

To be clear, based on the nature of his employment, we are confident that Rick was not exempt from the protections of the FLSA. Although he was a salesperson, he worked entirely inside Chmura's place of business, he did not exercise independent discretion, and he did not oversee other employees. To the extent Chmura intends to offer that Rick was exempt under the "retail or service establishments" exemption, federal regulations make clear that Chmura—which collects labor data for governmental agencies and other firms—does not provide "retail services." *See* 29 C.F.R. 779.318 (defining a retail establishment as "one which sells goods or services to the general public," "serves the everyday needs of the community, and distributes its products in "small quantities").

Importantly, 29 U.S.C. § 216 further states that "[t]he court in such action **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." (Emphasis added.) Awards of attorneys' fees and costs to successful FLSA plaintiffs are thus mandatory under § 216(b). Such fees are recoverable regardless of whether the employee recovers a relatively small amount in lost wages. See, e.g. *Lucio-Cantu v. Vela*, 239 Fed. Appx. 866 (5th Cir. Tex. 2007) (plaintiffs recovered $50,000 in attorneys' fees in action that resulted in approximately $4,500 in lost wages damages); *Cain v. Almeco USA, Inc.*, 2014 U.S. Dist. LEXIS 70900 (N.D. Ga. May 23, 2014) (attorneys' fees in the amount of $173,300.50 awarded to plaintiffs despite that amount being more than ten times the actual statutory damages). As it stands right now, our attorneys' fees on this matter are fairly minimal. Failure to resolve the matter at an early juncture, however, will inevitably lead to a dramatic increase in attorneys' fees

---

[2] Claims for unpaid overtime under the OMFWSA mirror claims under the FLSA. Ohio Revised Code § 4111.03(A). Thus, this letter's explanation of HSM's liability under the FLSA also applies to HSM's liability under the OMFWSA.

Rodney A. Satterwhite, Esq.
October 24, 2019
Page 4

and costs as we pursue this case into litigation, in which our fees will quickly and substantially increase.

As a final note, Rick can also assert a claim under Ohio's Prompt Pay Act, which provides that when an employer fails to promptly pay (within thirty days) an employee's earned wages, the employee has a cause of action against the employer. *See* R.C. 4113.15. Here, Rick earned overtime wages throughout his employment, and these wages have gone unpaid for far longer than thirty days.

Considering the strength of Rick's claims, we believe that Chmura has exposed itself to substantial liability. If a jury were to see the burden imposed on him, we have little doubt that it would not hesitate to find in Rick's favor and also award him considerable damages. As such, the severance currently offered is inadequate consideration for a release of Rick's claims, and we believe there is value to Chmura in resolving this matter prior to Rick formally filing it in a public forum. We anticipate that you will want to share this letter with appropriate personnel. After you have had an opportunity to do so, I hope that you will contact me so that we may discuss a resolution of Rick's claims. If we do not receive a response from you by October 31, 2019 however, we plan to pursue any and all remedies available at law on Rick's behalf.

Sincerely,

Ann-Marie Ahern

AMA/jsm

{01375101-1}