**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **CHMURA ECONOMICS &** | ) | **Case No. 3:19-cv-813** |
| **ANALYTICS, LLC,** | ) | **Judge Robert E. Payne** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RICHARD LOMBARDO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT RICHARD**
**LOMBARDO FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56**

## I.     INTRODUCTION

On October 31, 2019, Plaintiff Chmura Economics & Analytics, LLC ("Chmura") filed a Complaint against Defendant Richard A. Lombardo ("Lombardo") seeking to enforce a Confidentiality, Non-Competition & Non-Solicitation Agreement (the "Agreement") on the grounds that Lombardo "threatened" to breach it. Faced with a Motion to Dismiss, on December 9, 2019, Chmura filed a First Amended Complaint expanding its claims against Lombardo to include breach of the Agreement (Count I), declaratory judgment that the Agreement is valid and enforceable (Count II), violation of the Defend Trade Secrets Act (DTSA) (Count III), and conversion of a laptop and information contained thereon (Count IV). [Doc. #12].

No genuine issue of material fact exists as to any claim set forth in the Amended Complaint. Chmura's claims are based on an invalid and unenforceable Agreement. The non-competition provision of the Agreement is so broad it would prevent Lombardo from working for numerous

1

non-competitive companies across the entire U.S., including banks, financial investment firms and software companies, and the confidentiality provision is so broad that it would prevent Lombardo from making use of any of the knowledge and skills he acquired through his experience at Chmura **forever**.

Even if he had an obligation to keep the purported confidential information secret or return it (which he did not), Lombardo never breached the Agreement, never misappropriated any trade secrets, and never converted any laptop or any trade secrets contained thereon. For these, and other reasons, Lombardo is entitled to summary judgment on each of Chmura's claims.

On December 23, 2019, Lombardo filed a Counterclaim asserting, among other things, claims for violation of the Fair Labor Standards Act ("FLSA") (First Claim for Relief), the Ohio Prompt Pay Act (Fourth Claim for Relief) and Minimum Fair Wage Standards Act (Fifth Claim for Relief) for knowingly misclassifying Lombardo as an exempt employee and failing to pay him overtime.[1] [Doc. #19].

No genuine issue of material fact exists as to Chmura's **liability** for payment of unpaid overtime under the FLSA, Ohio Prompt Pay Act or Minimum Fair Wage Standards Act. The only issue remaining for the Court on these claims will be the amount of **damages** to which Lombardo is entitled.[2]

---

[1] Lombardo is also seeking declaratory judgment that the Agreement is invalid and unenforceable (Sixth Claim for Relief). The Sixth Claim for Relief is addressed as part of the arguments set forth in addressing Chmura's claim for declaratory judgment (Count II). Lombardo seeks affirmative summary judgment that the Agreement is unenforceable and invalid.

[2] The remaining claims for adjudication will be Lombardo's Second Claim for Relief (Retaliation under the FLSA) and Third Claim for Relief (Breach of Contract), as well as the amount of damages to which Lombardo is entitled to recover on each claim.

## II.    STATEMENT OF UNDISPUTED FACTS

### *The Parties*

1.      Chmura is a "software and consulting firm in the field of data analytics." Amended Complaint, ¶9. Chmura sells a "proprietary software" that "provides demographics and labor data, such as highly granular occupation forecasts and real-time data about job postings." Amended Complaint, ¶9; Declaration of Kyle West ("West Dec."), ¶3 (attached as Exhibit 1); Declaration of Richard A. Lombardo ("Lombardo Dec."), ¶2 (attached as Exhibit 2). "Chmura's team of economists, data scientists, and statisticians also provide consulting services to help clients interpret and use the data available through its software products." Amended Complaint, ¶9.

2.      Lombardo, a resident of Ohio who worked in Cleveland, Ohio, marketed and sold Chmura's software products nationwide. Amended Complaint, ¶¶10 and 11; Chmura Economics & Analytics, LLC's Objections and Responses to Richard Lombardo's First Request for Admissions (the "Admissions"), No. 39 (attached as Exhibit 3); Lombardo Dec., ¶¶1, 3, and 5.

### *The Non-Competition, Non-Solicitation and Confidentiality Agreement*

3.      On February 3, 2015, Chmura sent Lombardo a letter offering him employment as an Inside Sales Representative at Chmura. Lombardo Dec., ¶3 (a copy of the February 3, 2015 Letter is attached to the Lombardo Dec. as Exhibit A). Lombardo signed the February 3, 2015 Letter. Lombardo Dec., ¶3.

