# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CHMURA ECONOMICS & ANALYTICS, LLC, | Case No. 3:19-cv-00813 </br> Judge Robert E. Payne |
| Plaintiff, | |
| v. | |
| RICHARD LOMBARDO, | |
| Defendant. | |

### DECLARATION OF KYLE WEST

Pursuant to 28 U.S.C. §1746, I hereby declare as follows:

1. I am competent to give this declaration as I am over eighteen (18) years of age. The statements set forth in this Declaration are based upon my personal knowledge, and are true and correct to the best of my knowledge, information, and belief.

2. I am a former employee of Chmura Economics & Analytics, LLC ("Chmura"). I began my employment in July 2015. At the time I was employed with Chmura, I was based in Spokane, Washington.

3. Chmura is a software and consulting firm in the field of data analytics. Chmura nationally sells a labor data SaaS called JobsEQ, which is a labor market technology platform, and certain add-ons, such as RTI (Real Time Intelligence), Firm List, Extra Seats and Labor EQ (collectively, the "Platform").

4. The leadership of Chmura included Leslie Peterson, the President and Chief Strategy Officer, and Chris Chmura, the CEO and Chief Economist (collectively, the "Leadership").

5. When I began my employment at Chmura in July 2015, I was an Applied Economics and Technology Advisor. I remained in this role until February 2017. One of my duties in this position was to train new clients on the Platform. I also trained the Account Managers on the Platform and assisted them with developing their sales pitch. Accordingly, I began to work with Mr. Lombardo, who was an Account Manager at Chmura based in Cleveland, Ohio.

6. Mr. Lombardo's primary job responsibilities as an Account Manager were to call and e-mail potential clients to generate new business, and work with existing clients to maintain and build deeper relationships so that the clients would want to renew upon expiration of their contracts. Mr. Lombardo was later promoted to Senior Account Manager. His job responsibilities did not change.

7. In February 2017, I became the Managing Director of Sales. I remained in that position until approximately October 2017. While I held this position, I was Mr. Lombardo's direct supervisor.

8. In October 2017, I became the Director of Workforce Development. In that role, I was responsible for designing and developing the virtual learning content in what became the JobsEQ FIT Certification Program, a web-based, interactive learning program serving Chmura's software users. I remained in this position until December 2018.

9. In December 2018, I became the Director of Business Development. As the Director of Business Development, my job duties included collaborating and coordinating with

the sales team, which included Mr. Lombardo, to better serve current and prospective clients and generate new market opportunities.

10. In all of my roles at Chmura, I worked with Mr. Lombardo until he was terminated by Chmura in October 2019.

11. Mr. Lombardo was a very productive employee. Mr. Lombardo's productivity consistently outperformed other Account Managers and Senior Account Managers.

12. During my employment at Chmura, Mr. Lombardo was consistently the top performer by each measure – sales, renewals and number of touches. Mr. Lombardo always hit his sales benchmarks. In fact, Mr. Lombardo's book of business represented more than half of all Chmura's sales and renewals of JobsEQ and its add-ons.

13. Mr. Lombardo was an incredibly hard worker and was always accessible.

14. It was my impression that Mr. Lombardo would often be among the first to arrive at the Cleveland office by 7:00 a.m. EST and sometimes earlier.

15. Mr. Lombardo was consistently available for calls after 5:00 p.m. EST and on weekends.

16. I would regularly contact Mr. Lombardo between 5:00 p.m. EST and 8:00 p.m. EST (or even later) to discuss various client matters. Likewise, I would occasionally call Mr. Lombardo on the weekends. If he did not answer immediately, he would call back within a few minutes.

17. I never had a discussion with Mr. Lombardo regarding limiting his work hours or not exceeding a certain number of hours. Mr. Lombardo was permitted to work as many hours as he wanted.

18. To my knowledge, Chmura did not keep any records of the hours Mr. Lombardo worked nor was Mr. Lombardo ever required to track or log the hours he worked.

19. Mr. Lombardo did not have any authority to make personnel decisions, operational decisions or any other decisions regarding matters of significance to Chmura. Mr. Lombardo did not oversee or supervise other employees.

20. In effect, the Leadership made most every decision.

21. Based on my positions at Chmura, my consistent ability to reach Mr. Lombardo after hours, and based on my observations of the work habits of Mr. Lombardo, I believe that Mr. Lombardo was regularly available between 7:00 a.m. EST and 6:00 p.m. EST each weekday from July 2015 through his termination in October 2019. Because I was not in the same physical location, I do not know if Mr. Lombardo worked through lunch.

22. To my knowledge, Chmura did not properly compensate Mr. Lombardo for any overtime hours he worked.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22 day of April, 2020.

Kyle West