**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **CHMURA ECONOMICS &** | ) | **Case No. 3:19-cv-813** |
| **ANALYTICS, LLC,** | ) | **Judge Robert E. Payne** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **RICHARD LOMBARDO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF AND COUNTERCLAIM**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Plaintiff Chmura Economics & Analytics, LLC ("Chmura") wants to make this a case about a "bad boy" who refused to play by Chmura's rules. Chmura attempts at every turn to paint Defendant Richard A. Lombardo ("Lombardo") in a negative light (despite the years they financially benefitted by his outstanding performance as an inside sales representative). Chmura wants the Court to think this is a salacious and dramatic case (garnering interest with headings like "The Winter of Lombardo's Discontent" and "Lombardo Strikes Back"). No matter how hard it tries, this case is simply not controversial.

When the Court looks past the immaterial facts and looks at the real issues before it, this Court will find a case about:

- Whether a Non-Competition, Non-Solicitation and Confidentiality Agreement is enforceable under Virginia's strict laws (it is not);

- Whether Chmura breached its agreement to pay Lombardo commissions that it agreed to pay him pursuant to a letter dated February 3, 2015 and March 28, 2019 amendment outlining the terms of his employment (it did);

- Whether Chmura misclassified Lombardo, an inside sales representative, as an exempt employee and failed to pay Lombardo overtime in accordance with the Fair Labor Standards Act and Ohio law (it did); and

- Whether Lombardo converted a laptop and misappropriated trade secrets by retaining a laptop in accordance with instructions from his supervisor issued to him during his employment that contained his personal notes from two conferences he attended for less than two months after he was terminated from employment (he did not).

Chmura is not entitled to summary judgment in its favor.[1] With respect to Chmura's claims, they are based on an invalid and unenforceable Agreement. The non-competition provision of the Agreement is so broad it would prevent Lombardo from working for numerous non-competitive companies across the entire U.S., including banks, financial investment firms and software companies, and the confidentiality provision is so broad that it would prevent Lombardo from making use of any of the knowledge and skills he acquired through his experience at Chmura **forever**.

---

[1] Lombardo has filed a Motion for Summary Judgment on each of Chmura's claims (Counts I through IV), as well as on his claims for violations of the Fair Labor Standards Act (First Claim for Relief), the Ohio Prompt Pay Act (Fourth Claim for Relief) and Minimum Fair Wage Standards Act (Fifth Claim for Relief), and declaratory judgment that the Non-Competition, Non-Solicitation and Confidentiality Agreement is invalid and unenforceable (Sixth Claim for Relief) [Doc. #40 (Motion) and 41 (Memorandum in Support)]. Lombardo's Motion and Memorandum in Support are incorporated by reference herein.

Even if he had an obligation to keep the purported confidential information secret or return it (which he did not), Lombardo never breached the Agreement, never misappropriated any trade secrets, and never converted any laptop (returning it within two months of his termination).

With respect to Lombardo's claims, a genuine issue of material fact exists as to whether the February 3, 2015 letter created a contract pursuant to which Chmura agreed to pay Lombardo commissions at the rate therein as set forth in Lombardo's Third Claim for Relief and whether Chmura retaliated against Lombardo in violation of the FLSA as set forth in Lombardo's Second Claim for Relief. No genuine issue of material fact exists as to Lombardo's claims for violation of the Fair Labor Standards Act ("FLSA") (First Claim for Relief), the Ohio Prompt Pay Act (Fourth Claim for Relief) and Minimum Fair Wage Standards Act (Fifth Claim for Relief) for knowingly misclassifying Lombardo as an exempt employee and failing to pay him overtime. However, the Court should grant summary judgment to Lombardo on those claims, **not Chmura**.

Upon a review of the actual undisputed facts, Lombardo respectfully requests that this Court deny Chmura's Motion for Summary Judgment (the "Chmura's Motion") in its entirety.

## II.    STATEMENT OF GENUINE ISSUES

As part of its attempt to make this case salacious, many of Chmura's Undisputed Material Facts are neither undisputed nor material. The Court need only look to the following documents and testimony to deny Chmura's Motion for Summary Judgment: (1) the Confidentiality, Non-Competition & Non-Solicitation signed by Chmura and Lombardo; (2) the February 3, 2015 Letter signed by Chmura and Lombardo; (3) the March 28, 2019 Amendment to the February 3, 2015 Letter; (4) the Employee Handbook; (5) the Standard Operating Procedures; (6) Chmura's Responses to the First Set of Admissions; (7) Chmura's Answers to the First Set of Interrogatories; and (8) the testimony regarding Lombardo's job duties and decision-making authority.

3

*Background*

1.      In the approximately 4½ years that Lombardo was employed at Chmura, he had numerous direct supervisors – Leslie Peterson[2] (February 2015-January 2017), Kyle West (February 2017-November 2017), Ethan Trombley and Greg Chmura (December 2017-November 2018), Curtis Monk (December 2018-February 2019), Greg Chmura (March 2019), and Eli Auerbach (April 2019-October 2019).  Declaration of Richard Lombardo in Support of the Opposition ("Lombardo Opp. Dec."), ¶2 (attached as Exhibit B).

2.      The SEA Group (a/k/a the Leadership) is an acronym for the Strategic Enterprise Advisors Group and is composed of Dr. Christine Chmura ("Dr. Chmura"), the CEO of Chmura, John Chmura - the CTO of Chmura, Leslie Peterson - the President of Chmura, Sharon Simmons - the Director of Operations, and Xiaobing Shuai – the Director of Research.  Deposition Transcript of Christine Chmura ("C. Chmura Dep."), at 144-145 (attached as Exhibit C).

*Enforceability of The Confidentiality, Non-Competition & Non-Solicitation Agreement*

3.      On or about February 4, 2015, Lombardo and Chmura executed a Confidentiality, Non-Competition & Non-Solicitation Agreement (the "Agreement").[3]  Amended Complaint, Ex. A; Declaration of Richard A. Lombardo ("Lombardo MSJ Dec."), ¶4, Ex. B [Doc. #41, Attachment #2].

