# EXHIBIT A

## SEPARATION AND RELEASE AGREEMENT

This Separation and Release Agreement (the "Agreement") is made between Chmura Economics & Analytics ("Chmura" or the "Company") and Richard A. Lombardo ("Lombardo" or "Employee"). Chmura and Lombardo may collectively be referred to as the "Parties."

WHEREAS, the Company is engaged in the business of providing services in the fields of economics, workforce development, economic development, strategic planning, and software design and licensing;

WHEREAS, the Company employs Lombardo as an Senior Account Manager;

WHEREAS, through his employment with the Company, Lombardo has had access to confidential information, trade secrets or and other valuable proprietary information of the Company;

WHEREAS, during his employment, the Company has paid Lombardo to build and maintain relationships and goodwill with customers and prospective customers on behalf of the Company;

WHEREAS, the Company and Lombardo are parties to a certain Confidentiality, Non-Competition and Non-Solicitation Agreement effective February 4, 2015 (the "Restrictive Covenant Agreement");

WHEREAS, Lombardo's employment relationship with Chmura will cease on October 28, 2019 or the Execution Date of this Agreement, whichever is earlier; and

WHEREAS, the Parties desire to end their business relationship amicably and to resolve all issues between them in a mutually satisfactory manner.

THEREFORE, in exchange for the promises and the mutual covenants contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.      Payment. Subject to Lombardo's compliance with Paragraphs 3, 4, 5 and 15 below, Chmura shall pay Lombardo the total amount of TEN THOUSAND DOLLARS ($10,000.00). Such payment shall be made within seven (7) days of Lombardo's compliance with the provisions of Paragraph 4 (Cooperation and Transition of Customer Accounts).

CHMURA0201418

Lombardo and the Company agree that this payment is above and beyond any and all remuneration to which Employee would otherwise be entitled.  Lombardo also acknowledges and agrees that that payments and performances described in this Agreement are all that Employee shall be entitled to receive from the Company, except for vested benefits, if any, to which Employee may be entitled under the Company's ERISA employee benefit plans.  Such payment will be less all applicable state and federal payroll deductions and withholdings.

2.     <u>Resignation; No Reemployment</u>.  Lombardo resigns from employment with Chmura effective on the Execution Date.  Lombardo agrees that he will not seek, and the Company shall have no obligation to provide, employment with the Company in the future.

3.     <u>Confidential Information</u>. Lombardo agrees to protect, and not to use, the Company's Confidential Information, as set out below.

a.   *Definition*.  "Confidential Information" means any and all data or other information about the business of the Company that is not generally known in the industry or otherwise publicly available.   This includes, but is not limited to, customer pricing, rates, customer lists, customer leads, supplier pricing, business practices, plans, policies, inventions, processes and compilations of information, drawings and designs, records and specifications, as well as information related to the development of products, software, costs, management policies, and plans for the Company.  Confidential Information includes, but is not limited to, information that constitutes a trade secret under applicable law.  Confidential Information does not include information which is generally known in the trade or industry, or which is not gained as a result of a breach of this Agreement or of any other confidentiality obligation to the Company.

b.   *Access to Confidential Information*.  Lombardo acknowledges that his responsibilities for the Company have involved access to and review of Confidential Information. Lombardo agrees that all Confidential Information is and shall be the exclusive property of the Company.

c.   *Acknowledgement*.  Lombardo acknowledges that the Company (1) derives actual and potential economic value from the Confidential Information not being generally known to the public or to other persons who can obtain economic value

2

CHMURA0201419

from its disclosure or use; and (2) the Company has expended and currently expends substantial effort to acquire Confidential Information and to maintain the secrecy of Confidential Information.

d. *Confidential Treatment.*  Lombardo shall at all times keep secret and confidential, and not use or disclose, any Confidential Information which he now knows or may come to know, except as such use or disclosure may be required in connection with Lombardo's employment with the Company, unless (1) an officer of the Company expressly authorizes such use or disclosure in writing; (2) compelled by judicial or government authority; or (3) such Confidential Information becomes public knowledge for reasons other than Lombardo's breach of this Agreement or of any other confidentiality obligation to the Company. Nothing in this Agreement, however, will be construed to prohibit or restrict Lombardo from filing a charge with the United States Equal Employment Opportunity Commission ("EEOC") or other administrative agency or from participating in any proceeding or investigation conducted by the EEOC or any other administrative agency. Furthermore, nothing in this Agreement will be interpreted or implied as limiting his right to engage in concerted activity as provided by the National Labor Relations Act.

