**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| **CHMURA ECONOMICS &** | ) | **Case No. 3:19-cv-813** |
| **ANALYTICS, LLC,** | ) | **Judge Robert E. Payne** |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| **v.** | ) |  |
|  | ) |  |
| **RICHARD LOMBARDO,** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |

**DEFENDANT RICHARD LOMBARDO'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## I.   INTRODUCTION

In its Memorandum in Opposition Defendant Richard Lombardo's Motion for Partial Summary Judgment (the "Opposition") filed on May 29, 2020, Plaintiff Chmura Economics & Analytics, LLC ("Chmura") mischaracterizes the arguments set forth in Defendant Richard Lombardo's ("Lombardo") Motion for Partial Summary Judgment (the "Lombardo Motion"). As stated before, Chmura wants this Court to think this is a salacious and dramatic case. Using rhetoric and flowery language, Chmura seeks to amplify and distort the immaterial facts of the case that are directed to all the reasons that Chmura's principals have personal animus for Lombardo (despite the fact that he made them tremendous amounts of money), and they downplay or simply ignore the undisputed material facts that warrant judgment in Lombardo's favor.

The issues for the Court's decision are simple, not salacious. Is the Non-Competition, Non-Solicitation and Confidentiality Agreement enforceable? No. Even if it were enforceable, are there

any genuine issues of material fact that Lombardo breached the Agreement? No (he did not). Are there any genuine issues of material fact that Lombardo converted the laptop or the notes contained thereon? No (he did not). Are there any genuine issues of material fact that Lombardo misappropriated Chmura's trade secrets? No (he did not). Are there any genuine issues of material fact that Lombardo is entitled to overtime? No (and he is).

Lombardo respectfully requests that this Court grant summary judgment in his favor and against Chmura on Counts I (Breach of Contract), II (Declaratory Judgment), III (Violation of the Defend Trade Secrets Act), and IV (Conversion) of the First Amended Complaint and the First Claim for Relief (Violation of the FLSA), Fourth Claim for Relief (Violation of the Ohio Prompt Pay Act), Fifth Claim for Relief (Violation of the Ohio Minimum Fair Wage Standards Act) of the Counterclaim as to liability and on the Sixth Claim for Relief (Declaratory Judgment – Invalidity & Unenforceability of the Agreement) of the Counterclaim in its entirety.

## II.    FACTS

Lombardo incorporates herein the facts set forth in the Memorandum in Support of Motion of Richard Lombardo for Summary Judgment Pursuant to Fed.R.Civ.P. 56 and Memorandum in Opposition to Plaintiff and Counterclaim Defendant's Motion for Summary Judgment. As explained in the Law and Argument, Chmura fails to create any issue out of the undisputed and material facts on which Lombardo relies.

## III.    LAW AND ARGUMENT

A.    THE AGREEMENT IS INVALID AND UNEFORCEABLE.

1.    Chmura's argument that the Non-Competition and Non-Solicitation Provisions of the Agreement are enforceable fails.

2

Chmura argues that the Non-Competition and Non-Solicitation Provisions in the Agreement are appropriately limiting and, therefore, enforceable.[1] Chmura's argument is based on an improper and illogical reading of the Agreement.

The Agreement expressly and unambiguously purports to bar Lombardo's employment (broadly defined) with any employer overlapping with the "Company's Business," as further expressly and precisely defined:

> For a period beginning on the Effective Date of this Agreement and ending two (2) years after the employment relationship between Employee and the Company terminates for any reason whatsoever ("the Restricted Period"), Employee shall not:
>
> ***
>
> (b) directly or indirectly, perform, whether as an employee, independent contractor, consultant, agent, or owner, the same, similar, or substantially similar job duties or services as s/he performed for the Company on the date of his/her termination or within the one (1) year period preceding the date of his/her termination for or on behalf of any person or entity that engages in the **Company's Business** in any geographic areas serviced by Employee or in which Employee provided goods or services on behalf of the Company during his/her employment with the Company.

