Exhibit 1

BILLING CODE: 4510-27-P

**DEPARTMENT OF LABOR**

**Wage and Hour Division**

**29 CFR Part 778**

**RIN** 1235-AA31

**Fluctuating Workweek Method of Computing Overtime under 29 CFR 778.114**

**AGENCY:** Wage and Hour Division, Department of Labor.

**ACTION:** Final rule.

**SUMMARY:** The Department of Labor (the Department) is revising its regulation for computing overtime compensation of salaried nonexempt employees who work hours that vary each week (fluctuating workweek) under the Fair Labor Standards Act (FLSA or the Act). The final rule clarifies that payments in addition to the fixed salary are compatible with the use of the fluctuating workweek method of compensation, and that such payments must be included in the calculation of the regular rate as appropriate under the Act. The Department also adds examples and makes minor revisions to make the rule easier to understand.

**DATES:** This final rule is effective on [insert date 60 days after the date of publication].

**FOR FURTHER INFORMATION CONTACT:** Amy DeBisschop, Director, Division of Regulations, Legislation, and Interpretation, Wage and Hour Division (WHD), U.S. Department of Labor, Room S-3502, 200 Constitution Avenue, NW, Washington, DC 20210; telephone: (202) 693-0406 (this is not a toll-free number). Copies of this final rule may be obtained in alternative formats (Large Print, Braille, Audio Tape, or Disc), upon request, by calling (202) 693-0675 (this is not a toll-free number). TTY/TDD callers may dial toll-free 1-877-889-5627 to obtain information or request materials in alternative formats.

Questions of interpretation and/or enforcement of the agency's regulations may be directed to the nearest WHD district office. Locate the nearest office by calling WHD's toll-free help line at (866) 4US-WAGE ((866) 487-9243) between 8 a.m. and 5 p.m. in your local time zone, or log onto WHD's website for a nationwide listing of WHD district and area offices at http://www.dol.gov/whd/america2.htm.

## I.    EXECUTIVE SUMMARY

Section 7(a) of the FLSA requires employers to pay their nonexempt employees overtime pay of at least "one and one-half times the regular rate at which [the employee] is employed" for all hours worked in excess of 40 in a workweek. 29 U.S.C. 207(a). In other words, for each hour over 40 an employee works in a workweek, the employee is entitled to straight-time compensation at the regular rate and an additional 50 percent of the regular rate for that hour. Where an employee receives a fixed salary for fluctuating hours, an employer may use the "fluctuating workweek method" to compute overtime compensation owed, if certain conditions are met. 29 CFR 778.114.

Under current 29 CFR 778.114, an employer may use the fluctuating workweek method if the employee works fluctuating hours from week to week and receives, pursuant to a clear and mutual understanding with the employer, a fixed salary as straight time compensation for whatever hours the employee is called upon to work in a workweek, whether few or many. 29 CFR 778.114(a). In such cases, because the salary "compensate[s] the employee at straight time rates for whatever hours are worked in the workweek," the regular rate "is determined by dividing the number of hours worked in the workweek into the amount of the salary," and an employer satisfies the overtime pay requirement of section 7(a) of the FLSA if it compensates the employee, in addition to the salary amount, at a rate of at least one-half of the regular rate of

pay for the hours worked each overtime hour. 29 CFR 778.114(a). Because the employee's hours of work fluctuate from week to week, the regular rate must be determined separately each week based on the number of hours actually worked each week. *Id*.

The payment of additional bonus and premium payments on top of the fixed salary to employees compensated under the fluctuating workweek method has presented challenges to employers and the courts alike, as set forth in more detail below. In the Notice of Proposed Rulemaking (NPRM), the Department proposed to clarify that bonus payments, premium payments, and other additional pay are consistent with the use of the fluctuating workweek method of compensation. *See* 84 FR 59590, 59591 (Nov. 5, 2019). Such supplemental payments and the fixed salary provide straight-time compensation for all hours worked and the regular rate is determined by dividing that amount by the hours worked in the workweek. Additional bonuses or premium payments must be included in the calculation of the regular rate unless they may be excluded under FLSA sections 7(e)(1)-(8). *See* 29 U.S.C. 207(e)(1)-(8).

The Department proposed a similar clarification through an NPRM in 2008. *See* 73 FR 43654, 43662, 43669-70 (July 28, 2008). However, the final rule issued in 2011 did not adopt this proposal because the Department, at the time, believed that courts had "not been unduly challenged" in applying the current regulatory text, that the proposed clarification "would have been inconsistent" with the Supreme Court's decision in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942), and that the proposed clarifying language "may create an incentive" for employers "to require employees to work long hours." 76 FR 18832, 18848-50 (Apr. 5, 2011). The preamble to the 2011 final rule further stated, for the first time in rulemaking by the Department, that all straight-time bonus and premium payments were incompatible with the fluctuating workweek method, while maintaining that the preamble "restore[d] the current rule."

3

The decision in that rulemaking not to make any substantive changes to the regulatory text, however, caused courts to interpret the 2011 final rule in different ways and to reach inconsistent holdings based on a judicially-crafted distinction between certain types of bonuses that the Department has never recognized.

As explained below, the Department has considered anew the need for a clarification, particularly in light of the 2011 final rule and its interpretation by courts, now finds the reasons articulated in 2011 to be unpersuasive, and is therefore finalizing revisions that are substantially similar to those initially proposed in 2008. Specifically, the Department is adding language to § 778.114(a) clarifying that bonuses, premium payments, and other additional pay of any kind are compatible with the use of the fluctuating workweek method of compensation. The Department is also adding examples to § 778.114(b) to illustrate the fluctuating workweek method of calculating overtime where an employee is paid (1) a nightshift differential, (2) a productivity bonus in addition to a fixed salary, and (3) premium pay for weekend work. The Department is further making non-substantive revisions to § 778.114(a) and (c) that were not proposed in the 2008 NPRM to enhance clarity. Specifically, revised § 778.114(a) will now list each of the requirements for using the fluctuating workweek method, while duplicative text is being removed from revised § 778.114(c). Finally, the Department is changing the title of the regulation from "Fixed salary for fluctuating hours" to "Fluctuating Workweek Method of Computing Overtime."

The Department also believes that this rule will allow employers and employees to better utilize flexible work schedules. This is especially important as workers return to work following the COVID-19 pandemic. Some employers are likely to promote social distancing in the workplace by having their employees adopt variable work schedules, possibly staggering their

start and end times for the day. This rule will make it easier for employers and employees to agree to unique scheduling arrangements while allowing employees to retain access to the bonuses and premiums they would otherwise earn.

This final rule is an Executive Order (E.O.) 13771 deregulatory action. Details on the estimated reduced burdens and cost savings of this final rule can be found in the rule's economic analysis.

Pursuant to the Congressional Review Act (5 U.S.C. 801 et seq.), the Office of Information and Regulatory Affairs has designated this rule as a "major rule" as defined by 5 U.S.C. 804(2).

## II.    BACKGROUND

### A. Principles of Computing Overtime Pay Based on the Regular Rate

Section 7(a) of the FLSA requires employers to pay their nonexempt employees overtime premium pay of at least "one and one-half times the regular rate at which [the employee] is employed" for all hours worked in excess of 40 in a workweek. 29 U.S.C. 207(a). The regular rate is computed for each workweek and is defined as "all remuneration for employment," save for eight statutory exclusions, divided by the number of hours worked. 29 U.S.C. 207(e); *see also Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 458 (1948) (stating that the "regular rate must be computed by dividing the total number of hours worked into the total compensation received").[1] For each hour over 40 an employee works in a workweek, the employee is entitled to straight time compensation at the regular rate and an additional 50 percent of the regular rate for that hour. *See, e.g.*, *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 423-24

---

[1] The preamble to the Department's 2019 rulemaking concerning "Regular Rate under the Fair Labor Standards Act" discusses in greater detail the legislative and regulatory history of the regular rate. *See* 84 FR 68736, 68737-39 (Dec. 16, 2019).

(1945). Dividing non-excludable remuneration by hours worked is the only proper method to compute the regular rate and the Department's regulations at §§ 778.110-.115 "give some examples of the proper method of determining the regular rate of pay in particular instances." 29 CFR 778.109.[2]

One of the examples is § 778.114, which concerns instances where the employee is paid a fixed salary that is understood to be compensation for a variable number of hours worked each week, whether few or many, as opposed to a specific number of hours. The regular rate equals the quotient of the weekly salary and the number of hours worked and necessarily changes as the number of hours vary week to week. For each overtime hour worked, the employee is entitled to straight-time pay plus an additional 50 percent of the regular rate as an overtime premium. Because the weekly salary is compensation for all hours worked in a workweek, the employee would have already received straight-time pay for any overtime hours worked, so he or she is entitled to additional compensation at one-half of the regular rate for overtime hours. This

---

[2] Total non-excludable remuneration is divided by all hours worked to determine the regular rate where all hours worked have been compensated. This will always be the case under the fluctuating workweek method because the fixed salary covers all hours worked and, when combined with non-excludable bonuses and premiums, constitutes all straight time pay. When an employee is paid a salary for fixed hours, however, the salary is divided by the hours that it covers, not the total hours worked, and additional straight time is due for any additional hours, as well as any overtime premium. 29 CFR 778.113. Similarly, if an employee who is paid hourly, for example, has worked uncompensated hours, the uncompensated hours are not included in determining the regular rate and the employee is owed their regular rate for the uncompensated hours as well as any overtime premium. *See* 29 CFR 778.109 (regular rate is non-excludable remuneration divided "by the total number of hours actually worked by [the employee] in that workweek *for which such compensation was paid*") (emphasis added).

method of computing overtime pay is the subject of this rulemaking and is known as the fluctuating workweek method.

The fluctuating workweek method is not the only such example where additional overtime compensation is properly computed as one-half the regular rate because the straight time portion of the required "one and one-half times the regular rate" has already been paid. This method of computation is also appropriate where an employee is compensated through piece rate, job rate, or day rate arrangements.

Section 778.110 concerns instances where the employee is paid an hourly wage. If an hourly wage were the sole component of compensation, the regular rate would simply be the hourly wage. 29 CFR 778.110(a). Compensation for each overtime hour would equal one times the hourly rate as straight-time pay plus an additional one-half times the hourly rate, for a total of "one and one-half times the regular rate." 29 U.S.C. 207(a).

Section 778.111 concerns instances where the employee is paid on a piece rate basis plus an hourly premium for time spent waiting. In § 778.111(a)'s scenario, the regular rate for each week is computed by adding piece rate compensation to the total waiting premium and then dividing that sum by the number of hours worked. This constitutes the employee's straight time pay and "[o]nly additional half-time pay is required" for overtime hours worked. 29 CFR 778.111.[3]

Section 778.112 concerns instances where the employee is paid a flat amount for a day's work or a specific job, regardless of how many hours were actually worked on a particular day or for a particular job. The regular rate is computed as the sum of all day rate or job rate

---

[3] Section 778.111(b) further provides that, for any workweek in which a piece rate employee receives an hourly guarantee in lieu of the piece rate compensation, the regular rate is equal to the guaranteed hourly rate.

compensation in a workweek divided by the total number of hours worked. As with piece rate pay, this constitutes straight-time pay for all hours worked. Accordingly, the employee "is then entitled to extra half-time pay at this [regular] rate for all hours worked in excess of 40 in the workweek." 29 CFR 778.112.

Section 778.113 concerns instances where the employee is paid a salary for a specific number of hours each week. In this scenario, the salary can be expressed as a constant hourly rate equal to the salary amount divided by the specific number of hours that the salary is intended to compensate.[4] Since the salary covers a specific number of hours, and not all hours in a workweek, it would not cover straight-time compensation for hours in excess of that specific number, including any such overtime hours. Accordingly, the employee must receive straight-time pay at the regular rate in addition to one-half of the regular rate as overtime premium for each such overtime hour.

Finally, § 778.115 concerns instances where an employee receives straight-time pay at multiple different rates in the same workweek. In such cases, the "regular rate for that week is the weighted average of such rates" and the employee is entitled to additional half-time for overtime hours. 29 CFR 778.115.[5]

These examples all apply the same fundamental principle for computing the regular rate: the regular rate for each workweek is calculated by dividing non-excludable remuneration by the number of hours worked. They also apply the same fundamental principle for computing

---

[4] If the salary covers a period longer than a week, an hourly rate can still be computed by dividing the salary by the number of hours covered in the period, whether that is a month, a year, or something else.

[5] Under certain circumstances, an employer may also pay overtime to an employee who is employed at two different rates "at a rate not less than one and one-half times the hourly nonovertime rate established for the type of work [the employee] is performing during such overtime hours." 29 CFR 778.419(a); *see* 29 U.SC. 207(g)(2).

overtime pay: overtime pay for each hour worked above 40 is equal to straight-time pay for that hour plus an additional 50 percent of the regular rate as overtime premium. With these examples and principles in mind, the Department turns to the background specific to the fluctuating workweek method of computing overtime pay under § 778.114.

### B.   History of the Fluctuating Workweek Method

The Department introduced the fluctuating workweek method of calculating overtime pay in its 1940 Interpretive Bulletin No. 4. *See* Interpretative Bulletin No. 4 ¶ ¶ 10, 12 (Nov. 1940). In 1942, the U.S. Supreme Court upheld the fluctuating workweek method in *Overnight Motor Transp. Co., v. Missel*, 316 U.S. 572, 580 (1942). In that case, the Court held that where a nonexempt employee had received only a fixed weekly salary (with no additional overtime pay) for working irregular hours that frequently exceeded 40 per week and fluctuated from week to week, the employer was required to retroactively pay an additional 50 percent of the employee's regular rate of pay multiplied by the overtime hours worked to satisfy the FLSA's time and a half overtime pay requirement. *Id.* at 573–74, 580–81.[6] The quotient of the weekly salary divided by the number of hours actually worked each week, including the overtime hours, determined the "regular rate at which [the] employee [was] employed" under the fixed salary arrangement. *Id*. at 580.

In 1968, informed by the Supreme Court's holding in *Missel*, the Department issued 29 CFR 778.114, which explains how to perform the regular rate calculation under the FLSA for nonexempt salaried employees who work fluctuating hours. *See* 29 CFR 778.1, 778.109,

---

[6] As discussed above, half-time, rather than time-and-a-half pay, for overtime is appropriate where the employee's weekly earnings constitute compensation for all hours worked that week, including overtime hours. Such a pay system already compensates the employee for overtime hours at the regular rate, and so the employee is entitled under the FLSA to an additional half-time the regular rate for those hours. *See* 29 U.S.C. 207(a).

9

778.114. The Supreme Court has "interpreted the [FLSA] statute in a manner that would 'afford the fullest possible scope to agreements' that are designed to address 'the special problems confronting employer and employee in businesses where the work hours fluctuate from week to week and from day to day . . . .'" *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 56–57 (D.D.C. 2006) (quoting *Walling v. A.H. Belo Corp.*, 316 U.S. 624, 635 (1942)).[7] Indeed, "[t]he [fluctuating workweek] method was developed to permit FLSA-covered employees who work irregular hours to negotiate a consistent *minimum* salary with their employers." *Hunter*, 453 F. Supp. 2d at 61 (emphasis in original).

Consistent with this manner of interpretation and purpose, the Department, until 2011, had never explicitly forbidden in rulemaking the payment of bonuses and premiums beyond the minimum salary to employees compensated under the fluctuating workweek method. To the contrary, as explained more fully below, in both the 2008 NPRM and in a 2009 opinion letter, the Department stated that such bonuses were consistent with using the fluctuating workweek method. However, in the preamble to the 2011 final rule, the Department stated a different position. The Department now adds clarifying language to 29 CFR 778.114 affirming its current position that employers using the fluctuating workweek method to calculate overtime compensation may pay bonuses and premiums in addition to the minimum salary.

---

[7] Note that *Belo* concerned a different type of flexible pay agreement, now codified under section 7(f) of the FLSA, under which an employee was paid on an hourly basis with a guaranteed weekly sum. The Department cites *Belo* here only for the limited purpose of recognizing the manner in which the Court generally interprets work arrangements under the FLSA when work hours vary from week to week. In *Hunter*, the district court similarly referenced *Belo* in analyzing the regular rate, and found notable that the Court decided *Belo* and *Missel* on the same day and that both cases ultimately informed the promulgation of the fluctuating workweek regulatory scheme. *See Hunter*, 453 F. Supp. 2d at 56, 58 ("With the companion decisions of *Missel* and *Belo* as a backdrop, the Department of Labor promulgated regulations that provide 'examples of the proper method of determining the regular rate of pay in particular instances,'" including the fluctuating workweek method) (quoting § 778.109).