4.      Lombardo was hired to sell Chmura's technology platform, JobsEQ. Lombardo Dec., ¶3, Ex. A.

5.      On or about February 4, 2015, Lombardo and Chmura executed a Confidentiality, Non-Competition & Non-Solicitation Agreement (the "Agreement"). Amended Complaint, Ex. A; Lombardo Dec., ¶4 (a copy of the Agreement is attached to the Lombardo Dec. as Exhibit B).

6.      The Agreement contains the following covenants not to compete or interfere:

For a period beginning on the Effective Date of this Agreement and ending two (2) years after the employment relationship between Employee and the Company terminates for any reason whatsoever ("the Restricted Period"), Employee shall not:

***

(b)      directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or **on behalf of any person or entity that engages in the Company's Business** in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company;

(c)      directly indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of **providing products or services that are the same or substantially similar to the Company's Business** any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom Employee pursued on behalf of the Company, or of whom Employee had knowledge based on his/her employment with the Company because the Company provided products or services to or actively pursed [sic] the individual or entity during Employee's employment.

Amended Complaint, Ex. A (Agreement, Terms of Agreement, §3(b) & (c)) (emphasis added);

Lombardo Dec., Ex. B (Agreement, Terms of Agreement, §3(b) & (c)).

7.      The Agreement contains the following agreement not to disclose confidential information:

1.      **Confidentiality.**  […]

Accordingly,  **Employee shall not, during the term of his/her employment and thereafter regardless of the reason for his/her termination, reveal or disclose to any person outside of the Company, or use for his/her own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's**

4

**customers, clients or employees ("Confidential and Proprietary Information").** For purposes of this Agreement, Confidential and Proprietary Information includes, but is not limited to the Company's financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information of any type; information concerning methods of operation; proprietary systems or software; legal or regulatory information; cost and pricing information or policies; information concerning new or potential products or markets; models, practices, procedures, strategies or related information; research and/or analysis; and information concerning new or potential investors, customers, or clients.

Amended Complaint, Ex. A, §1; Lombardo Dec., Ex. B (Agreement, §1).

8.      Pursuant to the Agreement, the critical term "Company's Business" is broadly defined as "services in the field(s) of economics, workforce development, economic development, strategic planning, and software design and licensing." Amended Complaint, Ex. A (Agreement, Reasons for Agreement, ¶1); Lombardo Dec., Ex. B (Agreement, Reasons for Agreement, ¶1).

9.      The Agreement is governed by Virginia law. Amended Complaint, Ex. A (Agreement, Terms of Agreement, §7); Lombardo Dec., Ex. B (Agreement, Terms of Agreement, §7).

10.      The Agreement further provides that "[i]n the event of a breach or a threatened breach by Employee of any of the provisions of Sections 1, 2, or 3 of this Agreement, the Company shall be entitled to a […] permanent injunction restraining Employee from breaching the same." Amended Complaint, Ex. A (Agreement, Terms of Agreement, §10).  According to the Agreement, "Employee further agrees **that in the event of any such breach**, Company shall be entitled to all costs and expenses incurred as a result, including reasonable attorney's fees […]." Amended Complaint, Ex. A (Agreement, Terms of Agreement, §10). The Agreement does not provide for costs, expenses or attorney's fees for a "threatened breach."

11.     Upon commencing his employment on February 18, 2015, his title was Account Manager. Lombardo Dec., ¶5; Chmura Economics & Analytics, LLC's Objections and Responses to Richard Lombardo's First Interrogatories (the "Interrogatories"), Nos. 4, 6 (attached as Exhibit 4). As of May 15, 2017, Mr. Lombardo's title changed to Senior Account Manager. Interrogatories, No. 6.

### *Termination of Lombardo's Employment*

12.     Lombardo was consistently the top performing Account Manager and Senior Account Manager by every measure – sales, renewals and number of touches to prospects and existing customers. West Dec., ¶12. Lombardo's book of business represented more than half of all Chmura's sales and renewals of JobsEQ and its add-ons. West Dec., ¶12.

13.     Despite his performance, on October 2, 2019, Lombardo learned that Chmura was considering operational changes to the sales team and changes to the commission structure which would materially disadvantage Lombardo. Lombardo Dec., ¶9; Amended Complaint, ¶24.

14.     Lombardo felt hurt by this and spoke with his direct supervisor, Sales Manager Eli Auerbach ("Mr. Auerbach"), several times between October 3, 2019 and October 17, 2019. Lombardo Dec., ¶¶9, 10.

15.     On October 17, 2019 around 10:00 a.m., after a meeting with Mr. Auerbach, Lombardo was instructed to leave the office for the day. Lombardo Dec., ¶8.