4.      The Agreement contains the following covenants not to compete or interfere:

> For a period beginning on the Effective Date of this Agreement and ending two (2) years after the employment relationship between Employee and the Company terminates for any reason whatsoever ("the Restricted Period"), Employee shall not:

---

[2] Leslie Peterson, the President of Chmura, testified that Lombardo "is a bad boy, but he is my bad boy and I am going to help him." Deposition of Leslie Peterson Volume II ("Peterson Dep. II"), at 168 (attached as Exhibit A).
[3] The Agreement is governed by Virginia law. Amended Complaint, Ex. A; Lombardo Dec., Ex. B.

***

(b)      directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or **on behalf of any person or entity that engages in the Company's Business** in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company;

(c)      directly indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of **providing products or services that are the same or substantially similar to the Company's Business** any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom Employee pursued on behalf of the Company, or of whom Employee had knowledge based on his/her employment with the Company because the Company provided products or services to or actively pursed [sic] the individual or entity during Employee's employment.

Amended Complaint, Ex. A (emphasis added); Lombardo MSJ Dec., Ex. B.

5.      The Agreement contains the following agreement not to disclose confidential information:

1.      **Confidentiality.** […]

Accordingly,      **Employee shall not, during the term of his/her employment and thereafter regardless of the reason for his/her termination, reveal or disclose to any person outside of the Company, or use for his/her own benefit or the benefit of any other person or entity, any confidential or proprietary information concerning the business or affairs of the Company, or concerning the Company's customers, clients or employees ("Confidential and Proprietary Information").** For purposes of this Agreement, Confidential and Proprietary Information includes, but is not limited to the Company's financial information or plans; sales and marketing information or plans; business or strategic plans; salary, bonus or other personnel information of any type; information concerning methods of operation; proprietary systems or software; legal or regulatory information; cost and pricing information or policies; information concerning new or potential products or markets; models, practices, procedures, strategies or related information; research

5

and/or analysis; and information concerning new or potential investors, customers, or clients.

Amended Complaint, Ex. A; Lombardo MSJ Dec., Ex. B.

6.      Pursuant to the Agreement, the critical term "Company's Business" is broadly defined as "services in the field(s) of economics, workforce development, economic development, strategic planning, and software design and licensing." Amended Complaint, Ex. A; Lombardo MSJ Dec., Ex. B.

7.      The Agreement further provides that "[i]n the event of a breach or a threatened breach by Employee of any of the provisions of Sections 1, 2, or 3 of this Agreement, the Company shall be entitled to a […] permanent injunction restraining Employee from breaching the same." Amended Complaint, Ex. A; Lombardo MSJ Dec., Ex. B.  According to the Agreement, "Employee further agrees **that in the event of any such breach**, Company shall be entitled to all costs and expenses incurred as a result, including reasonable attorney's fees […]." Amended Complaint, Ex. A; Lombardo MSJ Dec., Ex. B. The Agreement does not provide for costs, expenses or attorney's fees for a "threatened breach."

*Unpaid Commissions - The February 3, 2015 Letter and March 28, 2019 Amendment*[4]

8.      On February 3, 2015, Chmura sent Lombardo a letter offering him employment as an Inside Sales Representative at Chmura to sell Chmura's technology platform, JobsEQ. Lombardo MSJ Dec., ¶3, Ex. A. Lombardo signed the February 3, 2015 Letter. Lombardo MSJ Dec., ¶3.

---

[4] This section of facts disputes that Chmura could modify the commissions owed to Lombardo as set forth in Section II of the Statement of Undisputed Material Facts (Paragraphs 6-14). The facts set forth in Section II (beyond the terms contained in the February 3, 2015 Letter) are not material.

9.     The February 3, 2015 Letter provides for an annual base salary of $55,000 for year

1 and $50,000 for year 2+. Lombardo MSJ Dec., Ex. A. The February 3, 2015 Letter also provides

that Lombardo would receive a 15% commission rate for initial sales of JobsEQ and 3% for

renewals. Lombardo MSJ Dec., Ex. A.

10.     On March 28, 2019, Chmura sent Lombardo an Amendment to the February 3,

2015 Letter. Lombardo Opp. Dec., ¶5 (a copy of the Amendment is attached to the Lombardo Dec.

as Exhibit 4). The Amendment provides:

> This letter is intended to amend the terms of your employment previously
> agreed to by you and Chmura Economics & Analytics, LLC in the
> company's offer letter you dated February 4, 2015.
>
> The following changes have been made:
>
> The reference to annual merit increases is hereby deleted. In addition,
> Chmura would like to clarify that commissions become payable once
> Chmura receives the payment on the sale.
>
> **All other terms and conditions of the offer letter remain unchanged.**
> Please indicate your willingness to accept these changes by signing below.

Lombardo Opp. Dec., Ex. 4. On April 18, 2019, Lombardo signed the Amendment.

Lombardo Opp. Dec., Ex. 4.

11.     Accordingly, throughout his employment at Chmura, the controlling written

agreements provided that Lombardo was entitled to commissions at the rate of 15% for initial sales

and 3% for renewals.  Lombardo MSJ Dec., Ex. A. Despite this agreement, Chmura often modified

the commissions Lombardo received. For example, in 2017, Lombardo closed a sale with the

Oklahoma Department of Commerce, which required a perfunctory Request for Proposal ("RFP").

Lombardo Opp. Dec., ¶6. Not only was he not permitted to complete the RFP, but he was not paid

any commissions on the sale because Chmura stated after the deal was closed that it would not pay

commissions on sales that required an RFP. Lombardo Opp. Dec., ¶6.  Neither the February 3, 2015 Letter nor the Amendment carves out an exception for RFPs. Lombardo MSJ Dec., Ex. A; Lombardo Opp. Dec., Ex. 3, 4.

### The FLSA and Ohio Law Violations

#### Lombardo Worked More than Forty (40) Hours in a Workweek[5]

12.     Chmura was an enterprise engaged in commerce or in the production of goods for commerce during Lombardo's employment. Chmura Economics & Analytics, LLC's Objections and Responses to Richard Lombardo's First Request for Admissions ("Admissions"), No. 1 (attached to Doc. #41 as Exhibit 3).

13.     Chmura's annual gross volume of sales was not less than $500,000 during the last three calendar years in which Lombardo was employed by Chmura. Admissions, No. 36.