e. *Third Party Information.*  Lombardo additionally understands that, in the course of employment with the Company, he may have received from third parties confidential or proprietary information ("Third Party Information") subject to Lombardo's duty to maintain the confidentiality of such information and to use it only for limited purposes.  During his employment with the Company and thereafter, Lombardo will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than the Company's employees who need to know such information in connection with their employment with the Company) or use, except in connection with Lombardo's employment with the Company, Third Party Information unless (1) an officer of the Company or the third party to which the information belongs expressly authorizes such use or disclosure in writing; (2) compelled by judicial or government authority; or (3) such Third Party Information becomes public knowledge for reasons other than

3

CHMURA0201420

Lombardo's breach of this Agreement or of any other confidentiality obligation to the Company.

f.  *Non-Removal of Confidential Information.*  Lombardo shall not copy, remove from the premises or devices of the Company or retain without prior written consent of the President of the Company, any written, electronic or other tangible material containing Confidential Information.

g.  *Return of Company Property.*  On the Execution Date of this Agreement, Lombardo shall deliver to the Company any and all Company property, including, but not limited to, any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Confidential Information.  By executing a form of Exhibit A to this Agreement on the Execution Date, Lombardo shall certify, in writing and under penalty of perjury, that he has complied with this provision.

h.  *Notice to Company.*  In the event Lombardo becomes legally compelled to disclose Confidential Information pursuant to a subpoena, summons, order, or other judicial or government process, he shall provide the Company with prompt notice thereof so that the Company may seek a protective order or other appropriate remedy or waive compliance with the relevant provisions of this Agreement.  In the event the Company does not obtain such protective order or other remedy or does not grant a waiver, Lombardo shall disclose only such Confidential Information as he is legally required to disclose.

i.  *Defend Trade Secrets Act Notice of Immunity.*  Notwithstanding the nondisclosure and confidentiality obligations set forth in this Agreement, Lombardo understands that he shall not be held criminally or civilly liable under any Federal or State trade secrets laws for the disclosure of a trade secret that (1) is made i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney and ii) solely for the purpose of reporting or investigating a suspected violation of law or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

4

CHMURA0201421

Lombardo also understands that if he files a lawsuit for retaliation by the Company for reporting a suspected violation of law, Lombardo may disclose the Company's trade secrets to his attorney and use the trade secret information in the court proceeding if Lombardo: (1) files any document containing the trade secret under seal; and (2) does not disclose the trade secret, except pursuant to court order.

4.   Cooperation and Transition of Customer Accounts.   On the Execution Date of this Agreement, Lombardo shall cooperate and assist in good faith in the transition of his Customer accounts to other representatives as designated by the Company.  Such participation shall include, but not be limited to, Lombardo identifying the location and status of relevant working papers, the current status of ongoing projects, and any other information requested by the Company relating to his work.  Working papers include, but are not limited to, notes and business cards from any conference Lombardo has attended on behalf of the Company (including but not limited to the International Economic Development Council Annual Conference and the Texas Economic Development Council Annual Conference.) Such cooperation shall also include, as requested and approved by the Company, contacting Customers and Prospective Customers to introduce them to the individual(s) designated by the Company to service their accounts on the Company's behalf in the future.

5.   Non-Solicitation and Non-Competition.

a.   *Definitions*.  For purposes of this Agreement, the following terms are defined as follows:

i.   Customer. "Customer" means any customer of the Company to whom the Company provides goods or services as of the Execution Date of this Agreement and (i) with whom Lombardo had material contact or communication as a result of employment with the Company during the twenty-four (24) months immediately preceding the Execution Date; (ii) for whom Lombardo had supervisory, sales or service responsibility during the twenty-four (24) months immediately preceding the Execution Date; (iii) for whom Lombardo received any commission payment during the twenty-four (24) months immediately preceding the Execution Date;

5

CHMURA0201422

or (iv) about whom Lombardo obtained Confidential Information or Third Party Information as a result of employment with the Company.