Agreement, Terms of Agreement, §3(b) & (c) (emphasis added). The scope of "Company's Business" is expressly and deliberately described as broadly as possible and more broadly than necessary:

> The Company is engaged in the business of providing services in the field(s) of economics, workforce development, economic development, strategic planning, and software design and licensing (hereinafter, the "Company's Business").

Agreement, Reasons For Agreement, §1.

---

[1] Chmura states that Lombardo only challenges two of the five independent covenants found in Section 3 of the Agreement. Chmura is wrong. Lombardo is challenging the entire Section 3, with a focus on 3(a), (b), and (c).

When reading these two provisions together (as they must be since §3(b)[2] uses the capitalized term "Company's Business"), the only reasonable interpretation is that (if enforced) Lombardo could not perform the same or substantially similar job duties or services that he performed for Chmura (inside sales) for any company that provides services in the fields of economics or workforce development or economic development or strategic planning or software design and licensing. This is not an interpretation of the Agreement's provisions—these are the words the Agreement uses, and the meaning of these provisions resides in these words. As noted in the Lombardo Motion, enforcement of these two provisions would preclude Lombardo from working in many different businesses that in no way compete with Chmura.[3]

Chmura's reading to the contrary is unsupported by the express language of the Agreement because it ignores the defined term "Company's Business." In a single paragraph in the Opposition, Chmura places two different limits on the language: (1) that the services provided by Lombardo were all related to JobsEQ (and by extension, then, this provision would only prevent Lombardo from selling JobsEQ for a competitor and no competitor sells JobsEQ, so under this urged interpretation the provision would actually be meaningless); and alternatively (2) that Lombardo "can do whatever he wants for whomever he wants, as long as he is not selling or

---

[2] As well as §3(a) and (c).

[3] The Non-Solicitation Provision (§3(c) of the Agreement) fails for the same reason as the Non-Competition Provision (§3(b) of the Agreement). Section 3(c) of the Agreement provides:

> (c) directly or indirectly, on behalf of himself or any other person, partnership, company, corporation or other entity, solicit or attempt to solicit for purposes of providing products or services that are the same or substantially similar to the **Company's Business** any individual or entity to whom Employee provided products or services at any time during the period of his/her employment with the Company, to whom the Employee pursued on behalf of the Company, or of whom Employee had knowledge base don his/her employment with the Company because the Company provided products or services to or actively pursed [sic] the individual or entity during Employee's employment.

(emphasis added). Chmura is asking the Court to read the same limitation (which exists no where in the Agreement) into this provision.

marketing labor data via SaaS subscriptions" (which is an expansion of No. 1).  Opposition, at 8-9. The plain language of the Agreement, however, does not even mention either "JobsEQ" or "labor data via SaaS subscription." Chmura adds the language now in a far-too-late attempt to rescue the enforceability of the Agreement. Because the language never appears in the Agreement, as Chmura wishes, even though Chmura had every opportunity to add the language before Lombardo signed it, if Chmura had had any desire to comply with Virginia law at that time, it would be improper for the Court to read "JobsEQ" or "labor data via SaaS subscriptions" into the Agreement.[4]

Section 3(b) of the Agreement has two parts: (1) the Employee cannot perform the same, similar, or substantially similar job duties or services as he performed for Chmura (2) for any person or entity that engages in the Company's Business. "Company's Business" is clearly defined and contains no mention of JobsEQ or labor data via SaaS subscriptions.

Likewise, Section 3(a) of the Agreement is unenforceable. Section 3(a) of the Agreement does not contain the "same, similar, or substantially similar job duties or services" language (as found in Section 3(b) and (c)). It provides that "Employee shall not: (a) own or acquire an interest in or participate in the management or control of any entity that competes against the Company by engaging in the Company's Business in geographic areas in which the Company does business." According to the consequences of Chmura's argument, Section 3(a) is meaningless because there is no other entity that engages in the Company's Business—there is no other company that sells JobsEQ. Accordingly, it is impossible for Lombardo to breach Section 3(a).