10

Early examples of Department guidance and court decisions exemplify interpretations of the FLSA that "afford the fullest scope possible" to fluctuating workweek arrangements. For example, a 1999 WHD opinion letter explained that an employer using the fluctuating workweek method may pay bonuses for working holidays or vacations, broadly instructing that "[w]here all the legal prerequisites for the use of the fluctuating workweek method of overtime payment are present, the FLSA, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, *does not prohibit paying more*."[8] As another example, courts have applied and endorsed the fluctuating workweek method when employees received additional bonus payments. *See*, *e.g.*, *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 908 (E.D. Tex. 1997) (applying fluctuating workweek method where employee received incentive bonuses in addition to fixed salary); *see id*. at 893 n.17 (citing *Parisi v. Town of Salem*, No. 95-67-JD, 1997 WL 228509, at *3 (D.N.H. Feb. 20, 1997) ("The rules promulgated by the Secretary do not change when base compensation includes not only a salary but a bonus payment; the bonus payment is simply included in calculating the regular rate.")); *Black v. Comdial Corp.*, Civ. A. No. 92-O81-C, 1994 WL 70113, at *5 (W.D. Va. Feb. 15, 1994) ("The provision of [straight time] bonus pay for hours 45–61 changes neither the salary basis of [an employee's] pay, nor the applicability of the fluctuating workweek method of 29 C.F.R. § 778.114.").

However, in 2003, the First Circuit held that certain types of additional pay were incompatible with the fluctuating workweek method. *See O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003). In *O'Brien*, the First Circuit held that police officers' receipt of "bonus" pay for working nights and long hours was contrary to the fluctuating workweek method. *Id*. at 288. The *O'Brien* court reasoned that an employer using the method must pay a "fixed amount as

---

[8] WHD Opinion Letter, 1999 WL 1002399, at *2 (May 10, 1999) (emphasis added).

straight time pay for whatever hours … work[ed]," and therefore, *any* extra compensation would violate this "fixed amount" requirement. *Id.* (quoting 29 CFR 778.114(a)).

The Department filed an amicus brief in support of the ultimate overtime-back-pay result in *O'Brien*, reasoning that the "base salary covered only 1950 hours of work annually" under the specific officers' agreement at issue, and therefore, this "base salary was not intended to compensate them for an unlimited number of hours," as required by 29 CFR 778.114. Brief for the Sec'y of Labor as Amicus Curiae, *O'Brien*, 350 F.3d 279, 2004 WL 5660200, at *11, 13 (Feb. 20, 2004). In other words, the Department reasoned that the fluctuating workweek method could not be used because the officers' fixed salary was understood to compensate them for a specific—rather than fluctuating—number of hours each week. *Id*. However, the Department's brief did not address whether bonus pay beyond the "fixed amount" required was incompatible with the fluctuating workweek method.[9]

Some courts followed *O'Brien* to hold that certain types of bonuses were incompatible with the fluctuating workweek method,[10] while others continued to hold that bonuses were

---

[9] In reflecting on *Valerio* and *Tango's Restaurant,* the Department stated that "[n]othing in either of those decisions suggests that 29 CFR 778.114 extends, contrary to its terms, to a pay system in which an employee, while receiving a fixed salary for a certain minimum number of hours, is paid more for additional straight time worked beyond a regular schedule." *O'Brien* Amicus Br. at *18 (citing *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35, 39 (1st Cir. 1999); *Martin v. Tango's Restaurant,* 969 F.2d 1319, 1324 (1st Cir. 1992)). Section 778.113 should be used to compute overtime owed based on the regular rate where a fixed salary is understood to cover a certain number of hours. While the brief did not address the precise issue of whether bonus pay beyond the "fixed amount" required was incompatible with the fluctuating workweek method, to the extent that the brief could be read to suggest that this may have been the Department's position at the time, the Department is making clear that this is not the Department's position. The Department instead seeks to clarify that bonus pay for extra straight time work is compatible with the fluctuating work week method. *See, e.g., Black*, 1994 WL 70113, at *2 ("The provision of [straight time] bonus pay for hours 45-61 changes neither the salary basis of [an employee's] pay, nor the applicability of the fluctuating workweek method of 29 CFR 778.114.").

[10] *See, e.g., Ayers v. SGS Control Servs., Inc*., No. 03 CIV. 9077 RMB, 2007 WL 646326, at *10 (S.D.N.Y. Feb. 27, 2007) ("Plaintiff who received sea pay or day-off pay did not have 'fixed'

compatible with that method.[11] These inconsistent decisions appeared to have created practical confusion for employers.

The Department's 2008 NPRM, in an effort to "eliminate confusion over the effect of paying bonus supplements and premium payments to affected employees," proposed to add a sentence to the end of § 778.114(a) providing that payment of overtime premiums and other bonus and non-overtime premium payments will not invalidate the "fluctuating workweek" method of overtime payment, but such payments must be included in the calculation of the regular rate unless excluded under section 7(e)(1) through (8) of the FLSA. 73 FR at 43656, 43670. The Department also proposed to add "an example to § 778.114(b) to illustrate these principles where an employer pays an employee a nightshift differential in addition to a fixed salary." *Id.* at 43662; *see also id.* at 43670. The proposed clarifying language in the 2008 NPRM reflected the Department's position that bonus and premium payments are compatible with the fluctuating workweek method.

On January 16, 2009, WHD reaffirmed this same position when it issued an opinion letter explaining that "[r]eceipt of additional bonus payments does not negate the fact that an employee receives straight-time compensation through the fixed salary for all hours worked whether few or many, which is all that is required under § 778.114(a)." WHD Opinion Letter FLSA2009-24 (Jan. 16, 2009) (withdrawn Mar. 2, 2009).

---

weekly straight time pay, in violation of 29 C.F.R. § 778.114(a)."); *Dooley v. Liberty Mut. Ins. Co.*, 369 F. Supp. 2d 81, 87 (D. Mass. 2005) (bonus pay arrangement for weekend work violated requirement that "the employee must receive a fixed salary that does not vary with the number of hours worked during the week") (internal quotation marks and citation omitted).

[11] *See, e.g., Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (applying fluctuating workweek method where employee received recruitment bonus in addition to fixed salary); *Perez v. RadioShack Corp.*, No. 02 C 7884, 2005 WL 3750320, at *1 (N.D. Ill. Dec. 14, 2005) (applying fluctuating workweek method where employee received tenure pay, commissions, and other bonuses in addition to fixed salary).

On May 5, 2011, the Department issued a final rule, which did not adopt the proposed

clarifying language to § 778.114. *See* 76 FR 18832. Instead, in the preamble, the Department

stated it would leave the text of § 778.114 unchanged except for minor revisions. *Id.* at 18853.

The Department expressly stated that the decision not to implement the proposed changes would

avoid "expand[ing] the use of [the fluctuating workweek] method of computing overtime pay

beyond the scope of the current regulation," and would "restore the current rule." *Id.* at 18850.

The same 2011 preamble, however, interpreted the "current rule" to mean that bonus and

premium payments "are incompatible with the fluctuating workweek method of computing

overtime under section 778.114." *Id.*

The 2011 preamble's reference to the "current rule" appears to have generated further

confusion among the courts, as the "record indicate[d] that in 2008 and 2009, … DOL construed

the [fluctuating workweek] regulation to permit bonus payments," then "shifted course" in 2011

in a manner "contrary to its publicly-disseminated prior position." *Switzer v. Wachovia Corp.*,

No. CIV.A. H-11-1604, 2012 WL 3685978, at *4 (S.D. Tex. Aug. 24, 2012). For example, one

court stated that the 2011 preamble "presents an about-face" that "alters the DOL's

interpretation" so as to prohibit employers from using the fluctuating workweek method for

workers who receive bonuses. *Sisson v. RadioShack Corp.*, No. 1:12CV958, 2013 WL 945372,

at *6 (N.D. Ohio Mar. 11, 2013). Another court presented with identical facts as *Sisson* reached

an opposite conclusion because it interpreted the 2011 preamble as "a decision to maintain the

status quo" that "does not[] disturb the law permitting employers to use the [fluctuating

workweek] method to calculate the overtime pay of workers who receive performance bonuses."

*Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 259 (S.D.N.Y. 2013). As another example, a

third court declined to give any weight to the 2011 preamble because it rested on an

14

"unconvincing" interpretation of *Missel. Smith v. Frac Tech Servs., LLC,* No. 4:09CV00679

JLH, 2011 WL 11528539, at *2 (E.D. Ark. June 15, 2011).

A growing number of courts, since 2011, have developed a dichotomy between

"productivity-based" supplemental payments, such as commissions, and "hours-based"

supplemental payments, such as night-shift premiums. Such courts hold that productivity-based

supplemental payments are compatible with the fluctuating workweek method, but not hours-

based supplemental payments. *See, e.g.*, *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir.

2018), *as amended on denial of rehearing* (Feb. 1, 2019) ("Time-based bonuses, unlike

performance-based commissions, run afoul of the [fluctuating workweek] regulations."); *Lalli v.

Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 10 (1st Cir. 2016) ("a compensation structure employing a

fixed salary still complies with section 778.114 when it includes additional, variable

performance-based commissions"). However, as explained in the NPRM, the Department has

never drawn this distinction, and this distinction is in tension with all of the Department's prior

written guidance and statements on the issue such as the 2004 *O'Brien* amicus brief (declining to

support application of fluctuating workweek method to payment of additional straight-time

hours), the 2008 NPRM and the 2009 opinion letter (permitting bonuses as compatible with the

fluctuating workweek), and even the 2011 final rule (declining to implement the 2008 NPRM

and stating that the current rule prohibits all bonuses as compatible with the fluctuating

workweek).

As explained in the NPRM, the divergent views of the Department and the courts–and

even among courts–have created considerable uncertainty for employers regarding the

compatibility of various types of supplemental pay with the fluctuating workweek method. As

discussed below, comments received from several commenters support this assessment and

document the confusion. As such, the need for the Department to clarify its fluctuating workweek rule is even stronger now than in 2008, when it proposed a substantially similar clarification. The Department is therefore issuing this final rule to clarify that bonus and premium payments (whether hours-based, production-based, or other) are compatible with the use of the fluctuating workweek method of compensation.

C.  *The Department's Proposal*

On November 5, 2019, the Department issued an NPRM proposing to revise its existing regulation at § 778.114(a) to clarify that any bonuses, premium payments, or other additional pay of any kind are compatible with the fluctuating workweek method of compensation, and that such payments must be included in the calculation of the regular rate unless they are excludable under FLSA sections 7(e)(1)-(8). *See* 84 FR at 59591. The NPRM further proposed to add examples to § 778.114(b) to illustrate these principles where an employer pays an employee, in addition to a fixed salary, (1) a nightshift differential and (2) a productivity bonus. *Id*. The Department also proposed simplifying revisions § 778.114 by listing each required circumstance for the fluctuating workweek method to correctly compute overtime pay and removing duplicative text from revised § 778.114(c). *Id.* Finally, the Department proposed to change the title of the regulation from "Fixed salary for fluctuating hours" to "Fluctuating Workweek Method of Computing Overtime" to better reflect the purpose of the subsection and to improve the ability of employers to locate the applicable rules. *Id.*

Approximately 36 individuals and organizations commented on the NPRM during the 30-day comment period that ended on December 5, 2019. The Department received comments from a diverse array of constituencies, including individual employees, employer and industry associations, employee advocacy groups, non-profit organizations, law firms, professional

16

associations, and other interested members of the public. Many of the commenters supported the

Department's efforts to clarify the fluctuating workweek regulation, while other commenters

opposed the proposed rule. All timely comments received may be viewed on

www.regulations.gov, docket ID WHD-2019-0006.  The Department has carefully considered

the timely-submitted comments on the proposed changes.

The Department received a few comments that are beyond the scope of this rulemaking,

such as requests to raise the federal minimum wage. The Department does not have authority to

effectuate such a statutory change and therefore did not consider doing so as part of the proposed

rule. This final rule does not address comments that are out of scope of this rulemaking.

Significant issues raised in the comments on the Department's proposal are discussed

below, along with the Department's response to those comments.

### III.      FINAL REGULATORY REVISIONS

The Department is finalizing its proposal to revise and update the regulation at § 778.114

to clarify that bonus payments, premium payments, and other additional pay are consistent with

using the fluctuating workweek method of compensation, and that such payments must be

included in the calculation of the regular rate unless they may be excluded under FLSA sections

7(e)(1)-(8). *See* 29 U.S.C. 207(e)(1)-(8). The sections below discuss, in turn, the major issues

raised by commenters and the Department's responses.

  *A.  Section 778.114 is an Example of Computing Overtime Pay Based on the Regular
       Rate*

The NPRM proposed to revise § 778.114(a) to state that "[t]he fluctuating workweek

method may be used to calculate overtime compensation for a nonexempt employee if the

[listed] conditions are met[.]" 84 FR 59602. The purpose of the revision was to provide a list of

conditions which, if present, ensure that overtime pay is correctly computed under the FLSA.

But the proposed revision appears to have created, or at least did not dispel, the misconception that the fluctuating workweek method deviates from the standard "one and one-half times" overtime payment obligation under the FLSA. Some commenters, for instance, characterized the fluctuating workweek method as an "exception" or "alternative" to the overtime premium requirement. *See, e.g.,* Center for Workplace Compliance (CWC), National Employment Lawyers Association (NELA), National Employment Law Project (NELP).

   Other commenters observed that the fluctuating workweek method in § 778.114 is merely an example of how to compute the regular rate and overtime compensation in certain circumstances. The U.S. Chamber of Commerce (Chamber) requested that the Department "make clear that section 778.114 (like the other examples in the interpretive bulletin of which it is a part) merely provides an *example* of how to calculate overtime in the particular circumstances described in the example." Associated Builders and Contractors (ABC) similarly urged the Department "to clarify that examples given in the final rule are just that: *examples*." The Chamber further requested that the Department clarify that, because the fluctuating workweek method in § 778.114 merely provides an example, it "does not impose any restrictions, conditions, or limitations on the 'wages divided by hours' approach to calculating the regular rate and the resulting overtime premium." *See also* ABC at 3 ("The department should make clear that examples given do not impose limitations, restrictions or other conditions on applying the overtime calculation.").

   The Department agrees that § 778.114 is an example of how to properly compute overtime compensation based on the regular rate. Section 778.109 states, "The following sections give some examples of the proper method of determining the regular rate of pay in particular instances," and § 778.114 is one of these examples. *See Allen v. Bd. of Pub. Educ. for*

*Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("[R]eading section 778.115 in the context of section 778.109, it becomes apparent that the former is one of the examples mentioned in the latter as a way that the regular rate may be calculated in certain cases."). The Department briefly discussed these examples in the background section of this preamble, to make clear that the fluctuating workweek method under § 778.114 is merely one of several examples of how to properly compute the regular rate and overtime pay to satisfy the FLSA's statutory pay requirements.

As an example of correct computation of overtime pay based on the regular rate, § 778.114 cannot impose requirements that are inconsistent with overtime pay requirements under the FLSA. *See Allen*, 495 F.3d at 1312. That said, § 778.114 *can* impose restrictions that *are* consistent with how overtime pay is computed under the FLSA. When an employee is paid a fixed salary as straight-time compensation for all hours worked and then receives a bonus, the fluctuating workweek method described in § 778.114 correctly computes the regular rate and overtime owed under the FLSA.

For the foregoing reasons, the Department is clarifying that the fluctuating workweek method under § 778.114 is just one example of how to properly compute overtime pay owed under the FLSA in the circumstances described therein. To make this point clearer, the Department is revising § 778.114(a) to state: "An employer may use the fluctuating workweek method to properly compute overtime compensation based on the regular rate for a nonexempt employee under the following circumstances: …"

> B. *Circumstances Where an Employer May Use the Fluctuating Workweek Method to Compute Overtime Pay*

Proposed § 778.114(a)(1)-(5) lists five circumstances which, if all are met, enable an employer to use the fluctuating workweek method to properly compute the regular rate and overtime pay owed under the FLSA. Each of these circumstances is discussed below.

        1.   <u>Hours that Fluctuate from Week to Week</u>

Current § 778.114(a) states that the fluctuating workweek method is appropriate where, *inter alia*, an employee "ha[s] hours of work which fluctuate from week to week." The NPRM proposed to retain this requirement in § 778.114(a)(1), which lists "the employee works hours that fluctuate from week to week" as a condition that must be met. 84 FR at 59602.

Some commenters, such as Jackson Lewis, expressed concern that the NPRM did not specify whether the employee's fluctuation in hours worked per week could involve any range of hours or whether the hours worked must sometimes fluctuate below forty hours in the workweek. Although neither the current nor the proposed regulatory language require an employee's hours to sometimes fluctuate below forty hours per week, commenters pointed out that there has been uncertainty about this point. Commenters requested that the Department clarify that employers are able to use the fluctuating workweek method even for employees whose hours worked rarely, if ever, go below forty in the workweek.

The Department has long held the position that there is no requirement that the employee's hours of work must fluctuate below forty hours per week. The Department has consistently stated that the fluctuating workweek method remains appropriate even when it is only the number of overtime hours that fluctuate. *See* WHD Opinion Letter FLSA (October 27, 1967) ("There is no requirement that the hours of work of an employee compensated on the fluctuating workweek basis fluctuate above and below 40 hours in a workweek as there is for employees employed pursuant to section 7(f) (formerly section 7(e)) of the Act."); WHD

Opinion Letter FLSA2009-3, 2009 WL 648995 (Jan. 14, 2009) (stating that the fluctuating

workweek method can be used to compute back wages for workers whose hours fluctuated, but

who were generally expected to work a minimum of fifty hours per week).