16.     On October 21, 2019, Lombardo was placed on unpaid leave. Lombardo Dec., ¶9; Amended Complaint, ¶33.

17.     On October 31, 2019, Chmura terminated Lombardo's employment. Amended Complaint, ¶41; Lombardo Dec., ¶10; Admissions, No. 3.

*The Laptop*

18.     Lombardo was issued a laptop while employed at Chmura (the "Laptop"). Lombardo Dec., ¶¶11, 14.

19.     On December 24, 2019, Lombardo returned the Laptop to counsel for Chmura. Lombardo Dec., ¶14; Admissions, No. 31.

20.     According to Chmura, at the time of Lombardo's termination, the Laptop contained Lombardo's notes from two conferences (the Texas Economic Development Conference and the International Economic Development Council Conference) (the "Notes") and other "highly confidential and trade secret information related to Chmura's customers and sales." Interrogatories, No. 20. The Notes included information relating to conversations that Lombardo had with clients and prospective customers at those conferences. Lombardo Dec., ¶15.

21.     There is no evidence that Lombardo sold, disclosed, copied, stole, altered, concealed, or unlawfully accessed, converted, or transferred the Notes or any "highly confidential and trade secret information." Chmura's alleged claims are solely based on the retention of the Laptop "for several weeks after his separation from Chmura." Interrogatories, No. 22.

*Lombardo's Overtime Claims*

22.     Chmura was an enterprise engaged in commerce or in the production of goods for commerce during Lombardo's employment. Admissions, No. 1.

23.     Chmura's annual gross volume of sales was not less than $500,000 during the last three calendar years in which Lombardo was employed by Chmura. Admissions, No. 36.

24.     At all pertinent times, Lombardo was an employee of Chmura. Admissions, No. 4; Lombardo Dec., ¶¶5, 13.

25.     Despite being an inside sales representative whose primary duty was to sell JobsEQ and its add-ons, Chmura classified Lombardo as an exempt employee. Admission, No. 16; Interrogatories, No. 5; Lombardo Dec., ¶5; West Dec., ¶6.

26.     Chmura knew that Lombardo worked more than forty hours in a workweek during his employment at Chmura. Admission, No. 17. Lombardo regularly worked more than forty (40) hours each workweek. Lombardo Dec., ¶8.

27.     Lombardo regularly began work at or before 7:00 a.m. (EST) and left work at or after 5:30 p.m. (EST). Lombardo Dec., ¶6; West Dec., ¶¶13, 14, 15, 16 and 21.

28.     Lombardo's geographic sales region included California, Washington, Oklahoma, Texas, Minnesota and Iowa, among others. Lombardo Dec., ¶7. Accordingly, Lombardo would regularly receive calls on his way home from the office, after he had arrived home, or while out after work. Lombardo Dec., ¶7.

29.     Lombardo regularly worked more than forty (40) hours each workweek. Lombardo Dec., ¶8. Chmura did not pay Lombardo any compensation for the hours that he worked over forty (40) hours each workweek. Lombardo Dec., ¶8.

## III.    LAW AND ARGUMENT

A.      LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); see also *Freeman v. Blue Ridge Paper Prods.*, 529 Fed. Appx. 719, 722-23 (6th Cir. 2013). Under Rule 56(c), summary judgment is granted when a party with the burden of persuasion fails to produce

sufficient evidence on an essential element of its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

B.    LOMBARDO IS ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR AND AGAINST CHMURA ON EACH COUNT IN CHMURA'S AMENDED COMPLAINT.

    1.    <u>The Agreement on which Chmura's claims are based is invalid and unenforceable and, therefore, Lombardo is entitled to summary judgment on all claims based on the Agreement.[3]</u>

Each of Chmura's claims arises out of the Agreement, which contains overbroad non-competition, non-solicitation and confidentiality provisions. The Agreement is unenforceable and cannot form the basis of any claim for relief.

    *a.   The Non-Competition and Non-Solicitation Provisions Are Overbroad and Unenforceable.*

"Restrictive covenants binding a departed employee from engaging in employment are not favored generally and are strictly construed against the employer as to their validity." *Johnson v. E.R. Carpenter Co.*, 20 Va. Cir. 380, 384 (Richmond 1990). Under Virginia law, "[a] non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living and is not against public policy." *Omniplex World Servs. Corp. v. US Investigations Servs.*, 270 Va. 246, 249 (2005); *see also Alston Studios, Inc. v. Lloyd V. Gress & Associates*, 492 F.2d 279 (4th Cir. 1974). "Because such restrictive covenants are disfavored restraints on trade, the employer bears the burden of proof **and ambiguities in the contract will be construed in favor of the employee**." *Id.* (emphasis added). Whether a covenant not to compete is enforceable is a question of law. *Id.*

---

[3] The Sixth Claim for Relief set forth in the Counterclaim seeks a declaration that the Agreement is unenforceable. For the reasons set forth in this Section, Lombardo is entitled to Summary Judgment in his favor on the Sixth Claim for Relief set forth in the Counterclaim declaring that the Agreement is unenforceable.