14.     At all pertinent times, Lombardo was an employee of Chmura. Admissions, No. 4; Lombardo MSJ Dec., ¶¶5, 13.

15.     Chmura misclassified Lombardo as an exempt employee. Admission, No. 16; Chmura Economics & Analytics, LLC's Objections and Responses to Richard Lombardo's First Interrogatories ("Interrogatories"), No. 5 (attached to Doc. #41 as Exhibit 4); Lombardo MSJ Dec., ¶5; Declaration of Kyle West ("West Dec."), ¶6 [attached to Doc. #41 as Exhibit 1].

16.     Chmura knew that Lombardo worked more than forty hours in a workweek during his employment at Chmura. Admission, No. 17. Lombardo regularly worked more than forty hours each workweek. Lombardo MSJ Dec., ¶8. Chmura operated on a forty hour work week. C. Chmura Dep., at 71-72, Ex. Q (p. 7).

---

[5] Chmura does not argue that Lombardo did not work in excess of forty hours per workweek. However, certain key facts are set forth in this section for the Court's convenience.

17.     Lombardo regularly began work at or before 7:00 a.m. (EST) and left work at or after 5:30 p.m. (EST). Lombardo MSJ Dec., ¶6; West Dec., ¶¶13, 14, 15, 16 and 21; Deposition of Eli Auerbach Volume I ("Auerbach Dep. I"), at 58-59 (attached to Doc. #35 as Exhibit 11). Lombardo regularly skipped lunch. Auerbach Dep. I, at 59.

18.     Lombardo's geographic sales region included California, Washington, Oklahoma, Texas, Minnesota and Iowa, among others. Lombardo MSJ Dec., ¶7. Accordingly, Lombardo would regularly receive calls on his way home from the office, after he had arrived home, or while out after work. Lombardo MSJ Dec., ¶7.

19.     Lombardo regularly worked more than forty hours each workweek. Lombardo MSJ Dec., ¶8. Chmura did not pay Lombardo any compensation for the hours that he worked over forty hours each workweek. Lombardo MSJ Dec., ¶8.

*Lombardo's Job Duties and Responsibilities*[6]

20.     Throughout his employment, Lombardo was an inside sales representative. His primary job duties were to:

- Generate new business (Auerbach Dep. I, at 14)

- Obtain renewals from existing clients (Auerbach Dep. I, at 14)

21.     His primary job duties did not change during his employment. Lombardo Opp. Dec., ¶3. Lombardo was consistently the top performing Account Manager by every measure – sales, renewals and number of touches to prospects and existing customers.[7] West Dec., ¶12; Peterson Dep., II, at 154. Lombardo's book of business represented approximately 47% of all

---

[6] This section of facts disputes the implication that Lombardo acted with discretion and authority as suggested by Section IV of the Statement of Undisputed Material Facts (Paragraphs 19-37).

[7] Austen Steele was the next highest performer whose book of business represented approximately 31% of all new JobsEQ sales between 2015 and 3rd Quarter 2019. C. Chmura Dep., at 109-111, Exhibit X.

Chmura's new JobsEQ sales between 2015 and 3rd Quarter 2019. West Dec., ¶12; Peterson Dep. II, at 155; C. Chmura Dep., at 109-111; Ex. X.

22.    Lombardo was never responsible for supervising other employees. Deposition of Eli Auerbach Volume II ("Auerbach Dep. II"), at 173 (attached as Exhibit D).

23.    Lombardo was never responsible for making decisions about company strategy. Auerbach Dep. II, at 173.

24.    Lombardo was never responsible for setting spending priorities. Auerbach Dep. II, at 174.

25.    Lombardo was never responsible for establishing policies or procedures for Chmura. Auerbach Dep. II, at 174.

26.    Lombardo did not decide what conferences or trade shows he would attend; the Conference Planning Committee made those decision. Auerbach Dep. II, at 174-175; Deposition of Kyle West ("West Dep."), at 88 (attached as Exhibit E). **Lombardo was not and never has been on the Conference Planning Committee**. West Dep., at 89. In fact, Lombardo could only give input as to how he would get to the conferences and trade shows, but Leadership made the ultimate decision on travel. Auerbach Dep. II, at 175.

27.    Lombardo did not visit clients in person. Auerbach Dep. II, at 175.

28.    Lombardo did not determine the prices that Chmura charged for JobsEQ or any other software. Peterson Dep. II, at 230-231. The Pricing Committee determined the pricing, as well as any discounts it deemed appropriate for Account Managers and Senior Account Managers to offer to potential clients. Deposition of Leslie Peterson Volume I ("Peterson Dep. I"), at 95 (attached to Doc. #35 as Exhibit 2); Peterson Dep. II, at 230-231. The Pricing Committee has created approximately 25 pricing matrices during Lombardo's employment, however, only the

most current can be used by the Account Managers and Senior Account Managers. Peterson Dep. II, at 232. **Lombardo was not and never has been on the Pricing Committee.** *Id.* at 231. The members of the Pricing Committee are Greg Chmura, Sharon Simmons and Leslie Peterson. *Id.*

29.     A pricing matrix contains the price of JobsEQ and the add-ons for the different industry segments to whom Chmura offers its software. Peterson Dep. II, at 233-239, Ex. AA. The pricing matrix also contains the discount that the Account Managers and Senior Account Managers are allowed by the Pricing Committee to offer to potential clients as determined by the Pricing Committee. *Id.*   The allowed discounts were dictated by the Pricing Committee, the Account Managers had no independent discretion. Peterson Dep. I, at 95; Peterson Dep. II, at 230-231.

30.     Chmura maintained a roadmap (the "Roadmap") that contained a list of feature requests, new products and changes to existing products offered by Chmura. Deposition of John Chmura Volume II ("J. Chmura Dep."), at 95 (attached as Exhibit F). Lombardo did not have decision-making authority to determine what items on the roadmap would be prioritized. *Id.* at 103-104. Lombardo acted as a pass through for requests by clients and prospective clients of Chmura and advocated for certain items to be placed on or prioritized within the Roadmap, so that he could secure sales. J. Chmura Dep., at 97, 103. He did not develop any products, including Career Concourse, Clippie (a product that Chmura's competitor offers) or GDP. *Id.*

31.     Again, Lombardo was not on any decision-making committees at Chmura – not the Conference Planning Committee, the SEA Group (or the Leadership), or the Pricing Committee.