ii.  Prospective Customer. "Prospective Customer" means any person or entity (i) whom Lombardo solicited on behalf of the Company to provide goods or services during the twelve (12) months immediately preceding the Execution Date or (ii) about whom Lombardo obtained Confidential Information or Third Party Information as a result of employment with the Company.

iii.  Competitive Products or Services.  "Competitive Products or Services" means any services or products competitive with any product or service sold, offered for sale, or under development by the Company as of the Execution Date.

iv.  Restricted Territory.  "Restricted Territory" means (i) the State of Ohio; (ii) any state where, as of the Execution Date, the Company maintains an office; and (iii) any other state where, as of the Execution Date, the Company does business.

b.  *Lombardo's Non-Solicitation Obligations.*   Lombardo recognizes that the Company has developed, at considerable expense, relationships with, and knowledge about, Customers and Prospective Customers which are major part of the Company's value.  During the course of his employment with the Company, Lombardo has had substantial contact with these Customers and Prospective Customers and has had access to Confidential Information about them.  To protect the value of the Company's business, Lombardo agrees that, except in the regular course of employment by the Company or as the Company may expressly authorize or direct in writing, during Employee's employment with the Company, and for a period of two (2) years immediately following the Execution Date, Lombardo shall not directly or indirectly:

i.  Contact, solicit, or assist in the solicitation of any of the Company's Customers for the purpose of selling or providing any Competitive

6

CHMURA0201423

Products or Services for or on behalf of any person or entity other than the Company;

ii. Contact, solicit, or assist in the solicitation of any of the Company's Prospective Customers for the purpose of selling or providing any Competitive Products or Services for or on behalf of any person or entity other than the Company;

iii. Provide or accept any request to provide Competitive Products or Services to any Customer for or on behalf of any person or entity other than the Company;

iv. Provide or accept any request to provide Competitive Products or Services to any Prospective Customers for or on behalf of any person or entity other than the Company; and

v. Induce or attempt to induce any of the Company's Customers to cease doing business in whole or in part with the Company.

vi. Evidence of Breach.  Lombardo acknowledges that a Customer's written or verbal cancellation notice to Company in favor of Lombardo or of any person or entity with whom or which he is directly or indirectly affiliated shall be prima facie evidence of a violation of this Paragraph 5.b. of the Agreement and establishes a rebuttable presumption in favor of the Company that Lombardo has violated this Agreement.

c. *No Solicitation of Employees.* Except in the regular course of employment by the Company or as the Company may expressly authorize or direct in writing, during Lombardo's employment with the Company, and for a period of two (2) years immediately following the Execution Date, Lombardo shall not directly or indirectly contact, solicit or assist in the solicitation of any "Then-Present Employee" for the purpose of directly or indirectly providing Competitive Products or Services.  For purposes of this Agreement, "Then-Present Employee" means any individual who is an employee or officer of the Company on the Execution Date and (1) with whom Lombardo had contact as a result of

7

employment with the Company; or (2) whose identity Lombardo learned as a result of employment with the Company.

d. *Lombardo's Non-Competition Obligations.* Lombardo recognizes that the Company has a legitimate business interest in protecting itself from unfair competition from former employees who have had access to Confidential Information and Company Customers. Lombardo therefore agrees that, during his employment with the Company and for a period of two (2) years immediately following the Execution Date, Lombardo shall not, within the "Restricted Territory," directly or indirectly, in the same or a similar capacity to that in which he performed services for the Company, become an employee, agent, officer, director, owner, partner, shareholder, consultant, advisor, or other affiliate of any entity which competes with the Company in the provision of Competitive Products or Services (as defined above). Such entities include, but are not limited to, EMSI, Burning Glass, GIS Webtech, GIS Planning, Atlas Integrated, Avalanche Consulting, Headlight, Camoin 310, TIP Strategies, and the affiliates of these entities. The Parties agree that this Paragraph 5.d. is not intended to restrict or to prohibit Lombardo from owning stock or other securities of a publicly-held corporation in which Lombardo (i) does not possess beneficial ownership interest of more than five percent (5%) of the voting capital of such corporation and (ii) does not participate in any management or advisory capacity.

6. <u>Survival of Covenants</u>. The agreements and covenants made by Lombardo and the obligations of Lombardo in this Agreement shall survive the termination of Lombardo's employment. Lombardo authorizes the Company to reveal the terms of this Agreement to any future or prospective employer of Lombardo.