---

[4] However, if Chmura's argument were taken to its logical conclusion, it would be impossible for Lombardo to compete with Chmura because no other company sells JobsEQ. If the Court decides to credit Chmura's argument, it should stick Chmura with all consequences of its advocacy and find that Lombardo did not breach the Agreement because the Agreement is meaningless with respect to its prohibition on competition.

The Court must interpret the terms of the Agreement as they are defined in the Agreement. "Company's Business" is clearly defined – and incredibly overbroad. Chmura now wants to limit it for this exact reason. Read as written, however, the Non-Competition Provision in the Agreement is overbroad and unenforceable.

2. <u>Chmura's argument that the Confidentiality Provision of the Agreement is enforceable also fails.</u>

Chmura argues that the Confidentiality Provision of the Agreement (Terms of Agreement, §1) does not require a time limit to be enforceable. Chmura is wrong.

First, Chmura argues that Lombardo relies too heavily on *Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 212 (Fairfax Cty. 2009). However, numerous courts have adopted the reasoning in *Lasership*, including the Eastern District of Virginia. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 341 (E.D. Va. Sept 8, 2015) 336, 341; *Shenandoah Women's Healthcare, P.C.,* LEXIS 631, *17 (holding that the clause "Physician shall not, during Physician's employment and **for all times thereafter**…" is unenforceable because its duration is unlimited) (emphasis added); *BB&T Ins. Servs., Inc. v. Thomas Rutherford, Inc.,* 80 Va. Circ. 174 2010 WL 7373709, at *5 (Va. Cir. 2010) (holding the confidentiality clause unenforceable because its duration was "for perpetuity"). Even cases cited by Chmura rely on *Lasership*. *See GMS Indus. Supply v. G&S Supply, LLC*, 2020 U.S. Dist. LEXIS 34709, *21 (E.D. Va. Feb. 28, 2020).

Second, even if this Court did not adopt the reasoning in *Lasership*, the Confidentiality Provision is still unenforceable in accordance with the cases cited by Chmura. According to the cases cited by Chmura, "[t]he test for whether a confidentiality provision is enforceable involves the same balancing test applied to non-compete and non-solicitation agreements. The provision is enforceable only if it '1) is narrowly drawn to protect the employer's legitimate business interest;

2) is not unduly harsh and oppressive in curtailing the employee's ability to earn a living; and 3) is not against sound public policy.'" *GMS Indus. Supply*, 2020 U.S. Dist. LEXIS 34709, at *21. (citing *Lasership Inc.*, 79 Va. Cir. 205).[5]

Here, the Confidentiality Provision is not narrowly tailored to protect the legitimate business interests of Chmura. First, it is indefinite in duration (which under the weight of authority makes the Confidentiality Provision unenforceable). Second, the Confidentiality Provision is not limited in scope. It precludes disclosure of nearly all information, with few exceptions. Those exceptions are limited to publicly available information, salary, bonus and personnel information specific to the employee. That is it – those are the only items excepted from "Confidential and Proprietary Information." Therefore, this Confidentiality Provision is not narrowly drawn to protect Chmura's legitimate business interests. The Confidentiality Provision is unenforceable.

    3.  <u>Lombardo did not breach the Agreement.</u>

Chmura asserts that Lombardo "in cursory fashion" contends that he is entitled to summary judgment on Chmura's claim that he breached the Agreement. Chmura ignores all the facts and argument that come before it. Chmura ignores that the key provisions of the Agreement (the Non-Competition, Non-Solicitation and Confidentiality Provisions) are unenforceable and, therefore, could not be breached.

Even if the Agreement is enforceable (and it is not), the Agreement requires Lombardo to return "the Confidential and Proprietary Information and/or the Work Related Intellectual Property" "immediately and without demand." The Laptop is simply not Confidential and

---

[5] Chmura relies on *McElmurry v. Alex Fergusson, Inc.*, 2006 U.S. Dist. LEXIS 10760 (M.D.N.C. Mar. 8, 2006). This case is inapplicable as it applies North Carolina law, not Virginia.

Proprietary Information or Work Related Intellectual Property. It is a Laptop. The Agreement did not obligate him to return the Laptop and could not be breached for this reason.