Moreover, although a few courts have held that an employee's hours must fluctuate

below forty hours per week before his or her overtime can be computed using the fluctuating

workweek method,[12] courts have more frequently found that the fluctuating workweek method

does not actually require that the employee's hours fluctuate below forty hours. *See, e.g.*, *Aiken*

*v. County of Hampton*, 172 F.3d 43, 1998 WL 957458, at *3 (4th Cir. 1998) (unpublished)

(holding that an employer can use the fluctuating workweek method when the employee reliably

works a base number of hours over forty per week, so long as the number of overtime hours per

week fluctuate); *Condo v. Sysco Corp.*, 1 F.3d 599, 602 (7th Cir. 1993) (stating that the employer

may use the fluctuating workweek method when an employee's hours fluctuate above but not

below forty hours per week); *Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725, 735

(S.D. Ohio 2006), *aff'd* 225 F. App'x 362 (6th Cir. 2007) (per curiam) (finding no support for the

argument that an employee's hours must fluctuate both above and below forty hours per week

for the fluctuating workweek method to be used); *Ramos v. Telegian Corp.*, 176 F. Supp. 3d 181,

195 (E.D.N.Y. Mar. 31, 2016) (holding that the fluctuating workweek regulation does not require

or even suggest a requirement that an employee's hours fluctuate both above and below forty in

the workweek).

Having reviewed and considered the comments, the Department is adopting its proposed

regulatory language regarding the requirement that an employee must receive a fixed salary that

---

[12] *See, e.g., Blotzer v. L-3 Comms. Corp.*, No. CV–11–274–TUC–JGZ, 2012 WL 6086931, at
*12 (D. Ariz. Dec. 6, 2012); *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 150 (D.
Conn. 2012); *Costello v. Home Depot USA, Inc*., 944 F. Supp. 2d 199, 208 (D. Conn. 2013).

21

does not vary with the number of hours worked in the workweek, whether few or many, for the fluctuating workweek method to be applicable. To prevent any further misunderstanding, however, the Department is also clarifying that the regulation does not require that an employee's hours must sometimes fluctuate below forty hours per week, so long as the employee's hours worked do vary.

### 2.  Fixed Salary that Does Not Vary with the Number of Hours Worked

Section 778.114(a) currently provides that, in order for an employer to calculate overtime pay pursuant to the fluctuating workweek method, the employee must be paid a "fixed salary . . . for the hours worked each workweek, whatever their number." 29 CFR 778.114(a). The regulation also requires employers using the fluctuating workweek method to pay the guaranteed salary even where "the workweek is one in which a full schedule of hours is not worked." 29 CFR 778.114(c). The NPRM proposed to modify the current regulation to clarify that employers may pay bonuses, premium payments, and other additional pay of any kind in addition to the fixed salary. *See* 84 FR 59602. The NPRM did not propose, however, to substantively change the current requirement that an employee must be paid a "fixed salary" representing compensation for all of the hours worked in the workweek. The proposed regulatory text in the NPRM stated that one of the conditions that must be satisfied in order to use the fluctuating workweek method is that the employee be paid "a fixed salary that does not vary with the number of hours worked in the workweek." *Id.*

A few commenters, including ABC and the Chamber, requested that the Department state in the final rule that the fluctuating workweek method may be used as long as the employee is paid on a salary basis as defined in 29 CFR 541.602. They asked the Department to replace the current "fixed salary" requirement with, or to define the "fixed salary" requirement by, reference

to the salary basis test that is used for the minimum wage and overtime exemption for executive, administrative, and professional employees in section 13(a)(1) of the FLSA. 29 U.S.C. 213(a). The Chamber urged the adoption of the salary basis test as defined in 29 CFR 541.602 in the fluctuating workweek context so that employers could make deductions from the "fixed salary" under the fluctuating workweek method on the same basis that deductions are permitted under part 541. The Wage & Hour Defense Institute (WHDI) similarly requested that the Department provide in the final rule that deductions from the salary for full days not worked (e.g., due to illness) are permissible while using the fluctuating workweek method.

The Department has carefully considered these commenters' requests to incorporate the salary basis definition and to allow the same types of deductions permissible under part 541 from the "fixed salary" in § 778.114 and has determined not to adopt such a change at this time. The Department has consistently rejected the argument that the executive, administrative, and professional exemption's salary basis requirements and the permitted deductions from salary set forth in § 541.602 should apply to the fluctuating workweek method. *See, e.g.*, FLSA2006-15 Opinion Letter, 2006 WL 1488849, at *1 (May 12, 2006); FLSA Opinion Letter, 1999 WL 1002415, at *1-2 (May 28, 1999); FLSA Opinion Letter, 1991 WL 11648489, at *1 (Aug. 20, 1991). Adoption of the part 541 salary basis requirements and permitted pay deductions would be contrary to the Department's longstanding interpretation that salary deductions for days or hours not worked are generally incompatible with the payment of a "fixed" salary under the fluctuating workweek method. *See, e.g.*, FLSA2006-15 Opinion Letter, 2006 WL 1488849, at *1 (May 12, 2006); FLSA Opinion Letter, 1991 WL 11648489, at *1 (Aug. 20, 1991); FLSA Opinion Letter, 1983 WL 802650, at *1 (Nov. 30, 1983); FLSA Opinion Letter, 1978 WL 388412, at *1 (Dec. 29, 1978).

As the Department has explained, "[I]t is the longstanding position of the Wage and Hour Division that an employer utilizing the fluctuating workweek method of payment may not make deductions from an employee's salary for absences occasioned by the employee." FLSA2006-15 Opinion Letter, 2006 WL 1488849, at *1 (May 12, 2006). For example, an employer using the fluctuating workweek method may not make deductions from an employee's salary when the employee has exhausted his or her sick leave bank or has not yet earned sufficient sick leave to cover an absence due to illness. *Id.*; *see also* FLSA Opinion Letter, 1978 WL 388412, at *1 (Dec. 29, 1978) (explaining that deductions made for "excused absences, even for personal reasons (such as time off to visit a relative who is ill) would be inconsistent" with the requirement in § 778.114 that an employee be paid a full, "fixed" salary for any week in which he or she performs work).

The Department has for many years advised, however, that an employer using the fluctuating workweek method of computing overtime pay "may take a disciplinary deduction from an employee's salary for *willful* absences or tardiness or for infractions of major work rules, provided that the deductions do not cut into the required minimum wage or overtime compensation." FLSA2006-15 Opinion Letter, 2006 WL 1488849, at *1 (May 12, 2006) (emphasis added); *see also* FLSA Opinion Letter, 1983 WL 802650, at *1 (Nov. 30, 1983) (same); WHD Field Operations Handbook 32b04b(b) (same); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 639 (5th Cir. 2001) (concluding that occasional deductions from pay for willful absences or tardiness "do not run afoul of the guidelines governing the [fluctuating workweek] method"). If such deductions are consistently or frequently made, however, then "the practice of making such deductions would raise questions as to the validity of the compensation plan."

FLSA2006-15 Opinion Letter, 2006 WL 1488849, at *1 (May 12, 2006) (citing 29 CFR

778.306(b)); FLSA Opinion Letter, 1983 WL 802650, at *1 (Nov. 30, 1983) (same).

Replacing the "fixed salary" requirement of the fluctuating workweek method with the

salary basis definition in § 541.602, thereby expanding the types of pay deductions that would be

permissible under § 778.114, could have a significant effect on the scope and applicability of the

fluctuating workweek method. Because the request to adopt the salary basis test and to permit

new deductions not previously recognized as compatible with the "fixed salary" requirement in

the fluctuating workweek context would constitute a significant change to the current regulation

and the Department's longstanding interpretation of that regulation, the Department would want

to solicit and carefully consider public comment on the issue before adopting such a revision.

Accordingly, the Department declines to grant the request to apply the salary basis

requirements of § 541.602 to § 778.114 at this time. The Department has, however, determined

that it would be helpful to the public to expressly incorporate in the regulation itself its

longstanding interpretation that employers using the fluctuating workweek method may take

occasional disciplinary deductions from an employee's salary for willful absences or tardiness or

for infractions of major work rules, provided that the deductions do not cut into the required

minimum wage or overtime compensation. The Department has therefore decided to add such

clarifying language to the regulatory text in § 778.114(d).

3. The Fixed Salary Satisfies the Minimum Wage

Current § 778.114(a) states that the fluctuating workweek method is appropriate where,

*inter alia*, "the amount of the salary is sufficient to provide compensation to the employee at a

rate not less than the applicable minimum wage rate for every hour worked in those workweeks

in which the number of hours the employee works is greatest." 29 CFR 778.114(a). The NPRM

25

included nearly identical text in proposed § 778.114(a)(3) as one of the circumstances that must be met for using the fluctuating workweek method.

A few commenters noted that, because the regular rate falls as hours increase under the fluctuating workweek method, in occasional workweeks in which an employee works extremely high hours, the regular rate may fall below the minimum wage, even where employers have endeavored to ensure that the payment system generally is compliant with minimum wage requirements. *See, e.g.,* Chamber; ABC. These commenters acknowledge that, in such situations, the employer would violate the FLSA unless it provides additional payments to satisfy the minimum wage. The commenters request, however, that the Department clarify that an employer's intermittent need to provide supplemental payments to ensure the minimum wage is met would not retroactively invalidate the fluctuating workweek method. They further request that the Department add language providing that the fixed salary need only be "reasonably calculated" to provide compensation at a rate not less than the applicable minimum wage.

After careful consideration, the Department has decided to adopt the language as proposed. As the commenters acknowledge, in any given workweek where the employee's fixed salary does not at least meet the applicable minimum wage, the employer must make an additional payment to bring the employee up to the applicable minimum wage. *See* WHD Opinion Letter FLSA 945 (Feb. 6, 1969); WHD Opinion Letter FLSA (June 12, 1969); *Cash*, 2 F. Supp. 2d at 894. Therefore, the proposed regulation maintains the requirement for the use of the fluctuating workweek method that the fixed salary be sufficient to compensate the employee for all hours worked at a rate not less than the applicable minimum wage.

In explaining that the fixed salary must be sufficient to compensate the employee at a rate not less than the minimum wage for the fluctuating workweek method to be used, however, the

proposed regulatory language does not indicate that an occasional failure to meet this

requirement retroactively invalidates the use of the fluctuating workweek method in previous

workweeks or prevents the employer from continuing to use the fluctuating workweek method

for that employee in subsequent workweeks. On the contrary, the Department has already

determined that where an employer has reasonably calculated the fixed salary to cover at least

the minimum wage for all hours worked, an occasional workweek where the fixed salary does

not at least equal the applicable minimum wage, due to unusual and unforeseeable

circumstances, does not invalidate the use of the fluctuating workweek method in other

workweeks in which the salary equals or exceeds the applicable minimum wage as anticipated.

*See* WHD Opinion Letter FLSA-883 (Aug. 30, 1966) (stating that the employer "must not only

in fact assure that no workweek will be worked in which the salary fails to provide at least the

current statutory minimum hourly rate of $1.25, but the salary must also be so arranged that it is

reasonably calculated to provide for such a statutory minimum"); WHD Opinion Letter FLSA

(Feb. 6, 1969) (finding that "the bona fides of the pay plan will not fail solely on the grounds that

in five weeks in an annual period, due to unforeseen circumstances beyond the control or the

anticipation of the employer and employee, the salary failed to provide at least the applicable

statutory minimum hourly rate of pay").

The courts have also consistently held that the employer is not prohibited from using the

fluctuating workweek method in other workweeks merely due to infrequent workweeks where

the fixed salary did not at least equal the minimum wage for all hours worked due to unforeseen

circumstances. *See, e.g., Cash*, 2 F. Supp. 2d at 894 (finding that the employer's use of the

fluctuating workweek method was still appropriate in most workweeks despite "infrequent

occasions when unforeseen events cause the employee to work so many hours that her salary

27

fails to support an average hourly rate at least equal to the applicable minimum wage"); *Perez v. Radio Shack Corp.*, 2005 WL 3750320, at *5 (N.D. Ill. Dec. 14, 2005) (declining to conclude that the employer should have foreseen that employees' hours worked would be so high that their fixed salary would not cover the applicable minimum wage in all workweeks, when all employees in the potential class received less than the minimum wage approximately forty-nine times in a four-year time period); *Aiken*, 172 F.3d 43, 1998 WL 957458, at *5-6 (according substantial weight to the Department's opinion letters that suggest that "making a minimum wage adjustment on five occasions in a two-year period does not defeat the validity of the fluctuating workweek plan," and concluding that employees are not entitled to any additional compensation beyond the minimum wage straight time and overtime adjustments they had already received for those workweeks); *Davis v. Friendly Exp., Inc.*, 2003 WL 21488682, at *2 (11th Cir. 2003) (finding that an employer does not have to adopt another method of computing overtime where the fixed salary did not at least equal the applicable minimum wage for all hours worked in a few, isolated workweeks due to unforeseen events).

The overall use of the fluctuating workweek method is thus not invalidated by occasional and unforeseeable workweeks in which the employee's fixed salary did not provide compensation to the employee at a rate not less than the applicable minimum wage, so long as the fixed salary was reasonably calculated to compensate the employee at or above the applicable minimum wage in the foreseeable circumstances of the employee's work. It is important to note, however, that the employer will not be able to use the fluctuating workweek method in circumstances where the employer could have foreseen that the employee's salary would not at least equal the applicable minimum wage in all workweeks, or where the employee's salary in fact did not at least equal the applicable minimum wage with some degree of frequency. In such

28

circumstances, the employer and the employee must reach a new understanding, either as to the number of hours that the employee is to work or the amount of fixed salary to be paid, or the employer must use a different method to compute overtime. *See* WHD Opinion Letter FLSA (Feb. 6, 1969) (stating that the fluctuating workweek method "would be inapplicable where the employer could have foreseen or anticipated that the salary would be insufficient to yield the minimum wage even in a nominal number of workweeks such as five in an annual period"); WHD Opinion Letter FLSA (June 12, 1969) (finding that "the fact that the employee's salary failed to equal the statutory minimum wage in as many as 27 workweeks[] in one year would render moot any consideration that such a situation could not have been anticipated … [and] to ensure that his fluctuating workweek plan will be valid in the future, the employer must reach a new understanding with the employee"); *Davis v. Friendly Exp., Inc.*, No. 02-14111, 2003 WL 21488682, at *2 (11th Cir. 2003) (per curiam) ("If, however, the need for a minimum wage supplement becomes common, the fluctuating workweek calculation may not apply unless the employer and the employee reach a new understanding."); *Aiken*, 172 F.3d 43, 1998 WL 957458, at *5 (rejecting an employee's argument that an employer and employee must reach a new understanding regarding the use of the fluctuating workweek method if there is even a single workweek in which the employee's fixed salary falls below the minimum wage, stating instead that the validity of such a pay plan is defeated only if such workweeks are foreseeable or frequent); *Perez v. Radio Shack Corp*., No. 02 C 7884, 2005 WL 3750320, at *3 (N.D. Ill. Dec. 14, 2005) ("If the breaches become too common, however, the employer must cease using the fluctuating workweek method and reach a new understanding with the employee.").

4.   Clear and Mutual Understanding

In its current form, § 778.114(a) provides that, to use the fluctuating workweek method of computing overtime, an employer and employee must, *inter alia*, possess "a clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 CFR 778.114(a). The current regulation further explains that the fluctuating workweek method may not be used "unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked." 29 CFR 778.114(c).

The NPRM proposed to modify the current language regarding the clear and mutual understanding requirement for readability and to clarify that employers may pay bonuses, premium payments, and other additional pay of any kind in addition to the fixed salary. *See* 84 FR 59602. The NPRM did not, however, propose to substantively change the current requirement that an employee and employer must clearly understand that the fixed salary represents compensation for *all* of the hours worked in the workweek, whether many or few. *See id.* (proposing that the employee and employer must "have a clear and mutual understanding that the fixed salary is compensation (apart from overtime premiums and any bonuses, premium payments, or other additional pay of any kind not excludable from the regular rate under section 7(e)(1) through (8) of the Act) for the total hours worked each workweek regardless of the number of hours").

A few commenters, including the WHDI and Fisher Phillips, requested that this clear and mutual understanding requirement be removed or modified in the final rule. WHDI stated that, as previously interpreted by the Department and courts, an employer is not required to prove an

employee's state of mind in order to satisfy this requirement. In other words, WHDI asserted that the fluctuating workweek method "is established via objective evidence, not state of mind evidence" and thus the reference to a clear and mutual understanding between the employer and employee is misleading and should be deleted. Fisher Phillips similarly argued that the NPRM's proposed "clear and mutual understanding" language would erroneously create a heightened "requirement" for use of the fluctuating workweek method. Fisher Phillips requested that WHD simply use the term "understanding" to avoid future litigation over the meaning of this provision.