According to the Supreme Court of Virginia:

> These standards have been developed over the years to strike a balance between an employee's right to secure gainful employment and the employer's legitimate interest in protection from competition by a former employee based on the employee's ability to use information or other elements associated with the employee's former employment. By its very name, a covenant not to compete is an agreement to prevent an employee from engaging in activities that actually or potentially compete with the employee's former employer. **Thus, covenants not to compete have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor.**

*Id.* (holding that the covenant not to compete was overbroad and unenforceable because the prohibition in the non-compete was not limited to employment that would be in competition with Omniplex) (emphasis added).

"Covenants that are ambiguous, that prevent an employee from doing work unrelated to the work that they previously did for the employer, or that go beyond the employer's legitimate interest are unenforceable." *Fame v. Allergy & Immunology, PLC*, 91 Va. Cir. 66, 72 (Roanoke 2015). "[A] covenant not to compete is functionally overbroad and unenforceable if it prevents an employee from working for companies not in competition with the former employer or it prevents an employee for pursuing noncompeting employment positions with any employer." *Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 212 (Fairfax Cty. 2009) (holding the non-compete, non-solicitation and confidentiality clauses over broad and unenforceable).

"Although Virginia courts will look to the intent of the parties to determine severability of clauses or provisions, they will not 'blue pencil' a contract to make it enforceable." *Better Living Components, Inc. v. Willard Coleman & Blue Ridge Truss & Supply*, 67 Va. Cir. 221, 226-227 (Albemarle Cty. 2005). "The Court will not edit, add to, or otherwise revise an agreement to make it enforceable." *Fame*, 91 Va. Cir. at 71.

The same standards that apply to non-competition agreements also apply to non-solicitation agreements. *Lasership, Inc*, 79 Va. Cir. at 214.

According to Chmura, it sells a "proprietary software" that "provides demographics and labor data, such as highly granular occupation forecasts and real-time data about job postings." Amended Complaint, ¶9. "Chmura's team of economists, data scientists, and statisticians also provide consulting services to help clients interpret and use the data available through it software products." Amended Complaint, ¶9. Lombardo's primary role was to sell the "proprietary software" – a data technology platform, JobsEQ -- nationwide.

Despite Chmura's narrow position in the market selling a niche software product and Lombardo's position solely as an inside sales representative for that software product, "Company's Business" is so broadly defined in the Agreement that, if enforced, Lombardo could not work in sales for **any company** providing any services in:

- Economics, which is defined by the Oxford Dictionary as "the branch of knowledge concerned with the production, consumption, and transfer of wealth" and which includes banks, insurance companies, financial investment firms, accounting firms, stock brokerages, and credit-card companies, among many others.

- Workforce development, which is undefined in the Agreement, but should include companies that provide worker training and human resource consulting firms.

- Economic development, which is undefined in the Agreement, but should include economic consulting firms such as Bain & Company and McKinsey & Company.

- Strategic planning, which Bain & Company defines as "a comprehensive process for determining what a business should become and how it can best achieve that

11

goal"[4] and should include management, operations, information technology, human resource or marketing firms.

- Software design and licensing, which is so vast it includes Microsoft, Alphabet (Google), IBM, Facebook, Oracle and many more large and small companies.

Likewise, Lombardo could not solicit or sell any **unrelated** services to customers of Chmura in the above industries despite the lack of competition with Chmura's products or services.

Paragraphs 3(b) and (c) of the Agreement are not narrowly drawn to protect any legitimate business interest of Chmura. Instead, they are overbroad and prohibit Lombardo from seeking gainful employment in these industries throughout the entire U.S. Paragraphs 3(b) (non-competition) and (c) (non-solicitation) of the Agreement are unenforceable. Therefore, Lombardo is entitled to summary judgment on Count II as it pertains to the non-competition and non-solicitation provisions in the Agreement.

### b. The Confidentiality Provision is Overbroad and Unenforceable.

"As with non-competition clauses and non-solicitation agreements, confidentiality agreements constitute unfavored restraints on trade." *Shenandoah Women's Healthcare, P.C. v. Scheidt*, 2017 Va. Cir. LEXIS 631, *16. The protection afforded to confidential information should reflect a balance between an employer who has invested time, money, and effort into developing such information and an employee's general right to make use of knowledge and skills acquired through experience in a field or industry for which he is best suited. *Lasership, Inc*, 79 Va. Cir. at 215.