32.     He merely acted as an intermediary between clients, potential clients and other employees, the Committees or the SEA Group. Auerbach Dep. II, at 174.

33.     The SEA Group (Peterson, in particular) micromanaged Chmura's sales team. For example, Peterson, the President of Chmura, **reviewed all expense reports** for the Account

Managers and Senior Account Managers. Peterson Dep. II, at 172. Peterson used the opportunity of her expense report review to chastise Lombardo for attempting to attract new business by developing a personal relationship with a potential client at a conference and for not getting the "conference rate" for a hotel stay. Peterson Dep. II, at 170-171, Ex. R. These are just two of many examples of Peterson's micromanagement of Lombardo that left no room for Lombardo to either have or exercise autonomy or decision-making authority – in every manner, Lombardo was under the control of Peterson and other members of management.

34.     When not being micromanaged by the SEA Group, every action an Account Manager or Senior Account Manager could take was governed by the Standard Operating Procedures or Employee Handbook. C. Chmura Dep., at 71-72, 77-78; Lombardo Opp. Dec., ¶4, Exs. 1 and 2. Lombardo was required to comply with the Standard Operating Procedures and Employee Handbook. Lombardo Opp. Dec., ¶4.

<em><u>Evidence of Willfulness</u></em>

35.     Chmura knew or showed reckless disregard for whether Account Managers should be classified as non-exempt employees and paid overtime. In approximately 2015, Chmura retained the services of a staffing agency, SLAIT, Inc., to place a temporary employee for the position of Account Manager. Peterson Dep. II, at 152. SLAIT, Inc. placed Jennifer Ludvik with Chmura. *Id.* Chmura was "testing her out to be an account manager." *Id.* Ludvik made a claim that she should be paid for more than forty hours a week. *Id.*; *see also* West Dep., at 80 ("[w]e had an inside sales person, her name was Jennifer Ludvik, L-u-d-v-i-k, I believe, who as, at least my impression, she was terminated for working overtime and billing us, you know, for time and a half or double time"). Accordingly, SLAIT, Inc. billed Chmura for the hours that Ludvik worked, which exceeded forty (40) hours in a workweek. Peterson Dep. II, at 152-153. The bill included

12

payment for the overtime hours. *Id.* Chmura refused to pay for those hours and, ultimately SLAIT, Inc. paid Ludvik for those hours. *Id.* at 153.

36.     Therefore, as early as 2015, Chmura was put on notice that an Account Manager (albeit one obtained through a staffing agency) should be paid overtime. *Id.* at 152-153. Despite this notice, Chmura did not consider reclassifying the Account Managers from exempt to non-exempt. *Id*. at 153-154.

37.     In fact, despite the demand by Ludvik, Chmura did not seek the advice of counsel regarding the classification of Account Managers or rely on any information in deciding to classify Account Managers as exempt. C. Chmura Dep., at 68. It proceeded with blinders on and "saw them no differently than we saw the economists, the data scientists, the computer technicians." *Id.* at 66.

38.     During the second week of October 2019, Lombardo informed his supervisor, Eli Auerbach, that he was entitled to overtime for the hours he worked above forty (40) hours a week. Auerbach Dep. II, at 181-182. Auerbach did not inform Leadership of Lombardo's demand. *Id.*

   *Retaliation*[8]

39.     While Chmura asserts that Lombardo was terminated because of his "threats," the evidence supports the conclusion that he was terminated because of his demands for overtime pay (which, based on Lombardo's compensation and number of hours worked, was likely to be substantial).[9] In addition to informing Auerbach during the second week of October 2019 that he was entitled to overtime pay, on October 24, 2019, Lombardo (through counsel) informed Chmura

---

[8] This section of facts disputes Paragraph 56 of the Statement of Undisputed Material Facts.
[9] Paragraphs 45 and 46 of the Statement of Undisputed Material Facts misstates Auerbach's understanding of his conversation between he and Lombardo. Auerbach believed that Lombardo would take two actions if he was not compensated appropriately: (1) he would file a lawsuit to recover the monies due to him; and (2) he would work for a competitor after the Agreement expired. Therefore, according to Auerbach, Chmura would be hit twice – once as a result of a lawsuit and twice when he lawfully went to work for a competitor after the expiration of the Agreement. Auerbach Dep. I, at 115-118. Additionally, Auerbach testified that Lombardo was owed commissions at the time he was terminated. Auerbach Dep. I, at 108.

(through counsel) that Chmura had violated the Fair Labor Standards Act and Ohio law by failing to pay him for all hours worked over forty. Lombardo Opp. Dec., ¶7 (A copy of the October 24, 2019 Letter is attached to the Lombardo Dec. as Exhibit 2). The October 24, 2019 Letter sets forth in detail Lombardo's claims. Lombardo Opp. Dec., Ex. 5.

40.     As of October 24, 2019, Lombardo had not been terminated, but was on unpaid leave. Lombardo Opp. Dec., Ex. 5.

41.     On October 31, 2019, in response to the October 24, 2019 Letter, Chmura sent a copy of a Complaint it had filed that same day and notified Lombardo that his employment was terminated because of the October 24, 2019 Letter notifying Chmura of its obligations to pay him overtime:

> Finally, your letter stated that Chmura terminated Mr. Lombardo's employment on October 17. This is incorrect. The Company placed him on unpaid leave to afford him a reasonable opportunity to consider the proposed Separation Agreement. **Given your response on his behalf, that offer is withdrawn and he should consider his employment terminated effective today.**

Lombardo Opp. Dec., ¶9, Ex. 6. The "response on his behalf" was the notification to Chmura's Leadership that it had violated the FLSA.

42.     Since his termination, Account Managers were reclassified as non-exempt employees and are limited to working only forty hour workweeks. Auerbach Dep. I, at 145.