7. <u>Reasonableness of Restrictions</u>. Lombardo acknowledges that the restrictions stated herein are reasonable in terms of duration and scope, are necessary to protect the legitimate business interests of the Company and do not unduly impede or interfere with his ability to earn a livelihood.

8. <u>Severability</u>. If any provision in this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless

8

CHMURA0201425

continue in full force and effect without being impaired or invalidated in any way. Each Subparagraph of this Agreement (for example, Subparagraphs b.i. - b.v. of Paragraph 5) is, and will be construed as, a separate and divisible covenant each containing a separate and divisible obligation of Lombardo in addition to any other obligation set forth in this Agreement.  If, for any reason, any one or more of the provisions and covenants in this Agreement is held to be illegal, invalid or unenforceable, in whole or in part, the remaining covenants will remain valid and enforceable and will not be affected by such holding.  Additionally, if, for any reason, any one or more of the provisions or covenants in this Agreement is held to be excessively broad as to duration, scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent permissible under applicable law.

9.      Tolling.  If Lombardo violates any covenant contained in this Agreement, the duration of the covenant shall be computed from the earlier of (a) the date Lombardo resumes compliance with the covenant, or (b) the date the Company is granted injunctive relief by a court of competent jurisdiction enforcing the covenant, reduced by the number of days Lombardo was not in violation of the covenant, unless such tolling is prohibited by law.

10.      Remedies.  Lombardo acknowledges that his covenants and obligations under this Agreement are of special, unique, unusual, extraordinary and intellectual character.  As such, any breach or threatened breach by Lombardo would result in irreparable harm, for which the Company will not have an adequate remedy at law.  Accordingly, Lombardo agrees that in the event of a breach by him of any of the provisions of this Agreement, the Company:  (a) shall be entitled to recover any and all payments made to Lombardo pursuant to this Agreement; (b) shall be relieved of any obligation to make any outstanding payments required by this Agreement; and (c) may institute and prosecute proceedings at law or in equity with respect to such breach, and, if successful, to recover such costs, expenses, and reasonable attorney's fees as may be incurred in connection with such proceedings. Lombardo further recognizes and agrees that because a remedy at law for any breach or threatened breach by him shall be inadequate, that in addition to the foregoing, the Company may seek to enjoin Lombardo from engaging in any conduct in violation of this Agreement and to seek any other injunctive or equitable relief as may be appropriate in case of any such breach or threatened breach. Lombardo agrees to waive any requirements that the Company post bond as a condition for obtaining any such relief.

CHMURA0201426

11. <u>Inventions and Discoveries</u>.

   a. *Proprietary Rights*. "Proprietary Rights" means all trade secret, patent, copyright, mask work and other intellectual property rights or "moral rights" throughout the world, and all goodwill associated therewith. "Moral rights" refers to any rights to claim authorship of an Innovation or to object to or prevent the modification of any Company Invention, or to withdraw from circulation or control the publication or distribution of any Innovation, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

   b. *Innovations*. "Innovations" means all processes, compositions of matter, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium or expression, moral rights, mask works, trademarks, trade names, trade secrets, know-how, ideas, formulas, manufacturing techniques, discoveries, software and designs.

   c. *Assignment of Innovations*. Lombardo hereby assigns and agrees to assign in the future (when any such Innovations and Proprietary Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company any and all right, title and interest in and to any and all Company Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by Lombardo, either alone or jointly with others, during the period of his/her employment with the Company. Innovations assigned to the Company, or to a third party as directed by the Company pursuant to this provision, are referred to as "Company Inventions."

   d. *Works for Hire*. Lombardo further acknowledges that all original works of authorship which are made by him/her (solely or jointly with others) within the scope of his/her employment and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101).

CHMURA0201427

e.   *Enforcement of Proprietary Rights.*   Lombardo agrees to assist the Company in
every proper way to obtain, and from time to time enforce, United States and
foreign Proprietary Rights relating to Company Inventions. To that end Lombardo
will execute, verify and deliver such documents and perform such other acts
(including appearances as a witness) as the Company may reasonably request for
use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing
such Proprietary Rights and the assignment thereof. In addition, Lombardo will
execute, verify and deliver assignments of such Proprietary Rights to the
Company or its designee. Lombardo's obligation to assist the Company with
respect to proprietary rights relating to such Company Inventions shall continue
beyond the cessation of his employment or engagement with the Company.
Employer shall compensate Lombardo at a reasonable rate after such cessation for
the time actually spent by Lombardo at the Company's request on such assistance.
Lombardo hereby waives and quitclaims to the Company any and all claims, of
any nature whatsoever, which he now has or may hereafter have for infringement
of any proprietary rights assigned hereunder to the Company.