Furthermore, Lombardo did not have access to anything other than his personal notes from two conferences. The notes contain information that were shared with Lombardo during conversations he had at the conference. The information exchanged was not confidential or proprietary. The notes contained publicly available information – the same information was available to anyone that asked questions of these attendees at the conference and would be available if the sales representatives at Chmura would have followed up on the attendee list. The notes (according to Chmura) contained the name of the prospects, the name of the "decision-makers," software needs, and budgetary constraints is all information that could have been obtained by other Chmura Account Managers and Chmura's competitors who attended the conferences.

Finally, Chmura cannot prove damages – an essential element of breach of contract. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 156 (2009). Chmura's sole damages are speculative at best. Chmura argues that it should have been able to sell JobsEQ to 24% of the prospects contained within the notes. The other Account Managers were not prevented from reaching out to the attendees at the conferences. According to Christine Chmura, the CEO and Chief Economist of Chmura, closing a deal can take anywhere from a few months to a few years.[6] Accordingly, it is still possible that the sales could be closed. Furthermore, if it takes that long to close a deal, it is nonsensical to argue that withholding conference notes for less than two months caused any damages at all. The reality is that the remaining Account Managers cannot sell at the

---

[6] Deposition Transcript of Christine Chmura, at 59-61 ("It could take multiple contacts. It could take years to get a client. For example, there are some people that we have been talking to for 10, 15 years and then they finally decide to get a license.") (Exhibit C to the Lombardo Opposition).

same level that Lombardo could and did. There is absolutely no evidence that the current Account Managers are closing any sales, even sales that the Account Managers are prospecting. The sales slowed when Lombardo was terminated (and when Chmura lost its other top Account Manager – Austen Steele). There is no evidence that Chmura was damaged by Lombardo's retaining the Laptop for less than two months after termination.

4.   Lombardo did not violate the Defend Trade Secrets Act ("DTSA").

Chmura argues that Lombardo misapplied the DTSA to the facts Chmura cites case law that has no application whatsoever to the facts of this case. Lombardo did not misapply the facts or rely on the wrong law.[7]

The simple and indisputable fact is that Lombardo did not misappropriate any trade secrets defined under the DTSA. Pursuant to the DTSA, a Plaintiff must prove that "(1) it own[ed] a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce" as well as damages. *Steves & Sons, Inc. v. JELD-WEN, Inc*., 2019 U.S. Dist. LEXIS 139818, 2019 WL 3860198 (E.D. Va. August 16, 2019). "Misappropriation" requires improper acquisition or disclosure:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
> (i) used improper means to acquire knowledge of the trade secret;
> (ii) at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

---

[7] Chmura makes additional assertions that are not relevant for purposes of the Lombardo Motion. First, it states that "Lombardo does not challenge Chmura's efforts to maintain the secrecy of its information and therefore concedes that those efforts are reasonable as a matter of law." Opposition, at 14. Lombardo, however, does **not** concede this. In fact, as set forth in the Lombardo Opposition, Chmura did not take any reasonable steps to protect the information contained on the Laptop. It had not installed any remote management software or multi-factor authentication. The Laptop was not even encrypted. *See* Lombardo Opposition, at 13-14. Likewise, Lombardo does **not** concede that the Notes were trade secrets. *See* Lombardo Opposition, at 19. However, this analysis is unnecessary because no genuine issue of material fact exists as to whether Lombardo misappropriated any trade secrets (a key element of its DTSA claim).