The "clear mutual understanding" language has appeared in § 778.114 since 1968. *See* 33 FR 986, 991 (Jan. 26, 1968). The Department's longstanding position is that the mutual understanding that must exist between the employer and employee is that the fixed salary paid to the employee represents compensation for all the hours worked in that workweek, however many or few. *See, e.g.*, FLSA2009-3 Opinion Letter, 2009 WL 648995, at *2 (Jan. 14, 2009); FLSA Opinion Letter, 1999 WL 1002399, at *1 (May 10, 1999). The clear and mutual understanding requirement does not, however, extend to the specific method used to compute the overtime pay. *See* FLSA2009-3 Opinion Letter, 2009 WL 648995, at *2 (Jan. 14, 2009). In other words, the current regulation does not impose a requirement that the employee needs to fully understand the precise payroll method by which his or her overtime compensation is calculated. *Id*. Numerous courts have reached the same conclusion in analyzing the current regulation. *See, e.g.*, *Garcia v. Yachting Promotions, Inc.*, 662 F. App'x 795, 797 (11th Cir. 2016) (per curiam) ("An employee does not have to understand every contour of how the fluctuating workweek method is used . . . so long as the employee understands that his base salary is fixed regardless of the hours worked."); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008) (same); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 40 (1st Cir. 1999) ("The parties must only have reached a

31

'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not."); *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) ("Neither [section 778.114] nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated."). The NPRM did not propose to substantively modify this longstanding interpretation or to create a new heightened requirement with respect to the nature of the understanding that must exist between the parties.

      The Department believes that the clear and mutual understanding requirement is an important condition placed upon the usage of the fluctuating workweek method. The commenters requesting deletion of this requirement did not present evidence that courts, employers, or employees are unduly challenged in understanding or applying the requirement. Accordingly, the Department declines to substantively modify its proposal to incorporate the existing clear and mutual understanding requirement in the regulatory text. The Department has decided, however, to add clarifying text in § 778.114(a) to emphasize that, although the parties must have a clear and mutual understanding that the fixed salary is compensation for all hours worked in the workweek, they need not possess such an understanding as to the specific method used to calculate overtime pay.

      5.  <u>Computing Overtime Pay Owed under the Fluctuating Workweek Method</u>

      Proposed § 778.114(a)(5) requires that "[t]he employee receives overtime compensation, in addition to such fixed salary and any bonuses, premium payments, and additional pay of any kind, for all overtime hours worked at a rate of not less than one-half the employee's regular rate of pay for that workweek." It further clarifies that "[p]ayment of any bonuses, premium payments, and additional pay of any kind is not incompatible with the fluctuating workweek method of overtime payment, and such payments must be included in the calculation of the

regular rate unless excludable under section 7(e)(1) through (8) of the Act." Proposed § 778.114(a)(5) also revises the current rule's explanation of how the regular rate and overtime pay would be computed under the fluctuating workweek method to account for cases where the employee receives non-excludable supplemental payments. Specifically, "the regular rate of the employee will vary from week to week and is determined by dividing the amount of the salary and any non-excludable additional pay received each workweek by the number of hours worked in the workweek" and "[p]ayment for overtime hours at not less than one-half such rate satisfies the overtime pay requirement because such hours have already been compensated at the straight time rate by payment of the fixed salary and non-excludable additional pay." 84 FR at 59602.[13]

As discussed above, the fluctuating workweek method computes overtime pay where an employee receives a weekly salary that is understood to be compensation for all hours worked. Accordingly, § 778.114 is an example of a scenario where additional overtime compensation is properly computed as one-half the regular rate because the straight-time portion of the required "one and one-half times the regular rate" has already been paid. Any pay arrangement that provides compensation for all hours worked in a workweek would cover the straight-time portion of required overtime pay, leaving the need to pay only an additional half-time premium for each overtime hour. *See* 29 CFR 778.111, 778.112. The fact that an employee received a bonus or premium payment as part of such an arrangement would not negate the fact that he or she has already received the straight-time portion of required overtime pay as long at the additional

---

[13] By comparison, current § 778.114(a) states that "the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week" and "[p]ayment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement." 29 CFR 778.114(a).

payment is appropriately included in the regular rate. In other words, payment of bonuses, premiums, and other additional pay under the fluctuating workweek method will not change the half-time overtime calculation, as long as those payments are appropriately included in the regular rate, because the employees will have already received the straight-time due to them for all hours worked, and only additional half-time needs to be computed for overtime hours to comply with the FLSA.

For example, suppose an employee were paid $491 in fixed weekly salary plus an $8 per hour nightshift premium. In a week in which the employee works 50 hours, including 4 hours for which the employee receives the nightshift premium, the employee's straight time pay is $523 ($491 salary plus $32 nightshift premium), and the regular rate is $10.46. The employer need only pay an additional $5.23, half time the regular rate, for each of the 10 overtime hours, for a total of $52.30. The payment of the $8 nightshift premium is reflected in this fluctuating workweek method computation. The fluctuating workweek method therefore correctly computes overtime pay owed under the FLSA when an employee receives a fixed salary and hours based premiums that compensate him or her for all hours worked. This is the same result as would occur if the employee were paid, for example, on a piece rate basis but also received additional pay for specific hours. *See* 29 CFR 778.111(a) (providing a regulatory example of payment of waiting time in addition to piece rate and explaining that only additional half time is due for overtime hours).

Many commenters welcomed the proposed clarification in § 778.114(a)(5). According to the Society for Human Resource Management (SHRM), "employees and employers are best served by a system that promotes maximum flexibility in structuring employee pay and benefits and clarity for employers when preparing total compensation packages" and the proposed

clarification "will provide much-needed clarity to the regulated community." The Society of Independent Gasoline Marketers of America (SIGMA) stated that "[t]reating all such bonus payments consistently will reduce employer confusion and regulatory burdens and facilitate compliance with overtime rules." *See also* CWC, World Floor Covering Association (WFCA).

Some of the commenters supporting the clarification in proposed § 778.114(a)(5) requested that the Department further clarify the types of "additional pay of any kind" that would be compatible with the fluctuating workweek method. SHRM requested that the Department "specifically referenc[e] 'commissions' as a permissible form of additional pay… to eliminate any confusion over whether such commission payments are compatible with the fluctuating workweek method." As noted in the NPRM, the Department agrees that commissions constitute a type of "additional pay of any kind" that would be compatible with the fluctuating workweek method. *See* 84 FR at 59594 ("[e]xamples of 'additional pay of any kind' may include commissions").[14] Additionally, the Department believes hazard pay also would be compatible with the fluctuating workweek method. *Id.* at 59601 (listing additional pay "for hazard duty, graveyard shifts, and so forth" as types of premiums that would be permitted under this final rule). Accordingly, the Department is revising the phrase "any bonuses, premium payments, or other additional pay of any kind" in proposed § 778.114 to "any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind."

---

[14] 29 CFR 778.117 ("Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission.").

The WFCA requested that the Department restrict "additional pay of any kind" that would not invalidate the fluctuating workweek method "to what is ultimately included in the definition of the regular rate." Such a restriction would imply that supplemental payments that are excludable from the regular rate under section 207(e)—such as overtime premiums under section 207(e)(5)-(7), or "payments in the nature of gifts made at Christmas time" under section 207(e)(1)—would invalidate the fluctuating workweek method. Such supplemental pay, however, does not impact the employee's straight time compensation because it is excludable from the regular rate. The Department has never interpreted such payments as being inconsistent with the use of the fluctuating workweek method of compensation.

The requested restriction would also have the effect of discouraging employers using the fluctuating workweek method from offering excludable supplemental pay. But as explained more fully in the Department's recent rulemaking regarding the regular rate, 84 FR 68736, excludable payments such as on-site medical care, wellness programs, and contributions to health and retirement plans, benefit workers immensely. *See* 29 CFR 778.215, 778.224. The Department believes such excludable remuneration should be encouraged and not discouraged. As such, the Department declines to restrict the types of additional pay that would be compatible with the fluctuating workweek method.

Several commenters objected to the proposed clarification that "[p]ayment of bonuses, premium payments, and additional pay of any kind is not incompatible with the fluctuating workweek method of overtime payment" and requested that the Department rescind the proposed revisions to § 778.114(a)(5). These commenters raised a number of arguments, which the Department addresses below.

a.) <u>Whether Use of the Fluctuating Workweek Method Is Consistent with thePurpose of the FLSA</u>

36

Comments submitted by NELA, NELP, Economic Policy Institute (EPI), and 18 State Attorneys General (State AGs) contend that, by making it easier for employers to use the fluctuating workweek method, the proposed clarification in § 778.114(a)(5) is contrary to the FLSA's remedial purpose. For instance, NELA asserts that the proposed rule would undermine "the primary purposes of the FLSA's overtime provisions," which are "to protect workers from long hours of work and to spread employment." *See also* NELP, EPI, State AGs.

As an initial matter, the Department emphasizes, as previously discussed, that the fluctuating workweek method does not deviate from the standard method of computing overtime pay under the FLSA. As has always been clear in the regulatory text, because the employee has received straight time compensation for all hours in the workweek, the overtime payment obligation is met by payment of an additional one-half the regular rate for all hours over 40 in the workweek.

Far from being contrary to the purpose of the FLSA's overtime requirement, half-time overtime under the fluctuating workweek method furthers that purpose. As the Supreme Court has explained, "[B]y increasing the employer's labor costs by 50% at the end of the 40-hour week and by giving the employees a 50% premium for all excess hours, Section 7(a) achieves its dual purpose of inducing the employer to reduce the hours of work and to employ more men and of compensating the employees for the burden of a long workweek." *Youngerman-Reynolds Hardwood*, 325 U.S. at 423-24. The Supreme Court has further warned against the "flawed premise that the FLSA pursues its remedial purpose at all costs." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (internal quotation marks omitted). In this case, the FLSA pursues its remedial purpose in its overtime requirement at a clearly defined cost: "increasing the employer's labor costs by 50% … for all [overtime] hours." *Youngerman-Reynolds Hardwood*,

37

325 U.S. at 423. That is precisely what the fluctuating workweek method achieves. As such, the fluctuating workweek method is consistent with the FLSA, and the Department believes that any increased use of the method by employers in response to this final rule will not conflict with the purposes of the Act.

b.) Whether the Final Rule is Consistent with Supreme Court Precedent

In its comment, NELA states that the final rule is inconsistent with the Supreme Court's decision in *Missel*, 316 U.S. 572. According to NELA, "the [*Missel*] Court held that an employer may pay a diminishing half-time overtime premium only if the employee receives a fixed weekly wage amount that never varies based on work performed." In support of this conclusion, NELA stated that "[n]owhere in *Missel* did the Court consider, let alone authorize, the scenario of an employer paying a fixed salary [plus] other variable hours-based compensation under a half-time pay scheme." NELA further contended that the *Missel* Court "directly answered" the question of "whether an employer can ever pay any amount other than base salary while still availing itself of [the fluctuating workweek method]." The plaintiff in *Missel* received a $2.50 per week allowance for supper money in addition to the fixed salary, which NELA argued is a type of supplemental pay that does not vary with respect to hours worked.[15] According to NELA, since the *Missel* Court permitted non-hours-based additional compensation under the fluctuating workweek method provided that the employee's total compensation was fixed in advance and guaranteed, it must also have prohibited all hours-based additional compensation under that method. *See* NELA (arguing that *Missel* held that additional compensation is permitted under the

---

[15] The Department notes that the Supreme Court's opinion in *Missel* made no mention of the allowance for supper money, which was noted in the lower court opinions. The fixed salary amount referenced in the Court's opinion, however, included the weekly allowance. The Department also notes that under certain circumstances supper money can be excluded from the regular rate. 29 CFR 778.217(b)(4).

fluctuating workweek method "if (and only if) the additional compensation amounts – like the base salary–are fixed and do not vary based on the number or type of hours worked").

The Department agrees with NELA that the *Missel* Court did not consider the scenario where an employee receives hours-based supplemental pay on top of a fixed salary, and so could not have expressly authorized such payments under the fluctuating workweek method. But for that same reason, the *Missel* Court could not have precluded such payments. 84 FR at 59593 ("*Missel* did not even address the issue of bonus or incentive payments beyond the fixed salary, let alone preclude certain types of payments."); *see also Smith*, 2011 WL 11528539, at *2 ("Nothing in *Missel* prohibits the use of the fluctuating work week method for calculating [overtime owed] whenever an employer gives a bonus to an employee.").

The Department does not agree that the *Missel* Court's decision means that all hours-based compensation must be forbidden. As NELA conceded, *Missel* did not address hours-based compensation. As such, the Court could not have "directly answered" any question concerning hours-based supplemental pay. Therefore, *Missel* does not support NELA's contention that a half-time overtime premium is appropriate "only if the employee receives a fixed weekly wage amount that never varies based on work performed."

### c.) Whether the Final Rule Is Inconsistent with Other Legal Precedent

Several commenters, including NELP, argued that "since *Missel*, courts have consistently been clear in their application of the [fluctuating workweek] rule. Under the [fluctuating workweek method], the employer's regular rate of pay can vary only with the number of hours worked per week, not the type of work performed during those hours or any premiums paid for those hours." *See also* State AGs. These commenters list several court cases holding that the

fluctuating workweek method is not compatible with hours-based bonuses. *See, e.g.*, NELP; State AGs.

However, since *Missel*, courts have taken a wide range of approaches regarding the payment of bonuses and premium payments under the fluctuating workweek method and have not been consistent in their application of the fluctuating workweek rule. For example, some courts held that bonus and premium payments were permitted under the fluctuating workweek method, and did not make the distinction between hours-based and production-based payments that some courts later developed. *See, e.g.*, *Cash*, 2 F. Supp. 2d at 908 (applying fluctuating workweek method where employee received incentive bonuses in addition to fixed salary); *Black*, 1994 WL 70113, at *5 (applying fluctuating workweek method where employee received straight-time bonuses for long hours in addition to fixed salary). Conversely, other courts have categorically prohibited such pay. *See West v. Verizon Servs. Corp.*, No. 8:08–cv–1325–T–33MAP, 2011 WL 208314, at *11 (M.D. Fla. Jan. 21, 2011) (fluctuating workweek method invalid because employee "received various bonus payments and commissions").

In 2003, the First Circuit held that the fluctuating workweek method may be used only where an employee receives a "'fixed amount as straight time pay for whatever hours [the employee] is called upon to work in a workweek.'" *O'Brien*, 350 F.3d at 288 (quoting 29 CFR 778.114(a)). Following *O'Brien*, and citing the 2011 final rule preamble in their reasoning, some courts have developed a dichotomy that permits production-based bonuses but prohibits hours-based bonuses under the fluctuating workweek method. *See Dacar*, 914 F.3d at 926; *Lalli*, 814 F.3d at 10. The Department notes, however, that neither the Department's regulations nor the FLSA distinguish between production-based and hours-based bonuses. Further, and perhaps most importantly, this legal precedent was based on the wording of the regulation prior to this

40

rulemaking, and was exacerbated by the unclear preamble discussion in the 2011 final rule, both of which the Department is addressing in this rulemaking.[16]

As these divergent approaches demonstrate, and contrary to the assertions of some commenters, the case law is neither consistent nor clear. These inconsistent interpretations by courts have created practical confusion and challenges for employers. Comments received in this rulemaking document the confusion caused by the judicially-developed distinction between productivity-based and hours-based bonuses. *See* CWC ("Some courts have permitted additional payments, others have prohibited them. S[t]ill other courts have drawn distinctions between permitted and prohibited additional payments based on the purpose of the payments. This widely divergent case law has created a greater disincentive for employers to consider the fluctuating workweek [method]."). One of the reasons for this rulemaking is to clear up the confusion caused by the divergent case law.

This final rule makes clear that permitting all supplemental pay while using the fluctuating workweek method is consistent with how overtime pay is computed based on the regular rate under the FLSA.

The Department recognizes that this clarification is inconsistent with certain legal precedent, such as those cases that adhere to the judicially-developed dichotomy between hours-

---

[16] NELP states in a footnote that courts issuing case law that is inconsistent with the final rule "have been interpreting Supreme Court precedent, not the regulation." But, as explained above, Supreme Court precedent does not directly address the compatibility of bonus and premium payments with the fluctuating workweek method. And the courts cited by NELP ground their analysis in the Department's fluctuating workweek regulation. For instance, the *O'Brien* court explained that "the parties limit their arguments to whether the compensation scheme … comports with the regulation, and we confine ourselves to the same question." 350 F.3d 287 n.15.

based and productivity-based bonuses.[17] However, as discussed above, neither the Department's regulations nor the FLSA distinguish between production- and hours-based bonuses when computing the regular rate and overtime pay. Indeed, this dichotomy lacks support and is in tension with all of the Department's prior written guidance on the issue. The clarifications provided in this preamble discussion and the corresponding explicit revisions to the regulatory text will bring much needed clarity regarding the compatibility of *all* types of bonuses with the fluctuating workweek method to the courts, employers, and employees alike.