To be enforceable, a confidentiality agreement must be narrowly drawn to protect the employer's legitimate business interest, not unduly burdensome on the employee's ability to earn

---

[4] *See* www.bain.com/insights/management-tools-strategic-planning

a living, and not against public policy. *Shenandoah Women's Healthcare* LEXIS 631, *16 citing *Lasership, Inc*, 79 Va. Cir. at 215. In assessing the reasonableness of agreements under these rules, Virginia courts focus on the duration of the restraint and the scope of the restraint. *Id.*

Terms of an agreement that preclude the disclosure of any information concerning the business to any person **for all time** make a confidentiality agreement invalid for that reason alone. *Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 341 (E.D. Va. Sept 8, 2015) 336, 341. *See also Shenandoah Women's Healthcare, P.C.,* LEXIS 631, *17 (holding that the clause "Physician shall not, during Physician's employment and **for all times thereafter**…" is unenforceable because its duration is unlimited) (emphasis added); *BB&T Ins. Servs., Inc. v. Thomas Rutherford, Inc.,* 80 Va. Circ. 174 2010 WL 7373709, at *5 (Va. Cir. 2010) (holding the confidentiality clause unenforceable because its duration was "for perpetuity").

Additionally, an agreement is not properly limited in scope if it expressly covers **all information**, period. *Shenandoah Women's Healthcare, P.C.,* LEXIS 631, *17. Even if a provision goes on to list specific areas covered, but also expressly notes that "all information" **is not limited to** those enumerated categories, it is not properly tailored. *Id. See also, Integrated Direct Mktg., LLC* 129 F. Supp. 3d at 341 (holding that defining confidential information as "any and all information not publicly known" is unenforceable as it would prevent an employee from ever disclosing information such as the identity of a company's janitor service vendor).

Here, the terms of the Confidentiality Agreement preclude the disclosure of **any information for all time**. The provision begins with:

> Employee shall not, **during the term of his/her employment and thereafter**…reveal or disclose to any person outside of the Company or use for his/her own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company.

Agreement, ¶1. (emphasis added). Because the Confidentiality Agreement contains no durational limit, it is invalid and unenforceable.

Additionally, contrary to law, the Agreement is not narrowly drafted to protect Chmura's legitimate business interest. It states, "For purposes of this Agreement, Confidential and Proprietary Information includes, **but is not limited to,** the Company's financial information or plans; sales and marketing or plans; business or strategic plans…" Agreement, ¶1 (emphasis added). The provision covers a vast scope of categories including pricing, policies, financing, potential products, potential investors, clients and customers, and personnel information.

Although this provision does list specific areas covered, is uses overly broad terms such as "or related information" as a way to expand its scope and cover additional categories that are not listed in the Agreement. More importantly, it expressly notes that "all information" **is not limited to** those enumerated categories within the provision. (emphasis added). These sweepingly broad restrictions would limit Lombardo's general right to use any of the knowledge or skills he gained through his employment with Chmura. Because the Confidentiality Agreement is not narrowly tailored to protect Chmura's legitimate business interests, it is invalid. Therefore, Lombardo is entitled to summary judgment on Count II as it pertains to the confidentiality provision in the Agreement.

      c. *Because the non-competition, non-solicitation and confidentiality provisions of the Agreement are invalid and unenforceable, all claims based on the provisions fail.*

Chmura bases Count I (breach of contract), Count III (violation of the Defend Trade Secrets Act) and Count IV (conversion) on the Agreement.

Count I asserts that Lombardo breached the Agreement by refusing to return "confidential and trade secret information belonging to Chmura after the termination of his employment…" Amended Complaint, ¶47.  Count III asserts that "Lombardo has misappropriated Chmura's trade secrets by retaining them after he no longer had any right to access them […]." Amended Complaint, ¶70. Chmura bases its conversion claim in Count IV on Lombardo's alleged failure to return "its confidential and trade secret information." Amended Complaint, ¶80. Because the confidentiality provision is unenforceable, Mr. Lombardo had no obligation to return any confidential or trade secret information to Chmura. Lombardo is entitled to summary judgment in his favor on Counts I, III, and IV for this reason alone, in addition to the reasons stated below.

2.  <u>Lombardo is entitled to summary judgment on Chmura's breach of contract claim (Count I).</u>

Chmura asserts that Lombardo breached the Agreement by failing to return the Laptop and confidential and trade secret information belonging to Chmura. Amended Complaint, ¶47. Chmrua's allegations fail.