*The Laptop and the Notes*[10]

43.     Lombardo had access to a shared a laptop while employed at Chmura (the "Laptop"). Lombardo MSJ Dec., ¶¶11, 14; J. Chmura Dep., at 114. There was no sign in or out

---

[10] This section of facts disputes Paragraph 17 to the extent that Chmura is suggesting Lombardo was required to return the Laptop immediately, as well as Paragraph 53 of the Statement of Undisputed Material Facts. This section also disputes the implications set forth in Paragraphs 42 through 51 of the Statement of Undisputed Material Facts that Lombardo took any action to harm Chmura.

sheet for the Laptop. J. Chmura Dep., at 114. The shared Laptop was kept in the conference room and any employee could walk in and just take one without asking. *Id.*, at 115.

44.    The Laptop did not have any remote management software installed. J. Chmura Dep., at 117. Multi-factor authentication was not required to log in to the Laptop. *Id.* at 117-118. The Laptop was not encrypted. *Id.* at 120.

45.    On the day that Chmura demanded return of the Laptop, Auerbach instructed Lombardo not to return the Laptop until Lombardo had signed the Separation Agreement. Auerbach Dep. II, 177-178, Ex. I. The exchange that was to occur was as follows: Lombardo would sign the Separation Agreement, receive his personal effects from the office and return the Laptop. Auerbach Dep. II, Ex. I. In essence, Chmura was withholding Lombardo's personal effects in an attempt to get him to sign a Separation Agreement that would have grossly undercompensated him for the unpaid overtime that he was due. Lombardo refused to sign. To date, he has not received his personal effects. Lombardo Opp. Dec., ¶10.

46.    On October 17, 2019 (prior to being placed on unpaid leave), Chmura terminated Lombardo's access to all material programs, including SalesForce, Office 365, JobsEQ, and Go to Meeting. J. Chmura Dep., at 119-120.

47.    According to Chmura, at the time of Lombardo's termination, the Laptop contained Lombardo's notes from two conferences (the Texas Economic Development Conference and the International Economic Development Council Conference) (the "Notes") and other "highly confidential and trade secret information related to Chmura's customers and sales." Interrogatories, No. 20. The Notes included information relating to conversations that Lombardo had with clients and prospective customers at those conferences. Lombardo MSJ Dec., ¶15.

48.     On December 24, 2019, Lombardo returned the Laptop to counsel for Chmura. Lombardo MSJ Dec., ¶14; Admissions, No. 31.

49.     There is no evidence that Lombardo sold, disclosed, copied, stole, altered, concealed, or unlawfully accessed, converted, or transferred the Notes or any "highly confidential and trade secret information." Chmura's alleged claims are solely based on the retention of the Laptop "for several weeks after his separation from Chmura."  Interrogatories, No. 22.

## III.   LAW AND ARGUMENT

A.     CHMURA IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS OF ITS AMENDED COMPLAINT.

1.     <u>The Agreement on which Chmura's claims are based is invalid and unenforceable and, therefore, Chmura is not entitled to summary judgment on any claim.</u>

Chmura is moving for summary judgment on Count II of the Amended Complaint for a declaration that the entire Agreement is enforceable. Additionally, Counts I (Breach of the Agreement), Counts III (Conversion) and Counts IV (Violation of the Defends Trade Secrets Act) all hinge on the validity of the confidentiality provision of the Agreement. Because the Agreement is unenforceable, Chmura is not entitled to summary judgment on any claim for relief.

In Section III.B. of his Memorandum in Support of Motion for Summary Judgment (the "Memorandum"), Lombardo demonstrates that the non-competition and non-solicitation provisions in the Agreement are invalid and unenforceable because they are overbroad. *See Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 212 (Fairfax Cty. 2009). Lombardo also demonstrates that the confidentiality provision in the Agreement is invalid and unenforceable because it is overbroad and not temporally limited. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 341 (E.D. Va. Sept 8, 2015) 336, 341. *See also Shenandoah Women's Healthcare, P.C.,* 2017 Va. Cir. LEXIS 631, *17 (Mar. 13, 2017); *BB&T Ins. Servs., Inc. v. Thomas Rutherford, Inc.,* 80

Va. Circ. 174 2010 WL 7373709, *5 (Va. Cir. 2010) (holding the confidentiality clause unenforceable because its duration was "for perpetuity").

Rather than repeat the arguments in this Opposition, Lombardo incorporates the arguments set forth in Section III.B. of his Memorandum by reference.[11] [Doc. #41] Not only should the Court deny Chmura's Motion on its claims, but (in connection with his own Motion for Summary Judgment) it should grant Lombardo summary judgment in his favor on each of Chmura's claims.

2.   Chmura is not entitled to summary judgment on its breach of contract claim (Count I).

In its Motion, Chmura argues that Lombardo breached the confidentiality provision in the Agreement.[12] Specifically, Chmura argues that Lombardo breached the Agreement by failing to return the Laptop which contained "customer contacts and JobsEQ usage patterns, along with time-sensitive and confidential meeting notes that required immediate follow-up." Memorandum, at 16. Lombardo is also seeking summary judgment in his favor on Count I and hereby incorporates by reference the arguments made in Section III.B.2. of his Motion herein. Expanding on the arguments set forth in his Motion, Lombardo states that Chmura is not entitled to summary judgment on Count I for the additional reasons set forth below.

The elements of a breach of contract claim are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004). [13] "Proof of damages is an essential element of a breach of contract claim, and failure to

---

[11] Lombardo also incorporates the Statement of Undisputed Facts by reference. [Doc. #41]

[12] Chmura does not argue that Lombardo breached the non-competition or non-solicitation provisions in the Agreement. *See* Motion, generally.

[13] The elements are the same under Ohio law. *Harry London Candies v. Bernie J. Kosar Greeting Card Co.*, 2002 Ohio App. LEXIS 420 (Summit Cty. Feb 6, 2002) (citing *Donor v. Snapp*, 98 Ohio App. 3d 597, 600, 649 N.E.2d 42, 44 (Miami Cty. 1994)).

prove that element warrants dismissal of the claim." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 156 (2009).

Here, the confidentiality provision in the Agreement is invalid and unenforceable. Therefore, it could not be breached by Lombardo. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, at 341.