12.   <u>Release of Claims</u>.   To the maximum extent permitted by law, Lombardo agrees
for himself, his heirs, beneficiaries, devisees, executors, administrators, attorneys, personal
representatives, successors and assigns, to release, discharge and not to sue the Company, its
parent, subsidiaries, members, managers, past, present or future affiliated entities, trustees,
officers, employees, attorneys, insurers, and other agents or representatives (collectively, the
"Company Releasees"), from or for any and all claims, debts, demands, accounts, judgments,
rights, causes of action, claims for equitable relief, damages, costs, charges, complaints,
obligations, promises, agreements, controversies, suits, expenses, compensation, responsibility
and liability of every kind and character whatsoever (including attorneys' fees and costs),
whether in law or equity, asserted or unasserted, known or unknown, suspected or unsuspected,
which Lombardo has, individually or jointly, against the Company Releasees as of the Execution
Date, including without limitation any and all claims related to any employment or independent
contractor relationship between Lombardo and the Company or the termination thereof,
including any and all claims arising under federal, state or local laws relating to employment
(such as claims under the Civil Rights Act of 1964, as amended, the Americans with Disabilities

11

CHMURA0201428

Act, as amended, the Equal Pay Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Employee Retirement Income Security Act, except to the extent provided below, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, Sections 1981 and 1983 of Title 42 of the United States Code and similar applicable state or local statutes, ordinances and regulations), claims for breach of express or implied contract, fraud, misrepresentation, defamation or liability in tort, and claims of any kind that may be brought in any court or administrative agency.

It is agreed that this is a general release and it is to be broadly construed as a release of all claims; provided that notwithstanding the foregoing, this Agreement expressly does not include a release of any claims that cannot be released hereunder by law or under applicable public policy.

13.     <u>Knowing and Voluntary Waiver</u>. This Agreement includes a waiver and release by Lombardo of all charges and claims he may have against the Company Releasees.  Lombardo acknowledges that he has been advised:

     a.     to consult with an attorney and/or other advisor of his choosing concerning his rights and obligations under this release;

     b.     to fully consider this release before executing it; and

     c.     that he has a period of seven (7) days from receipt of this Agreement to consider this Agreement before executing it.

Lombardo agrees, therefore, that his release of claims is both knowing and voluntary on his part.

14.     <u>Confidentiality of Agreement</u>. The terms of this Agreement are confidential to the Parties and their respective constituents. Except as provided in this Agreement, the Parties agree and promise not to communicate, display, publish, or otherwise reveal any of the terms of this Agreement, in words or in substance, with the exception of their attorneys, tax advisors, and spouse (who shall likewise be bound by this provision), unless required by law or court order or with the written consent of the other Parties.

15.     <u>Non-Disparagement</u>. Lombardo agrees not to disparage, demean, or otherwise communicate any information damaging or potentially damaging to the business or reputation of the Company to any third party, including customers, suppliers, contractors or business partners, the media, the business community, any past or present employees or independent contractors of

CHMURA0201429

the Company, individuals or members of the general public, and any state, local, or federal government agency.  Nothing in this provision shall preclude Lombardo from responding truthfully to inquiries as required by law or court order.

16.    <u>Non-Release of Future Claims</u>. This Agreement does not waive or release any rights or claims that the Parties may have that arise after the Execution Date of this Agreement.

17.    <u>Entire Agreement</u>. This Agreement contains the entire understanding of the Parties concerning the subjects it covers and, unless stated otherwise, this Agreement supersedes all prior understandings and representations of the Parties regarding such subjects, including the Restrictive Covenant Agreement.

18.    <u>No Admissions</u>. The Parties agree that this Agreement is neither intended to nor shall it constitute an admission by any party of any fault, liability or wrongdoing in connection with any matter contained in this Agreement.