> (i) derived from or through a person who had used improper means to acquire the trade secret;
> (ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
> (iii) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret…

18 U.S.C. §1839(5). Thus, to violate the DTSA, a party must "misappropriate[] the trade secrets with the requisite <u>mens rea</u> either by wrongfully acquiring the information or by using or disclosing it with actual or imputed knowledge that it was a trade secret." *OROS, Inc. v. Dajani*, 2019 WL 2361047, *2 (E.D. Va. June 4, 2019)(denying a motion to dismiss). "Obtaining trade secrets through the normal course of employment is not improper. *Packaging Corp. of Am., Inc. v. Croner*, 419 F.Supp.3d 1059, 1066 (N.D. Ill. 2020). "The failure to return lawfully acquired information does not constitute 'misappropriation' of that information under the DTSA." *Id.* (citing *Prominence Advisors, Inc. v. Dalton*, No. 17-CV-04369, 2017 U.S. Dist. LEXIS 207617, *4 (N.D. Illl. Dec. 18, 2017)); *see also Gold Medal Products Co. v. Bell Flavors & Fragrances, Inc.*, No. 1:16cv00365, 2017 U.S. Dist. LEXIS 57640, *19 (S.D. Ohio Apr. 14, 2017).

Here, Lombardo did not acquire Chmura's trade secrets by any improper means and did not disclose or use any trade secret. First, Lombardo did not wrongfully acquire the Laptop. Rather, he acquired the Laptop and the information contained thereon through the normal course of his employment. He, like all Account Managers, had access to the Laptop and the information contained on it. Second, Lombardo did not disclose or use any trade secret information to any party. According to Chmura, he "deprived Chmura of confidential and valuable information." This is **<u>not</u>** misappropriation. Misappropriation requires use or disclosure, neither of which is present in this case. Chmura's claim under the DTSA fails.

The cases on which Chmura relies are inapposite and distinguishable. First, Chmura cites to *Haught v. Louis Berkman LLC*, 417 F.Supp.2d 777 (N.D. W.Va. 2006). The *Haught* case was not decided under the DTSA. Rather, the claim brought was a violation of the West Virginia Trade Secrets Act (the "WVSTA"). Furthermore, Chmura completely mischaracterizes the case. The defendant did not merely keep the employer's trade secret documents for five days after termination. The defendant retained the trade secrets for at least a year (and in some instances up to three years) **and** disclosed the trade secrets. The *Haught* Court did not hold that the retention violated the WVTSA, but rather it was only a violation of the parties' Invention and Confidentiality Agreement.

Next, Chmura relies on *OROS, Inc. v. Dajani*, 2019 WL 2361047 (E.D. Va. June 4, 2019)(which denied a motion to dismiss filed by defendant). *OROS* is factually distinguishable from the case at hand. In *OROS*, the defendant was the former president of a company who was terminated. The defendant refused to accept the termination and retained control over the company's "computer server, equipment, financial records, and bank accounts, as well as access codes to cloud-based services. …And he [] refused to give up or return information that plaintiff alleges is confidential and proprietary, including 'the pricing structure of [Oros Inc.'s] products, list of customers and prospects, and knowledge of the product obsolescence in the hands of its customers." The defendant refused to return the information to maximize the price of the buy-back of his 20% interest in the company. The Court found that these allegations were enough to overcome a motion to dismiss. The Court does not speak to whether if proven, these facts would be enough to overcome a motion for summary judgment. Furthermore, in denying the motion to dismiss, the Court noted "it bears emphasizing that Oros, Inc.'s complaint deals not with an isolated set of documents or information but rather with the entire contents of a company's office."

11

Here, Lombardo never had the type of access as the defendant in *OROS* and did not retain anything more than a Laptop with his personal notes. That is a far cry from the retention in *OROS*.

Finally, Chmura relies on *Apollo Enter. Imagining Corp. v. Conyers*, 2020 WL 1896706 (E.D. Va. Jan. 10, 2020)(granting a preliminary injunction). Like *OROS*, *Apollo* is factually distinguishable. The defendant in *Apollo*, was the former Chief Product Officer who left the company and went to work for a direct competitor. Defendant not only did not disclose the identity of the new employer to the prior employer, but for several months prior to resigning defendant copied large quantities of confidential information, including product development and testing information, and "detailed information, including product specifications and pricing, regarding proposals to key prospective customers." Then he repeatedly told his former employer that he had returned all of the confidential information, when he had not. None of these facts exist in the case at hand. Lombardo has not gone to work for a competitor, did not copy any trade secrets and returned the Laptop containing the alleged trade secrets less than two months after his termination. Furthermore, the *Apollo* case issued a preliminary injunction and did not analyze the facts under a summary judgment standard.