### d.) Whether the Final Rule is Consistent with the Department's Prior Position

NELA argues that the final rule is inconsistent with the Department's prior position, particularly the position taken in the 2011 final rule. But as explained in the NPRM and below, it is not clear what precise position was taken in that final rule. In fact, that is the point of this rulemaking: to clarify the Department's position on whether payments of bonuses and premiums are permissible under the fluctuating workweek method.

Since 1968, the regulatory text of § 778.114 has explained that, under the fluctuating workweek method, "[p]ayment for overtime hours at one-half [the regular] rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement." In the 2008 NPRM, the Department proposed to clarify that the payment of additional bonuses and premiums was compatible with the fluctuating workweek method. This was because, as explained in the 2009 opinion letter, "[r]eceipt of additional bonus payments does not negate the fact that an employee receives straight-time compensation through the fixed salary for all hours worked."

---

[17] Indeed, given courts' different approaches, no rule here can be consistent with all the case law since *Missel*, and the Department does not attempt to do so. Rather, the Department's objective is to provide a rule that gives clear guidelines to employers and employees.

In the 2011 final rule, the Department did not adopt the proposed clarifying language to § 778.114, and instead the Department stated it would leave the text of § 778.114 unchanged except for minor revisions. The Department expressly stated that the decision not to implement the proposed clarifications would avoid "expand[ing] the use of [the fluctuating workweek] method of computing overtime pay beyond the scope of the current regulation," and would "restore the current rule." 76 FR at 18850. The same 2011 preamble, however, interpreted the "current rule" to mean that bonus and premium payments "are incompatible with the fluctuating workweek method of computing overtime under section 778.114." *Id.* Because the Department had stated clearly in both the 2008 NPRM and the 2009 opinion letter that payment of bonuses was permissible under the same regulatory language in § 778.114 that the Department retained in the 2011 final rule, the Department's reference to the "current rule" prohibiting such payments was unclear. *See* 73 FR at 43662; WHD Opinion Letter FLSA2009-24 (Jan. 16, 2009) (withdrawn Mar. 2, 2009). As explained in the background section of this preamble, the apparent misalignment between the 2011 preamble language and the substantively unchanged final regulatory text created substantial confusion for the regulated community. *See* CWC ("[S]tatements in the preamble to the [2011] final rule …contributed to the growing confusion over how additional compensation should be treated" because "while DOL did not publish any substantive changes to its codified rules, it articulated an explanation directly contrary to past practice.").

Attempting to make sense of the 2011 final rule, the court in *Sisson* concluded that the 2011 final rule actually "present[ed] an about-face" that "alters the DOL's interpretation." 2013 WL 945372, at *6; *Switzer*, 2012 WL 3685978, at *4 (describing the Department as having "shifted course" in the 2011 final rule). This interpretation, however, ignores the "restore the

current rule" language and the unchanged regulatory text. The *Wills* court concluded that "the status quo was being maintained," but defined the status quo as then-emerging case law permitting production-based bonuses while prohibiting hours-based ones. 981 F. Supp. 2d at 262; *see Lalli*, 814 F.3d at 9 ("DOL's decision to leave the regulation alone means that the bulletin would have done nothing to change the federal courts' existing 'treatment of that precise issue'") (quoting *Wills*, 981 F. Supp. 2d at 252). Many subsequent courts have affirmed the distinction between production-based and hours-based bonuses. *See, e.g., Dacar*, 914 F.3d at 926; *Lalli,* 814 F.3d at 8-10. But the Department has never endorsed the distinction between hours-based bonuses and production-based bonuses. In fact, as NELA points out, the Department's documented intent to file an amicus curiae brief in support of the appeal of the *Wills* decision evinces the Department's disagreement with *Wills*.

The Department's clarification in this final rule is consistent with its interpretations in the 2008 NPRM and the 2009 opinion letter and, importantly, is also consistent with the regulatory text as reaffirmed in the 2011 rule, which explained that employers that paid a fixed salary to employees whose hours fluctuated from week to week would satisfy their overtime payment obligation by paying an additional 50 percent of the employee's regular rate for all overtime hours. The Department's clarification in this final rule does not alter this fundamental principle of overtime compensation. Instead, it clarifies that the employee's straight time compensation may include bonus and premium payments in addition to a fixed salary. In such situations, where the regular rate includes all payments that are not excludable under section 207(e)(1)-(8), the employer's overtime payment obligation will be met by the payment of an additional 50 percent of the employee's regular rate for all overtime hours. Thus the Department does not agree that the current rule is inconsistent with its prior positions.

44

e.) Whether the Inverse Relationship between the Regular Rate and Hours
Worked Undermines the FLSA

Several commenters expressed concern that, under the fluctuating workweek method, the regular rate decreases when hours increase. For instance, the State AGs stated that the fluctuating workweek method of calculating overtime "is therefore the only method whereby the employee's regular rate of pay and the employee's overtime rate of pay actually decrease as the hours worked increase." These commenters assert that this inverse relationship is in tension with the remedial purposes of the FLSA's overtime requirement and harms workers paid under that method. NELA, for example, stated that the inverse relationship between the regular rate and hours worked "provides a strong financial incentive to employers to require ever more overtime hours and to limit the number of employees."

As discussed above, however, the fluctuating workweek method is not the only method under which the regular rate decreases as hours worked increase. For instance, the regular rate of an employee paid through a day-rate arrangement under § 778.112 is equal to the fixed day-rate amounts per week divided by hours worked. Because the day rate does not increase for longer work days, the regular rate necessarily falls as hours worked increase. Thus, there is some degree of inverse relationship between the regular rate and hours worked in every overtime compensation example listed in §§ 778.110-.115 except where the employee is paid exclusively through an hourly rate, in §§ 778.110(a) and .113. Whenever an employee receives any compensation in addition to or in lieu of hourly pay—such as a fixed bonus, or a day rate—the regular rate likely would vary inversely with hours worked. But that does not mean such compensation arrangements are at odds with the FLSA. Indeed, it is a function of the FLSA's definition of the regular rate as non-excludable compensation *divided* by hours worked.

Furthermore, nothing in this rule changes the basic rules for calculating pay under the fluctuating workweek method, including overtime. As such, any "financial incentive" to requiring overtime work would remain the same as in the status quo.

The Department further disagrees that the inverse relationship "provides a strong financial incentive to employers to require ever more overtime hours and to limit the number of employees." NELA. While the overtime premium per hour decreases as hours increase, the employer must still pay an overtime premium that is designed to discourage overtime work and spread employment, and the total amount of overtime premium an employer owes continues to increase as hours increase.

The Department notes that the payment of hours-based bonuses to employees compensated under the fluctuating workweek method—which this final rule clarifies is permitted—may diminish or even eliminate the inverse relationship between hours worked and the regular rate that commenters find objectionable. Consider the compensation scheme in *Black*, which the court upheld as compatible with the fluctuating workweek method, *see* 1994 WL 70113, at *2, *5: the employee was paid a fixed salary for all hours worked in a workweek plus a straight-time bonus for each hour worked in excess of 45. The bonus rate equals the weekly salary divided by 40 (which equals 0.025 of the fixed weekly salary per hour). If the employee works more than 45 hours, the regular rate equals:

$$\frac{(fixed\ salary) + ((hours\ worked - 45) \times 0.025\ (fixed\ salary))}{(hours\ worked)}$$

Under this this compensation scheme, so long as the employee works enough hours to receive the bonus, the regular rate would actually increase for each additional hour of overtime work. For example, an employee who works 50 hours and receives a fixed salary of $600 plus a straight-

time bonus of $15 for each hour worked in excess of 45 would have a regular rate of $13.50. But if he or she works five additional hours, the regular rate would rise to $13.63.

### f.) Effects on Workers Who Switch to the Fluctuating Workweek Method

The proposed clarification in § 778.114(a)(5) would make it more attractive for employers to use the fluctuating workweek method, so employers would be more likely to start using the method. While some commenters welcomed greater regulatory clarity, others, including EPI, State AGs, and NELP, expressed concern that when an employee switches to being paid under the fluctuating workweek method, the "employee … will lose the time-and-a-half overtime premium." EPI; *see also* State AGs, NELP. EPI further described how, in its view, a worker switched to the fluctuating workweek method could face reduced earnings: "Employers will … be unlikely to switch to the fluctuating workweek method *unless their employees tend to work more hours above their usual hours than below their usual hours*. That means workers whose employers choose to switch to the fluctuating workweek method are likely to receive lower earnings than they receive under the usual method."

The Department does not believe this scenario is likely to be widespread, if it occurs at all. It is certainly true that an employer theoretically could reduce an employee's overall earnings by switching that employee from hourly pay to the fluctuating workweek method. But the same employer could also reduce the employee's earnings by the exact same amount by lowering the employee's hourly rate of pay. As such, the ability to switch an employee to the fluctuating workweek method should not make the employer more able or willing to reduce the employee's earnings.

Such an employee would be agnostic as to the method behind an earning reduction: having the hourly wage reduced or being switched to the fluctuating workweek method with an

47

equivalently low salary would both make the employee equally dissatisfied because the negative effect on earnings is the same. Worker dissatisfaction may affect morale, turnover, and other productivity factors. The employer would also be agnostic: the employer's labor cost savings are the same and the employee is equally dissatisfied. So the employer faces the same tradeoff between labor costs savings, on one hand, and worker dissatisfaction on the other. The Department therefore finds no reason why the ability to switch an hourly worker to the fluctuating workweek method (an ability already present without the new rule) would make an employer any more able or willing to reduce the employee's earnings as compared to simply reducing the hourly rate of pay.[18]

As such, the Department believes employers switching hourly employees to the fluctuating workweek method should not, on balance, reduce workers' earnings. To the contrary, overall earnings are likely to increase. As explained below, the final rule is likely to reduce labor market inefficiency, *i.e.,* deadweight loss, by reducing employers' need to manage the hours of employees who are switched to the fluctuating workweek method and enabling employers to incentivize work not presently being performed. The benefit of this deadweight loss reduction

---

[18] While this possibility was not raised by EPI, the Department posits that some hourly employees may be willing to forgo a small amount of earnings to be switched to the fluctuating workweek method, perhaps because the employee prefers a fixed salary to unstable hourly pay. In this instance, an employer could theoretically switch the employee to the fluctuating workweek method while reducing the employee's earnings by the exact amount the employee was willing to forgo without having a net effect on the employee's satisfaction. But the Department does not believe that the employer could convince the employee to forgo the entire amount he or she is willing to forgo because an employer's market power—while often substantial—is rarely absolute. As long as the employee has even a small degree of market power, the employee is likely to forgo less earnings than he or she was willing to be switched to the fluctuating workweek method, leaving the employee more satisfied than before. This hypothetical scenario does not raise significant worker welfare concerns because the end outcome reflects the employee's preferences as much as the employers. Indeed, by the terms of the hypothetical scenario, switching to the fluctuating workweek method is guaranteed to leave the employee at least as satisfied as before.

will be distributed among both capital and labor factors, meaning that, on average, employers' profits and workers' earnings will both rise. *See* SHRM ("employees **and** employers are best served by a system that promotes maximum flexibility in structuring employee pay and benefits").

g.) Effects on Workers Paid Under the Fluctuating Workweek Method

Several commenters, including State AGs and NELA, expressed concern that the final rule would encourage employers to shift the compensation of employees already being paid under the fluctuating workweek method away from the fixed salary and towards bonuses and premiums. The NPRM expressly considered this possibility, which was also raised in the 2011 final rule, but ultimately concluded that any compensation shifting would not be significant. The Department's conclusion in this regard relied on 2019 Bureau of Labor Statistics (BLS) data showing that supplemental pay of the type permitted by the final rule—*i.e.*, nonproduction bonuses and shift differentials—constitutes a relatively small portion of employees' overall compensation nationwide, no more than five percent of any occupation.[19]

The Department reasoned that, if the prohibition against nonproduction bonuses and shift differentials under the fluctuating workweek method were lifted, employers using that method would, at most, shift compensation away from the salary and towards such supplemental pay to approximately the same extent as employers nationwide who are not similarly restricted. Since BLS data show employers nationwide have not shifted compensation away from base pay towards nonproduction bonuses and shift differentials to a significant degree (again, no more than five percent for any occupation), the Department concluded that lifting the restriction for

---

[19] Bureau of Labor Statistics, Employer Costs for Employee Compensation – June 2019, https://www.bls.gov/news.release/pdf/ecec.pdf.

employers using the fluctuating workweek method would not result in significant compensation shifting towards those types of pay.

Some commenters agreed with this conclusion. *See, e.g.,* SIGMA ("The Association concurs with DOL's assessment, which is based upon data from the Bureau of Labor statistics, that permitting employers to pay bonuses, premiums, and additional pay to employees compensated with the fluctuating workweek method will <u>not</u> lead employers to shift large portions of salaries into those types of supplemental payments."). Other commenters disputed the Department's use of certain BLS data in this rulemaking. NELA asserted, "The fact that the Bureau's statistics show employers currently pay civilians nonproduction bonuses as 1.8% of compensation and shift differentials as 0.2% does not constitute evidence or indication of any kind that employers will not shift compensation to non-guaranteed bonuses and supplementary compensation if given the opportunity to do so" under the fluctuating workweek method. The State AGs further argued that the Department's reliance on the BLS data "ignores … that the rule [the Department] is changing has prevented employers from exploiting the [fluctuating workweek] method and acted as a deterrent against shifting more pay towards hours-based premiums."

These commenters appear to believe that the perceived prohibition of supplemental pay under the fluctuating workweek method is responsible for the low rate at which employees nationwide receive nonproduction bonuses and shift differentials in comparison to base pay reflected in the BLS data. But that cannot be true because over 99 percent of employees nationwide are not paid under the fluctuating workweek method and so do not face its perceived

restrictions against paying nonproduction bonuses and shift differentials.[20] Even though the vast majority of employees nationwide face no restrictions from receiving nonproduction bonuses and shift differentials, their employers have not shifted a significant portion of their compensation towards such supplemental pay. Accordingly, the Department continues to believe that BLS data indicate that, if employees paid using the fluctuating workweek method of compensation begin to receive supplemental pay, there would not be significant compensation shifting.

NELA further argued that "the fact that the Bureau of Statistics was reporting the same (and even lower) average figures of supplemental pay as a percentage of total compensation when the 2008 NPRM issued … and when the Department issued its 2011 Final Rule, proves that the same Bureau statistics … are simply not evidence of the proposition they are cited to purportedly support." According to NELA, this is because "those figures were reported and available to commenters and the Department alike when it determined in 2011 that employers would likely reduce salaries and shift compensation to non-guaranteed bonus and other supplemental pay if given the opportunity to do so" under the fluctuating workweek method.[21]

The Department agrees with NELA that the rate at which employers nationwide have paid nonproduction bonuses and shift differentials as compared to base pay has been very low for at least the past decade. That supports the Department's conclusion that employers using the fluctuating workweek method would not shift more compensation to nonproduction bonuses and shift differentials if given the same opportunity to do so as employers nationwide. The

---

[20] The RIA estimates that 698,393 workers are compensated using the fluctuating workweek method, which represents 0.4 percent of U.S. workers.

[21] Citing Bureau of Labor Statistics, Employer Costs for Employee Compensation Historical Tables June 2019, Table 1, https://www.bls.gov/web/ecec/ececqrtn.pdf (reporting for "all workers" supplemental pay as percentage of total compensation at 2.5% (2008), 2.5% (2009), 2.3% (2010), 2.4% (2011); shift differentials at .2% (2008-11); and nonproduction bonuses at 1.4% (2008), 1.5% (2009), 1.3% (2010), and 1.4% (2011)).

Department disagrees with NELA that the availability of similar BLS data between 2008 and 2011 meant that the Department's concern regarding compensation shifting was informed by such BLS data. No commenter presented BLS data to the Department, and the Department's 2011 final rule did not cite any such data. The 2011 final rule did not state that it relied on any data whatsoever to conclude that the proposed regulation "could have had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments." 76 FR at 18850.

For these reasons, the Department continues to have confidence in BLS data indicating that the final rule's clarification that employees paid under the fluctuating workweek method may receive supplemental pay would not result in significant shifting of compensation away from the fixed salary towards supplemental pay.

### h.) Whether the Final Rule Will Create Confusion For Employers

The State AGs argue that the proposed clarification will "create confusion for employers and courts." State AGs. In particular, the State AGs note that certain states prohibit the fluctuating workweek method, and believe that employers in these states will not understand that the method is prohibited by state law. As such, these employers may "find themselves embroiled in costly litigation or subject to investigation." *Id.*[22]

States may and often do enact labor laws that are more restrictive on employers than the federal standard. Employers routinely are able to navigate both state and federal law. Thus, the Department believes that employers in a state that prohibits the fluctuating workweek method, such as California, will understand that the method remains prohibited by that state's more

---

[22] As set forth in the NPRM and confirmed by the State AGs, Pennsylvania, Alaska, California, and New Mexico do not generally permit employers to use the fluctuating workweek method.

restrictive law. It is unlikely such employers will, as the State AGs fear, "rush to use" the fluctuating workweek method in contravention of state law.