The elements of a breach of contract claim are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004). "Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 156 (2009).

Here, Chmura cannot satisfy the elements of a breach of contract action. First, because the Agreement is unenforceable, Lombardo did not owe Chmura any contractual obligation to return the Laptop or any alleged confidential or trade secret information.  Second, Lombardo returned

the Laptop to Chmura on December 24, 2019. Finally, Chmura has failed to allege any damage

caused by Lombardo due to the retention of the Laptop and any alleged confidential or trade secret

information. Therefore, Lombardo is entitled to summary judgment on Count I.

      3.    <u>Lombardo is entitled to summary judgment on Count III for violation of the DTSA because Lombardo did not misappropriate Chmrua's trade secrets.</u>

Chmura alleges that Lombardo violated the DTSA "by retaining [trade secrets] after he no

longer had any right to access them, and after Chmura repeatedly [sic] their return on multiple

occasions." Amended Complaint, ¶70. Because Lombardo did not misappropriate any trade

secrets, Chmrua's claim fails.

To prove liability for an alleged violation of DTSA a Plaintiff must prove that "(1) it

own[ed] a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates

interstate or foreign commerce" as well as damages. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2019

U.S. Dist. LEXIS 139818, 2019 WL 3860198 (E.D. Va. August 16, 2019).  Under 18 U.S.C. §

1839(5) misappropriation is defined as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
> > (i) used improper means to acquire knowledge of the trade secret;
> > (ii) at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
> > > (i) derived from or through a person who had used improper means to acquire the trade secret;
> > > (ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
> > > (iii) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret…

"Improper means," is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" and does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." *Id.* § 1839(6).

For example, evidence that an employee improperly accessed company files on the server with the intent to convert a company's trade secrets (i.e. a data breach) is enough to establish misappropriation of trade secrets. *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 2018 U.S. Dist. LEXIS 17756 (E.D. Va. February 2, 2018).

Furthermore, misappropriation requires acts such as uploading, copying, selling, altering and concealing a company's trade secrets. *See generally, Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 2017 U.S. Dist. LEXIS 170678, 2017 WL 4613664 (W.D. Va. October 16, 2017). For instance, courts have found that evidence of looting trade secret documents with the goal of diverting customers, emailing confidential information from a work email to a personal email account for personal gain, and transferring confidential information from a secured device to a personal device with the intent to disclose trade secrets to a competitor, constitute misappropriation under DTSA. *Henry Schein, Inc. v. Cook*, 2016 U.S. Dist. LEXIS 81369, 2016 WL 3418537 (N.D. Cal. June 22, 2016); *Earthbound Corp. v. MiTek USA, Inc*., 2016 U.S. Dist. LEXIS 110960, 2016 WL 4418013.

Here, Lombardo did not do any one of the acts set forth above. The Complaint merely alleges that by retaining the Laptop, Lombardo misappropriated Chmura's trade secrets. Amended Complaint, ¶70.  However, there is no evidence that Lombardo sold, disclosed, copied, stole, altered, concealed, or unlawfully accessed, converted, or transferred any of Chmura's trade secrets. Furthermore, there is no evidence that Lombardo acquired any of Chmura's trade secrets through

improper means. According to the Complaint, "Over the course of his employment, Lombardo had access to, and used Chmura's confidential customer and target information, business platform, reputation, resources and goodwill to expand and service Chmura's existing client relationships…" Amended Complaint, ¶13. Any confidential information that Lombardo had access to was granted to him by Chmura during his employment and for his employment. Therefore, by definition, it was not misappropriated.

Furthermore, the information that Lombardo purportedly misappropriated are his own notes from two conferences he attended that contain the names of people he met. This contact information for these people was readily available to everyone else that attended the EIDC and Texas Conferences. The Notes themselves are simply not trade secrets.

Additionally, there is no evidence to support the accusation in the Amended Complaint that Lombardo has confidential information on his personal cell phone. Chmura fails to establish what information is contained on Lombardo's cell phone, how the information on Lombardo's phone is confidential or how it was misappropriated. The Amended Complaint generally states that "[o]n information and belief, Lombardo also continued to retain confidential information related to Chmura's business on his personal cell phone."  Amended Complaint, ¶37.

Because Chmura cannot show that Lombardo misappropriated any trade secrets on the Laptop or the alleged trade secrets on his personal phone, its claim under the DTSA fails.