To the extent the Court does not grant Lombardo's Motion, a genuine issue of material fact exists as to whether Chmura was damaged by Lombardo's retention of the Laptop and Notes. Chmura argues that it consistently closes sales with 24% of customers who receive demos. This may have been the case when Lombardo was employed at Chmura, but that is not the case today. Any "damage" occurred as a result of Chmura's own actions – terminating its best performing Account Manager. Lombardo was responsible for approximately 50% of the new JobsEQ sales at Chmura. Between Lombardo and Austen Steel, a former Account Manager who resigned from Chmura in September 2019, they generated more than 77% of New JobsEQ sales between 2015 and the third quarter of 2019. A genuine issue of material fact exists as to whether the remaining Account Managers and any new Account Managers could close 24% of the sales of customers who receive demos.

Either Lombardo is entitled to summary judgment on Count I for breach of the Agreement or a genuine issue of material fact exists as to whether Chmura was damaged by the purported breach. Therefore, the Court should deny Chmura's Motion as to Count I.

3.  <u>Chmura is not is entitled to summary judgment on Count III for violation of the DTSA.</u>

Chmura argues that it is entitled to summary judgment on its claim for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"). Motion at 20. Lombardo is also

seeking summary judgment in his favor on Count III and hereby incorporates by reference the arguments made in Section III.B.3. of his Motion herein. Expanding on the arguments set forth in his Motion, Lombardo states that Chmura is not entitled to summary judgment on Count III for the additional reasons set forth below.

First, Chmura's claim for misappropriation is solely based on the confidentiality provision in the Agreement. Because the confidentiality provision is invalid and unenforceable (*Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, at 341), Lombardo had no obligation to keep any information, including the Notes and the list of authorized users, confidential. The DTSA claim necessarily fails.

Second, to the extent the Court does not grant Lombardo's Motion, a genuine issue of material fact exists as to whether the Notes, which were Lombardo's personal notes, from a conference, constitutes Chmura's trade secrets for purposes of the DTSA. Personal notes are not trade secrets, especially if the information can be recreated through publicly available information. *See Continental Credit Corporation v. Dragovich*, 2013 U.S. Dist. LEXIS 93952, *11 (Dist. Co. July 1, 2013). The Notes could have been recreated with the use of an attendee list from the two conferences. In fact, Chmura should have had the Account Managers follow up with all attendees from the conference, regardless of whether they spoke with Lombardo at the two conferences (it would just be smart sales practice). Chmura mischaracterizes the information contained within the Notes. The Notes do not contain any significant information that could not be obtained through a short conversation with the contacts contained on an attendee list. Therefore, the Notes are not trade secrets.

Third, to the extent the Court does not grant Lombardo's Motion, a genuine issue of material fact exists as to whether Chmura took reasonable steps to maintain the secrecy of the

information. Anyone at Chmura could walk out with the Laptop and all the information contained thereon. There was no multi-factor authentication to access the desktop, but rather just a simple password. Chmura did not have any remote management software on the Laptop to control it when out of the office. Chmura did not take any reasonable steps to protect the information contained on the Laptop.

Finally, to the extent the Court does not grant Lombardo's Motion, a genuine issue of material fact exists as to whether Chmura was damaged. Just as with its claim for breach of contract, Chmura has no evidence that its current Account Managers could close any sales at all, much less at the same rate as Lombardo and for relationships that Lombardo was building. Moreover, it has asserted absolutely no damages arising out of the list of authorized users it purports was contained on the Laptop. While Chmura asserts that this list was on the Laptop, it fails to set forth a single fact showing that Lombardo did anything with the list (because he did not do anything with the list) or that Chmura did not have access to the list without the Laptop (because it did have access).

For these reasons and the reasons set forth in Lombardo's Motion, Chmura is not entitled to summary judgment on Count III.

4.    Chmura is not entitled to summary judgment on Count IV (Conversion).

Chmura asserts that Lombardo converted the Laptop by keeping possession of it for approximately two months after his termination. Motion at 19. Chmura does not argue that Lombardo converted any other property, solely the Laptop.[14]

---

[14] Lombardo has fully briefed this claim in Section III.B.4. of his Motion, which is incorporated by reference herein.

As argued in his Motion, because Lombardo returned the Laptop, any claim for conversion fails. "Conversion is the intentional exercise of dominion or control over another's property that so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the property." *Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121, (E.D. Va. 1991).[15]

Here, Lombardo returned the Laptop on December 24, 2019 and is not exercising dominion and control over it. Chmura has not sustained any damages as a result of Lombardo's possession of the Laptop for less than two months after his termination. Therefore, as to the Laptop, the conversion claim fails, and Chmura is not entitled to summary judgment.

B.   CHMURA IS NOT ENTITLED TO SUMMARY JUDGMENT ON LOMBARDO'S THE COUNTERCLAIMS.[16]

1.   <u>Lombardo was not a highly compensated employee as defined by the FLSA.</u>

Chmura argues that Lombardo is a highly compensated employee and is, therefore, exempt from the overtime requirements under the FLSA. Motion at 24. Chmura is wrong.

"The highly compensated employee exemption applies where (1) an employee makes at least $100,000 annually, including at least $455 per week on a salary basis, and (2) the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." *Ganci v. MBF Inspection Services, Inc.*, 323 F.R.D. 249, (S.D. Ohio 2017); 29 C.F.R. 541.601(a)(1). The exemption only applies to employees whose primary duty includes performing office or non-manual work. 29 C.F.R. 541.601(d).

---

[15] Pursuant to Ohio law, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96 (1990).

[16] Lombardo incorporates by reference herein the arguments set forth in Section III.C. of his Motion.

Chmura appears to argue that Lombardo is exempt because he regularly performed the exempt duties or responsibilities of an administrative employee.[17] To qualify as an exempt administrative employee, the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" **and** "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. 200(a)(2) and (3).