19.    <u>Construction</u>.  No provision contained in this Agreement is to be interpreted for or against any Party because that Party or that Party's legal representative drafted such provision.

20.    <u>Assignment and Survival</u>. The rights and obligations of the Company under this Agreement shall inure to the benefit of, and shall be binding upon, its successors, beneficiaries, executors and assigns.  Lombardo' rights and obligations are personal, and may not be assigned or delegated without the Company's written consent.

21.    <u>Governing Law; Venue</u>. This Agreement shall be exclusively governed by, and shall be construed and enforced exclusively in accordance with, the substantive laws of the Commonwealth of Virginia without regard to its conflict of laws principles.  The federal and state courts located in Richmond, Virginia shall have exclusive jurisdiction over any dispute arising from or related to this Agreement.  The Parties agree that any such claims or actions shall be brought in such courts, and waive any objections related to personal jurisdiction, venue or *forum non conveniens* with respect to such disputes.

22.    <u>Remedies for Breach</u>. Nothing in this Agreement releases or waives, nor shall anything contained herein be construed to release or waive, any claim for breach of any covenant or provision of this Agreement.  If either Party is found by a court or other body having jurisdiction to have breached this Agreement, the breaching party shall be liable to the non-

13

CHMURA0201430

breaching party for damages, costs, and reasonable attorneys' fees incurred by the non-breaching party in enforcing this Agreement.

23.     <u>Execution by the Parties</u>. This Agreement may be executed by the Parties in one or more counterparts, and may be executed on copies, each of which shall be deemed an original, and all of which together constitute one and the same instrument.  The delivery of this Agreement may be made by facsimile or portable document format (pdf), and such signatures shall be treated as original signatures for all applicable purposes.

24.     <u>Modification</u>. The Parties agree that the provisions of this Agreement may not be modified by any subsequent agreement unless the modifying agreement is in writing and signed by both parties.

*[Next Page is the Signature Page]*

CHMURA0201431

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement on the dates identified below, the last of which shall be the "Execution Date" of this Agreement.

**Chmura Economics & Analytics**

By: *Aisha Ortiz*                         Date: <u>October 21, 2019</u>

Name:  Aisha Ortiz

Title:  Human Resources Generalist


_____          Date: _____
**Richard A. Lombardo**

15

CHMURA0201432

Exhibit A

## **Declaration Under Penalty of Perjury**

1. My name is Richard Lombardo. I am over the age of eighteen (18) and competent to make this Declaration. All statements contained in this Declaration are true and correct and are based upon my personal knowledge.

2. I was employed by Chmura Economics & Analytics (the "Company") from February 2015 to October 2019.

3. During the course of my employment, the Company provided me with confidential and proprietary information related to the business of the Company, including valuable business information that is not generally known and that provides the Company with a competitive advantage in an extremely competitive marketplace.

4. As a condition of my employment, I was obligated to keep all such confidential information confidential at all times during my employment.

5. On October ___, 2019, I signed a Separation and Release Agreement ("Agreement") with the Company.

6. I hereby make the following declarations and certifications with regard to all information that constitutes confidential or proprietary information under Paragraph 3.a. of the Agreement ("Confidential Information"):

   a. I kept the Company's Confidential Information confidential at all times during my employment.

   b. I have not, as of the date of this Declaration, disclosed or made use of the Company's Confidential Information on my own behalf or on behalf of any other third party.

   c. I have returned to the Company any and all copies, duplicates, reproductions or excerpts of such Confidential Information in my possession, custody, or control.

   d. I have not transferred the Company's Confidential Information to any third party or personal device or system.

   e. I have made a good-faith effort to search all of my devices, drives, and my personal e-mail accounts for the Company's Confidential Information. To the best of my knowledge, I have located all such Confidential Information, and I have produced all such information to the Company prior to signing this Declaration.

7. I understand and certify that my confidentiality obligations under Paragraph 3 of the Agreement are ongoing and will not expire at any time. As such, I will keep the

CHMURA0201433

Confidential Information confidential at all times; I will not disclose or make use of the Confidential Information on my own behalf, on behalf of any company or entity with which I associate or do business, or on behalf of any other third party at any time; and I will immediately inform the Company if I discover any Confidential Information in my custody, control, or possession.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October ___, 2019.

_____

**Richard A. Lombardo**

CHMURA0201434