Lombardo is entitled to summary judgment on Chmura's DTSA claim (Count III).

5.     Lombardo did not convert the Laptop, and the Notes are not the proper subject of a conversion action.

Chmura toggles throughout the pleadings, discovery and motions between claiming that the alleged conversion is of the Laptop and that the alleged conversion is of the Notes contained on the Laptop. Therefore, Lombardo has addressed both instances in the Lombardo Motion. Chmura argues that Lombardo's retention of the computer for less than two months after his

termination constitutes conversion of the Laptop and that the Virginia Uniform Trade Secrets Act does not preclude its conversion of trade secrets claim. Chmura is wrong.

First, Lombardo did not convert the Laptop. He returned it less than two months after Chmura terminated him and after being instructed by his supervisor to retain it until he signed a separation agreement and received his personal items. Second, even if the Court holds that he did convert the Laptop, Chmura was not damaged by Lombardo's possession of the Laptop because he ultimately returned the Laptop. Chmura is not entitled to money damages, because Lombardo has already returned the Laptop. *Root v. County of Fairfax*, 81 Va. Cir. 407, 410 (Fairfax Cty. 2010).

Second, despite Chmura's arguments to the contrary, the Virginia Uniform Trade Secrets Act does preclude Chmura's conversion claim as to the Notes. Chmura argues that because it is alleging conversion of both the Laptop and the Notes contained on the Laptop, the VUTSA does not preclude the conversion claim as to the notes because the claim is not predicated entirely upon the alleged misappropriation of trade secrets. Chmura is misinterpreting the preemption law. "To survive summary judgment, a plaintiff must be able to show that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret." *Smithfield Ham & Prods. Co. v. Portion Pac*, 905 F. Supp. 346, 348-349 (E.D. Va. 1995). Chmura's asserts two claims for conversion: (1) conversion of the Laptop; and (2) conversion of the Notes. The conversion of the Notes (which Chmura asserts are trade secrets) necessarily is predicated entirely on the alleged misappropriation of the alleged trade secrets. Chmura cannot get around the preemption by asserting that because two items were converted, the conversion claim arising out of the conversion of alleged trade secrets is not preempted by the VUTSA.

Finally, Chmura does not even address the argument that the Notes cannot be converted because the Notes constitute "future contracts," which cannot be converted.

B.     LOMBARDO IS NOT A HIGHLY COMPENSATED EMPLOYEE AS DEFINED UNDER THE FAIR LABOR STANDARDS ACT.

Chmura's sole defense to Lombardo's claims for unpaid overtime are that he is a "highly compensated employee" and is, therefore, exempt from the overtime requirements under the FLSA. Opposition, at 21. Chmura is wrong.

"The highly compensated employee exemption applies where (1) an employee makes at least $100,000 annually, including at least $455 per week on a salary basis, and (2) the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." *Ganci v. MBF Inspection Services, Inc.*, 323 F.R.D. 249, (S.D. Ohio 2017); 29 C.F.R. 541.601(a)(1). The exemption only applies to employees whose primary duty includes performing office or non-manual work. 29 C.F.R. 541.601(d).

Chmura appears to argue that Lombardo is exempt because he regularly performed the exempt duties or responsibilities of an administrative employee.[8] To qualify as an exempt administrative employee, the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" **and** "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. 200(a)(2) and (3).