Instead, commenters that represent employers (or labor compliance professionals) overwhelmingly agreed with the NPRM that this final rule would reduce confusion and enhance clarity regarding the application of the fluctuating workweek method. For instance, the Chamber stated that "the 2011 Preamble generated substantial confusion and uncertainty for courts and employers alike. Employers saw this as an attack on their ability to reward their salaried nonexempt employees with variable incentive compensation." The CWC explained that "statements in the preamble to the [2011] final rule … contributed to the growing confusion over how additional compensation should be treated" because "while DOL did not publish any substantive changes to its codified rules, it articulated an explanation directly contrary to past practice."

SHRM further stated that the 2011 preamble "resulted in an initial wave of confusion among HR professionals." SHRM; *see also id.* ("[T]he source of confusion regarding the interaction of bonuses and fluctuating workweek is the 2011 Preamble."). This confusion has deterred employers from paying their workers bonuses. According to SHRM, "The Department's statement in the 2011 Final Rule preamble that the payment of any compensation in addition to the salary payment somehow 'invalidated' the fluctuating workweek method caused many employers to either (1) eliminate bonuses for employees paid pursuant to the fluctuating workweek method; or (2) pay previously salaried employees an hourly rate (and continue any bonus programs). Although these employers typically did not agree with [the] Department's legal reasoning, nor believe the restructured pay plans best served the needs of their business and employees, the substantial risk of litigation created solely by the Department's preamble

language forced their hands." Therefore, the Department continues to be confident this final rule will reduce confusion for employers.

i.) Whether to Exempt First Responders

The International Association of Fire Fighters (IAFF) "urges the Department to carve out an exception for fire fighters and other public safety personnel should it choose to move forward with the proposed regulation." As explained above, the fluctuating workweek method is merely an example of how regular rate and overtime computation principles apply in certain circumstances.

The Department has never had industry or occupational exceptions for the use of the fluctuating workweek method and IAFF has not provided sufficient evidence that the Department should consider such an exception now. The Department is therefore adopting § 778.114(a)(5) as proposed, with two minor changes. First, the Department is adding "commissions" as an example of additional pay that is compatible with the fluctuating workweek method. And second, the Department is replacing "not incompatible" with "compatible" to improve readability.

*C. Examples of the Fluctuating Workweek Method*

In the NPRM, the Department proposed two new examples to illustrate how the fluctuating workweek method computes overtime pay when an employee receives (1) a nightshift differential and (2) a productivity bonus in addition to the fixed salary. Fisher Phillips stated in its comment that "the examples are unnecessarily lengthy" and suggested "that the calculation be performed for only one workweek instead of all four in … examples [2 and 3] and/or collapse these examples as the employee could earn both a shift differential and a productivity bonus."

The Department agrees that it is unnecessary to show how the fluctuating workweek method computes overtime pay for four different workweeks in examples 2 and 3. But the Department believes it would be useful for each example to compute overtime for one workweek in which hours worked is over 40 and one workweek in which it is under 40. Accordingly, the Department is revising examples 2 and 3 to compute overtime pay in two different workweeks: one workweek where the employee works 37.5 hours and another in which the employee works 48 hours.

SHRM requested that the Department add "an example that addresses payments made for work outside of the employee's normal schedule." Specifically, SHRM suggested adding the following example to the regulatory text: "an employer and employee reach an understanding that the salary is intended to cover all hours worked from Monday to Friday, but occasional Saturday work will be paid at a day rate or hourly rate."

The Department does not believe the fluctuating workweek method would be appropriate in the scenario SHRM described. This is because the fluctuating workweek method computes overtime pay where the employee and employer both understand that the fixed salary covers *all* hours worked in the entire workweek, not just "Monday to Friday" as in SHRM's suggestion. That said, if the parties understand that the fixed salary covers all hours worked in a workweek, an employer may offer a premium for weekend work outside the employee's normal schedule and still use the fluctuating workweek method to compute the regular rate and overtime pay.

### D.  Revisions to § 778.114(c)

In its current form, § 778.114(c) states that "[w]here all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present, the Act, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more." 29 CFR 778.114(c). The NPRM proposed non-substantive edits to this

language for readability. *See* 84 FR at 59602 ("Where the conditions for the use of the fluctuating workweek method of overtime payment are present, the Act, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more.").

In its comment, the WHDI stated that, under the fluctuating workweek method, the regular rate varies from week to week based on the number of hours worked, thereby requiring employers to calculate the amount that they owe in overtime premiums each week. WHDI asserted that employers can avoid having to recompute the regular rate each week if they simply divide the employee's salary (plus any other compensation that must be included in the regular rate) by 40 and then pay one-half the resulting rate for each overtime hour worked. WHDI stated that the Department's proposed regulatory text in § 778.114(c) "confuse[d] matters" by implying that employers can pay more than half the regular rate in overtime compensation only "[w]here the conditions for the use of the fluctuating workweek method of overtime payment are present." 84 FR at 59602. WHDI thus requested that the Department clarify that there are no "legal prerequisites" to paying more than the amount of overtime compensation required by the Act.

Pursuant to the FLSA, in a workweek that exceeds 40 hours, an employee is entitled to be compensated at his or her regular rate for all hours worked (i.e., straight time) and to receive an overtime premium (i.e., overtime) of at least one half the regular rate for the hours worked in excess of 40. *See* 29 U.S.C. 207(a). The combination of straight time and overtime equals the one and one-half time overtime pay required by section 7 of the FLSA. *See id*. Therefore, to the extent that an employer has already paid straighttime compensation for all hours worked, the employer's resulting overtime obligation is only an additional half of the regular rate for the hours worked in excess of 40 in the workweek.

As noted by WHDI, in an overtime week, an employer using the fluctuating workweek method will always exceed its FLSA overtime obligation if it calculates the regular rate based on 40 hours worked (rather than the higher number of hours actually worked) and pays the half-time overtime premium on that basis. *See, e.g.*, FLSA Opinion Letter, 2002 WL 32255314 (Oct. 31, 2002); FLSA Opinion Letter, 1986 WL 1171085 (Feb. 10, 1986). It is the Department's longstanding position that employers are always permitted to pay more in overtime premiums than required by the FLSA. The regulatory text at issue in revised § 778.114(c) simply states that this principle is true in the fluctuating workweek context and does not impose any pre-conditions for paying more in overtime compensation than required by law. *See* 84 FR at 59602.

### E.  Other Comments

The Department received a number of comments that were not directed to a specific part of the proposed rule. These comments are addressed below.

The American Horse Council and the National Thoroughbred Racing Association requested guidance regarding how a bonus for a period that spans multiple workweeks should be allocated to those workweeks for the purpose of regular rate computation. The WFCA also requested that WHD give employers the choice of either allocating such a bonus to the week in which it is paid or to spread the bonus amount evenly across the covered workweeks (i.e., the period the bonus was earned). However, bonus allocation for the purpose of regular rate computations is not within the scope of the proposed regulation. Instead, WHD's regulations at 29 CFR 778.209 address how bonuses should be allocated for all methods of regular rate computation, including the fluctuating workweek method. Section 778.209 provides that, where possible, a bonus "*must* be apportioned back over the workweeks of the period during which it may be said to have been earned." 29 CFR 778.209(a) (emphasis added). If such apportionment

is not possible, "some other reasonable and equitable method of allocation must be adopted." 29 CFR 778.209(b). Accordingly, a bonus earned over a longer period may not be allocated solely to the workweek in which it was paid.

The WFCA requested WHD to clarify that that "preannouncement of possible bonuses should not make a bonus nondiscretionary and therefore included in the regular rate." However, the principles that govern whether a bonus is or is not discretionary, and therefore excludable from the regular rate, are the same whether an employer is using the fluctuating workweek method or some other method of determining the regular rate. These principles are found in the Department's regulations at § 778.211, which provides that "if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees. Such a bonus would not be excluded from the regular rate under section 7(e)(3)(a)." This language is clearly inconsistent with the WFCA's request. The preamble to WHD's recent Regular Rate final rule, published on December 16, 2019, provides further discussion of the distinction between discretionary and non-discretionary bonuses, with examples of discretionary bonuses common in the workplace, which may also provide employers with helpful guidance on this issue. *See* 84 FR at 68754-56.

The National Newspaper Association requested that the Department add a provision in the revised regulation that "permit[s] the fluctuating work 'week' to be calculated on a biweekly or monthly basis commensurate with the pay periods in many small businesses [to] allow newspaper employers some needed flexibility." The FLSA expressly requires employers to pay overtime compensation for any "workweek longer than forty hours." 29 U.S.C. 207(a). As such, the regular rate—which is necessary to determine overtime compensation owed—must also be

calculated on a weekly basis. *See* 29 CFR 778.104 ("The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks.").

Several commenters urged WHD to state in the final rule that the fluctuating workweek method may be used to compute back wages in failed exemption cases. The commenters explained that, in such cases, an employer may have classified a salaried employee as exempt under the FLSA but it is later determined that such employee is in fact nonexempt (e.g., because he or she is found to have performed nonexempt duties). In such cases, courts must determine how to calculate back wages for the salaried employees. Attorney Daniel Abrahams requested that the Department's final rule expressly state, consistent with the weight of the case law, that back wages in such cases may be calculated using the fluctuating workweek method.[23] Other commenters, such as Fisher Phillips and the WHDI, similarly requested that the Department clarify that, while the fluctuating workweek method may be used to calculate back wages in misclassification cases, the specific requirements set forth in § 778.114 do not apply to such back wage computations and instead are applicable only to the use of the fluctuating workweek method as a payroll practice.

The Department agrees with the general observation by Fisher Phillips and WHDI that the specific conditions set forth in § 778.114 (e.g., the clear and mutual understanding

---

[23] Many courts have permitted back wages in failed exemption cases to be calculated by using the fluctuating workweek method, although courts are divided as to whether the authority to apply the method is based on the retroactive application of § 778.114 itself or instead arises directly from the Supreme Court's *Missel* decision. *See, e.g.*, *Black v. Settlepou, P.C.*, 732 F.3d 492, 496-98 (5th Cir. 2013) (applying fluctuating workweek method to computation of back wages based on *Missel*); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310-11 (11th Cir. 2013) (same); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 676-84 (7th Cir. 2010) (same); *Clements*, 530 F.3d at 1230-31 (applying § 778.114 to retroactively calculate back pay); *Valerio*, 173 F.3d at 39-40 (affirming district court's retroactive application of section 778.114).

requirement) are intended to govern the use of the fluctuating workweek method as a *prospective* payroll practice. *See, e.g., Lamonica*, 711 F.3d at 1311; *Urnikis-Negro*, 616 F.3d at 678 (explaining that 29 CFR 778.114 "on its face is not a remedial measure. It says nothing about how a court is to calculate damages where, as here, the employer has breached its obligation to pay the employee an overtime premium. Its focus instead is on how an employer may comply with its statutory obligations in the first instance and avoid liability for breach of those obligations."). Accordingly, the Department declines to opine in this final rule on the permissibility of using the fluctuating workweek method to retroactively calculate back wages in failed exemption cases. The Department does not believe it would be appropriate, in the context of this rulemaking, to discuss the method of back wage calculation that courts should use in litigation involving failed exemption status, which necessarily involves fact-specific determinations and analysis. The NPRM did not specifically address back wage computations for misclassification cases, and the Department declines to do so in the final rule. As the Department has explained elsewhere in this preamble, however, to the extent that an employer has paid straight time compensation for all hours worked in the workweek, the employer's resulting overtime obligation under the Act is only an additional half of the regular rate for the hours worked in excess of 40 in the workweek. This general FLSA principle applies regardless of whether the specific compensation scheme at issue satisfies the technical requirements of § 778.114.

## IV.   PAPERWORK REDUCTION ACT

The Paperwork Reduction Act of 1995 (PRA), 44 U.S.C. 3501 *et seq.,* and its attendant regulations, 5 CFR part 1320, require the Department to consider the agency's need for its information collections and their practical utility, the impact of paperwork and other information

collection burdens imposed on the public, and how to minimize those burdens. This final rule does not require a collection of information subject to approval by the Office of Management and Budget (OMB) under the PRA, or affect any existing collections of information. The Department did not receive any comments on this determination.

## V.   EXECUTIVE ORDER 12866; REGULATORY PLANNING AND REVIEW; AND EXECUTIVE ORDER 13563, IMPROVED REGULATION AND REGULATORY REVIEW

*A.  Introduction*

Under E.O. 12866, OMB's Office of Information and Regulatory Affairs (OIRA) determines whether a regulatory action is significant and therefore, subject to the requirements of the E.O. and OMB review. Section 3(f) of E.O. 12866 defines a "significant regulatory action" as an action that is likely to result in a rule that (1) has an annual effect on the economy of $100 million or more, or adversely affects in a material way a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or state, local, or tribal governments or communities (also referred to as economically significant); (2) creates serious inconsistency or otherwise interferes with an action taken or planned by another agency; (3) materially alters the budgetary impacts of entitlement grants, user fees, or loan programs, or the rights and obligations of recipients thereof; or (4) raises novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in the E.O. As described below, this final rule is economically significant. The Department has prepared a Regulatory Impact Analysis (RIA) in connection with this rule, as required under section 6(a)(3) of Executive Order 12866, and OMB has reviewed the rule.

Executive Order 13563 directs agencies to propose or adopt a regulation only upon a reasoned determination that its benefits justify its costs; the regulation is tailored to impose the least burden on society, consistent with achieving the regulatory objectives; and in choosing among alternative regulatory approaches, the agency has selected those approaches that maximize net benefits. Executive Order 13563 recognizes that some benefits are difficult to quantify and provides that, where appropriate and permitted by law, agencies may consider and discuss qualitatively values that are difficult or impossible to quantify, including equity, human dignity, fairness, and distributive impacts.

### B. *Overview of the Rule and Potential Affected Employees*

This rule clarifies that bonuses, premiums, and any other supplemental payments are compatible with the fluctuating workweek method of calculating overtime pay. Prior to this rule, legal uncertainty regarding the compatibility of supplemental pay with the fluctuating workweek method deterred employers from making such payments to employees paid under the fluctuating workweek method. Employers were also deterred from paying employees under the fluctuating workweek method if they regularly paid bonuses and premiums. This rule will eliminate this deterrent effect, and thereby permit employers who compensate their employees under the fluctuating workweek method to pay employees a wider range of supplemental pay.

This rule makes clear to employers that employees paid under the fluctuating workweek method are eligible for all supplemental payments. As in the NPRM, in order to estimate the impact of this rule, the Department relied on data from the Current Population Survey (CPS) to estimate a total pool of employees who could possibly be affected.[24] In particular, the

---

[24] The CPS is a monthly survey of about 60,000 households that is jointly sponsored by the U.S. Census Bureau and BLS. Households are surveyed for four months, excluded from the survey for eight months, surveyed for an additional four months, and then permanently dropped from the

Department focused on full-time, nonexempt workers who report earning a fixed salary. The

Department's regulations recognize only two ways that an FLSA-covered employer may pay a

nonexempt employee a fixed salary.[25] First, under 29 CFR 778.113, the employer may pay a

salary for a *specific number* of hours each week. For the purpose of this analysis, the Department

assumes that a nonexempt worker paid under 29 CFR 778.113 would likely report having a

"usual" number of hours worked in the CPS. Second, under 29 CFR 778.114, the employer pays

a salary for *whatever number* of hours are worked—this is the fluctuating workweek method. For

the purpose of this analysis, the Department assumes that a nonexempt worker paid under the

fluctuating workweek method generally would not report having a "usual" number of hours

worked each week, but rather would report working hours that "vary" from week to week. The

Department estimated the number of such workers who could be compensated using the

fluctuating workweek method by counting CPS respondents who (1) are employed at a FLSA-

covered establishment; (2) are nonexempt from FLSA overtime obligations; (3) work full time at

a single job; (4) reside in the District of Columbia or a state that permits the use of the

fluctuating workweek method, (5) are paid on a salary basis; and (6) work hours that "vary" from

week to week.[26] The Department calculated that 721,656 workers satisfy all these criteria based

on 2018 CPS data. These workers are generally eligible to be paid under the fluctuating

---

sample. During the last month of each rotation in the sample (month 4 and month 16), employed
respondents complete a supplementary questionnaire in addition to the regular survey.

[25] Under either method of salary payment, the employee is entitled to overtime premium pay of
at least one and one-half times the regular rate. However, the method of calculating the overtime
due differs because of the difference in what the salary payment is intended to cover.

[26] Currently, four states generally prohibit the use of the fluctuating workweek method under
state law: Alaska, California, Pennsylvania, and New Mexico. *See* 8 Alaska Admin. Code §
15.100(d)(3); Cal. Labor Code § 515(d); *Chevalier v. Gen. Nutrition Ctrs., Inc*., No. 22 WAP
2018, 2019 WL 6139547  (Pa. Nov. 20, 2019); *N.M. Dep't of Labor v. Echostar Commc'ns
Corp*., 134 P.3d 780, 783 (N.M. Ct. App. 2006).

workweek method, but the Department lacks specific data as to how many are actually paid that way.