4.     Lombardo is entitled to summary judgment on Count IV (Conversion).

Chmura filed a claim for conversion seeking return of the Laptop and "any other Chmura confidential and trade secret information in his possession." Amended Complaint, Count IV, Prayer for Relief. In its Responses to the Interrogatories, Chmura also seeks "lost profits resulting

from the loss of business opportunities caused by Lombardo's unlawful retention of Chmura's property and trade secrets." Interrogatories, No. 19. For numerous reasons, Count IV fails.

        a.      *Mr. Lombardo returned the Laptop and, therefore, any claim for conversion of the Laptop fails.*

"Conversion is the intentional exercise of dominion or control over another's property that so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the property." *Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121, (E.D. Va. 1991).[5]

Here, Lombardo returned the Laptop on December 24, 2019 and is not exercising dominion and control over it. Therefore, as to the Laptop, the conversion claim fails.

        b.      *Likewise, any claim for conversion of trade secrets fails.*

             i.     <u>Because the Agreement is unenforceable, any claim based on conversion of trade secrets fails.</u>

As set forth in detail above, the Agreement is unenforceable and invalid. Therefore, Lombardo is entitled to summary judgment on the conversion claim to the extent it is based on the obligations set forth in the non-competition, non-solicitation or confidentiality provisions of the Agreement.

             ii.     <u>The Virginia Uniform Trade Secrets Act preempts any claim for conversion.</u>

"[T]he Virginia Uniform Trade Secrets Act […] 'displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of trade secret." *Darton Environmental, Inc. v. FJUVO Collections, LLC*, 332 F.Supp.3d 1022, 1032 (W.D.

---

[5] Pursuant to Ohio law, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96 (1990).

Va. 2018) (citing Va. Code §59.1-341(A)). Conversion claims premised entirely on a misappropriation of trade secrets are preempted by the Virginia Uniform Trade Secrets Act. *Id.*; *see also Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 856 (E.D. Va. 2018).[6]

Here, Chmura bases its conversion claim on the conversion of confidential information and trade secrets. Because that claim is premised entirely on the misappropriation of trade secrets, it is preempted by the Virginia Uniform Trade Secrets Act.[7] Therefore, Lombardo is entitled to summary judgment on Count IV.

        iii.      <u>The Notes containing prospective clients cannot form the basis of a conversion claim.</u>

Chmura also bases its conversion claim on Lombardo's failure to turn over the Notes. Chmura's theory is that it could have closed deals with some of the attendees listed on the Notes had Lombardo not retained the Laptop containing the Notes. This claim fails.

"Potential 'future contracts' simply will not legally support a conversion claim […]." *Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121, 1131 (E.D. Va. 1991); *see also Alan J. Zuccari, Inc. v. Adams*, 42 Va. Cir. 132, 138 (Fairfax Cty. 1997).

Here, the potential future contracts constitute the only economic value of the notes. These simply cannot form the basis of a conversion claim. Therefore, Lombardo is entitled to summary judgment on Count IV.

C.     LOMBARDO IS ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR ON THE FIRST, FIFTH AND SIXTH CLAIMS FOR RELIEF FORTH IN THE COUNTERCLAIM.

---

[6] Just like the Virginia Uniform Trade Secrets Act, the Ohio Trade Secrets Act supersedes a claim for conversion of trade secrets. *R.C. 1333.61, et seq.; Midwest Energy Consultants, LLC v. Utility Pipeline, Ltd.*, 5th Dist. Stark, 2006-Ohio-6232, ¶48.

[7] Chmura has not filed brought a claim pursuant to the Virginia Uniform Trade Secrets Act or Ohio Uniform Trade Secrets Act.

1. <u>By failing to pay Lombardo overtime, Chmura violated the Fair Labor Standards Act (the "FLSA"), the Ohio Minimum Fair Wage Standards Act (the "OMFWSA") and the Ohio Prompt Pay Act (the "OPPA").</u>

Lombardo asserts that Chmura violated the FLSA (First Claim for Relief), OMFWSA (Fourth Claim for Relief) and OPPA (Fifth Claim for Relief) by failing to pay him for any overtime hours he worked during his tenure at Chmura. Because Chmura failed to pay him overtime, he is entitled to summary judgment as to Chmura's liability under the FLSA, OMFWSA and OPPA.

Pursuant to 29 U.S.C. §207(a)(1), "no employer shall employ any of his employees who in any workweek is engaged in commerce […], or is employed in an enterprise engaged in commerce […], for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." "To establish a violation of the FLSA for non-payment of overtime hours under 29 U.S.C. §207, plaintiff must show that: (1) the employees were employed by the defendant; (2) the employees were engaged in commerce or in the production of goods for commerce; (3) the employees were not compensated at a rate of 1.5 times their regular rate of pay for each hour worked in excess of forty hours for each work week; and (5) none of the exemptions in 29 U.S.C. §213 applied to the employees' position." *Acosta v. Mercy Services of Health, Inc.*, 2019 U.S. Dist. LEXIS 164351, * (E.D. Va. June 14, 2019). "An employer bears the burden of proving that a particular employee's job falls within such an exception." *Darveau v. Detecon, Inc.,* 515 F.3d 334, 337 (4th Cir. 2008).