To be "directly related to the management or general business operations of the employer" "an employee must perform work directly related to assisting with the running or servicing of the business." 29 C.F.R. 201(a). 29 C.F.R. 201(b) provides:

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

"In considering the 'character of the employee's job as a whole' the 'primary' duty test seeks to distinguish between tasks 'directly related to management policies or general business operations' (or 'the administrative operations of a business') as distinguished from the 'production' or 'sales' work." *Henry v. Quicken Loans, Inc.*, 2009 U.S. Dist. LEXIS 91033, *72-74 (E.D. Mich. July 16, 2009) (holding that "a reasonable jury could conclude that 'the character of the job as a whole' of the loan consultants/mortgage bankers centers around sales"). In analyzing the primary duties test,

---

[17] Lombardo would not be exempt under either the executive exemption or professional exemption. With respect to the executive exemption, Chmura cannot satisfy its burden to establish the duties test pursuant to 29 C.F.R. 541.700. Likewise, Lombardo is not a professional employee as defined in 29 C.F.R. 541.300 et seq. because his job did not require knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction nor did it require invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

courts 'focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance valuations.'" *Clark v. Shop24Global, LLC*, 77 F. Supp. 3d 660, 671 (S.D. Ohio 2015) (citing *Schaefer v Ind. Mich. Power Co.*, 359 F.3d 394, 407 (6th Cir. 2004). How an employee spends his time is a question of fact. *Walls v. Host Int'l, Inc.*, 2015 U.S. Dist. LEXIS 136959, *24 (N.D. Ohio Oct. 7, 2015); *Yuen v. U.S. Asia Commer. Dev. Corp*, 974 F. Supp. 515, 526 (E.D. Va. 1997).

"The exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. 202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* Pursuant to 29 C.F.R. 202(b), the factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer of matters that have a significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

"The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. 541.202(c).

"The exercise of discretion and independent judgment must be more than the use of skills in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. 541.202(e). A disagreement about the extent of the supervision received is enough to deny summary judgment in favor of an employer on an administrative exemption. *Sutherland v. SOSi Int'l, Ltd.*, 541 F. Supp. 2d 787, 791 (E.D. Va. 2008). "Whether an employee's duties require 'real and substantial' discretion, and whether this discretion is exercised with respect to 'matters of consequence' are questions of fact.'" *Yuen*, 974 F. Supp. 515 at 527-528.

"FLSA overtime exemptions are 'affirmative defenses on which the employer has the burden of proof.'" *Roshon*, 314 F. Supp. 3d at 859 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)). "To obtain summary judgment, a movant who bears the burden of proof on an issue asserted as an affirmative defense must establish all the essential elements of the defense to warrant judgment in his favor." *Id.*

Here, Chmura cannot sustain its burden to prove that Lombardo met either the primary duty test or the independent discretion test. First, Lombardo was an inside sales representative, whose primary job duty was to sell for Chmura. As set forth in the February 3, 2015 Letter establishing his employment, Lombardo was hired as an inside sales representative. He had to meet a quota of at least 3 sales per month. His entire employment was based on sales, not any other tasks. Sales was the primary performance measure. In fact, the February 3, 2015 offer letter does not set forth a single other job duty, expectation or performance measure. According to Lombardo's direct supervisor, Lombardo's primary duty was to sell Chmura's SaaS – JobsEQ – to new clients and to procure renewals from existing clients. Lombardo not only spent the majority of his time selling JobsEQ and procuring renewals, he merely passed along additional information

that helped sell JobsEQ and procure renewals. Lombardo was an inside sales representative in its truest sense.

Second, Lombardo was not permitted to exercise any discretion and independent judgment, much less discretion and independent judgment related to matters of significance. He was not responsible for supervising other employees, making decisions about company strategy, setting spending priorities, or establishing policies or procedures.

Lombardo could not decide what conferences or trade shows he would attend. He could not even decide whether to take a client or potential client out for a drink at a conference or make his own travel arrangements without approval.

He could not determine what price to charge for any Chmura product, including JobsEQ. Even the discounts he was permitted to give were dictated by Chmura. The pricing was set forth in a pricing matrix that the Account Managers had to follow.

Lombardo had no decision-making authority with respect to the Roadmap (the list of feature requests, new products and changes to existing products offered by Chmura). He could not prioritize items on the Roadmap, add items to the Roadmap or develop items on the Roadmap. Lombardo merely acted as a conduit for the requests of potential clients and existing clients.

He was not on any decision-making committee. He was not on the Conference Committee (which determined what conferences Account Managers would attend) or the Pricing Committee (which set the pricing and allowable discounts for Chmura's products). And he was certainly not part of the SEA Group or Leadership. Furthermore, Lombardo (and all other Account Managers) were micromanaged by the SEA Group and Peterson, in particular.

Chmura set forth every instruction related to Account Managers (and other employees) in the Employee Handbook and the Standard Operating Procedures. Account Managers were

expected to follow these instructions. Simply put, Lombardo could not exercise any discretion or independent judgment, much less related to matters of significance. That was solely handled by the SEA Group and the various committees.

At a minimum, a genuine issue of material fact exists as to whether Lombardo's primary duties included management or general operations of Chmura's business and whether Lombardo exercised any discretion and independent judgment related to matters of significance. Chmura is not entitled to summary judgment on Lombardo's FLSA claim.[18]

2. A genuine issue of material fact exists as to whether the FLSA violation was willful.

Chmura argues that the Court must limit Lombardo's "recovery under the FLSA to two years because any violation of the FLSA was not willful." Motion at 32. Chmura's arguments ignore material facts that create a genuine issue of material fact as to whether Chmura knowingly or recklessly misclassified the Account Managers as exempt.

"[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. §255(a). "An FLSA violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.'" *Stansbury v. Faulkner*, 2020 U.S. Dist. LEXIS 27171, *30 (W.D. Tenn. Feb. 18, 2020) (citing *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)); *see also Viciedo v. New Horizons Computer Learning Ctr. Of Columbus, Ltd.*, 246 F. Supp. 2d 886, 901 (S.D. Ohio 2003); *Smith v. Cent. Sec. Bureau, Inc.*, 231 F. Supp. 3d 455, 462-463 (W.D. Va. 2002).

---

[18] Chmura addresses both Lombardo's FLSA claim and violation of the Ohio Minimum Fair Wage Standards Act together. For the reasons that Chmura is not entitled to summary judgment on the FLSA claim (First Claim for Relief), it is also not entitled to summary judgment on Lombardo's Ohio Minimum Fair Wage Standards Act claim (Fifth Claim for Relief) or the Ohio Prompt Pay Act claim (Fourth Claim for Relief). With respect to the Ohio Prompt Pay Act claim, because Chmura has not paid all of the overtime wages that Lombardo is entitled to, it has necessarily violated the Ohio Prompt Pay Act, which requires timely payment of wages. O.R.C. §4113.15(a).