---

[8] Lombardo would not be exempt under either the executive exemption or professional exemption. With respect to the executive exemption, Chmura cannot satisfy its burden to establish the duties test pursuant to 29 C.F.R. 541.700. Likewise, Lombardo is not a professional employee as defined in 29 C.F.R. 541.300 et seq. because his job did not require knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction nor did it require invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

To be "directly related to the management or general business operations of the employer" "an employee must perform work directly related to assisting with the running or servicing of the business." 29 C.F.R. 201(a). 29 C.F.R. 201(b) provides:

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

"In considering the 'character of the employee's job as a whole' the 'primary' duty test seeks to distinguish between tasks 'directly related to management policies or general business operations' (or 'the administrative operations of a business') as distinguished from the 'production' or 'sales' work." *Henry v. Quicken Loans, Inc.*, 2009 U.S. Dist. LEXIS 91033, *72-74 (E.D. Mich. July 16, 2009) (holding that "a reasonable jury could conclude that 'the character of the job as a whole' of the loan consultants/mortgage bankers centers around sales"). In analyzing the primary duties test, courts 'focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance valuations.'" *Clark v. Shop24Global, LLC*, 77 F. Supp. 3d 660, 671 (S.D. Ohio 2015) (citing *Schaefer v Ind. Mich. Power Co.*, 359 F.3d 394, 407 (6th Cir. 2004). How an employee spends his time is a question of fact. *Walls v. Host Int'l, Inc.*, 2015 U.S. Dist. LEXIS 136959, *24 (N.D. Ohio Oct. 7, 2015); *Yuen v. U.S. Asia Commer. Dev. Corp*, 974 F. Supp. 515, 526 (E.D. Va. 1997).

"The exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. 202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* Pursuant to 29 C.F.R.

202(b), the factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer of matters that have a significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

"The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. 541.202(c). "The exercise of discretion and independent judgment must be more than the use of skills in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. 541.202(e). A disagreement about the extent of the supervision received is enough to deny summary judgment in favor of an employer on an administrative exemption. *Sutherland v. SOSi Int'l, Ltd.*, 541 F. Supp. 2d 787, 791 (E.D. Va. 2008). "Whether an employee's duties require 'real and substantial' discretion, and whether this discretion is exercised with respect to 'matters of consequence' are questions of fact.'" *Yuen*, 974 F. Supp. 515 at 527-528.

"FLSA overtime exemptions are 'affirmative defenses on which the employer has the burden of proof.'" *Roshon*, 314 F. Supp. 3d at 859 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)).

Here, the material facts are undisputed and Chmura cannot sustain its burden. No genuine issue of material facts exists showing that Lombardo met either the primary duty test or the independent discretion test. First, the documents show that Lombardo was an inside sales representative, whose primary job duty was to sell JobsEQ for Chmura. As set forth in the February 3, 2015 Letter establishing his employment, Lombardo was hired as an inside sales representative. He had to meet a quota of at least 3 sales per month. His entire employment was based on sales, not any other tasks. Sales was the primary performance measure. In fact, the February 3, 2015 offer letter does not set forth a single other job duty, expectation or performance measure. According to Lombardo's direct supervisor, Lombardo's primary duty was to sell Chmura's SaaS – JobsEQ – to new clients and to procure renewals from existing clients. Lombardo not only spent the majority of his time selling JobsEQ and procuring renewals, he merely passed along additional information that helped sell JobsEQ and procure renewals. Lombardo was an inside sales representative in its truest sense.

Second, Lombardo was not permitted to exercise any discretion and independent judgment, much less discretion and independent judgment related to matters of significance. He was not responsible for supervising other employees, making decisions about company strategy, setting spending priorities, or establishing policies or procedures.

Lombardo could not decide what conferences or trade shows he would attend. He could not even decide whether to take a client or potential client out for a drink at a conference or make his own travel arrangements without approval.

He could not determine what price to charge for any Chmura product, including JobsEQ. Even the discounts he was permitted to give were dictated by Chmura. The pricing was set forth in a pricing matrix that the Account Managers had to follow.

17

Lombardo had no decision-making authority with respect to the Roadmap (the list of feature requests, new products and changes to existing products offered by Chmura). He could not prioritize items on the Roadmap, add items to the Roadmap or develop items on the Roadmap. Lombardo merely acted as a conduit for the requests of potential clients and existing clients.

He was not on any decision-making committee. He was not on the Conference Committee (which determined what conferences Account Managers would attend) or the Pricing Committee (which set the pricing and allowable discounts for Chmura's products). And he was certainly not part of the SEA Group or Leadership. Furthermore, Lombardo (and all other Account Managers) were micromanaged by the SEA Group and Peterson, in particular.