Using this group of workers to estimate the fluctuating workweek population may overstate the number of employees paid under the fluctuating workweek method because not all nonexempt and full-time CPS respondents who report earning a salary for working hours that "vary" from week to week are paid under the fluctuating workweek method. Some such respondents may actually be paid a salary for a specific number of hours under § 778.113, despite working fluctuating hours, and so classifying them as employees paid under the fluctuating workweek method would result in over-counting. Such an estimate may also undercount the number of employees paid under the fluctuating workweek method because the Department's methodology excludes all CPS respondents with "usual" hours from counting as an employee paid under the fluctuating workweek method. But an employee who works a "usual" number of hours may still be paid under the fluctuating workweek method if there is some weekly variation in the number of hours worked. Indeed, relying on 2018 CPS data, the Department estimates that an additional 675,130 nonexempt, full-time, and salaried workers report having a "usual" number of hours but routinely work hours that differ from that "usual" number. These additional workers are also eligible to be paid under the fluctuating workweek method, but the Department lacks data as to how many are actually paid that way.

All together, the total number of workers the Department estimates who may currently be paid under the fluctuating workweek method is about 1.4 million (721,656 workers who report their hours vary plus 675,130 workers who report having a "usual" number of hours but who work hours that differ from that number). The Department lacks data to determine how prevalent

this compensation method actually is amongst this group. [27] Without data on the precise number, and for purposes of this illustrative analysis, the Department assumes that *half* of these workers are currently being paid using the fluctuating workweek method, meaning 698,393 workers could become eligible for a wider range of supplemental payments. The actual number may be higher or lower.

This rule may also encourage some employers to switch their employees who are currently paid on an hourly basis to the fluctuating workweek method. The Department believes legal confusion over the last fifteen years, exacerbated by the 2011 final rule, likely caused some employers to stop using the fluctuating workweek method to compensate employees, and instead pay them on an hourly basis.[28] The Department applied the same estimation methodology it used to approximate the current number of employees paid under the fluctuating workweek method to approximate the number of such employees in previous years—going back to 2004—using CPS data from those years.[29]

In the NPRM, the Department noted that the estimated percentage of U.S. workers compensated under the fluctuating workweek method declined from 0.83 percent in 2004 to 0.45

---

[27] The Department received comments with anecdotal information about the prevalence of the fluctuating workweek method. For example, the National Newspaper Association surveyed their member publishers, and found that 11 percent are presently shifting additional employees to the fluctuating workweek method. And Attorney C. Andrew Head indicated that he has represented more than 20,000 fluctuating workweek employees in his litigation practice. While these comments do not provide enough data for the Department to add precision to its illustrative cost-savings estimates, they do indicate that there is significant use of the FWW method by at least some employers, and give the Department more confidence that the economic effects of this rule likely will be significant, even if they cannot be precisely measured.

[28] The Department believes that few employers would have switched employees from the fluctuating workweek method to a fixed salary for a specific number of hours under § 778.113 because those employees would have, by definition, worked hours that varied from week to week.

[29] The Department lacks the required CPS data from before 2004.

percent in 2018. At least some portion of this decline likely may be attributed to the legal

uncertainty discussed in greater detail above, but some may be attributable to unrelated causes.[30]

One commenter noted concerns with the Department's finding that the decline in workers

compensated under the fluctuating workweek method is due in part to legal uncertainty. EPI

claimed that this finding is based on an unjustified assumption that the share of workers who are

paid under the fluctuating workweek method out of all the workers who *might* be paid under the

fluctuating workweek method remains constant at 50 percent over this period. But other

commenters, such as SHRM and the Chamber, indicated that uncertainty did affect negatively

the number of workers paid under the fluctuating workweek method. Because the Department

lacks counts for the precise number of workers paid under the fluctuating workweek method, this

analysis merely assumes that half the workers whose characteristics make them not only eligible,

but whose hours and earnings data appear similar to what would be expected under the

fluctuating workweek, are actually compensated under the fluctuating workweek method. The

Department acknowledges that this share could fluctuate over this or any period, and that there

are other factors, beyond confusion created by legal uncertainty, that could be responsible for the

decline in the share of the labor force compensated under the fluctuating workweek method, and

thus does not include workers who might be "switched" to the fluctuating workweek method in

its quantified cost savings analysis.

For example, the Department recognizes that the total number of nonexempt FLSA full-

time salaried workers decreased both in total number and also as a share of the employee

population over this same period.[31] The Department further assumes that some employers who

---

[30] *Compare, e.g., Wills*, 981 F. Supp. 2d at 256, *with Sisson*, 2013 WL 945372, at *1.
[31] From approximately 27.0 million in 2004 to 19.2 million in 2018.

switched their employees away from the fluctuating workweek method due to legal uncertainty would be likely to switch those employees back to the fluctuating workweek. However, the Department lacks sufficient information to estimate the precise number of "switchers" due to elimination of legal uncertainty.

### C. Costs

As stated in the proposed rule, the Department believes that, because the rule merely lifts a restriction on employers paying bonuses and other supplemental payments to employees paid under the fluctuating workweek method, the only likely costs attributable to this rulemaking are regulatory familiarization costs, which represent direct costs to businesses associated with reviewing changes to regulatory requirements caused by the rule. Familiarization costs do not include recurring compliance costs that regulated entities would incur with or without a rulemaking. The Department calculated regulatory familiarization costs by multiplying the estimated number of establishments likely to review the rule by the estimated time to review the rule and the average hourly compensation of a Compensation, Benefits, and Job Analysis Specialist. The Department did not receive any comments about additional costs associated with this rulemaking.

To calculate costs associated with reviewing the rule, the Department first estimated the number of establishments likely to review the rule. The most recent data on private sector establishments at the time this final rule was drafted are from the 2016 Statistics of U.S. Businesses (SUSB), which reports 7.8 million establishments with paid employees.[32]

---

[32] U.S. Census Bureau, 2016 Statistics of U.S. Businesses (SUSB) Annual Data Tables by Establishment Industry, https://www.census.gov/data/tables/2016/econ/susb/2016-susb-annual.html

The Department believes that each of the 7.8 million establishments will review the rule. All employers will give the rule a cursory review, lasting no more than five minutes, to determine if they need to comply with the rule. Most employers will not spend any more time on the rule, because they do not have any employees compensated under the fluctuating workweek method. Additionally, the Department believes that employers currently using or interested in using the fluctuating workweek method to pay workers will give the rule a more detailed review. The Department estimates that 698,393 workers are paid under the fluctuating workweek method, based on the 2018 CPS data. The Department uses this number to help estimate the number of establishments who will spend more time reviewing the rule. As previously discussed, the Department lacks data to identify the specific employers or employees who may switch to the fluctuating workweek method given the new legal clarity, but estimates, for purposes of this cost analysis, that employers will switch additional employees to being paid under the fluctuating workweek method. This entire pool is approximately 0.45 percent of the 155.8 million workers in the United States. By assuming these workers are proportionally distributed among the 7.8 million establishments, the Department estimates approximately 35,100 establishments pay or are interested in paying employees using the fluctuating workweek method, and therefore would review the rule in greater detail. Because the rule is a clarification of the interaction between the fluctuating workweek method and supplemental payments, the Department estimates it would take an average of 30 additional minutes (on top of the five minutes spent on an initial review) for each of these employers to review and understand the rule. Some might spend more than 30 additional minutes reviewing the rule, while others might take less time; the Department believes that 30 minutes is a reasonable estimated average for all interested employers in light of the rule's simplicity.

Next, the Department estimated the hourly compensation of the employees who would likely review the rule. The Department assumes that a Compensation, Benefits, and Job Analysis Specialist (Standard Occupation Classification 13–1141), or an employee of similar status and comparable pay, would review the rule at each establishment. The median hourly wage of a Compensation, Benefits, and Job Analysis Specialist is $30.29.[33] The Department adjusted this base wage rate to reflect fringe benefits such as health insurance and retirement benefits, as well as overhead costs such as rent, utilities, and office equipment. The Department used a fringe benefits rate of 46 percent of the base rate and an overhead rate of 17 percent of the base rate, resulting in a fully loaded hourly compensation rate for Compensation, Benefits, and Job Analysis Specialists of $49.37 = ($30.29 + ($30.29 × 46%) + ($30.29 × 17%)).[34]

The Department estimates one-time regulatory familiarization costs in Year 1 of $32.8 million (= 35,100 establishments × 0.5 hours of review time × $49.37 per hour + 7.8 million establishments × 0.083 hours of review time × $49.37 per hour). This rule does not impose any new requirements on employers or require any affirmative measures for regulated entities to come into compliance; therefore, there are no other costs attributable to this rule. The Department acknowledges that employers who do switch to the fluctuating workweek method may encounter adjustment costs as they make changes to their payroll systems. These costs were not captured here; however, because employers are not required to change their payment method (i.e., their choice to switch is voluntary), and the Department assumes employers will make

---

[33] Bureau of Labor Statistics, May 2018 National Occupational Employment and Wage Estimates, United States, https://www.bls.gov/oes/current/oes_nat.htm
[34] The benefits-earnings ratio is derived from BLS's Employer Costs for Employee Compensation data using variables CMU1020000000000D and CMU1030000000000D.

economically rational decisions, then such costs would reasonably be expected to be less than employers' combined cost savings.

### D.  Cost Savings

The Department believes that this rule could lead to three categories of potential cost savings: (1) the elimination of opportunity costs for previously forgone activities; (2) reduced management costs for non-hourly employees; and (3) reduced legal costs for employers. The Department uses the assumptions previously discussed in this analysis to develop illustrative estimates of cost savings. Based on these estimates, the Department believes total cost savings are likely to exceed regulatory familiarization costs.

First, the rule could eliminate some of the opportunity costs in lost productivity resulting from employers' current inability to offer supplemental incentive pay to employees compensated under the fluctuating workweek method.[35] Legal uncertainty regarding the compatibility of such pay with the fluctuating workweek method prevents employers and employees from entering into certain mutually beneficial exchanges. For instance, an employer using the fluctuating workweek method could not offer supplemental incentive pay in exchange for performing undesirable duties. *See Dacar*, 914 F.3d at 926 (extra pay for "offshore" inspections invalidates fluctuating workweek method). The prohibition against such beneficial exchanges imposes economic costs, and the rule would eliminate such costs.

---

[35] "[C]ost savings should include the full opportunity costs of the previously forgone activities." Office of Management and Budget, "Guidance Implementing Executive Order 13771, Titled 'Reducing Regulation and Controlling Regulatory Costs,'" Apr. 5, 2017, https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/memoranda/2017/M-17-21-OMB.pdf. Some economists refer to this amount as deadweight loss or "the sum of consumer and producer surplus." *Id.*

In the NPRM, the Department evaluated the potential scope of opportunity costs as the economic value of supplemental incentive pay prevented by current legal uncertainty. The Department assumed that employers currently follow the holdings of an increasing number of courts on the compatibility between supplemental payments and the fluctuating workweek method. These courts have held that productivity based payments, such as commissions, are compatible with the fluctuating workweek method. *See Lalli*, 814 F.3d at 8. The Department therefore assumes employers are not currently deterred from paying productivity based bonuses and premiums to employees under the fluctuating workweek method.[36] On the other hand, some courts have held, and the 2011 preamble may have led employers to believe, that shift differentials and hours-based payments—such as payments for holiday hours and hours spent working offshore—are not compatible with the fluctuating workweek method. *See Dacar*, 914 F.3d at 926. The Department believes that employers were deterred from making these types of payments to employees paid under the fluctuating workweek method. Finally, the Department believes legal uncertainty further deters employers from making supplemental payments that are neither productivity-based nor hours-based. This includes, for example, retention bonuses, referral bonuses, and safety bonuses that BLS categorizes as "nonproduction bonuses."[37]

---

[36] The Department understands that this assumption may not perfectly reflect reality because many employers using the fluctuating workweek method may presently be deterred from paying any bonus or premium, even production based bonuses and premiums, especially outside of jurisdictions in which such supplemental pay have been expressly held to be compatible with the fluctuating workweek method. By assuming all employers are paying production bonuses despite this concern, the Department's illustrative estimate may be understating the economic cost of current legal uncertainty.

[37] Bureau of Labor Statistics, Fact Sheet for the June 2000 Employment Cost Index Release (2000), at 1, https://www.bls.gov/ncs/ect/sp/ecrp0003.pdf. As the name implies, nonproduction bonuses do not include productivity based pay, such as commissions, that courts generally find to be compatible with the fluctuating workweek method.

The Department lacks sufficient data to estimate the precise deadweight loss attributable to legal uncertainty, including the economic value of work that fluctuating workweek employees do not perform because their employers cannot provide certain supplemental pay. With the publication of the NPRM, the Department published an appendix, which contained a detailed illustrative analysis regarding possible ranges of potential opportunity cost eliminated and the critical variables upon which these estimates depend. The appendix illustrated that even if 70,000 workers who presently are compensated under the fluctuating workweek method—i.e., one-tenth of the Department's estimate of 698,393—receive supplemental pay equal to approximately one-third the national average of shift differential and nonproduction bonuses for work not presently performed, the full annual opportunity cost of lost productivity that the proposed rule would eliminate could exceed $60 million.[38] And if all workers compensated under the fluctuating workweek method received such a bonus, the productivity savings from the elimination of this opportunity cost would exceed $600 million. The Department received comments from some employers indicating that the proposed change would result in more bonuses being paid to workers, but those comments did not discuss the magnitude of such bonuses. The Department received no comments or data specifically addressing the estimates presented in the appendix, and has ultimately decided to continue to include those in the final analysis for illustrative purposes only. The table below reflects the range of potential cost savings that were included in the Appendix to the NPRM.[39]

[38] BLS estimates that average hourly shift differential and nonproduction bonuses are 3.4% of hourly pay and the 698,393 workers that the Department estimates are paid under the fluctuating workweek method earn an average annual salary of $49,282.

[39] *See* 84 FR 59601 (Nov. 5, 2019).

**TABLE 1: Opportunity Cost Eliminated**

|  |  | Scenario 1 | Scenario 2 |
|---|---|---|---|
|  |  | 1% Suppl. Pay | 2% Suppl. Pay |
| Scenario A | 349,192 Workers | $305,121,551 | $610,243,103 |
| Scenario B | 174,596 Workers | $152,560,776 | $305,121,551 |
| Scenario C | 69,838 Workers | $61,024,310 | $122,048,621 |

Second, the rule could reduce management costs for any employers that switch employees from hourly pay to the fluctuating workweek method. As explained above, the Department believes legal uncertainty caused some employers to stop paying employees using the fluctuating workweek method, and instead to pay them on an hourly basis. SHRM affirmed this belief in their comment, saying, "The Department's statement in the 2011 Final Rule preamble that the payment of any compensation in addition to the salary payment somehow 'invalidated' the fluctuating workweek method caused many employers to either (1) eliminate bonuses for employees paid pursuant to the fluctuating workweek method; or (2) pay previously salaried employees an hourly rate (and continue any bonus programs)." Since overtime pay premiums for hourly employees who do not receive supplemental pay are constant (i.e., their regular rate does not decrease as more overtime hours are worked), these employers may incur increased managerial costs because they may spend more time developing work schedules and closely monitoring an employee's hours to minimize or avoid overtime pay. For example, the manager of an hourly worker may have to assess whether the marginal benefit of scheduling the worker for more than 40 hours exceeds the marginal cost of paying the overtime based on the higher hourly rate. But such assessment is less necessary for an employee paid under the

73

fluctuating workweek method because the marginal cost to an employer of each hour of work under the fluctuating workweek is lower than the marginal cost of an hourly employee.[40]

There was little precedent or data to aid in evaluating these managerial costs, and the Department did not receive any comments about this cost savings. With the exception of the 2016 and 2019 overtime rulemaking efforts, the Department has not estimated managerial costs of avoiding overtime pay. *See* 81 FR 32391, 32477 (May 23, 2016); 84 FR 10900, 10932 (Mar. 29, 2019). Nor has the Department found such estimates after reviewing the literature. The Department therefore refers to the methodology used in the 2019 overtime rulemaking to produce a qualitative analysis of potential additional cost savings.

Under the overtime rulemaking methodology, the Department assumed a manager spends ten minutes per week scheduling and monitoring a newly exempt employee to avoid or minimize overtime pay. And employers may be able to avoid at least some of this effort if the employee were instead paid under the fluctuating workweek method because the marginal cost of each additional hour of work would be lower than an hourly employee. While the Department does not estimate the precise number of hourly workers whose employers would switch from paying hourly pay to the fluctuating workweek method following this rule, the Department believes that management costs may be reduced for every worker who is switched because their managers can spend less time managing their schedules if such schedule management is intended either to optimize compensation levels or to ensure coverage for less desirable shifts or projects. If,

---

[40] The fluctuating workweek marginal cost for hours 2-40 in a workweek is $0, and for hours 41+, the marginal cost is only the overtime premium, while marginal costs for hourly employees during the same hours is the hourly rate plus any overtime premium for any hours over 40. Conversely, when an hourly-paid employee works less than 40 hours in a workweek, the employer is obligated to pay only the hours worked, while under the fluctuating workweek method, the employer is obligated to pay the full salary for the workweek.

hypothetically, 150,000 workers were switched, employers might reduce their annual managerial costs by over $66 million.[41]

Third, the clarifying language and updated examples included in this rule may reduce the amount of time employers spend attempting to understand their obligations under the law, after an initial one-time rule familiarization. For example, employers interested in offering supplemental payments to employees compensated under the fluctuating workweek method would know immediately from the language in § 778.114 that such payments will be compatible with the fluctuating workweek method, thereby obviating further legal research and analysis on the issue. The Department does not have data to estimate the precise amount of cost savings attributable to reduced need for legal research and analysis, and instead provides an example to illustrate the potential for such savings.