Pursuant to O.R.C. §4111.03(A), "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938,' 52 Stat. 1060, 29 U.S.C.A.

207, 213, as amended." Pursuant to O.R.C. §4113.15(A), "[e]very employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day therefor, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

Here, Chmura, improperly classified Lombardo as an exempt employee and failed to pay Lombardo any overtime for the hours that he worked over 40 hours per workweek as required under both federal and Ohio law. For purposes of the FLSA, Chmura was an enterprise engaged in commerce during Lombardo's employment whose annual gross volume of sales was not less than $500,000 during the last three calendar years in which Lombardo was employed. At all pertinent times, Lombardo was an employee of Chmura with the title Account Manager and the job duties of an inside sales representative. Despite being an inside sales representative whose primary duty was to sell JobsEQ, Chmura classified Lombardo as an exempt employee instead of non-exempt. Chmura cannot sustain its burden to show that it is exempt from paying Lombardo overtime under any exception.

Chmura **<u>admits</u>** that Lombardo worked more than forty hours in a workweek during his employment at Chmura. Admissions, No. 17. In fact, Lombardo regularly worked more than forty hours each workweek. He was one of the hardest working Account Managers and his sales reflected that. Lombardo was responsible for more than half of all Chmura's sales and renewals of JobsEQ and its add-ons. He also was the top performing Account Manager by every measure – sales, renewals and the number of touches to prospects and existing customers. Lombardo was regularly in the office by 7:00 a.m. (EST) and worked until at least 5:30 p.m. (EST). Mr. Lombardo was regularly available for calls after 5:30 p.m. (EST) and routinely received calls from his central,

mountain and pacific time zone clients after 5:30 p.m. (EST). Therefore, Lombardo would work in excess of ten hours each work day and in excess of 50 hours each workweek.

Lombardo, however, was never paid a penny of overtime. Lombardo is entitled to overtime for each hour he worked in excess of 40 each workweek at the rate of 1.5 times his regular rate of pay under both the FLSA and Ohio law. Because Chmura has failed to pay Lombardo any overtime it is not only in violation of the FLSA and the OMFSWA, but also the OPPA. It is well outside of the time required for an employer to make the required payments under the OPPA. Lombardo is entitled to summary judgment on his claims under the FLSA, OMFSWA, and OPPA. The only issue left for adjudication is the amount of overtime to which Lombardo is entitled.

## IV.    CONCLUSION

For the reasons set forth in detail above, Lombardo respectfully requests that this Court grant Lombardo's Motion for Summary Judgment and enter Judgment in his favor and against Chmura as follows:

1. On Counts I (Breach of Contract), II (Declaratory Judgment), III (Violation of the Defend Trade Secrets Act), and IV (Conversion) of the First Amended Complaint;

2. On the Sixth Claim for Relief (Declaratory Judgment – Invalidity & Unenforceability of the Agreement) of Defendant Richard A. Lombardo's Counterclaim Against Plaintiff Chmura Economics & Analytics, LLC (the "Counterclaim"); and

3. On the First Claim for Relief (Violation of the FLSA), Fourth Claim for Relief (Violation of the Ohio Prompt Pay Act), Fifth Claim for Relief (Violation of the Ohio Minimum Fair Wage Standards Act) of the Counterclaim as to Chmura's liability.

Respectfully submitted,

/s/ Thomas J. Powell
Thomas J. Powell, Esq., VSB #27604
3603-D Chain Bridge Road
Fairffax, VA 22030-3244
Tel: (703) 293-9050 | Fax: (703) 293 9075
Email: tom@tjplaw.com

Christine Marie Cooper, Esq. (Ohio Bar
#0079160)
Koehler Fitzgerald LLC
1111 Superior Avenue East, Suite 2500
Cleveland, OH 44114
Tel: (219) 539-9376 | Fax: (216) 916-4369
Email: ccooper@koehler.law
*Attorneys for Defendant, Richard Lombardo*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing Memorandum in Support of Motion

for Summary Judgment has been served on this 15th day of May, 2020, via the Court's electronic

filing system upon the following:

Rodney A. Satterwhite (VA Bar No. 32907)
Heidi E. Siegmund (VA Bar No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*


/s/ Thomas J. Powell
Counsel for Richard Lombardo