"The willfulness determination is a question of fact. A district court should only answer the question as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party." *Stansbury*, 2020 U.S. Dist. LEXIS 27171 at *30.

Here, there is sufficient evidence that Chmura either knew it should pay overtime to Account Managers or showed reckless disregard about the matter. Chmura knew as early as 2015 that an Account Manager may be entitled to overtime compensation. In 2015, Chmura retained a staffing agency, SLAIT, Inc., to place a temporary employee for the position of Account Manager. SLAIT, Inc. placed Jennifer Ludvik. Because Ludvik worked more than forty (40) hours in a week, she made a claim that he should be paid overtime for the additional hours. Accordingly, SLAIT, Inc. billed Chmura for the hours that Ludvik worked, including the hours that exceeded forty (40) hours. Chmura simply refused to pay, sticking SLAIT, Inc. with the bill. A genuine issue of material fact exists as to whether Chmura simply turned a blind eye, acting with reckless disregard about the matter.

3.   A genuine issue of material fact exists as to whether Chmura retaliated against Lombardo due to his demand for overtime.

Chmura argues that no evidence supports his retaliation claim under the FLSA. Motion at 33. However, a genuine issue of material fact exists as to Lombardo's retaliation claim.

Pursuant to 29 U.S.C. §215(a)(3) of the FLSA, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act […]." "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal

27

connection between the protected activity and the adverse employment action." *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action." *Id.*

Termination of employment is a materially adverse employment action. *Id.* To show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not taken the protected action. *Allen v. Michigan Department of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999).

Here, a genuine issue of material fact exists as to whether Chmura retaliated against him. First, Lombardo engaged in a protected activity – demanding payment for the overtime hours that he worked. He demanded payment twice in October 2019 – once to his direct supervisor, Auerbach, and a second time through counsel to Chmura's counsel. Second, Chmura knew he was demanding payment for overtime, as the demand went to his direct supervisor and to Chmura's counsel. Third, in response to Lombardo's demand through counsel, Chmura responded removed him from leave and terminated him stating "[g]iven your response on his behalf, that offer is withdrawn, and he should consider his employment terminated effective today." Finally, by the very words of the October 31, 2019 letter from Chmura's counsel, Lombardo's October 24, 2019 demand for overtime was the cause of his termination. Summary judgment on the retaliation claim should be denied.

4.   A genuine issue of material fact exists as to Lombardo's breach of contract claim for unpaid commissions.

Chmura asserts that Lombardo's breach of contract claim for unpaid commissions fails because the February 3, 2015 Letter does not constitute a contract and Chmura was entitled to unilaterally modify the contract.

The elements of a breach of contract claim are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004).[19] Regardless of whether an employee is "at-will," a contract for the payment of commissions at a defined rate is enforceable and cannot be modified at the will of the employer. *Watkins v. Universal Chemicals & Coatings, Inc.*, 1992 Ohio App. LEXIS 5835, *9 (10th Dist. 1992).

Here, a genuine issue of material fact exists as to whether a contract exists by which Chmura is bound to pay Lombardo 15% commissions on initial sales and 3% commissions on renewals. The February 3, 2015 Letter provides for that Lombardo would receive a 15% commission rate for initial sales of JobsEQ and 3% for renewals. On March 28, 2019, Chmura (in a writing signed by Lombardo) modified the terms of the February 3, 2015 Letter. The Amendment only modified (eliminated) the reference to annual merit increases and clarified how commissions would become payable. It did not change the amount of the commissions. The Amendment further stated that "[a]ll other terms and conditions of the offer letter remain unchanged." The February 3, 2015 Letter as modified by the March 28, 2019 Amendment, constitute a contract between the parties requiring Chmura to pay Lombardo commissions at the rate of 15% for an initial sale and 3% for renewals. At a minimum, a genuine issue of material fact exists as to whether a contract

---

[19] The elements are the same under Ohio law. *Harry London Candies v. Bernie J. Kosar Greeting Card Co.*, 2002 Ohio App. LEXIS 420 (Summit Cty. Feb 6, 2002) (citing *Donor v. Snapp*, 98 Ohio App. 3d 597, 600, 649 N.E.2d 42, 44 (Miami Cty. 1994)).

requiring Chmura to pay commissions at the rate set forth in the February 3, 2015 was created between Chmura and Lombardo.

Chmura argues that it could modify the commissions unilaterally and at any point in time. What then was the purpose of the Amendment stating that the terms regarding payment of commissions remained unchanged? The argument does not make sense and is unsupported by the law.[20]

Chmura does not dispute that it failed to pay Lombardo commissions at the rate set forth in the February 3, 2015 Letter. It simply believes it had a right to do so at any time. Chmura is not entitled to summary judgment on Lombardo's breach of contract claim for unpaid commissions.

## IV.    CONCLUSION

For the reasons set forth above, the Court should not be swayed by Chmura's attempt to make this a salacious case. The law and material facts do not support summary judgment in Chmura's favor. Therefore, Lombardo respectfully requests that this Court deny Chmura's Motion in its entirety.

---

[20] The case cited by Chmura – *Pate v. Quick Solutions, Inc.*, 10th Dist. Franklin No. 10AP-767, 2011-Ohio-3925 – fails to address a situation where an employer contracted to pay commissions to an employee at a set rate and is, therefore, inapplicable and distinguishable.

Respectfully submitted,


/s/ Thomas J. Powell
Thomas J. Powell, Esq., VSB #27604
3603-D Chain Bridge Road
Fairfax, VA 22030-3244
Tel: (703) 293-9050 | Fax: (703) 293 9075
Email: tom@tjplaw.com

Christine M. Cooper, Esq. (Ohio Bar #0079160)
Koehler Fitzgerald LLC
1111 Superior Avenue East, Suite 2500
Cleveland, OH 44114
Tel: (219) 539-9376 | Fax: (216) 916-4369  Email:
ccooper@koehler.law
*Attorneys for Defendant, Richard Lombardo*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing Memorandum in Opposition to Motion for Summary Judgment has been served on this 29th day of May, 2020, via the Court's electronic filing system upon the following:

Rodney A. Satterwhite (VA Bar No. 32907)
Heidi E. Siegmund (VA Bar No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*


                                                    /s/ Thomas J. Powell
                                                    Counsel for Richard Lombardo