Chmura set forth every instruction related to Account Managers (and other employees) in the Employee Handbook and the Standard Operating Procedures. Account Managers were expected to follow these instructions. Simply put, Lombardo could not exercise any discretion or independent judgment, much less related to matters of significance. That was solely handled by the SEA Group and the various committees.

Chmura tries to play up how much money Lombardo made, but that is only one component of the test. Others who have made significantly more – in excess of $900,000/year – still qualify for overtime under the FLSA. *Pierce v. Wyndham Vacation Resorts, Inc.*, 2017 U.S. Dist. LEXIS 165819 (E.D. Tenn. Oct. 6, 2017).

Lombardo was not a "highly compensated employee" as defined by the FLSA.[9]  Because Chmura admits that he worked more than forty hours in a workweek and did not pay him overtime

---

[9] Chmura addresses both Lombardo's FLSA claim and violation of the Ohio Minimum Fair Wage Standards Act together. For the reasons that Chmura is not entitled to summary judgment on the FLSA claim (First Claim for Relief), it is also not entitled to summary judgment on Lombardo's Ohio Minimum Fair Wage Standards Act claim (Fifth Claim for Relief) or the Ohio Prompt Pay Act claim (Fourth Claim for Relief). With respect to the Ohio Prompt Pay

and because he was a non-exempt employee, Lombardo is entitled to summary judgment as to liability on the First Claim for Relief (Violation of the FLSA), Fourth Claim for Relief (Violation of the Ohio Prompt Pay Act), Fifth Claim for Relief (Violation of the Ohio Minimum Fair Wage Standards Act) of the Counterclaim.

## IV. CONCLUSION

For the reasons set forth above, the Court should not be swayed by Chmura's rhetoric. The law and material facts support summary judgment in Lombardo's favor as follows:

1. On Counts I (Breach of Contract), II (Declaratory Judgment), III (Violation of the Defend Trade Secrets Act), and IV (Conversion) of the First Amended Complaint;

2. On the Sixth Claim for Relief (Declaratory Judgment – Invalidity & Unenforceability of the Agreement) of Defendant Richard A. Lombardo's Counterclaim Against Plaintiff Chmura Economics & Analytics, LLC (the "Counterclaim"); and

3. On the First Claim for Relief (Violation of the FLSA), Fourth Claim for Relief (Violation of the Ohio Prompt Pay Act), Fifth Claim for Relief (Violation of the Ohio Minimum Fair Wage Standards Act) of the Counterclaim as to liability.

Therefore, Lombardo respectfully requests that the Court grant him summary judgment accordingly.

---

Act claim, because Chmura has not paid all of the overtime wages that Lombardo is entitled to, it has necessarily violated the Ohio Prompt Pay Act, which requires timely payment of wages. O.R.C. §4113.15(a).

Respectfully submitted,


/s/ Thomas J. Powell
Thomas J. Powell, Esq., VSB #27604
3603-D Chain Bridge Road
Fairfax, VA 22030-3244
Tel: (703) 293-9050 | Fax: (703) 293 9075
Email: tom@tjplaw.com

Christine M. Cooper, Esq. (Ohio Bar #0079160)
Koehler Fitzgerald LLC
1111 Superior Avenue East, Suite 2500
Cleveland, OH 44114
Tel: (219) 539-9376 | Fax: (216) 916-4369  Email:
ccooper@koehler.law
*Attorneys for Defendant, Richard Lombardo*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing Memorandum in Opposition to Motion for Summary Judgment has been served on this 4th day of June, 2020, via the Court's electronic filing system upon the following:

Rodney A. Satterwhite (VA Bar No. 32907)
Heidi E. Siegmund (VA Bar No. 89569)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(Office) (804) 775-1000
(Fax) (804) 698-2158
rsatterwhite@mcguirewoods.com
hsiegmund@mcguirewoods.com

*Counsel for Plaintiff*

/s/ Thomas J. Powell
Counsel for Richard Lombardo