If the additional legal clarity reduces the annual amount of legal review by just one hour for each employer that pays or is interested in paying employees using the fluctuating workweek method, the Department calculates potential cost savings of up to $3.3 million.[42] The Department obtained this illustrative estimate by first calculating the hourly cost of a lawyer (Standard Occupation Classification 23-1011). The median wage of a lawyer is $58.13,[43] and the

---

[41] This illustrative analysis assumes: ten minutes per week per worker, fifty-two weeks per year, multiplied by a hypothetical number of new employees paid under the fluctuating workweek method, multiplied by the full-loaded median hourly wage for a manager ($31.18 + $31.18(0.46) + $31.18(0.17) = $50.92). This wage is calculated as the median hourly wage in the pooled 2018/19 CPS MORG data for workers in management occupations (excluding chief executives).

[42] Although earlier in the economic analysis the Department estimates that it will take employers anywhere from 5-30 minutes to familiarize themselves with the rule, it is likely that lawyers are currently spending significantly more time annually advising their clients on issues related to the fluctuating workweek method. The lawyers need not only be familiar with the rule but must also apply the rule to specific compensation schemes used or proposed by their clients.

[43] Bureau of Labor Statistics, May 2018 National Occupational Employment and Wage Estimates, United States, https://www.bls.gov/oes/current/oes_nat.htm

Department adjusted this to $94.75 per hour to account for fringe benefits and overhead.[44] The fully-loaded hourly compensation rate of $94.75 is then multiplied by the 35,100 establishments that the Department estimates pay or may be interested in paying employees using the fluctuating workweek method, resulting in $ 3.3 million per year.[45] As noted above, this figure is an illustrative example of potential annual cost savings due to reducing legal-review burdens.

Even though the Department cannot quantify the precise amount of total cost savings, it is expected that they will significantly outweigh regulatory familiarization costs. Unlike one-time familiarization costs, the calculated and other potential cost savings described in this section would continue into the future, saving employers valuable time and resources. This rule also offers increased flexibility to employers in the way that they compensate their employees. However, in the absence of additional data, the Department is unable to precisely quantify all cost savings and other potential effects of the proposed rule.

E.  *Transfers*

Transfer payments occur when income is redistributed from one party to another. The Department believes this rule may cause transfer payments to flow from some employers to their employees and also may cause transfer payments to flow from employees to some employers. When discussing these transfers in the NPRM, the Department noted that the incidence, magnitude, and ultimate beneficiaries of such transfers is unknown.

The Department expects some employers may begin to use other types of supplemental pay, including nonproduction bonuses and shift differentials, to incentivize employees to

---

[44] The Department used a fringe benefits rate of 46 percent of the base rate and an overhead rate of 17 percent of the base rate, resulting in a fully loaded hourly compensation rate of $94.75 = ($58.13 + ($58.13 × 0.46) + ($58.13 × 0.17)).

[45] This estimate of establishments is discussed in greater detail in the Costs section, above.

perform economically valuable tasks. If employers offer these new bonuses to employees already paid under the fluctuating workweek method, it would constitute a transfer from employers to employees.

Some commenters argued that employers will reduce their employees' salaries paid under the fluctuating workweek and shift compensation to non-guaranteed bonuses, essentially reducing some of that employer's workers' earnings. *See e.g.,* EPI, State Attorneys General, Head Law Firm, IAFF, NELA. The commenters assume that employers look only to lower their labor costs, and if they can use bonuses in conjunction with the fluctuating workweek method to pay less for overtime, they are likely to do so. If such a shift were to occur, if the scope of such a shift in comparison to the current fluctuating workweek wage is large, and if bonuses were small, the commenters claim this reduction could constitute a transfer from employees to employers. These comments do not cite any data to show the opposite effect from the 2011 perceived prohibition on paying certain bonuses, nor do they cite data to indicate that employers who pay their employees under the fluctuating workweek method would be willing to risk a drastic downward change in total compensation.

The Department acknowledges that, for employees compensated under the fluctuating workweek method, an employer and employee may now agree to a new allocation of compensation between the fixed salary for all hours of work, bonuses, benefits, supplemental pay, and other job perks. Some allocations could result in their salaries being augmented, but employers could also decrease the fixed portion of the employee's salary and shift compensation to bonuses and incentive pay. These are merely two of a host of allocations not discussed in the comments. However, even if the agreement could result in somewhat lower compensation, there is a limit to how much employers are able to reduce employees' total compensation. The

fluctuating workweek method still requires that an employee's fixed salary be at or above the minimum wage for all hours worked, so employers are unable to reduce compensation below the minimum wage (plus overtime for all hours over 40).

This supplemental pay is also a way for employers to incentivize employees to do undesirable tasks, or work undesirable shifts. As supplemental pay may be the most efficient means to incentivize employees to perform this valuable work, many employers in such a scenario will be more than willing to pay the extra amount for these valuable services without decreasing employees' base salaries. Absent data to the contrary, the Department disagrees with commenters' assertion that permitting new bonus payments to employees paid under the fluctuating workweek method will generally result in those workers being paid less for the same or more work.

These same commenters also assert that the proposed rule will encourage the use of overtime because the fluctuating workweek regular rate of pay falls as hours increase. *See*, *e.g.*, EPI, State Attorneys General, NELP, IAFF, NELA, Head Law Firm. These commenters posit that the marginal cost to the employer of an hour of overtime is lower for employees who are shifted to the fluctuating workweek method and assert that this creates incentives for employers to overwork current employees instead of hiring additional staff, undermining job creation.

The Department acknowledges that this rule could encourage more employers to use the fluctuating workweek method to compensate their employees, if they previously chose not to use the fluctuating workweek method because they also wanted to provide incentive pay but believed they were not permitted to do so. However, contrary to the commenters' assertion, nothing in this rule changes the basic rules for calculating fluctuating workweek wages, including overtime. As such, any "disincentive" to requiring overtime work remains the same as the status quo other

than the potential increase in the marginal costs attributable to newly-permitted incentive and bonus payments. Further, these commenters offered no data to support their contentions that, merely because they are now permitted to pay bonuses, employers will increase fluctuating workweek overtime hours and choose not to hire additional workers.

*F.   Benefits*

The Department believes the rule could reduce avoidable disputes and litigation regarding the compatibility between supplemental pay and the fluctuating workweek method. As noted above, there is no uniform consensus among federal courts as to whether and what types of supplemental pay is permitted. The Department believes this uncertain legal environment generates a substantial amount of avoidable disputes and litigation. This rule will provide a simple standard that permits all supplemental pay under the fluctuating workweek method, and therefore should reduce unnecessary disputes and litigation.[46] The Department lacks data to quantify this benefit.

The Department also believes that this rule will allow employers and employees to better utilize flexible work schedules. This is especially important as workers return to work during the COVID-19 pandemic. Some employers are likely to promote social distancing in the workplace by having their employees adopt variable work schedules, possibly staggering their start and end times for the day. This rule will make it easier for employers and employees to agree to unique scheduling arrangements while allowing employees to retain access to the bonuses and premiums, including hazard pay, they would otherwise earn.

*G.   Summary*

---

[46] The costs of such disputes and litigation are not insignificant, but are not estimated here nor included in the projected regulatory cost savings.

This rule will result in a one-time rule-familiarization cost of $32,828,582. The Department estimated average annualized costs of this rule over 10 years and in perpetuity. Over ten years, this rule would have an average annualized cost of $3.7 million at a discount rate of 3 percent, or $4.4 million at a discount rate of 7 percent in 2018 dollars. When the Department uses a perpetual time horizon to allow for cost comparisons under EO 13771, the perpetual annualized cost is $1,569,905 at a discount rate of 7 percent in 2016 dollars.

## VI.     REGULATORY FLEXIBILITY ANALYSIS

The Regulatory Flexibility Act of 1980 (RFA), 5 U.S.C. 601 et seq., as amended by the Small Business Regulatory Enforcement Fairness Act of 1996, Public Law 104-121 (March 29, 1996), requires federal agencies engaged in rulemaking to consider the impact of their proposals on small entities, consider alternatives to minimize that impact, and solicit public comment on their analyses. The RFA requires the assessment of the impact of a regulation on a wide range of small entities, including small businesses, not-for-profit organizations, and small governmental jurisdictions. Agencies must perform a review to determine whether a proposed or final rule would have a significant economic impact on a substantial number of small entities. 5 U.S.C. 603 and 604.

This rule will not impose any new requirements on employers or require any affirmative measures for regulated entities to come into compliance. Therefore, there are no other costs attributable to this rule other than regulatory familiarization costs. As discussed above, the Department calculated the familiarization costs for both the estimated 7.8 million private establishments in the United States and for the estimated 50,064 establishments that pay or are interested in paying employees using the fluctuating workweek method. The Department estimated the one-time familiarization cost for each of the 7.8 million establishments—which

would give the proposed rule a cursory review—is $4.11. And the one-time familiarization cost for each of the 35,100 establishments that employ or are interested in employing employees paid under the fluctuating workweek method—which would closely review the proposed rule—is $24.69. Estimated familiarization costs will be trivial for small business entities, and will be well below one percent of their gross annual revenues, which is typically at least $100,000 per year for the smallest businesses.

The Department believes that this rule will achieve long-term cost savings that outweigh initial regulatory familiarization costs. For example, the Department believes that clarifying the confusing fluctuating workweek regulation and adding updated examples should reduce compliance costs and litigation risks that small business entities would otherwise continue to bear. The rule will also reduce administrative costs of small businesses that respond by switching hourly employees to the fluctuating workweek method. The rule further enables a small business to offer employees paid under the fluctuating workweek method supplemental incentive pay in exchange for certain productive behavior, such as working nightshifts or performing undesirable duties. The business will offer such supplemental pay only if the benefits of the incentivized behavior exceed the cost of payments. Because the vast majority of businesses, including small businesses, do not pay workers using the fluctuating workweek method, the Department believes such benefits will be limited to few small businesses.[47] Based on this determination, the Department certifies that the rule will not have a significant economic impact on a substantial number of small entities.

## VII.   UNFUNDED MANDATE REFORM ACT ANALYSIS

[47] The Department of Labor estimates that only 0.45% of U.S. workers are compensated using fluctuating workweek method.

81

The Unfunded Mandates Reform Act of 1995 (UMRA), 2 U.S.C. 1532, requires that agencies prepare a written statement, which includes an assessment of anticipated costs and benefits, before proposing any federal mandate that may result in excess of $100 million (adjusted annually for inflation) in expenditures in any one year by state, local, and tribal governments in the aggregate, or by the private sector. While this rulemaking would affect employers in the private sector, it is not expected to result in expenditures greater than $100 million in any one year. Please see Section VI for an assessment of anticipated costs and benefits to the private sector.

## VIII.   EXECUTIVE ORDER 13132, FEDERALISM

The Department has reviewed this rule in accordance with Executive Order 13132 regarding federalism and determined that it does not have federalism implications. The rule will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

## IX.   EXECUTIVE ORDER 13175, INDIAN TRIBAL GOVERNMENTS

This rule will not have substantial direct effects on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes.

**List of Subjects in 29 CFR Part 778**

Wages.

Signed at Washington, D.C. this 15th day of May, 2020.


Cheryl M. Stanton,

82

Administrator, Wage and Hour Division.

For the reasons set out in the preamble, the Department of Labor amends title 29 of the Code of Federal Regulations part 778 as follows:

PART 778—OVERTIME COMPENSATION

1.      The authority citation for part 778 continues to read as follows:

AUTHORITY: 52 Stat. 1060, as amended; 29 U.S.C. 201 *et seq.*  Section 778.200 also issued under Pub. L. 106-202, 114 Stat. 308 (29 U.S.C. 207(e) and (h)).

2.      Amend § 778.114 by revising paragraphs (a), (b), and (c); and adding paragraph (d) to read as follows:

**§ 778.114 Fluctuating Workweek Method of Computing Overtime.**

(a) An employer may use the fluctuating workweek method to properly compute overtime compensation based on the regular rate for a nonexempt employee under the following circumstances:

(1) the employee works hours that fluctuate from week to week;

(2) the employee receives a fixed salary that does not vary with the number of hours worked in the workweek, whether few or many;

(3) the amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours the employee works is greatest;

(4) the employee and the employer have a clear and mutual understanding that the fixed salary is compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular

rate under section 7(e)(l) through (8) of the Act) for the total hours worked each workweek regardless of the number of hours, although the clear and mutual understanding does not need to extend to the specific method used to calculate overtime pay; and

(5) the employee receives overtime compensation, in addition to such fixed salary and any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind, for all overtime hours worked at a rate of not less than one-half the employee's regular rate of pay for that workweek. Since the salary is fixed, the regular rate of the employee will vary from week to week and is determined by dividing the amount of the salary and any non-excludable additional pay received each workweek by the number of hours worked in the workweek. Payment for overtime hours at not less than one-half such rate satisfies the overtime pay requirement because such hours have already been compensated at the straight time rate by payment of the fixed salary and non-excludable additional pay. Payment of any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind is compatible with the fluctuating workweek method of overtime payment, and such payments must be included in the calculation of the regular rate unless excludable under section 7(e)(1) through (8) of the Act.

(b) The application of the principles stated above may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose work hours never exceed 50 hours in a workweek, and whose salary of $600 a week is paid with the understanding that it constitutes the employee's compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular rate under section 7(e)(1) through (8)) for all hours worked in the workweek.

(1) *Example.* If during the course of 4 weeks this employee receives no additional compensation and works 37.5, 44, 50, and 48 hours, the regular rate of pay in each of these weeks is $16, $13.64, $12, and $12.50, respectively. Since the employee has already received straight time compensation for all hours worked in these weeks, only additional half-time pay is due for overtime hours. For the first week the employee is owed $600 (fixed salary of $600, with no overtime hours); for the second week $627.28 (fixed salary of $600, and 4 hours of overtime pay at one-half times the regular rate of $13.64 for a total overtime payment of $27.28); for the third week $660 (fixed salary of $600, and 10 hours of overtime pay at one-half times the regular rate of $12 for a total overtime payment of $60); for the fourth week $650 (fixed salary of $600, and 8 overtime hours at one-half times the regular rate of $12.50 for a total overtime payment of $50).

(2) *Example.* If during the course of 2 weeks this employee works 37.5 and 48 hours and 4 of the hours the employee worked each week were nightshift hours compensated at a premium rate of an extra $5 per hour, the employee's total straight time earnings would be $620 (fixed salary of $600 plus $20 of premium pay for the 4 nightshift hours). In this case, the regular rate of pay in each of these weeks is $16.53 and $12.92, respectively, and the employee's total compensation would be calculated as follows: For the 37.5 hour week the employee is owed $620 (fixed salary of $600 plus $20 of non-overtime premium pay, with no overtime hours); and for the 48 hour week $671.68 (fixed salary of $600 plus $20 of non-overtime premium pay, and 8 hours of overtime at one-half times the regular rate of $12.92 for a total overtime payment of $51.68). This principle applies in the same manner regardless of the reason for the hourly premium rate (e.g., weekend hours).

(3) *Example.* If during the course of 2 weeks this employee works 37.5 and 48 hours and the employee received a $100 productivity bonus each week, the employee's total straight time earnings would be $700 (fixed salary of $600 plus $100 productivity bonus). In this case, the regular rate of pay in each of these weeks is $18.67 and $14.58, respectively, and the employee's total compensation would be calculated as follows: For the 37.5 hour week the employee is owed $700 (fixed salary of $600 plus $100 productivity bonus, with no overtime hours); and for the 48 hour week $758.32 (fixed salary of $600 plus $100 productivity bonus, and 8 hours of overtime at one-half times the regular rate of $14.58 for a total overtime payment of $58.32).

(c) Typically, such fixed salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole. Where the conditions for the use of the fluctuating workweek method of overtime payment are present, the Act, in requiring that "not less than" the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more. On the other hand, where all the facts indicate that an employee is being paid for overtime hours at a rate no greater than that which the employee receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula.

(d) The fixed salary described in paragraph (a) of this section does not vary with the number of hours worked in the workweek, whether few or many. However, employers using the fluctuating workweek method of overtime payment may take occasional disciplinary deductions from the employee's salary for willful absences or tardiness or for infractions of major work rules, provided that the deductions do not cut into the minimum wage or overtime pay required by the Act.